## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIMON BRONNER, et al.,

      Plaintiffs,

and SIMON BRONNER,
DERIVATIVELY ON BEHALF OF
NOMINAL DEFENDANT, THE
AMERICAN STUDIES ASSOCIATION,

      Derivative Plaintiff,

v.

LISA DUGGAN, et al.,

      Defendants.

Case No: 1:16-cv-00740-RC

## MOTION TO DISMISS

Defendants The American Studies Association ("ASA"), Avery Gordon, Sunaina Maira, Neferti Tadiar and Chandan Reddy submit this Motion to Dismiss the Complaint pursuant to Rule 12.  As more fully set forth in the accompanying Memorandum in Support of Motion to Dismiss, which is incorporated herein by reference, the Complaint should be dismissed in its entirety.

_/s/ John J. Hathway_

John J. Hathway, Esq. #412664
Dwight W. Stone, Esq. #MD22698
Stacey Pine, Esq. #1029133
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036-5405
(202) 659-6800
jhathway@wtplaw.com
dstone@wtplaw.com
spine@wtplaw.com

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BRONNER, et al.,<br><br>     Plaintiffs,<br><br>and SIMON BRONNER,<br>DERIVATIVELY ON BEHALF OF<br>NOMINAL DEFENDANT, THE<br>AMERICAN STUDIES ASSOCIATION,<br><br>     Derivative Plaintiff,<br><br>v.<br><br>LISA DUGGAN, et al.,<br><br>     Defendants. | Case No: 1:16-cv-00740-RC |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................... 3

PROCEDURAL AND FACTUAL BACKGROUND ........................................ 4

ARGUMENT ...................................................................... 7

    I.     Standard of Review .................................................... 7

    II.    This Court Lacks Subject Matter Jurisdiction ........................... 7

    III.   The Individual Defendants Should Be Dismissed for Lack
         of Personal Jurisdiction ............................................. 11

    IV.   The Complaint is Not Verified as Required By Rule 23.1 .............. 13

    V.    Plaintiffs Did Not Make a Proper Pre-Suit Demand ................... 13

    VI.   Plaintiffs' Complaint Must be Dismissed as it Violates
         Defendants' First Amendment Rights ................................. 18

    VII.  The ASA Was Well Within Its Rights And Powers to Issue
         the Resolution ....................................................... 20

    VIII. ASA Did Not Breach the Rights of ASA Members Through
         the Vote on the Resolution .......................................... 24

    IX.   The "Direct Claims" Asserted in Counts II and III Must Be
         Dismissed as Against the Individual Defendants ...................... 26

CONCLUSION ................................................................... 27

CERTIFICATE OF SERVICE ...................................................... 29

Defendants The American Studies Association ("ASA"), Avery Gordon, Sunaina Maira, Neferti Tadiar and Chandan Reddy move to dismiss this Complaint, a baseless and transparent attempt to intimidate the Defendants and stifle First Amendment-protected free speech and free assembly.  Plaintiffs not only are attempting to use the court system to chill Defendants' First Amendment rights, but are doing so by ignoring the law in several other fundamental respects.  The Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

## INTRODUCTION

The Complaint is defective on many levels.  *First*, the Court lacks subject matter jurisdiction because under no circumstance does the amount in controversy exceed $75,000.  In fact, there is no amount in controversy.  *Second,* as to the individual Defendants, there are no allegations in the Complaint that would allow this Court to exercise personal jurisdiction over them.  *Third*, Plaintiffs have ignored the requirement under FRCP 23.1 that a derivative action be verified.  *Fourth*, they have failed to comply with the requirement of that Rule and the D.C. NonProfit statute to make a sufficient pre-suit demand — despite the passage of over two years from when the challenged Resolution was passed.  *Fifth*, the Complaint is an unconstitutional attack on Defendants' First Amendment rights of freedom of speech and assembly.  *Sixth*, the Plaintiffs' *ultra vires* claims fail because Plaintiffs do not and cannot allege that the passage of the Resolution was prohibited by any statute or by-law, which the governing

law requires for an *ultra vires* claim.  Rather, the ASA had the authority under its governing documents to pass the subject Resolution.  *Seventh,* the ASA did not breach Plaintiffs' rights through the vote on the resolution.  *Finally,* the "direct claims" asserted against the individual Defendants in Counts II and III are prohibited by statute and must be dismissed.

