IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON,<br><br>  Plaintiffs,<br><br>  v.<br><br>LISA DUGGAN, CURTIS MAREZ, AVERY GORDON, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, and THE AMERICAN STUDIES ASSOCIATION<br><br>  Defendants. | Civil Action No. 16-cv-00740-RC |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

As discussed below, Defendants' Motion for Judgment on the Pleadings ("Motion") should be denied. Defendants' Motion is based solely on a distinction between direct and derivative cases that the District of Columbia has explicitly refused to apply to non-profit entities. *See Daley v. Alpha Kappa Alpha Sorority, Inc*., 26 A.3d 723 (D.C. 2011). Although Defendants fail to even acknowledge the controlling authority, *Daley* is on point, and clearly disposes of the direct/derivative distinction with respect to non-profit entities such as the American Studies Association ("ASA").[1]

---

[1] Please note that Defendants' Motion does not argue that Plaintiffs fail to state a claim for corporate waste. Defendants' only argument here is that Plaintiffs fail to properly state a *direct* claim for corporate waste, as opposed to a *derivative* claim.

"'Because a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the Court must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery.'" *Tapp v. Wash. Metro. Area Transit Auth.*, 2016 U.S. Dist. LEXIS 135747, *14 (D.D.C. Sept. 30, 2016), *quoting Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010) (internal quotation marks and citation omitted). As discussed below, Defendants' Motions fails to meet this high standard.

I. **DEFENDANTS' ARGUMENT FAILS UNDER CONTROLLING AUTHORITY**

Although they entirely fail to say so, Defendants' motion asks the court to contravene the explicit holding of the District of Columbia Court of Appeals in *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723. Under *Daley*, the distinction between direct and derivative claims applied to for-profit, publicly-traded entities in *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984) and *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004), is simply not applicable to non-profit entities in this jurisdiction.

Defendants appear to rely primarily on *Cowin*, a case involving a large, publicly-traded, for-profit entity incorporated in Delaware and applying Delaware law. In *Cowin*, it is apparent that the court's decision is largely influenced by large number of shareholders owning publicly-traded shares of the company. *See* 741 F.2d at 414 ("'mismanagement which depresses the value of stock is a wrong to the corporation' . . . A contrary rule 'would authorize multitudinous litigation and ignore the corporate entity.' . . . Requiring derivative enforcement of claims belonging in the first instance to the corporation also prevents an individual shareholder from

incurring a benefit at the expense of other shareholders similarly situated," *internal citations omitted*).  *Cowin*, which applies Delaware law, and not District of Columbia law, has never been applied to a non-profit corporation in the District of Columbia.  Nor has it been applied to a non-profit under the law of any other jurisdiction, as far as our research has found.

*Tooley* is a Delaware case involving the merger of two very large, for-profit, publicly-held entities.  *Tooley* also sets forth a rule for determining whether claims brought by stockholders should be pursed as direct claims or derivative claims.[2]  *Tooley* actually disposes of the "special injury" rule applied in *Cowin*.[3]  Nothing in *Tooley* even suggests how the holding would apply in the non-profit context – not in Delaware, nor in any other jurisdiction.  Certainly not in the District of Columbia, or under the D.C. Nonprofit Corporations Code.  Indeed, we only found two cases that cite *Tooley* in District of Columbia courts.  The two cases – *Daley v. Alpha Kappa Alpha* and *Jackson v. George*, are discussed below.  Both **reject** the application of Tooley in non-profit cases.

As mentioned above, the District of Columbia Court of Appeal explicitly refused to apply the direct/derivative distinction from *Cowin* and *Tooley* to a non-profit entity.  In *Daley v. Alpha Kappa Alpha*, the Court of Appeal faced exactly this question, and held, unambiguously, that the distinction does not apply to claims involving a non-profit:

---

[2] Defendants would have us believe that *Cowin* "was further developed by the Delaware Supreme Court in *Tooley*[.]" Motion at 3.  This is nonsense.  *Tooley* is a Delaware state court case decided a full twenty years after *Cowin*.  *Tooley* does not cite to or in any way reference *Cowin*, much less "further develop[ ]" any "doctrine" in *Cowin*.

[3] Thus, the two cases apply different standards – a fact that Defendants also fail to acknowledge.  If Defendants seek to purport that *Tooley* applies, Defendants must also acknowledge that *Tooley* rejects the *Cowin* standard.  On the other hand, if Defendants seek to argue that *Cowin* applies, they cannot also rely on *Tooley*.  But Defendants need not choose between the two contradictory cases they cite, because neither case is applicable here.

