IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON,<br><br>Plaintiffs,<br><br>v.<br><br>LISA DUGGAN, CURTIS MAREZ, AVERY GORDON, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, and THE AMERICAN STUDIES ASSOCIATION<br><br>Defendants. | Civil Action No. 16-cv-00740-RC |

**PLAINTIFFS' SURREPLY RESPONDING TO DEFENDANTS' MOTION
FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Plaintiffs submit this Surreply to address arguments raised for the first time in Defendants' Reply in Support of the Motion for Partial Judgment on the Pleadings (Dkt. 37, "Reply Brief"), including misstatements of law and fact, and defense arguments attempting to distinguish binding precedent: case law from the District of Columbia that is directly on point, and that Defendants failed to even acknowledge before the Reply Brief.

In the Motion for Partial Judgment on the Pleadings ("Motion"), Defendants argue that Plaintiffs' claim for waste should be dismissed, because Plaintiffs' derivative claims were dismissed on procedural grounds, and, in Defendants' view, Plaintiffs' claim for waste is a derivative claim. In their initial brief in support of the Motion ("Opening Brief"), Defendants utterly failed to acknowledge contrary, binding precedent from the District of Columbia Court of Appeals that reject exactly this argument in the context of claims against a non-profit entity

("nonprofit"), and that allow direct claims for corporate waste and other traditionally derivative claims to proceed.  *See* Plaintiffs' Opposition to Defendants' Motion For Partial Judgment on the Pleadings ("Opposition Brief") at 2-5, *discussing Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723 (D.C. 2011) *and Jackson v. George*, 146 A.3d 405 (D.C. 2016).  Because Defendants do not address the *Daley* and *Jackson* cases until their reply brief, Plaintiffs address Defendants' arguments purporting to distinguish *Daley* and *Jackson* for the first time here.

As background, Defendants' Motion relies primarily on *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984) and *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).  *Cowin* and *Tooley* offer conflicting standards for when a shareholder has standing to bring suit on his or her own behalf (a direct claim), and when a shareholder must bring suit on behalf of the corporation (a derivative claim).  Both *Cowin* and *Tooley* involve for-profit, publicly-traded entities, and both cases apply Delaware (not District of Columbia) law.[1]  Neither *Cowin* nor *Tooley* involves payment of membership fees (as opposed to purchase of shares of ownership of a corporation), and neither involves a non-profit entity.  And, importantly, neither *Cowin* nor *Tooley* involves a mix of claims that allege both direct and derivative injury, and neither deals with a claim that can have aspects that are both direct and derivative.

By sharp contrast, both cases that Plaintiffs invoke – *Daley* and *Jackson* – involve claims against non-profit entities arising from mismanagement of member dues, and both acknowledge

---

[1]  Contrary to the suggestion in Defendants' Reply in Support of the Motion for Partial Judgment on the Pleadings (Dkt. 37, "Reply Brief") at 5, *Cowin* is not controlling law here. First, the relevant standard in *Cowin* was rejected by the *Tooley* court, as discussed in detail below.  Second, the federal court for the District of Columbia heard *Cowin* under diversity jurisdiction, and applied Delaware law, not District of Columbia law. *See Cowin* at n.4 ("Because Bresler & Reiner is incorporated in Delaware, the substantive law of that state governs").

that such claims are not easily categorized under the binary direct/derivative distinction set forth in cases like *Tooley* and *Cowin*. In both *Daley* and *Jackson*, the District of Columbia Court of Appeals rejected arguments to dismiss direct claims that are often presented as derivative (including corporate waste), and allowed the claims to proceed as direct claims. As discussed below, *Daley* and *Jackson* govern here. Defendants' efforts to distinguish those cases fail on the facts, and on Defendants' failure to read the law accurately.

Under the District of Columbia Court of Appeals' holdings in *Daley* and *Jackson*, and the reasoning explained therein, Defendants' Motion must be denied. But first, as a preliminary matter, we explain that Defendants' argument relies in part on a Delaware case that was explicitly overruled by Delaware Supreme Court in 2004.

