**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON,<br><br>Plaintiffs,<br><br>v.<br><br>LISA DUGGAN, CURTIS MAREZ, AVERY GORDON, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, and THE AMERICAN STUDIES ASSOCIATION,<br><br>Defendants. | Civil Action No. 16-cv-00740-RC |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
TO EXTEND TIME TO ADD PARTIES**

Plaintiffs sought a two-week extension of time to add parties on November 1, 2017. Under the schedule agreed to by the parties, and adopted by the Court in its Scheduling Order (Dkt. __), the last day to add parties would be two months after the Defendants completed their production of documents in response to Plaintiffs' Requests for Production of Documents ("the Documents Requests"). Defendants had agreed to finish the production by August 31, 2017.

Defendants did not complete their document production by August 31. Indeed, Defendants did not produce the large majority (nearly two-thirds) of the documents in this case, including nearly all of the documents from a key defendant, until October 17, under order of the Court. As discussed in previous briefing, these key documents are the documents of Defendant Maira, potentially the most important Defendant in the case, and the one most involved in the events at issue. (*See* Dkts. 57 and 59, incorporated herein by reference.) A very small production

1

of Defendant Maira's documents was made in August. The August production was limited to 88 documents – most of them from a ten-day period, and without any documents from the critical period of the vote on the resolution, or following the resolution. Other key documents not produced until October 17 are the great majority of documents from Defendant Curtis Marez, who was the President of the American Studies Association ("ASA") during the campaign, election, and immediate aftermath of the Resolution.

By the time these critical documents were produced, it was far too late for Plaintiffs to review the documents, consider appropriate claims and defendants, and draft a new complaint by the November 1 deadline to add new parties. Plaintiffs appropriately filed a motion to extend time to add parties before the time to add parties expired. The motion asked for two weeks – only two weeks – to make up for over six weeks of delay since the documents were due, under the last agreement – which was already two months after the original due date.

Defendants opposed the motion. Although they still had not produced documents for another defendant (in violation of a court order), among other outstanding discovery violations, and although they had agreed on the proposed scheduling order on the condition that Defendants would produce all documents by August 31, without the continued delays that had marked the beginning of the discovery period, yet failed to produce the key documents until October 17, Defendants would not compromise on a two-week extension.

For all the reasons discussed below, as well as in Plaintiffs' Motion for Additional Time to Add Parties and Plaintiffs' Motion for Leave to File a Second Amended Complaint, Plaintiffs respectfully request that the Court grant the present motion.

I.      **GOOD CAUSE EXISTS UNDER FRCP 16(b)(4)**

Rule 16(b)(4) applies, as Plaintiffs seek a modification of the scheduling order. "To show good cause under this Rule, the moving party must show both diligence and a lack of prejudice to the opposing parties." *KG Litig. v. Samsung Techwin Co. (In re Papst Licensing GmbH & Co.)*, 762 F. Supp. 2d 56, 59 (D.D.C. 2011). "[I]t seems clear that the factor on which courts are most likely to focus when making this determination is the relative diligence of the lawyer or lawyers who seek the change." 3 *Moore's Federal Practice* § 16.14[b] (2003). "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission." *Ijoor v. Consummate Computer Consultants Sys.*, LLC, 2017 U.S. Dist. LEXIS 146046, *1-3, Civ. No. 15-1292 (D.D.C. Sept. 8, 2017), *quoting Lurie v. Mid Atl. Permanente Med. Grp. P.C.*, 589 F. Supp. 2d 21, 23 D.D.C. 2008).  However, the moving party must also show that there will be no prejudice to the opposing party.  *Ijorr* at *2.

### A.   Plaintiffs Were Diligent, and the Need for Additional Time is Solely Attributable to Defendants' Discovery Delay.