## PROCEDURAL AND FACTUAL BACKGROUND

ASA is a tax-exempt membership organization under Section 501(c)(3) of the Internal Revenue Code, and is a D.C. nonprofit corporation.  ASA's membership is comprised of scholars, teachers, writers, administrators and activists from around the world with a common desire to view U.S. history and culture from multiple perspectives. (ASA website, http://www.theasa.net/about/page/what_the_asa_does/).   On the date on which Plaintiffs' alleged cause of action arose, ASA's organizational purpose, as stated in its Constitution, was "the promotion of the study of American culture through the encouragement of research, teaching, publication, the strengthening of relationships among persons and institutions in this country *and abroad* devoted to such studies, and the broadening of knowledge among the general public about American culture in all its diversity and complexity."  (Complaint ¶ 22) (*See also* ASA Constitution and Bylaws Art. I, Sec. 2 attached as **Exhibit 1)**[1]. (emphasis added)

---

[1] Documents or exhibits attached to or referenced in a complaint may properly be considered on a motion to dismiss.  *In re Cheney,* 406 F.3d 723, 729 (D.C. Cir. 2005) ("In determining whether to dismiss, courts treat documents attached to a complaint as if they are part of the complaint."); *Gustave-Schmidt v. Chao,* 226 F.Supp. 2d 191, 196 (D.D.C. 2002) (noting that court may consider on motion to dismiss documents "attached as exhibits or incorporated by reference in the complaint") (citing *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

At its annual meeting in 2013, the ASA passed a Resolution (the "Resolution") regarding ASA's interaction with Israeli academic institutions. (Complaint ¶ 26).  In accordance with its purpose to encourage research and teaching of American culture in this country and abroad, the reasons for adopting the Resolution included a statement that "the United States plays a significant role in enabling the Israeli occupation of Palestine and the expansion of illegal settlements and the Wall in violation of international law, as well as in supporting the systematic discrimination against Palestinians, which has had devastating impact on the overall well-being, the exercise of political and human rights, the freedom of movement, and the educational opportunities of Palestinians." (Complaint ¶ 26).  Another stated reason for the Resolution was the lack of "effective or substantive academic freedom for Palestinian students and scholars under conditions of Israeli occupation," and ASA's dedication to "the right of students and scholars to pursue education and research without undue state interference, repression, and military violence, and in keeping with the spirit of [ASA's] previous statements support for the right of students and scholars to intellectual freedom and to political dissent as citizens and scholars." *Id.* The Resolution did not prohibit ASA members (or anyone else in that regard) from interacting with Israeli academic institutions.

The Complaint is brought in six counts.  In Count I, "Derivative Claim for Breach of Fiduciary Duty Against the Individual Defendants by Plaintiff Bronner," it is alleged that the individual Defendants breached their fiduciary duty to the ASA and failed to act in good faith by "pushing through" the boycott Resolution and manipulating the

process to obtain approval. (Complaint ¶ 75).   Count II alleges "Derivative and Direct Claim for Ultra Vires Action Against All Defendants by all Plaintiffs" based upon an assertion that the sole purpose of the ASA, at the time the Resolution was passed, was the promotion of the study of American culture, and that the passage of the Resolution is outside and inconsistent with the purpose of the ASA's Constitution. (Complaint ¶ 78).  In Count III, Plaintiffs allege "Derivative and Direct Claims for Waste Against All Defendants by All Plaintiffs" based upon an alleged decision by the individual Defendants to expend ASA resources to enact the Resolution. (Complaint ¶ 83). Plaintiffs further allege in Count IV (in the alternative) a "Direct Claim for Breach of Contract Against ASA by all Plaintiffs."  The Count IV allegations are premised upon a claim that ASA did not follow the procedure set forth in its bylaws for a membership vote, and that the membership vote on the Resolution required approval by a two-thirds majority of ASA members who voted on the Resolution, and that such a majority was not achieved.  (Complaint ¶ 88).  As to Count V ("In The Alternative"), Plaintiffs assert a "Direct Claim for Breach of the D.C. NonProfit Corporations Act Against ASA by all Plaintiffs" based upon the alleged wrongful adoption of the Resolution due to a lack of a quorum for a membership vote on the Resolution. (Complaint ¶¶ 91-93). Finally, in Count VI, a "Direct Claim for Breach of Contract Against the ASA" is alleged by Plaintiff Barton, which is based upon his allegation that he was prohibited as a member from voting on the Resolution. (Complaint ¶¶ 97-101).

# ARGUMENT

## I.   Standard of Review.

The standard for granting a motion to dismiss pursuant to FRCP 12(b)(6) is well-established: the Court must accept as true all well-pleaded allegations, and may consider any documents attached to such complaint as exhibits or incorporated by reference. *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F.Supp 3d 1 (D.D.C. 2014) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Compton*, 64 F.Supp 3d at 12 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Legal conclusions and general allegations need not be accepted by the Court. *In re Estate of Barfield*, 736 A.2d 991 (D.C. 1999). Moreover, a well-pleaded complaint must "tender more than naked assertions devoid of further factual enhancement." *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709 (D.C. 2013) (internal quotations omitted) (citing Twombly, 550 US at 570).

## II.   This Court Lacks Subject Matter Jurisdiction.

Under FRCP 12(b)(1) an action may be dismissed on motion for lack of subject matter jurisdiction, and the Plaintiffs bear the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir 2008); *Kokkonen v. Guardian Life Ins.. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts are of limited jurisdiction and presumption is claims lie outside of the limited jurisdiction). Although the court reviews the complaint liberally when considering a motion challenging subject

matter jurisdiction, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461, F. Supp 2d 71, 73 (D.D.C. 2006).