> On its face, it would seem almost self-evident that members of a nonprofit organization whose revenue depends in large part upon the regular recurring annual payment of dues by its members have standing to complain when allegedly the organization and its management do not expend those funds in accordance with the requirements of the constitution and by-laws of that organization. The trial court rejected this argument on the ground that the suit was brought in the members' own names rather than as a derivative suit. . . . ***We think this is too expansive a view of the requirement of derivative suits***. To begin with, the total equation of a stockholder in a for-profit corporation complaining of financial losses with a member of a nonprofit corporation in an on-going dues-paying basis aimed at social and charitable purposes and the accompanying emotional connotations is an uneasy fit.

26 A.3d at 729-30 (D.C. 2011); *see also Jackson v. George*, 146 A.3d 405, 415 (D.C. 2016) (noting that "the Complaint 'sp[oke] largely of injuries to the Church and its assets and property,'" but "recogniz[ing] this court's cautionary words about 'too expansive a view of the requirement of derivative suits' when allegations are made against a non-profit corporation and its leaders" in *Daley*).[4] Notably, *Daley* also involved a direct claim for corporate waste.

---

[4] Discussing numerous claims similar to those raised in the present case, the *Daley* court continued:

> "Furthermore, in the case at bar, the individual rights of the plaintiffs were affected by the alleged failure to follow the dictates of the constitution and by-laws and they thus had a 'direct, personal interest' in the cause of action, even if 'the corporation's rights are also implicated.' *Franchise Tax Board of Cal. v. Alcan Aluminum, Ltd.*, [493 U.S. 331, 336 (1990)]  *See Tooley v. Donaldson, Lufkin & Jenrette, Inc*., 845 A.2d 1031, 1033 (Del. 2004). . . . Appellants make similarly persuasive arguments regarding their breach of fiduciary duties, ultra vires, and contract claims. *See Waller v. Waller*, 187 Md. 185, 49 A.2d 449, 453 (Md. 1946) [parenthetical omitted]; 12B *Fletcher Cyc. Corp*. § 5915.10 (2010) (ultra vires actions may be brought directly); *Willens v. Wisconsin Ave. Coop. Ass'n*, 844 A.2d 1126, 1135 (D.C. 2004) (upholding direct breach of contract claim for violation of association's by-laws)."

26 A.3d at 729-30 (D.C. 2011).

Ultimately, the waste claim was dismissed, but on other grounds – not because the claim was brought directly.

*Daley* is controlling authority and directly on point. It is also well-known to the parties in this case. Plaintiffs cited *Daley* in their opposition to Defendants' Motion to Dismiss (Dkt. 23 at 11, 12, 19, 26, & 35). This Court even cited *Daley* in its opinion on the Motion to Dismiss (Dkt. 28 at 16). *Daley* is likely the reason why Defendants did not move to dismiss the direct waste claim under Rule 12(b)(6) in the first place. But in the present Motion, Defendants reduce *Daley* to a single footnote. (Motion at n.1.) And even in that footnote, Defendants fail to acknowledge that *Daley* is controlling, or that the holding in *Daley* involves a non-profit, or that it distinguishes the treatment of non-profits from for-profit entities with respect to the direct/derivative distinction.

Indeed, that footnote, the one place in their motion where Defendants even bother to mention the controlling case, makes little sense. Defendants attempt to distinguish *Daley* as a case that involves misuse of corporate funds for an officer's personal expense, while they characterize Plaintiffs' claims here as alleging that "other people have been dissuaded from paying into ASA's coffers." (Motion at n.1.) But Plaintiffs here also plead that ASA misused corporate funds promoting and supporting the Resolution. Defendants explicitly acknowledge this in the very sentence before the footnote. (Motion at 3-4 ("These damages are . . . the expenditure of time and money by ASA in support of the boycott (¶68)").) Moreover, under the interpretation of *Cowin* and *Tooley* that Defendants expound, claims of waste arising from expenditures of corporate funds would be derivative, not direct, even if the purpose were "for an officer's personal expenses." (Motion at n.1.)

Defendants' treatment of *Daley* comes very close to the line of misrepresenting controlling law, and may well have crossed that line.

For the remainder of their brief, Defendants cite to a panoply of cases from a myriad of jurisdictions that purportedly distinguish between direct and derivative claims. (Motion at 5.) Not one of these cases involves a non-profit. *See River Mgt. Corp. v. Lodge Properties, Inc.*, 829 P.2d 398, 403 (Colo. Ct. App. 1991) (involving shareholders in a for-profit corporation); *Abbott v. McNeff*, 171 F. Supp. 2d 935 (D. Minn. 2001) (suit brought by minority shareholder in a for-profit corporation); *Brug v. The Enstar Group, Inc.*, 755 F. Supp. 1247, 1257 (D. Del. 1991) (involving a for-profit publicly traded corporation); *Sykes v. Meyler*, 453 F. Supp. 2d 936, 940-41 (E.D. Va. 2006) (involving shareholders in a for-profit corporation traded on Nasdaq); *Keller v. Estate of Edward Stephen McRedmond*, 495 S.W.3d 852 (Tenn. 2016) (involving a for-profit corporation that manufactures and sells farm seed); *GLFP, Ltd. v. CL Mgt., Ltd*., 163 P.3d 636, 5640 (Utah 2007) (involving a limited partnership managing real estate holdings); *Cohen v. Mirage Resorts, Inc*., 62 P.3d 720,732 (Nev. 2003) (involving a for-profit, publicly held casino).