I. **DEFENDANTS' ARGUMENTS RELYING ON THE "SPECIAL INJURY" STANDARD IN *COWIN* MUST BE REJECTED.**

In attempting to distinguish *Daley* and *Jackson*, Defendants argue that both cases "follow the distinction first set forth in *Cowin v. Bresler*, [741 F.2d 410], between a derivative action and a direct action that *specifically injures* the individual plaintiffs as opposed to the membership as a whole. Plaintiffs' argument that either case rejected this general law rings hollow." (Reply Brief at 5, emphasis added.) The Delaware Supreme Court rejected this so-called "distinction" from *Cowin* that Defendants espouse.

The language referencing a specific injury ("a direct action that specifically injures the individual plaintiff") and/or a special duty, taken from *Cowin*, was rejected by the Delaware Supreme Court in *Tooley*. The "special injury standard" is not law in Delaware, much less the District of Columbia, whose law governs this case.

*Cowin* endorsed the "special injury" standard for distinguishing between direct and derivative claims:

> A fair reading of the "special injury" cases shows that a personal cause of action is properly pursued in two situations – where the allegedly wrongful defendants violates a duty to the complaining shareholder independent of the fiduciary duties owed that party along with all other shareholders, or where the conduct causes an injury to the shareholders distinct from any injury to the corporation itself.

*Cowin*, 741 F.2d at 414.  *Tooley* explicitly rejected the very same "special injury" concepts:

> In our view, the concept of "special injury" that appears in some Supreme Court and Court of Chancery cases is not helpful to a proper analytical distinction between direct and derivative actions. ***We now disapprove the use of the concept of "special injury"*** as a tool in that analysis.
>
> *   *   *   *
>
> ***The "special injury" concept***, applied in cases such as *Lipton* [*v. News International, Plc*., 514 A.2d 1075, 1078 (Del. 1986)] ***can be confusing in identifying the nature of the action***. The same is true of the proposition that stems from *Bokat* – that an action cannot be direct if all stockholders are equally affected or unless the stockholder's injury is separate and distinct from that suffered by other stockholders.  The proper analysis has been and should remain that . . . a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

*Tooley*, 845 A.2d at 1038-39.[2]  The new standard adopted in *Tooley* requires that the plaintiff suffer an injury to itself, and not solely rely on an injury to the company.  It also requires that the

---

[2]   *Lipton* holds that to bring a direct action, "injury must be separate and distinct from that suffered by other stockholders or involve a contractual right independent of the corporation." *Tooley* at 1037 n.14 (rejecting this *Lipton* holding).

defendants owe a duty to the plaintiff, and that the plaintiff not rely solely on a duty owed to the company. Under the *Tooley* standard, however, the plaintiff need not show that the duty owed to the plaintiff is different than the duties owed to the corporation or other shareholder, or that the injury is suffered only by the plaintiff, to the exclusion of the corporation and all others.

Plaintiffs noted in the Opposition Brief that *Tooley* overruled the standard applied in *Cowin*. (Plaintiffs Opposition to Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 36, "Opposition Brief") at 3, "*Tooley* actually disposes of the 'special injury rule applied in *Cowin*.") Plaintiffs also noted that no District of Columbia case has ever cited *Cowin* – not on the "special injury" holding or for any other reason – and that includes the District of Columbia Court of Appeals decision in *Daley* and *Jackson*. *Cowin* and its "special injury" rule were never controlling in the District of Columbia, and even if Delaware, they haven't been good law since *Tooley* was issued in 2004.

Instead of acknowledging that *Cowin* and the "special injury" rule are no longer good law, Defendants boldly doubled down on *Cowin* in their Reply Brief:

> Plaintiffs claim that the Motion for Partial Judgment "comes close to the line of misrepresenting controlling law" (Opposition at 6). At the risk of sounding flippant, it would appear that Plaintiffs have forgotten the adage about stones and glass houses. Both *Daley* and *Jackson* follow the distinction first set forth in *Cowin v. Bresler* [citation], between a derivative action and a direct action that ***specifically injures the individual plaintiffs as opposed to the membership as a whole***. Plaintiffs' argument that either case rejected this general law rings

---

*Bokat* holds that "mismanagement which depresses the value of stock is a wrong to the corporation . . . to be enforced by a derivative action." *Cowin* at 414, *quoting Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970). *Cowin* holds, "The logic of *Bokat* is compelling. Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders." 741 F.2d at 414. The same "logic" was explicitly rejected by *Tooley* at 1038-39, as quoted in the text.