Defendants make one argument in opposition to Plaintiffs' Motion:  that the parties met and conferred over a motion for leave to file an amended complaint on September 12, and that at that time, Plaintiffs informed Defendants that they would name Jasbir Puar and J. Kehaulani Kauanui as Defendants.  As an initial matter, Plaintiffs' Proposed Complaint names four new defendants: Puar, Kauanui, and John Stephens and Steven Salaita.  But regardless, the fact that Plaintiffs intended to name Puar and Kauanui in September does not negate Plaintiffs' need for Defendants to respond to the Document Requests, or the diligence of the Plaintiffs in their efforts to obtain the key documents from Defendants – documents that the Proposed Complaint relies heavily on – and it certainly does not excuse or justify Defendants' ongoing failure to produce these documents in a timely manner.

Indeed, Plaintiffs had been working on an Amended Complaint in August and September – at the same time that they were expecting the production from the key defendant in the case. Those documents did not come until the Court explicitly ordered Defendants to produce them by October 16. As described below, Plaintiffs were extremely diligent in their attempts to obtain the documents from Defendants, and also completed as much work on the new complaint as possible without the key documents.

The actual timing of the events leading up to the November 1, 2017 motion – which is not accurately or completely set forth in Defendants' brief -- are as follows:

- Defendants made a very small production of documents for Defendant Maira on August 11. Upon review of the production, which included only 88 documents, Plaintiffs asked Defendants if this was the entire production. (Exhibit A at 1.) Defendants responded, "that production is not complete, and we are working toward finalizing it." *Id.*

- At John Stephen's 30(b)(6) deposition on August 23, Ms. Gross asked Mr. Seaman when defense counsel would produce the remainder of the Maira production. Mr. Seaman would not commit to a date, except to say that they would be produced by August 31, 2017 – the date by which Defendants had committed to complete productions for all Defendants.

- Defendants produced 59 documents on the deadline of August 31, and 5,626 documents on September 1, but by the latter date not a single document was produced by Defendant Maira. Believing that Defendants had completed the production for all Defendants except Maira (and excluding documents that were subject to objections), Plaintiffs reviewed

these documents and continued to frame an amended complaint while waiting Defendants to produce Defendant Maira's documents.

- It soon became clear to Plaintiffs that the missing Maira documents would be crucial to the case.  It also became clear that Defendants had failed to produce a large number of documents – and not only Maira's documents.  For example, the production for Curtis Marez excluded months of his presidency and years of time on the Executive Committee and/or Finance Committee), others between one year and two years.

- Plaintiffs sent Defendants numerous email regarding the Maira production, including on September 5 ("[Maira] should have documents on the resolution throughout 2012 and 2013, if not earlier, as she was head of the Caucus.  She should also have documents long after 2013, as she was on the National Council starting in June 2013 through June 2016.  When will we receive the remainder of her documents?") (Exhibit A at 2.)  Plaintiffs followed up on September 6 ("her production would likely be the largest of the individual defendants, as she ran the caucus.  Yet we have less than 90 documents for her, all limited to a one month period.  We should have many years of documents for her.") (Exhibit A at 3.)  Also on September 6, in a separate email, Plaintiffs wrote, "This is an important production, and I can't see how we can agree to new deadlines if we don't have any idea when we will receive the bulk of her production."  There was no response.  (Exhibit A at 4.)

- The parties met and conferred regarding a motion to file an amended complaint on September 14.  At that time, Plaintiffs were aware that the Maira documents

were critical to the case, but could not have known that it would be more than another month, and only two weeks before the last day to add parties, when the documents would finally arrive.

- Plaintiffs continued to pursue the Maira documents. On September 20, Plaintiffs wrote, "Yesterday during the meet and confer we discussed timing for the production of documents by Sunaina Maira. You were not willing to set a deadline for the remainder of that production (we talked about 10/13 and 10/16). Please let me know if you would agree to make a partial production by the end of next week, delimited by time frame. As these documents were originally due on June 29, and then on July 28, per court order, and then August 31 (per agreement between the parties), it is surely reasonable for Maira to make a partial production in September . . . Please do respond, even if your intention is to refuse the request to provide a partial production of Sunaina Maira's documents by the end of next week." (Exhibit A at 5.) Defendants did not respond, nor did they provide a single additional document.