The court may consider materials outside the complaint to determine its jurisdiction without the motion being converted into one for summary judgment. *Settles v. U.S. Parole Comm'n*, 429 F. 3d 1098,1107 (D.C. Cir. 2005); *Al-Owhali v. Ashcroft*, 279, F.Supp 13,21 (D.D.C. 2003). *See also Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F.Supp. 3d 1, 11 (D.D.C. 2014) ("A court may consider materials outside the pleadings to determine its jurisdiction. . . . Under such circumstances, consideration of documents outside the pleadings does not convert the motion to dismiss into one for summary judgment.") (internal citations omitted); *see also Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006) (noting that in considering a motion under Rule 12(b)(1), "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions").

While all of the factual allegations contained in the complaint are assumed to be true, "mere conclusory allegations of jurisdiction" and "bald assertions of jurisdictional facts" are insufficient. *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 617 (4th Cir. 2004) *rev'd on other grounds*, 546 U.S. 81 (2005). *Id.* at 617. Because federal courts are courts of limited jurisdiction and are empowered to act only in those instances authorized by Congress, there is a presumption against the existence of federal jurisdiction. *Lehigh Min. & Mfg.*

*Co. v. Kelly*, 160 U.S. 327, 336 (1895); *Roche*, 373 F.3d at 617.  Thus, in determining the existence of subject matter jurisdiction based upon diversity of citizenship pursuant to Section 1332 of Title 28 of the United States Code ("§ 1332"), § 1332  is to be strictly construed and all doubts are to be resolved against federal jurisdiction.  *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

The Complaint makes the conclusory allegation that the "amount in controversy exceeds $75,000."  (Complaint ¶ 9).   However, there are no factual allegations of any specific financial amounts alleged to have been lost by the ASA or owed to the Plaintiffs as a result of the Resolution.  Rather, Plaintiffs generally allege: that there has been a loss of membership which "injures the ASA financially by depriving it of the dues of its members," (Complaint ¶ 55); that the ASA has "expended significant monetary and employee resources in support of this boycott" (Complaint ¶ 63); and that the Resolution has resulted in the "loss of charitable donations…(and) improper expenditures of ASA funds related to membership dealings, public relations, legal matters, and other items…." (Complaint ¶ 79).

None of these alleged losses are quantified, and there is no allegation that each or all of them exceed $75,000.[2]  These unsupported, conclusory allegations are insufficient and require dismissal pursuant to FRCP 12 (b)(1).  *See, e.g., Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir 2008) (stating that "the party claiming subject matter jurisdiction . . . has the burden to demonstrate that it exists").

---

[2] ASA had the authority to spend its funds pursuant to its bylaws, and the resolution was a perfectly proper use of its governing power—*see* argument, Section VII, infra.

Moreover, as set forth in the attached declaration of John Stephens, far from there being any "loss" of ASA funds as a result of the Resolution, in fact there has been a net gain. In the fiscal year end following the Resolution, membership dues, which are otherwise subject to natural attrition and are often impacted by the location of the annual meeting, increased by over $23,000. *See,* **Declaration of John Stephens ("Stephens Declaration").**

As to donations, in the fiscal year following the Resolution, the donations actually increased by over $30,000. These donations were made to specifically support the ASA's task of defending the Resolution in reactions to the media-based attacks made on it. And in the most recent fiscal year end the donations were still greater than they were pre-Resolution. *See* Stephens Declaration.

Next, and again contrary to the bald allegations in the Complaint, there were no extra employee costs because of or since the Resolution. Finally, in terms of any funds spent in educating ASA's members and the public on the issues involved, those amounts were less than the actual donations which were made specifically because of the Resolution and its aftermath. The total amount of contributions made to ASA that were specifically designated by donors for ASA's support of the Resolution is $49,000. Any monies expended by ASA which arguably could be related to the Resolution were less than that amount and were paid out from that amount. Said another way, ASA spent less on the Resolution issue than it brought in because of the Resolution issue; again, a net gain. *See* Stephens Declaration.

Not only are the factual allegations insufficient by themselves, when one looks at the actual financial facts, it is clear that the Plaintiffs had no valid basis to claim the amount in controversy exceeded $75,000.  This Court should dismiss the claim in its entirety for lack of subject matter jurisdiction over them.

## III.   The Individual Defendants Should Be Dismissed for Lack of Personal Jurisdiction.

A separate and additional basis for dismissal as to the individual defendants is the lack of any allegations in the Complaint that would allow this Court to exercise personal jurisdiction over them.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant, and must allege "specific facts connecting the defendant with the forum" and "bare allegations and conclusory allegations are insufficient."  *NAWA USA, Inc., v. Bottler*, 533 F. Supp 2d 52, 55 (D.D.C. 2008).  And, in a case such as this with multiple non-resident defendants, "such a showing must be made with respect to each defendant individually."  *Id.*

The District of Columbia's long-arm statute permits the court to exercise personal jurisdiction over a non-resident defendant if such person has, inter alia,"transacted any business in the District of Columbia" or causes "tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423 (a)(1)(3)(2016).