## II. DEFENDANTS' FAILURE TO BRING THIS ARGUMENT IN THE MOTION TO DISMISS RESULTS IN UNECESSARY EXPENSE AND DELAY

Finally, Plaintiffs note that Defendants could have moved to dismiss the direct claim for waste in Defendants' Motion to Dismiss (Dkt. 21), but chose not to do so, instead wasting the time and resources of Plaintiffs (and potentially the Court) with an additional round of briefing. In their Motion to Dismiss, Defendants raised numerous defenses, including subject matter jurisdiction and personal jurisdiction under Rule 12(b)(1) and (b)(2) and a First Amendment challenge. These arguments were all unsuccessful. Defendants also moved to dismiss two of the

Plaintiffs' six claims for failure to state a claim under Rule 12(b)(6).  One of the two claims was dismissed, the other was not. Finally, Defendants moved to dismiss the derivative claims, including the derivative waste claim, on procedural grounds specifically relating to the derivative nature of the claims.  The derivative claims were dismissed.

Importantly, Defendants did not move to dismiss Plaintiffs' direct waste claim for failure to state a claim.  Nor did they argue (then) that the direct waste claim is really derivative, even as they argued that all the derivative claims should be dismissed.  (*See* Memorandum Opinion, Dkt. 28, at 11 ("defendants do not move to dismiss their claim for waste").)

Now Defendants bring a motion for judgment on the pleadings, seeking to dismiss the direct waste claim based on a (failing) argument that could just as easily been made months ago. There has been no advancement in the case that explains why Defendants suddenly believe that Plaintiffs cannot allege a direct claim for waste, and Defendants' argument wholly arises from how the claim is plead in the complaint.  *See* Motion at 1 ("Notwithstanding the Plaintiffs' attempts [sic] to plead a direct claim for waste, their claims [sic] remain derivative").  All of the pillars of Defendants' argument were known months ago.

Although Rule 12(c) provides a vehicle to move for dismissal for failure to state a claim after the pleadings have closed, it was not the intent of those who drafted the Federal Rules of Civil Procedure to provide a vehicle for piecemeal review of a defendant's challenges to the complaint itself.  Rather, Rule 12(c) is intended to allow for dismissal of claims based on arguments that become ripe over the course of the litigation.  Indeed, the purpose of Rule 12(c) is to allow for courts to hear arguments and potentially dismiss claims as they arise – i.e., early in the litigation, rather than immediately before or during trial.  That is consistent with the

underlying goals of the Federal Rules generally – to streamline procedures and avoid unnecessary delay.  *See* Rule 1 ("These rules . . . should be construed administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Cablevision Systems Dev. Co. v. Motion Picture Ass*., 808 F.2d 133, 136 D.C.  Cir. 1987) ("We are guided, moreover, by the general instruction that procedural rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action.' Fed. R. Civ. P. 1").  The current motion defeats these goals, requiring additional briefing and waste of the parties' (and potentially the court's) time and resources.

For all the reasons set forth in detail above, Plaintiffs respectfully ask that the Court deny Defendants' Motion for Partial Judgment on the Pleadings.

Dated:  June 14, 2017         Signed:  */s/Jerome M. Marcus*
                                             Jerome M. Marcus

**MARCUS & AUERBACH LLC**
Jerome M. Marcus, Esq. (admitted pro hac vice)
Jonathan Auerbach, Esq. (admitted pro hac vice)
1121 N. Bethlehem Pike, Suite 60-242
Spring House, PA 19477
(215) 885-2250
jmarcus@marcusauerbach.com

*Lead Counsel for Plaintiffs*

**BARNES & THORNBURG LLP**

Scott Godes, Esq. #463674
Devin Stone, Esq. #1022055
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 2006-4623
(202) 408-6928

L. Rachel Lerman, Esq. (admitted pro hac vice)
2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904
(310) 284-3871

*Counsel for Plaintiffs*

**THE LOUIS D. BRANDEIS CENTER
  FOR HUMAN RIGHTS UNDER LAW**

Kenneth Marcus, Esq. #437391
Jennifer Gross, Esq. #1003811 (D.D.C. pending)
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 2006-4623
(202) 559-9296

*Counsel for Plaintiffs*