> hollow. . . . . Nor do Plaintiffs allege any ***special duty*** owed to them particularly by any defendant, nor any way in which they were harmed to the exclusion of all other ASA members.

(Reply Brief at 5, *emphasis added*.) This is simply wrong. *Daley* and *Jackson* do not follow the distinction "first set forth in *Cowin v. Bresler*" or make any reference to *Cowin*. Actually, there is no distinction "first set forth in *Cowin*[.]" *Cowin* was decided by a federal court in the District of Columbia applying Delaware law. The *Cowin* court did not set forth any new distinction, or any other new rule of law. (*See* discussion in *Cowin* at 413-14, interpreting and applying case law from Delaware courts.)

*Daley* and *Jackson* do (briefly) cite *Tooley*, however – the case that rejected the "special injury" concept. Neither *Daley* nor *Jackson* required or even considered a "special injury" to bring a direct claim.[3]

When Defendants argue, "Nor do Plaintiffs allege any special duty owed to them particularly by any defendant, nor any way in which they were harmed to the exclusion of all other ASA members" (Reply at 6), they ask the Court to apply a standard under Delaware law that has been overruled by the Supreme Court of Delaware. It would seem that they know this, as they cite *Tooley* elsewhere in the brief, and Plaintiffs' noted it in the Opposition Brief. If they do know this, they should not continue to present or advance *Cowin* or the "special injury" concept to the court. But whether they know it or not, it is the case, and as explained below, it dooms the arguments Defendants make here.

---

[3] The "special duty" that Defendants mention here appears to be an invention of Defendants themselves. *Cowin* (now rejected) did require that the defendants owe a distinct duty to the plaintiff, but unlike the term "special injury," we found no support for the term "special duty."

## II. DEFENDANTS' ATTEMPTS TO DISTINGUISH *DALEY* AND *JACKSON* FAIL.

Defendants' attempts to distinguish the District of Columbia Court of Appeals holdings in *Daley* and *Jackson* fail. Both cases are directly on point, and are unchallenged by any other cases, inside or outside of the District.

In both *Daley* and *Jackson*, claims alleged to be exclusively derivative were allowed to proceed as direct claims. The reasoning, first set forth in *Daley*, included consideration of the standard for distinguishing between direct and derivative claims set out in *Tooley* (but not the standard set forth in *Cowin*, which, as explained above, was rejected by *Tooley* and is no longer good law).

*Daley* (and later *Jackson*) recognizes that the binary delineation of direct and derivative claims that controls in the context of shareholder suits involving for-profit, publicly-traded corporations is less helpful with respect to claims brought by dues-paying members of non-profit associations. But *Daley* and *Jackson* do not reject, ignore, or contradict *Tooley*. They simply recognize that in the context of claims brought by members of non-profit associations, the distinction is not nearly as black and white as it is in cases involving for-profit, publicly traded entities. Claims for mismanagement of funds may reflect aspects of both direct and derivative claims, and may appropriately be brought on a direct basis.

### A. *Daley* and *Jackson* Hold That Dues-Paying Members of Non-Profit Associations Incur Direct Injuries.

Defendants seek to distinguish *Daley* by arguing that the holding turns on a finding that the plaintiffs were "directly and individually injured." (Reply Brief at 3.) *Daley* cannot be

distinguished on these grounds.  The injuries at issue in *Daley* are no more direct or individual than the injuries incurred by Plaintiffs here.