-  By the end of September, it was entirely clear how important this production would be to the case and the Proposed Amended Complaint. Maira's documents might support new claims; or might support claims against additional defendants, aside from Jasbir Puar and J. Kehaulani Kauanui; or might provide specific evidence with respect to potential claims against Jasbir Puar and J. Kehaulani Kauanui. (Ultimately, the Maira production, when finally produced, did *all* of these things.) Moreover, to the extent that Plaintiffs have considered naming new

parties other than those on the Proposed Complaint, the Maira production was crucial to provide clarity about other potential claims and potential defendants.

- On September 27, Plaintiffs send Defendants another email, asking that they respond to the September 20 email regarding the Maira production. The email stated, "This production is four weeks late, from the most recent deadline (Aug. 31). We intend to ask the court to order that [Maira] complete this production by a date certain." (Exhibit A at 5.) Plaintiffs then sent one more email before the court conference on October 3. "Counsel, please respond to the email below regarding Sunaina Maira's production. This is the fourth time I've asked. Still no response from you." (Exhibit A at 5.)

- At the October 3 Status Conference, the Court ordered that Defendants complete the Maira production by October 17. Defense counsel informed the Court that the productions of Defendants Chandan Reddy and Curtis Marez were also incomplete. For the first time, Defendants also revealed – to both Plaintiffs and the Court -- that Defendants had employed what they characterized as an "artificial intelligence" program or system to identify responsive documents for the Maira production, and that they intended use this program or system to identify documents for the Curtis Marez production as well. The Court ordered Defendants to produce the documents of Chandan Reddy and Curtis Marez by October 30. The court also ordered the parties to "sit down and discuss" the search terms and the artificial intelligence tool in the two weeks following October 16 (i.e., before October 30). Despite numerous requests, Defendants have still not satisfied the Court's order to discuss the artificial intelligence

program or system. (Exhibit A at 6.) Plaintiffs asked specifically, by email, whether the system would exclude from production any documents that include search terms. Defendants still have not responded to that question either. (Exhibit A at 7.)

- Between October 3 and October 17, Plaintiffs could not have known that the size of the production would nearly triple the number of documents produced. The new production of 11,234 documents (38,336 pages) arrived on October 17. More than half of them were from Defendant Maira – 6,781 documents (25,622 pages). An additional 4,378 documents (12,606 pages) were produced by the former ASA President, Curtis Marez. The remaining 75 documents were produced by an assortment of defendants – with the exception of Chandan Reddy, whose documents were not produced by the October 30 deadline, and were not produced until November 13, 2017.

- When the long-delayed documents arrived, they were reviewed diligently, but counsel could not possibly review 11,234 documents, consider potential new claims and defendants, and draft the Proposed Amended Complaint in the two weeks before November 1. Although counsel made their best attempt, they concluded that there was far too much left to review to finalize a proposed complaint that would include all claims, and name all potential defendants, that the October 17 production supported. Plaintiffs' counsel thus filed the motion to extend time on November 1 – before the end of the day, and thus before the deadline.

Case law supports finding good cause where the requesting party has been diligent, and responded quickly when it became apparent that there was a need for an additional time. For example, in *Ijoor v. Consummate Computer Consultants Systems*, the Defendant sought to amend its answer based on information revealed in discovery. Initially, the plaintiff objected to the discovery requests. Ultimately, Defendant uncovered the information through witness interviews. Defendant sought to amend its answer within a *month* of uncovering the information. The court held, "Defendant acted diligently by filing the instant motion within a month of learning information giving rise to its reason for amendment. [Citations.] Furthermore, plaintiff will not be prejudiced by defendant's amendment. Discovery has not concluded and defendant notes that it 'would consent to an extension of the discovery period to allow plaintiff additional time to complete the necessary discovery.'" *Id.* at *2-*3.

The *Ijoor* case is much like the present case, as the delay was caused by the opposing party's failure to respond to discovery requests. "During discovery, . . . defendant had issued to plaintiff, on two separate occasions, various discovery requests seeking information and documents concerning any business activities plaintiff may have engaged in outside of his employment . . . Plaintiff objected to producing such documents." *Id.* at *2.