The individual defendants are alleged either to be ASA council or executive committee members, or to have served on a programming committee for ASA's

national convention.   As is clear from the face of the Complaint, none of the individual

defendants are residents of the District of Columbia. (*See* Complaint ¶¶ 16-21). And,

there are no allegations which proffer any individual's activity in or in connection with

the District of Columbia. There is no allegation that any Defendant worked in the

District of Columbia.   The only allegation of any connection to the District of Columbia

as to any defendant is that ASA is a nonprofit organization incorporated under the laws

of the District of Columbia.

A court does not have jurisdiction over individual officers, directors, and

employees of a corporation by the mere fact that the court has jurisdiction over the

corporation. *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A2d 147, 162-63 (D.C. 2000).

"(W)hen there are no allegations that a nonresident defendant's contacts with a

jurisdiction were for purpose of transacting   business as an individual, but rather were

only to perpetuate a corporation's business, that defendant cannot be sued individually

under the 'transacting business' prong of the long-arm statute." *Id*. at 162  (citations

omitted).   Rather, "personal jurisdiction over the employees or officers of a corporation

in their individual capacities must be based on their personal contacts with the forum

and not their acts and contacts carried out solely in a corporate capacity." *Id*. at 163.  *See*

*also Quinto v. Legal Times of Washington, Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981) ("While

the Glassers may have conducted substantial business in the District of Columbia, their

activities were conducted on behalf of the corporation. There is no allegation that they

conducted any business as individuals, and as a result, sections (a)(1) and (a)(4) of the

Long-Arm Statute are not available to plaintiff as a basis for jurisdiction.").

Here, the *only* factual allegation that could be read to connect the individual defendants to the District of Columbia is ASA's incorporation here. However, it is Plaintiff's burden to allege sufficient facts in the Complaint to demonstrate that the court has personal jurisdiction, and the allegations in Plaintiff's Complaint are plainly deficient.

## IV.    The Complaint is Not Verified as Required By FRCP 23.1.

The Complaint is brought pursuant to FRCP 23.1, which requires that any such complaint "must be verified." However, the Complaint at issue is not verified, which perhaps explains why it has so many of its facts wrong and "on information and belief." In the absence of a proper verification, all derivative claims should be dismissed. *See Saunders v. Hankerson*, 312 F. Supp. 2d 46, 67 (D.D.C. 2004) (citing verification among "procedural requirements for bringing a derivative action on behalf of an unincorporated association"); *Abeloff v. Barth*, 119 F.R.D. 332, 334 (D. Mass. 1988) ("Rule 23.1 requires that the complaints be verified; the plaintiffs have failed to meet this requirement. Such a failure is grounds for dismissal of a derivative action.").

## V.    Plaintiffs Did Not Make a Proper Pre-Suit Demand.

The derivative claims are brought pursuant to FRCP 23.1 and the D.C. NonProfit Corporations Act § 29-411.01, et seq. (2016). Both require that a demand be made before suit, and the D.C. Statute requires it be made 90 days before filing suit. Of course, there also needs to be an allegation that the demand was refused. Moreover, the demand allegation needs to be specific in nature, including the time when such demand was made, and FRCP 23.1 requires that the complaint demonstrate what other efforts

available to the Plaintiffs were attempted and failed.  Specifically, FRCP 23.1 requires a complaint to state with particularity "any effort by the Plaintiff to obtain the desired action from the Directors of comparable authority and, if necessary from the shareholders and members; and…. the reasons for not obtaining the action or not making the effort."

Derivative actions are suits of "last resort" because they "impinge on the inherent role of corporate management to conduct the affairs of the corporation, including the power to bring suit."  5 MOORE'S FEDERAL PRACTICE § 23.1.02(4) (3d ed. 2011).   Here, Plaintiffs filed this suit as an improper "first resort" tactic.  Not only did Plaintiffs fail to make a proper pre-suit demand, they have failed to exhaust any available internal remedies within the Association. Plaintiffs could have attempted to request a re-vote, put up a countervailing Resolution up for vote, or even try to vote the supporting council members out of office.  They did none of that.  Instead, Plaintiffs chose the divisive route of litigation, subjecting five council members and one program planning committee member to the burden of litigation.

The D.C. NonProfit Corporation's Act states that

> A person shall not commence a derivative proceeding until: (1) a demand in the form of a record has been delivered to the nonprofit corporation to take suitable action; and (2) Ninety days have expired from the date the demand was effective unless:  (A) the person has earlier been notified that the demand has been rejected by the corporation; or (B) Irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

D.C. Code § 29-411.03 (2016).