*Daley* involved claims for, *inter alia*, breach of fiduciary duties, breach of contract, corporate waste, and *ultra vires* – all claims that were also brought by Plaintiffs against the ASA. Concluding that dues-paying members of the non-profit had standing to pursue these claims directly, the *Daley* court held:

> ***it would seem almost self-evident that members of a nonprofit organization whose revenue depends in large part upon the regular recurring annual payment of dues by its members have standing*** to complain when allegedly the organization and its management do not expend those funds in accordance with the requirements of the constitution and bylaws of that organization.  The trial court rejected this argument on the ground that the suit was brought in the members' own names rather as a derivative suit. [Citation.] We think this too expansive a view of the requirement of derivative suits.
> To begin with, ***the total equation of a stockholder in a for-profit corporation complaining of financial losses with a member of a nonprofit corporation in an on-going dues-paying basis aimed at social and charitable purposes and the accompanying emotional connotations is an uneasy fit.*** Furthermore, in the case at bar, the individual rights of the plaintiffs were affected by the alleged failure to follow the dictates of the constitution and by-laws and ***they thus had a "direct, personal interest" in the cause of action, even if "the corporation's rights are also implicated."*** *Franchise Tax Board of Cal. v. Alcan Aluminum, Ltd*., 493 U.S. 331, 336, 110 S. Ct. 661, 107 L. Ed. 2d 696 (1990). *See Tooley v. Donaldson, Lufkin & Jenrette, Inc*., 845 A.2d 1031, 1033 (Del. 2004).

26 A.3d at 729, *emphasis added*.

Defendants argue that "[i]t was because of [an] infringement of their individual rights (to vote, to be a member, etc.) that the *Daley* plaintiffs had standing for their claims as a whole." (Reply Brief at 4, parenthetical in the original.)  The text of the opinion says exactly the opposite. The *Daley* court is clearly addressing the nature of claims arising from the expenditure of the

members' annual dues, and concludes that the individual dues-paying members have standing to pursue ***direct claims for expenditures from the corporate coffers.***[4]

Defendants argue that the *Daley* court "signal[s] that the framework enunciated in *Tooley* . . . would remain the appropriate factor, regardless of whether the corporation was for-profit or non-profit." (Reply Brief at 4.) However, Defendants miss the point of the analysis in *Daley*, including the reference to *Tooley*. *Daley* considers claims arising from expenditures of funds by a corporation, brought by a "member of a nonprofit corporation in an ongoing dues-paying basis," as distinguished from "a stockholder in a for-profit corporation complaining of financial losses," *id*. The *Daley* court holds that the dues-paying member of the non-profit association may bring direct claims of injury arising from expenditures from the corporate coffers, although the shareholder in a for-profit corporation could not. *Daley* cites *Tooley*, and holds that the claim brought by the dues-paying member of the non-profit is appropriately brought as a direct claim, under *Tooley* – it reflects an injury to the plaintiff (not just the corporation), arising from a duty to the plaintiff (not just the corporation). Although *Tooley* is not controlling in the District of Columbia, and even though the analysis is specific to shareholders in for-profit, publicly-traded entities, it also happens to be true that *Daley* is consistent with *Tooley*.

---

[4] Moreover, Plaintiffs here also have other, direct claims against ASA arising from their individual rights as members, including the right to vote, and violation of their contractual rights. Indeed, Plaintiffs bring direct claims for breach of contract and violation of the D.C. Non-Profit Corporations Act arising not only from the refusal to allow Plaintiff Barton to vote, but also voting irregularities. These direct claims are indistinguishable from the direct claims that Defendants reference when they argue "[i]t was because of [an] infringement of their individual rights (to vote, to be a member, etc.) that the *Daley* plaintiffs had standing for their claims as a whole." (Reply Brief at 4, parenthetical in the original.)

*Daley* holds that a direct claim for waste can be brought directly by a dues-paying member of a non-profit association. This is an unavoidable conclusion, because *Daley* actually involves a direct claim for waste, and the outcome is clear.

Not even a year ago, the Court of Appeals reiterated and relied on the *Daley* holding in *Jackson v. George*, 146 A.3d 405 (D.C. 2016). The facts in *Jackson* are strikingly similar to the facts here, and Defendants' attempts to distinguish *Jackson* fail.