Those cases where courts hold that good cause does not exist because the requesting party has not been diligent are entirely dissimilar to the present case. For example, in *KG Litig. v. Samsung Techwin Co. (In re Papst Licensing GmBH & Co.)*, Misc. Action No. 07-493, MDL Docket No. 1880 (D.D.C. Feb. 1, 2011), the Court denied a request for additional time because the information that drove the requesting party to file an amended pleading was public information known to the requesting party a year before his request. *Id.* at 59-60.

Good cause also exists where the other party has obstructed or delayed the discovery. *See, e.g., Stewart v. Coyne Textile Services* 212 F.R.D. 494, 497 (S.D. W. Va. 2013). The Stewart court held:

> Defendants served their responses late. ***This Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses.*** A timely response likely would have avoided the present controversy in that the information would have been gathered earlier, prompting an earlier attempt to amend. That Plaintiff may have contemporaneously obtained information from other sources besides Defendants' responses does not indicate a lack of diligence. To the contrary, Plaintiff's efforts to compel discovery and at the same time obtain relevant information from other sources is the mark of diligence.

*Id. See also Rangel v. Gonzales Mascorro* 274 F.R.D. 585, 596 (S.D Tex. 2011) ("Good cause existed to grant defendants' modification of scheduling order deadline, where defendants were not able, due to plaintiffs' counsel's conduct, to properly depose both plaintiffs and, depending on what each plaintiff may say during a proper deposition, defense counsel could determine that defendants needed to hire a particular type of expert").

### B. <u>Defendants Would Not Be Prejudiced by a Two-Week Extension.</u>

Defendants would not be prejudiced by a two-week extension, nor could they. The last day of fact discovery is February 15 – a full three months away. Only one deposition has gone forward. There is no need for the extension of other deadlines. *See Watt v. All Clear Business Solutions,* 840 F.Supp.2d 324 (D.D.C. 2012) ("[N]o trial date has been set. Although All Clear opposed Watt's motion, the opposition does not describe any significant prejudice All Clear would suffer from reopening discovery").

## II. DEFENDANTS' ARGUMENT THAT PLAINTIFFS SAT ON CLAIMS AGAINST DEFENDANTS PUAR AND KAUANUI FAILS.

Defendants' Opposition argues that because Plaintiffs knew that they would name Puar and Kauanui in September, "the explanation in their Motion – blaming their delay on Defendants – is pretext." (Dkt. 58 at 1.) Defendants go on to state that Plaintiffs did not indicate in the September meet and confer "that they needed any additional information to add Ms. Puar and Ms. Kauanui as parties." (Dkt. 58 at 2.) This argument is meaningless in the Rule 16(b)(4) analysis.

As explained in detail above, Plaintiffs were waiting for Defendants to produce the Maira documents in September, and did not know (and could not know) that those documents would not arrive until late October. Nor did Plaintiffs know that they were also missing the great majority of Curtis Marez's documents, and about two-thirds of Chandan Reddy's documents, as well. Not only are Plaintiffs not required to "indicate [to Defendants whether] they needed any additional information to name" Puar and Kauanui as parties, but to do so might well violate the work-product doctrine. Moreover, whether Plaintiffs' counsel had sufficient information to name these two potential defendants with respect to one or more claims in September does not mean that Plaintiffs' counsel had sufficient information to plead all the appropriate claims against these potential defendants at that time.

In fact, the claims against both Puar and Kauanui were significantly bolstered by the Maira production on November 17. *See, for example,* Proposed Complaint at ¶ 60 (quoting email from Maira, "Jabir is nominating me and Alex Lubin for the Council and she suggests populating it with as many supporters as possible"; quoting email from Puar, "I think we should prepare for the longer term struggle by populating elected positions with as [many] supporters as possible"; and quoting email from Alex Lubin, "In my conversations with Jasbir it's clear that

the intent of her nominations was to bring more people who do work in, and are politically committed to . . . the question of Palestine . .  we were nominated in order to build momentum for BDS").  All three of these emails were produced on October 27.  Similarly, claims against Kauanui were substantially bolstered by the Maira production on October 27.  *See* Proposed Complaint at ¶ 69 and ¶ 104, as two examples.