Here, it is alleged only that "Plaintiff Bronner has issued a written Demand to the Council that it investigate these claims and that it cause the ASA to prosecute these claims." (Complaint ¶ 70). There is no allegation as to when the demand was made or what the response to the demand was. And while these deficiencies alone are enough to justify dismissal,[3] it is now apparent why the Complaint is so vague in this key regard: the only such demand was a cursory letter dated April 18, 2016. The date of the letter is significant because it was only two days before this 101-paragraph lawsuit was filed, and after the Plaintiffs had alerted various media outlets that the lawsuit was coming. The letter is attached as **Exhibit 2**. Not only is the timing of the letter defective, the letter itself makes no specific demands of investigation. Rather, the letter simply asks that the Council of ASA "investigate, and prosecute, the derivative claims *set forth in the attached Complaint.*" Exhibit 2 (emphasis added). The purpose of the pre-suit demand is to allow an investigation and avoid a lawsuit, if possible. That purpose is thwarted by simply sending a copy of the lawsuit as the demand.

It is important to point out that the Resolution was passed over two years ago. The Plaintiffs had plenty of time and opportunity to follow the proper demand procedures, but chose not to. Accordingly, there can be no claim for irreparable injury under the statute after waiting more than two years and not taking any steps to effectuate any change. *See Hispanic Affairs Project v. Perez*, 2015 U.S. Dist. LEXIS 147760 at *18 (D.D.C. Oct. 31, 2015) ("The D.C. Circuit has found that a delay of even forty-four

---

[3] *See Gaubert v. Fed. Home Loan Bank Bd.*, 863 F.2d 59, 68 (D.C. Cir. 1988) ("Rule 23.1 requires substantially more than Rule 8(a) notice pleading."); *see also Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (stating that a plaintiff must set forth "particularized factual statements that are essential to the claim").

days before bringing action for injunctive relief was 'inexcusable,' and 'bolstered the conclusion that an injunction should not issue,' particularly where the party seeking an injunction had knowledge of the pending nature of the alleged irreparable harm.") (quoting *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)); *see also Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.").

Nor is there any allegation that the Plaintiffs attempted to obtain the relief they are requesting by employing other methods, such as putting up the issue for a repeal or substitute Resolution, or taking steps to vote those council members they disagree with out of office, or nominating for the Council those members whose beliefs they are aligned with. *See* ASA Constitution Article VI (ASA members have power to put forth candidates for election to the Council); ASA Bylaws Article V Section 2 (meetings can include any "…such other business as may come before it"). *See* Exhibit 1. So the "demand" not only violates the requirements of FRCP 23.1 and the DC NonProfit Corporations Act, it appears that the Plaintiffs either (1) purposely sent the demand letter right before the suit was filed to ensure that it could not be considered and responded to outside of the courtroom, or (2) were in such a rush to get this case on file in an attempt to intimidate other associations which were considering a similar resolution that they simply ignored the rules. This failure represents still another basis for dismissal. *See* F.R.C.P. 23.1.

The demand requirement set forth in Rule 23.1 is not a mere procedural box to be checked on the way to the courthouse, but to the contrary serves an importance purpose with regard to preserving self-government for corporations and associations. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) ("The purpose of the demand requirement is to 'afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interest will be promoted by not insisting on such right.'" (quoting *Daily Income Fund, Inc.* v. *Fox*, 464 U.S. 523, 533 (1984)); id. at 101 ("[T]he demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation -- including the decision to initiate litigation -- should be made by the board of directors or the majority of shareholders.'" (quoting *Fox*, 464 U.S. at 530)).

Further, where a demand has been made by plaintiff seeking to pursue a derivative claim, the organization's decision with respect to that demand is entitled to deference. *See Behradrezaee v. Dashtara*, 910 A.2d 349, 359 (D.C. 2006) ("When a demand is refused by a corporate board, it 'is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the presumption.'") (quoting *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990)). As noted *supra*, here the Plaintiffs made their demand only days prior to the commencement of this lawsuit, thereby depriving the ASA of any opportunity to respond.[4] Given the Plaintiffs' failure to comply with the

---

[4] Moreover, Plaintiffs have failed to allege any facts suggesting that the ASA Council would not be entitled to the presumption of the business judgment rule in making any such response.

requirement of Rule 23.1 with regard to their pre-suit demand, their derivative claims must be dismissed.[5]

## VI.    Plaintiffs' Complaint Must be Dismissed as it Violates Defendants' First Amendment Rights.

Plaintiffs' claims must also be dismissed on the grounds that the Complaint seeks to suppress, via judicial intervention, speech protected by the First Amendment. *See* U.S. CONST. amend. I. The Supreme Court has recognized that application of the state's power via the courts to infringe upon speech protected by the First Amendment is barred by the Constitution just the same as if the state exercised such power via statutory enactment. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 277-78 (1964) ("What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel. . . . Whether or not a newspaper can survive a succession of such judgments, the pall of fear and timidity imposed upon those who would give voice to public criticism is an atmosphere in which the First Amendment freedoms cannot survive."); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991) ("Our cases teach that the application of state rules of law in state courts in a