In *Jackson*, individual plaintiffs challenged the new church board's management of the church assets, including the decision to merge the church with another church. The individual plaintiffs sought "injunctive relief 'to remedy [appellants'] unlawful activities,' including dissipating assets of the Church." 146 A.3d at 411. Plaintiffs also brought claims for an accounting, a constructive trust, and damages for breach of fiduciary duty, unjust enrichment, fraudulent concealment, and constructive fraud, as well as violations of the D.C. Non-Profit Corporations Act and the Maryland Corporations and Associations Code. *Id*. Although *Jackson* plaintiffs' claims "'spoke largely of injuries to the Church and its assets and property,'" (*Id*. at 415), the plaintiffs brought direct claims, on behalf of themselves, not derivative claims.

Defendants moved to dismiss the claims on the grounds that injury alleged was to the nonprofit church, and could only be brought derivatively, and plaintiffs had not made a demand as required pursuant to D.C. Code § 29-411.03. The trial court denied the motion.

The Court of Appeals upheld the trial court, rejecting defendants' arguments that the claims were solely derivative in nature. The *Jackson* court held:

> "[C]ourts have wide discretion in interpreting whether a complaint states a derivative or primary action." *Johnson v. American Gen. Ins. Co.*, 296 F. Supp. 802, 808 (D.D.C. 1969) (*citing Borak v. J. I. Case Co.*, 317 F.2d 838, 845 (7th Cir. 1963)). Here, Judge Nash recognized

> that the Complaint "sp[oke] largely of injuries to the Church and its assets and property," but, citing *Johnson*, also observed that "courts have held that 'the same facts can give rise to several sets of claims, some of which are personal and some of which are derivative.'"  In addition, Judge Nash recognized this court's cautionary words about "'too expansive a view of the requirement of derivative suits'" when allegations are made against a non-profit corporation and its leaders.  *See Daley*, 26 A.3d at 729[.]
>
> In this case, plaintiffs/appellees sought relief from appellants' conduct in (allegedly) barring them (but not all others) from church property and facilities and from attending church services and from appellants' ***allegedly unauthorized use of appellees' tithes and offerings***. Judge Nash did not abuse his discretion in concluding that because plaintiffs/appellees ***alleged an injury particularized to them and a "personal financial stake***," they were entitled to proceed on the claims they brought on their own behalves, by which they sought relief from "a special injury . . . not suffered equally by all" who affiliated with the church.

*Jackson v. George*, 146 A.3d 405, 415 (D.C. 2016).

As with *Daley*, Defendants seek to distinguish *Jackson* on the grounds that the court "based its holding specifically on the plaintiffs' individual claims."  (Reply Brief at 5.) However, and also as in *Daley*, the *Jackson* court allowed the claims for misuse of the non-profit church's funds to proceed on a direct basis.  These are "injuries to the Church and its assets and property," certainly, but they are also injuries to the member whose donations and tithes fund the non-profit church's coffers – injuries that the court holds "are particularized to them." *Id.* The *Jackson* court held that the plaintiffs had a "personal financial stake" in the use of their donations and tithes, and thus are directly injured, just as the *Daley* plaintiffs had a personal financial stake

in the annual dues paid to AKA and were directly injured. And, Plaintiffs believe, just as the misuse of the ASA Plaintiffs annual dues caused a direct injury to Plaintiffs here.[5]

Defendants also argue that *Jackson* is not applicable because it does not involve a waste claim. (Reply Brief at 4.) Defendants miss the point. *Jackson* holds that a claim that arises from injury to the corporation – a claim that is usually presented as a derivative claim – should not be dismissed when brought by fee-paying members against a non-profit entity. Like the ASA Plaintiffs, the *Jackson* plaintiffs bring claims arising from the expenditure and management of the nonprofit's funds. Relying on *Daley* (which does involve, *inter alia,* a waste claim) the *Jackson* court held that the dues-paying members had a personal and direct interest in the management of the non-profit's funds. The fact that the *Jackson* plaintiffs did not bring a waste claim is of no consequence.