Defendants' exhibits, intended to show that Plaintiffs knew "of" Kauanui and Puar for a longer time, offer nothing to advance Defendants' arguments.  Plaintiffs do not deny that they knew "of" Kauanui and Puar.  However, the proof that Defendants supply is meaningless for this purpose.  Plaintiffs certainly did know "of" Kauanui when she was listed as a current member of the National Council as of 2016 in original complaint, for purposes of arguing demand futility.  (Dkt. 58 at 3.)  This is no evidence that Plaintiffs knew that Kauanui could be named as a defendant in 2016, or at any other particular time.  Logic suggests that if Plaintiffs knew that Kauanui should be named as a defendant in 2016, Kauanui would have been a named defendant in 2016.

Similarly, the listing of Kauanui and Puar as "individuals likely to have discoverable information" on Plaintiffs' Initial Disclosures is no proof that Plaintiffs knew that either should be named as a defendant when the Initial Disclosures were served on May 15, 2017.  Plaintiffs also listed Sonya Michel, a potential favorable witness for the Plaintiffs, as an individual likely to have discoverable information, with no intention of naming her as a defendant.  Plaintiffs also listed Jodi Melamed and Nadine Naber as individuals likely to have discoverable information, neither of whom are named as Defendants in the Proposed Complaint.

Finally, the fact that Plaintiffs sought information about Puar's appointment to the Nominating Committee in the Document Requests means only one thing:  that Plaintiffs sought

information about Puar's appointment to, and functioning on, the Nominating Committee. It does not mean that Plaintiffs had established a claim against Puar at the time the Requests were served. The claim that Puar intended to, and did, pack the National Council with USACBI Leaders was significantly bolsterd by Defendant Maira's production on October 17, including, in particular, the production of documents SM3736, SM3730, and SM4308. *See* Proposed Complaint at ¶ 60.

### III. UNDER DEFENDANTS' THEORY, PLAINTIFFS WOULD FILE MULTIPLE COMPLAINTS IN A SHORT PERIOD OF TIME, DEFEATING THE PURPOSE OF RULE 16.

Under Defendant's theory, Plaintiffs should have filed a Second Amended Complaint to name Kauanui and Puar as Defendants before November 1, 2017. Yet Defendants do not dispute that they produced 11,234 documents on October 17, and they make no statement as to whether Plaintiffs should be able to name other new Defendants, based on information buried in those 11,234 documents. Meanwhile, Plaintiffs can (and do) seek to add claims under Rule 15(a)(2) after the last day to add parties. This begs the question: what do Defendants believe is the better option here? Should Plaintiffs move for leave to amend the complaint under Rule 15(a)(2) two times, or potentially three times, in a period of three months?

Review of the Proposed Complaint reveals a number of new claims that Plaintiffs did not discuss in the September meet and confer that clearly arise from information produced by Sunaina Maira on October 17. For example, multiple grounds for Count One, Breach of Fiduciary Duties arising from Material Misrepresentations and Omissions in Connections with Elections (Proposed Complaint at ¶¶ 192-194) and Count Two, Breach of Fiduciary Duties arising from Misappropriation and Misuse of Assets (¶¶ 195-97) were discovered in the October

17 production. The significant facts related to the change in the bylaws to allow for withdrawal of funds from the ASA Trust (Proposed Complaint ¶ ¶ 163-66) could not possibly have been known until Defendants produced JS2003, which was also not produced October 17 – after this Court required Defendants to produce documents related to the change in bylaws. Plaintiffs sought those documents in the Document Requests served in May, but Defendants objected to their production. Eventually, Plaintiffs pursued this request with the court, who required Defendants to produce the documents.