---

[5] To the extent that Plaintiffs seek to circumvent the pre-suit demand requirement by alleging in their Complaint that demand would be futile, that argument fails in light of Plaintiffs' failure to allege facts which, under the applicable Rule 23.1 standard, give rise to reasonable doubt as to the independence of the ASA Council or its exercise of business judgment in adopting the Resolution. *See Behradrezaee*, 910 A.2d at 358 ("In determining presuit demand futility, the focus is upon 'whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'" (quoting *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)); *see also Gaubert*, 863 F.2d at 68 ("Mere allegations of improper motives are especially inadequate when the challenged action is not *facially* suspect: if there are conceivably valid corporate reasons to explain the board's position, the plaintiff must clearly show the contrary.") (emphasis in original).

manner alleged to restrict First Amendment freedoms constitutes 'state action' under the Fourteenth Amendment.").

The conduct cited in this action by Plaintiffs as purportedly supporting the ASA's liability is precisely the sort of issue-centric speech that has been identified as the core subject of the First Amendment's protections. *See, e.g., Mills v. Alabama*, 384 U.S. 214, 218 (1966) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."). Moreover, the Supreme Court has explicitly recognized conduct in the nature of a boycott to be within the scope of First Amendment's protection of freedom of speech. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982) ("Each of these elements of the boycott is a form of speech or conduct that is ordinarily entitled to protection under the First and Fourteenth Amendments."); *cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (construing NLRA § 8(b)(4)(ii)'s ban on coercive acts by union as not encompassing handbilling that urged consumer boycotts and warning that a contrary interpretation would pose "serious questions of the validity of § 8(b)(4) under the First Amendment"). *See also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly.").

The First Amendment protects boycotts and other forms of speech on matters of public concern, even when the underlying conduct invites controversy. "Speech is

powerful.  It can stir people to action, move them to tears of both joy and sorrow......As

a Nation we have chosen a different course — to protect even hurtful speech on public

issues to ensure that we do not stifle public debate." *Snyder v. Phelps*, 562 U.S. 443, 460-

61 (2011).  *See also New York Times*, 376 U.S. at 270 (recognizing "a profound national

commitment to the principle that debate on public issues should be uninhibited, robust,

and wide-open").

Because the Plaintiffs' claims are based entirely on the ASA's exercise of free

speech rights, their claims should properly be dismissed as fundamentally inconsistent

with the First Amendment. [6]

## VII.   The ASA Was Well Within Its Rights And Powers to Issue the Resolution.

An *ultra vires* action asserts that an association and its directors have exceeded

the powers conferred upon them by the certificate of incorporation, the bylaws, or the

state statutes regulating corporate powers, and in doing so have breached the member's

rights as a member of the association.  *Daley v. Alpha Kappa Alpha Sorority, Inc.* 26 A.3d

723, 731 (D.C. 2011).  Here, the claims of *ultra vires* fail because the plain language of the

governing documents and the applicable law show that the Resolution was clearly

---

[6] The ASA's status as an association, as opposed to an individual, has no bearing upon the First Amendment's protection of its expression of opinion on matters of public concern. *See Citizens United v. FEC*, 558 U.S. 310, 342 (2010) ("The Court has recognized that First Amendment protection extends to corporations."); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 777 (1978) ("If the speakers here were not corporations, no one would suggest that the State could silence their proposed speech. It is the type of speech indispensable to decision-making in a democracy, and this is no less true because the speech comes from a corporation rather than an individual. The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual.") (footnotes omitted).  Indeed, the Supreme Court has recognized that "implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts* v. *United States Jaycees*, 468 U.S. 609, 622 (1984).

within the power and authority of the ASA and ASA's actions were not expressly
prohibited by statute or bylaw.  Therefore the Complaint should be dismissed pursuant
to FRCP 12(b)(6).

On the date on which the Resolution was passed, the Articles of Incorporation
stated that ASA was "organized exclusively for educational and academic study
purposes, including for such purposes," and was permitted to "engage in *any and all
lawful activities incidental to the foregoing purpose*, including by not limited to the study of
American civilization." (ASA 2013 Articles of Incorporation, THIRD paragraph attached
as **Exhibit 3**)[7] (emphasis added).  Similarly, ASA's organizational purpose, as stated in
its Constitution on the date the Resolution was adopted, was "the promotion of the
study of American culture through the encouragement of research, teaching,
publication, the strengthening of relationships among persons and institutions *in this
country and abroad* devoted to such studies, and the broadening of knowledge among
the general public about American culture in all its diversity and complexity."
(Complaint ¶ 22) (*See also* ASA Constitution Art. I, Sec. 2, Ex. 1) (emphasis added).

Neither the Articles of Incorporation nor the Constitution and Bylaws limited
ASA from taking a position regarding research or teaching relevant to American studies
by scholars in other countries.  In fact, the Constitution mandated that ASA promote
"the study of American culture through the encouragement of research, teaching,

---

[7] The Articles of Incorporation were previously referred to as "STATEMENT OF ELECTION TO ACCEPT,"
as referenced in Exhibit 3.

publication, the strengthening of relationships among persons and institutions *in this country and abroad* devoted to such studies." Ex. 1 (emphasis added).