---

[5] In a footnote, the *Jackson* court observed that the trial court "relied on the so-called 'special injury' exception to the requirement that suits alleging wrongs against a corporation be brought derivatively." *Id.* at n.6. As discussed above, the "special injury" concept that requires "an injury to the shareholders distinct from any injury to the corporation itself" and/or "a duty to the complaining shareholder independent of the fiduciary duties owed that party along with all other shareholders" (*Cowin*, 741 F.2d at 415) is not the applicable standard, pursuant to *Tooley*. In the footnote, the *Jackson* court also cites to *Allen v. El Paso Pipeline GP Co.*, L.L.C., 90 A.3d 1097, 1106-07 (Del. Ch. 2014), for "explaining that the Delaware Supreme Court has held that stockholders who allegedly have suffered direct injury may sue individually for breach of their contractual rights, 'even when all stockholders held the same right and suffered the same injury' (*citing, inter alia, Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (so holding even though referring to the concept of 'special injury' as 'confusing')." *Jackson* at n.6.

Interestingly, the *Jackson* court found that the plaintiffs could bring claims for breach of fiduciary duties and other claims arising from the dissipation of the church coffers directly, even though it apparently applied the "special injury" standard, and not the *Tooley* standard. Thus, under the *Jackson* trial court's reasoning, the ASA plaintiffs may also satisfy the "special injury" standard.

B. **There Is No "Doctrine of Corporate Waste Claims as Solely a Derivative Action."**

In the Reply Brief, Defendants argue that "Plaintiffs claim that the doctrine of corporate waste as solely a derivative action is inapplicable to nonprofit corporations. They have misread the very case-law upon which they rely, for both *Daley* and *Jackson* rested, ultimately on a finding that the plaintiffs had been directly and individually injured." (Reply Brief at 3.) Plaintiffs are aware of no such "doctrine," and, apparently the *Daley* court was not either, as ***Daley involved a direct waste claim, and the Daley court held that the plaintiffs had standing to pursue the waste claim as a direct, and not a derivative, claim***. It is simply illogical to argue that *Daley* is consistent with Defendants' position that the waste claim here must be dismissed because it was not brought derivatively, as the *Daley* court rejected exactly that argument.

It is true that waste claims are usually brought as derivative claims, and often (but not always), such claims cannot be brought directly under *Tooley*. This is certainly true with respect to for-profit, publicly-traded corporations. But when Defendants argue that waste claims can never be brought directly, they ignore both the standard set forth in *Tooley* (which does not simply turn on the type of claim), and the potential for a single claim to be appropriately brought as either a direct or a derivative claim. And, more obviously, Defendants ignore both the holding and the outcome in *Daley*.

As discussed above, one aspect of the *Daley* and *Jackson* holdings is that the traditional assumptions about direct and derivative claims applied routinely in the for-profit context "is an uneasy fit" in the non-profit context. (*Daley*, 26 A.3d at 729.) A "doctrine of corporate waste as solely a derivative action" may be easy to apply, but it is also a superficial (and artificial) approach. The appropriate legal analysis is not so simplistic.

### III. PLAINTIFFS' INITIAL DISCLOSURES DO NOT SUPPORT DEFENDANTS' MOTION

Defendants argue that Plaintiffs' Initial Disclosures rely on discovery of "loss of revenue by ASA" and "ASA funds expended" to support their claims, and therefore, Plaintiffs' waste claim can only be derivative. What Defendants fail to acknowledge is that the expenditures by ASA that form the basis of the waste claim are expenditures of Plaintiffs' annual dues, and thus, under *Daley* and *Jackson*, Plaintiffs "allege an injury particularized to them and a 'personal financial stake' [and are] t entitled to proceed on the claims they brought on their own behalves." *Jackson*, 146 A.3d at 415 (also holding that "'the same facts can give rise to several sets of claims, some of which are personal and some of which are derivative,'" *quoting Johnson v. American Gen. Ins. Co.*, 296 F. Supp. 802, 808 (D.D.C. 1969).)