To satisfy Defendants, Plaintiffs would have filed a motion for leave to file a Second Amended Complaint adding Puar and Kauanui on or before November 1. Then, in order to avoid delay in adding new claims, Plaintiffs would file another motion under Rule 15, this time for leave to file a Third Amendment Complaint – only a few weeks, or at most, a couple of months, after the Second Amended Complaint. Worse, if Plaintiffs had moved for leave to file the Second Amended Complaint in September, around the time of the meet and confer and consistent with Defendants' arguments in the Opposition, there would have to be a motion for leave to file a Third Amended Complaint to add Stephens and Salaita as defendants on or before November 1 (but after October 17), and then a motion for leave to file a Fourth Amended Complaint to add the new claims under Rule 15.

The waste of judicial resources, and the resources of both sides, would be overwhelming, entirely unnecessary, and fully conflicting with the purposes of Rule 16, which include, "discouraging wasteful pretrial activities." Rule 16(a)(3).

In final argument, Plaintiffs note that Defendants have known, since September, that Plaintiffs intended to move for leave to file a Second Amended Complaint, and they knew exactly what that complaint alleged, as it was framed at the time. They also knew that Plaintiffs

intended to add new defendants, and who they were. With all of this information, Defendants then withheld production of documents that they knew that Plaintiffs considered to be key to the case until two weeks before the deadline to add parties. In fact, if the Court did not order the production of those documents, it is unclear when Defendants would have produced them. One week before November 1, instead of two? Less than a week?

This is the outcome that the Court in *Stewart v. Coyne Textile Services* warned of, when it held:

> ***This Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses.*** A timely response likely would have avoided the present controversy in that the information would have been gathered earlier, prompting an earlier attempt to amend.

*Stewart*, 212 F.R.D. 494, 497 (S.D. W. Va. 2013).

For all of the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion for Additional Time to Add Parties.

| | |
|---|---|
| Dated:  November 13, 2017 | Signed:      */s/Jennifer Gross*      <br>                    Jennifer Gross |

| | |
|---|---|
| Jerome M. Marcus (admitted *pro hac vice*)<br>Jonathan Auerbach (admitted *pro hac vice*)<br>**MARCUS & AUERBACH LLC**<br>1121 N. Bethlehem Pike, Suite 60-242<br>Spring House, PA 19477<br>(215) 885-2250<br>jmarcus@marcusauerbach.com<br>auerbach@marcusauerbach.com<br><br>*Lead Counsel for Plaintiffs* | Jennifer Gross, DC Bar No. 1003811<br>Aviva Vogelstein<br>(DDC pending, DC No. 1024231)<br>**THE LOUIS D. BRANDEIS CENTER**<br>    **FOR HUMAN RIGHTS UNDER LAW**<br>1717 Pennsylvania Avenue NW, Suite 1025<br>Washington, DC 20006-4623<br>(202) 559-9296<br>jenniegross@brandeiscenter.com<br>avogelst@brandeiscenter.com |
| L. Rachel Lerman (admitted *pro hac vice*)<br>**BARNES & THORNBURG LLP**<br>2029 Century Park East, Suite 300<br>Los Angeles, CA 90067-2904<br>(310) 284-3871<br>rlerman@btlaw.com | Joel Friedlander (*pro hac vice* pending)<br>**FRIEDLANDER & GORRIS, P.A**.<br>1201 N. Market Street, Suite 2200<br>Wilmington, DE 19801<br>(302) 573-3502<br>jfriedlander@friedlandergorris.com |
| Scott Godes, DC Bar No. 463674<br>Devin Stone, DC Bar No. 1022055<br>**BARNES & THORNBURG LLP**<br>1717 Pennsylvania Avenue NW, Suite 500<br>Washington, DC 20006-4623<br>(202) 408-6928<br>sgodes@btlaw.com<br>dstone@btlaw.com | Eric D. Roiter (*pro hac vice* pending)<br>Lecturer in Law<br>**BOSTON UNIVERSITY SCHOOL OF LAW**<br>765 Commonwealth Avenue<br>Boston, MA  02215<br>(617) 734-8266<br>eroiter@bu.edu |

*Counsel for Plaintiffs*