The Complaint acknowledges that ASA's reasons for adopting the Resolution included ASA's belief that "the United States plays a significant role in enabling the Israeli occupation of Palestine and the expansion of illegal settlements and the Wall in violation of international law, as well as in supporting the systematic discrimination against Palestinians, which has had devastating impact on the overall well-being, the exercise of political and human rights, the freedom of movement, and the educational opportunities of Palestinians." (Complaint ¶ 26). The Resolution was also adopted due to the lack of "effective or substantive academic freedom for Palestinian students and scholars under conditions of Israeli occupation," and ASA's dedication to "the right of students and scholars to pursue education and research without undue state interference, repression, and military violence, and in keeping with the spirit of [ASA's] previous statements support for the right of students and scholars to intellectual freedom and to political dissent as citizens and scholars." (Complaint ¶ 26).

The Resolution thus endorsed and honored the call of those in support of a boycott of Israeli academic institutions: "It is resolved that the American Studies Association ("ASA") endorses and will honor the call of Palestinian civil society for a boycott of Israeli academic institutions." It was also resolved that ASA "supports the protected rights of students and scholars everywhere to engage in research and public speaking about Israel-Palestine and in support of the boycott, divestment and sanctions (BDS) movement." (Complaint ¶ 26). Thus ASA expressed support for Palestinians,

Israelis, United States citizens and others to freely express their views regarding academic freedom which is directly in line with the mandate in its governing documents to promote "the study of American culture through the encouragement of research, teaching, publication, the strengthening of relationships among persons and institutions in this country and abroad devoted to such studies."

Under the D.C. NonProfit Corporations Act there is an initial presumption that "the validity of corporate action shall not be challenged on the ground that the corporation was without capacity or power to do such act." D.C. CODE ANN. § 29-403.04 (2016). The statute then sets forth the exception for *ultra vires* action, including an act brought by a member director or derivatively through a legal representative. D.C. CODE ANN. § 29-403.04(b) (2016). And, in this jurisdiction *ultra vires* is only appropriate where the actions taken are "expressly prohibited by statute or by-law." *Columbia Hosp. for Women Found, Inc. v. Bank of Tokyo-Mitsubishi Ltd*, 15, F. Supp. 2d 1 (D.D.C. 1997). Plaintiffs claim that the passing of the Resolution is "simply outside of the ASA's authority to act," (Complaint ¶ 1) but cite no statute or by-law that expressly prohibits taking such a vote.[8] The *ultra vires* claims must be dismissed.

---

[8] Further, while ASA clearly had the authority to enact the Resolution and put it to a vote to the members, any ambiguity in the ASA's governing documents would be construed in favor of ASA. *See Wait v. Homestead Bldg. Ass'n*, 85 S.E. 637, 642 (W.Va. 1915) ("Courts recognize and adopt the construction of an ambiguous by-law, placed upon it by the corporation itself.") *see also id.* at 641 (describing interpretation of bylaws as "a function clearly within the province and power of the board of directors as a managing and governing body"); 190 N.E. 671, 675 (Ill. 1934) ("It is a rule well settled that the interpretation of ambiguous bylaws of a private corporation is a function lying within the province and the power of the board of directors. Courts will recognize and adopt a construction of ambiguous bylaws placed upon them by the corporation itself.").

**VIII.** **ASA Did Not Breach the Rights of ASA Members Through The Vote on the Resolution.**

A nonprofit association's Constitution and bylaws form a contract between the association and its members and set forth the duties of the association and its members. *See Compton*, 64 F. Supp. 3d at 16.   The Complaint, however, misconstrues the contractual agreement between the association and its members and should be dismissed pursuant to FRCP 12(b)(6).

Article XI, § 3 of the ASA bylaws, which were in effect at the time the Resolution was passed, stated:

> Should an issue arise which, in the opinion of the Executive Committee or Council, seems to require public action, speech or demonstration by the association at a particular annual meeting, the Council shall meet to formulate a response.  The Council shall convene an emergency meeting of the membership on the first full day of the annual meeting, to recommend a course of action, and conduct a public discussion of the issue(s); and the vote of two-thirds of those in attendance may approve the recommended action.

Ex. 1.

Plaintiffs assert that ASA acted outside its authority and breached its contractual obligations with ASA members by permitting ASA members to vote over a ten-day period following the 2013 annual meeting, as opposed to voting on the first day of the annual meeting, and that the decision regarding whether to boycott Israel was an issue "which in the opinion of the Executive Committee or Council, seemed to require public action, speech or demonstration by the association at a particular annual meeting." (Complaint ¶¶28 and 87).  This is, however, nothing more than a naked assertion

devoid of further factual enhancement, and is not enough to survive a motion to dismiss pursuant to FRCP 12(b)(6). *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 709 (D.C. 2013) (internal quotations omitted), citing *Twombly*, 550 US at 570.