In any event, the Rule 26 Initial Disclosures impose absolutely no binding limitation on the scope or content of Plaintiffs' claims. "A party," the court explained in *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 2016 U.S. Dist. LEXIS 37382, at *19 (D. Conn. March 23, 2016), "is not bound by its initial disclosures." Such statements, made at the very outset of a case and before the party making them has had the opportunity to take any discovery, and indeed while there is still wide latitude to amend a complaint, form only one part, and the very first, of a party's discovery obligations. They are specifically designed to be supplemented as a case progresses. On the basis of its Rule 26 Initial Disclosures, no party is ever estopped from pursuing an avenue in discovery that is not identified in those statements. That is the whole point of calling them "initial" disclosures.

## IV. DEFENDANTS' MOTION IS LIMITED TO WHETHER THE WASTE CLAIM IS APPROPRIATELY BROUGHT AS A DIRECT CLAIM.

In the Reply Brief, Defendants argue for the first time that the waste claim should be a dismissed because "a showing that the actions contravened internal procedures would not suffice" to establish the elements of a waste claim. In three sentences, Defendants essentially argue that because the waste claim brought in *Daley* was ultimately dismissed – on grounds other than the presentation of the claim as a direct claim – this waste claim must also be dismissed. (Reply Brief at 6.) First, Defendants cannot effectively move for dismissal on entirely separate grounds for the first time in a Reply Brief. *See Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 77 n.17 (D.D.C. 2015) (court "will ignore the [movant's] argument because it was not raised in the original brief and a movant cannot use its reply brief to expand the scope of a summary judgment motion"); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. Aug. 7, 2001) ("although plaintiff did address the issue in its reply, we have repeatedly held that an argument first made in a reply brief ordinarily comes too late for our consideration, and we see no reason to depart from that rule here"); *see also Bd. of Regents of the Univ. of Washington v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996) ("we have generally held that issues not raised until the reply brief are waived"); *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013) (holding that movant waives argument made for the first time in its reply brief). Second, Plaintiffs' claim for waste is not brought "[m]erely on a showing that the actions contravened internal procedures." *Id*. The language quoted from *Daley* by Defendants is case-specific to *Daley*. Plaintiffs' claim for waste against the ASA is based on facts that are specific to the ASA.

## V. CONCLUSION

For all of the reasons detailed above, Plaintiffs respectfully ask that the Court deny Defendants' Motion for Partial Judgment on the Pleadings.

| | |
|---|---|
| Dated:  June 30, 2017 | Signed: _/s/Scott Godes_____<br>Scott Godes |

**BARNES & THORNBURG LLP**

Scott Godes, Esq. #463674
Devin Stone, Esq. #1022055
1717 Pennsylvania Avenue NW, Suite 500
Washington, DC 2006-4623
(202) 408-6928
sgodes@btlaw.com
dstone@btlaw.com

L. Rachel Lerman, Esq. (admitted *pro hac vice*)
2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904
(310) 284-3871
rlerman@btlaw.com

**MARCUS & AUERBACH LLC**

Jerome M. Marcus, Esq. (admitted *pro hac vice*)
Jonathan Auerbach, Esq. (admitted *pro hac vice*)
1121 N. Bethlehem Pike, Suite 60-242
Spring House, PA 19477
(215) 885-2250
jmarcus@marcusauerbach.com
auerbach@marcusauerbach.com

**THE LOUIS D. BRANDEIS CENTER
  FOR HUMAN RIGHTS UNDER LAW**

Kenneth Marcus, Esq. #437391
Jennifer Gross, Esq. #1003811 (D.D.C. pending)
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 2006-4623
(202) 559-9296
klmarcus@brandeiscenter.com
jenniegross@brandeiscenter.com

Joel Friedlander, Esq.
**FRIEDLANDER & GORRIS, P.A.**
1201 N. Market Street, Suite 2200
Wilmington, DE 19801
jfriedlander@friedlandergorris.com

Eric Roiter, Esq.
**BOSTON UNIVERSITY SCHOOL OF LAW**
765 Commonwealth Avenue
Boston, MA  02215
edroiter@gmail.com