The language in the bylaws makes clear that the decision pertaining to whether a matter is of the nature to require action at a particular annual meeting is something to be decided in the sole discretion of the Executive Committee or Council. Plaintiffs have not alleged, and the facts do not support the conclusion, that the Council deemed the Resolution to be a matter requiring public action by the membership at the 2013 annual meeting. Additionally, the facts do not show that the meeting of the membership held at the 2013 annual meeting was deemed to be an "emergency meeting of the membership," which would have required a vote on the same day as the meeting.

While Article XI, § 3 of the ASA bylaws sets forth the procedure for addressing issues designated as "emergency issues", the bylaws do not prohibit the Executive Committee or Council from allowing ASA members to vote on non-emergency issues over the course of several days. Pursuant to the ASA Constitution and the bylaws, the Executive Committee and Council had the authority to pass the Resolution without a member vote. Specifically, the Article V, § 5 of the Constitution provides that "the Council shall conduct the business, set fiscal policy, and oversee the general interest of the association." Ex. 1. Additionally, Article XI of the bylaws provides that "the Executive Committee is empowered to speak for the association on public issues where these directly impact [ASA's] work as scholars and teachers. Such issues include, but

are not restricted to academic freedom…" Ex. 1. The Council had, however, held several town hall type meetings and understood that the Israeli boycott was a controversial issue. (Complaint ¶¶ 17 and 42). Even though not required to do so, the Council put the Resolution out to the entire membership for a vote.[9]

The Plaintiffs claim (incorrectly) that the Resolution was *ultra vires* because the voting procedures did not comply with the bylaws. (*See* Complaint ¶¶ 27-35). However, even assuming those allegations are true, which they are not, they still don't amount to *ultra vires* because simply not complying with corporate procedures does not amount to *ultra vires*. *See Columbia Hosp. for Women Found, Inc. v. Bank of Tokyo-Mitsubishi Ltd*, 15, F. Supp. 2d 1 (D.D.C. 1997).

## IX. The "Direct Claims" Asserted in Counts II and III Must Be Dismissed as Against the Individual Defendants.

Plaintiffs purport to assert "direct claims" in Counts II and III against both the ASA and the individual defendants based on the same *ultra vires* theory for which they assert derivative and direct claims against the ASA. However, the D.C. statute provides that a direct claim based on an *ultra vires* theory is limited to injunctive relief against the corporation; direct claims against the individual council member defendants are prohibited and must be dismissed.

---

[9] In addition, the Council announced to all of its members that if the membership voted against it, the Resolution would be withdrawn. *See* **Exhibit 4,** electronic voting notification. The Court may consider this document as part of its FRCP 12(b)(6) analysis because the Complaint references it in Paragraph 28 when it states that the ASA National Committee "put the Boycott Resolution to a vote of the ASA Membership …." *See* Footnote 1, *supra*.

The D.C. NonProfit Corporations Act provides in relevant part:

§ 29-403.04. *Ultra vires*.

 (a) Except as otherwise provided in subsection (b) of this section, the validity of corporate action shall not be challenged on the ground that the nonprofit corporation lacks or lacked power to act.

(b) The power of a nonprofit corporation to act may be challenged in a proceeding by:

(1) A member, director, or member of a designated body *against the corporation to enjoin the act*;

(2) The corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director or member of a designated body, officer, employee, or agent of the corporation; or

(3) The Attorney General for the District of Columbia under § 29-412.20.

(emphasis added). Thus, while the statute provides for derivative claims against individual directors and "members of designated bodies," subsection (b)(1) clearly limits a direct action by a member to one "against the corporation to enjoin the act." Accordingly, separate and apart from all the other reasons discussed herein that Plaintiffs' claims must be dismissed, the direct claims asserted in Counts II and III must be dismissed against the individual Defendants.

## CONCLUSION

In lights of the foregoing, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice, for its costs, attorneys' fees and any other relief the Court deems appropriate.

*/s/ John J. Hathway*
John J. Hathway, Esq. #412664
Dwight W. Stone, Esq. #MD22698
Stacey Pine, Esq. #1029133
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036-5405
(202) 659-6800
jhathway@wtplaw.com
dstone@wtplaw.com
spine@wtplaw.com

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 9th day of June, 2016,

via the Court's electronic filing system, upon the following:

Jerome M. Marcus, Esquire
Jonathan Auerbach, Esquire
Marcus & Auerbach
1121 N. Bethlehem Pike
Suite 60-242
Spring House, PA  19477

Scott Neal Godes, Esquire
Devin J. Stone, Esquire
Barnes & Thornburg LLP
1717 Pennsylvania Avenue, N.W.
Suite 500
Washington, D.C. 20006-4623

L. Rachel Lerman, Esquire
2029 Century Park East
Suite 300
Los Angeles, CA 90067

*Attorneys for Plaintiffs*

/s/ John J. Hathway
John J. Hathway

2086629

- 29 -