## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BRONNER, et al.,<br><br>    Plaintiffs,<br><br>and SIMON BRONNER,<br>DERIVATIVELY ON BEHALF OF<br>NOMINAL DEFENDANT, THE<br>AMERICAN STUDIES ASSOCIATION,<br><br>    Derivative Plaintiff,<br><br>v.<br><br>LISA DUGGAN, et al.,<br><br>    Defendants. | 1:16-cv-00740-RC |

## OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

COME NOW the Defendants hereto, by and through their undersigned counsel, Whiteford, Taylor & Preston L.L.P., and hereby oppose the Plaintiffs' latest Motion for Leave to Amend the Complaint.   The Motion for Leave is another in the long line of Plaintiffs' improper litigation tactics which should not be countenanced by this Court: not only does it constitute an improper effort to revisit Plaintiffs' prior losses and to resurrect derivative claims that have been dismissed, but it would cause undue delay, result in greatly expanded expenses to the Defendants -- all to the prejudice of the Defendants, and would be futile in any event.  The Motion should accordingly be denied.

## Standard on Motion to Amend the Complaint

The decision to grant or deny a party's request to amend its complaint rests within the sound discretion of the district court. *Lover v. District of Columbia*, 248 F.R.D. 319, 320 (D.D.C. 2008), citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). The Supreme Court has held that leave to amend should be freely given, *unless* there has been undue delay in bringing the proposed amendment, or the movant has acted in bad faith, with dilatory motive; where the amendment would lead to undue prejudice to the opposing party; or where the proposed amendment would be futile.  *Id.*; *see also Pierce v. Mattis*, 256 F.Supp.3d 7 (D.D.C. 2017); *Francis v. Perez*, 256 F.Supp.3d 1 (D.D.C. 2017); *Afram v. United Food & Commercial Workers Unions*, 958 F.Supp.2d 275 (D.D.C. 2013).

Similarly, if a proposed amendment substantially changes the theory on which the case has been proceeding, and is proposed late enough that the opponent would be required to engage in significant new preparation, or if the amendment would result in a defendant being put to added expense and the burden of a more complicated and lengthy trial, the court may deem the proposed amendment prejudicial and deny the motion to amend,    Wright & Miller, *Federal Practice and Procedure*, §1487.  *See. e.g.*, *Williams v. Norfolk Southern Ry.*, 126 F. Supp. 2d 986 (W.D. Va. 2000); *Walsh v. Ford Motor Co.*, 1983 U.S. Dist. LEXIS 12210 (D.D.C. 1983) (denying plaintiff's motion to amend the complaint, noting that the defendant had already moved to dismiss the pending action, and that defendant had been required to adjust to plaintiff's changing theories of

liability, at significant expense).  In this matter, the Defendants have already moved to dismiss the action (one motion for judgment on the pleadings is still pending), and have engaged in extensive document searches and production.  Plaintiff's proposed second amended complaint, which adds theories of liability and parties, will require, among other things, that the Defendants expend significantly more resources to litigate the dispute.  By way of a few examples only, Defendants would need to analyze and then strategize against more than double the factual allegations currently existing, and would likely need to conduct document searches and reviews that they could have done previously.

The Plaintiffs' Motion runs afoul of each of the foregoing factors.

## The Motion to Amend is Futile,
## As Plaintiffs Seek to Resurrect Dismissed Derivative Claims

As this Court is well aware, the Plaintiffs already amended their Complaint once, in response to Defendants' Motion to Dismiss and in the hopes of saving their derivative claims for damages allegedly suffered by the Association.  Such amendment was useless, however: in its Memorandum Opinion and Order of March 31, 2017 [Docs. 27, 28], the Court specifically found that Plaintiffs had not fulfilled the statutory requirements for bringing a derivative action, and dismissed, with prejudice, any claim for damages suffered by the Association.[1]

---

[1] Although the Court has heretofore declined to dismiss Plaintiffs' claims for waste in their entirety, the Defendants have since filed a Motion for Judgment on the Pleadings and that Motion remains pending.

But despite the Court's clear pronouncement on Plaintiffs' derivative claims, the newly proposed claims in the second amended complaint rest on such causes of action, thereby seeking to resurrect claims and legal theories which have already been dismissed. In the entire proposed second amended complaint, there is only one allegation of individual harm – specifically, that Mr. Barton was not allowed to vote on the Resolution (Proposed Second Amended Complaint at ¶¶ 123 -- 137).[2]  Nowhere do Plaintiffs assert any fact that would show that any of them were personally harmed by the Defendants' actions.   There is no claim that any Plaintiff suffered monetary damage or reputational harm; there is no allegation that any individual Plaintiff was mistreated, maligned, oppressed or disadvantaged.   To be sure, there are allegations that the funds of the *Association* have been misused, that the *Association* has suffered reputational harm, and that the *Association's* business has been hijacked.   Still, Plaintiffs have not claimed damage to themselves, personally.

For example, in each of the new Counts they propose, it is alleged that "Plaintiffs are entitled to recover damages from the Individual Defendants that the American Studies Association incurred as a result of (the Defendants' actions)."   *See* proposed second amended complaint, ¶¶194, 197, 207, 215 (and 244).  Moreover, the only claim for damages in the "Prayer for Relief" section at the end of the 82-page proposed second amended complaint requests that the Plaintiffs be awarded:  ". . . 6) Actual damages on behalf of the American Studies Association from the Individual Defendants . . . ."   The attempt

---

[2] This is the same claim made before; that Count is not new and is pending.

therefore to resurrect the dismissed derivative claims is obvious.   This is the precise type of tactic that requires the denial of the Motion for Leave, D.C. Nonprofit Corporations Act, § 29-403.04, and is indicative of Plainiffs' continued campaign to harass those who hold opinions different from their own.

Further, the Plaintiffs' proposed Amended Complaint doesn't even attempt to satisfy the requirements under the D.C. Nonprofit Corporations Act to hold the individual defendants liable.   Plaintiffs claim, and baldly so, that the individual defendants "… are not exculpated by §29-406.31" because "their conduct was not in good faith." *See, e.g.*, ¶197, proposed second amended complaint.   However, in order to hold the individual defendants liable here, Plaintiffs must allege and establish not only that the Defendants' actions were in bad faith, but they must also allege and establish that subsection (d) of 29-406.31 does *NOT* apply.   *See* §29-406.33 (a) (1).   Subsection (d) provides as follows:

> "Notwithstanding any other provision of this section, a director or a charitable corporation shall not be liable to the corporation or its members for money damages for any action taken, or any failure to take any action, as a director, except liablity for (1) The amount of a financial benefit received by the director to which the director is not entitled; (2) An intentional infliction of harm; (3) A violation of 29-406.33 [3]; (4) An intentional violation of criminal law."

Importantly, Plaintiffs' proposed second amended complaint alleges none of these exceptions, nor could it. In short, Plaintiffs are again asserting derivative claims, though calling them something else.   And, allowing the Motion for Leave would turn the law regarding derivative actions on its head: every member of any organization would be able to claim as damages the damages suffered by the organization.

---

[3] This section concerns liability of a director *to the corporation* for unlawful distributions.

Similarly, Plaintiffs again seek to invoke *ultra vires* theories in some of the purportedly new claims (Counts Three and Four) and reference the *ultra vires* subsection of the statute, D.C. Code §29-403.04. However, that section *only* allows damages in a deriviative proceeding. *See* D.C. Code, § 29-403.04(c). But, again, as the derivative claims have been dismissed, this is an improper attempt to circumvent this Court's prior ruling and to resurrect previously dismissed causes of action, just dressed up differently. [4]

The proposed second amended complaint, therefore, presents nothing new but derivative claims that have already been dismissed. As the Court has already held, Plaintiffs' argument -- that a letter issued two days before suit was filed satisfied the "demand on the Board" requirement -- was entirely unreasonable and unsupportable. Nonetheless, Plaintiffs now seek to reintroduce all of the derivative claims that this Court has already dismissed. Their position is no stronger now than it was in the Amended Complaint, and these claims must fail as a matter of law. Granting the Motion for Leave would thus be futile. [5]

---

[4] All of this further raises the question of this Court's continuing jurisdiction to preside over this dispute. The Court's earlier ruling did not accept the Defendants' argument that the damages did not reach the $75,000 "legal certainty" threshold. But with the derivative claims on behalf of the ASA having been dismissed and the only damages being claimed are those incurred by the ASA, it would be within this Court's discretion to dismiss the case on that basis. *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F.Supp. 3d (D.D.C. 2014)(matter of Court's discretion whether to retain supplemental jurisdiction).

[5] Also regarding futility of proposed claims, the proposed second amended complaint makes allegations "upon information and belief" (¶188) that the Defendants "invaded" the ASA Trust Fund for the promotion and defense of the Resolution. Yet the Plaintiffs admit in the proposed second amended complaint that **they do not have sufficient information to support the allegations they nonetheless make** regarding the alleged "invasion" of the trust fund ("At this time, we have insufficient documents to determine whether funds were withdrawn from the American Studies Association Trust Fund specifically to cover expenses related to the Resolution")¶188. This despite the fact that the Plaintiffs have produced nearly 17,000 documents, including the ASA's IRS forms 990 for the years 2010 through 2015. That their lawsuit is primarily a publicity-focused fishing expedition has never been clearer.

There are additional reasons why the amendment would be futile.  For example, the proposed second amended complaint seeks to add four new Defendants and hold them liable for events leading up to and including the passage of the Resolution. However, those claims would clearly be barred by the statute of limitations, at the very least, as the Resolution was passed more than three years ago.  *See* D.C. Code §12-301.  The same would be true for the alleged "misrepresentation" claims leading up to the election prior to the Resolution and the Resolution itself.  And, on those claims, Plaintiffs do not even allege that they relied on any alleged misrepresentation. Said another way, there are no allegations in the proposed second amended complaint that the Plaintiffs themselves changed their vote because of any representation by any party.  *See Hercules & Co. v. Shama Restaurant corp.*, 613 A.2d 916, 923 (D.C. 1992) (Plaintiffs' reliance on the representation is a necessary element).

As to the *ultra vires* claim, the proposal claims that the Defendants failed to make elections that reflect the "diversity" of its members.  Plaintiffs would now have this Court interpret the bylaws of the ASA to mean that "diversity" means holding opinions that the Plaintiffs agree with it.  As to the "freezing of the membership roles," there is nothing in the bylaws or statutes that specifically prohibit freezing the membership role.  As this Court's earlier ruling made clear, in order for an act to be *ultra vires* in its context it must be "expressly prohibited by statute or bylaw."  Further, Plaintiffs' new proposed claim as to "influencing legislation" is in direct contradiction to this Court's earlier ruling:  ". . . the bylaw plainly reads as a restriction only on using propaganda to influence  legislation . . . the boycott resolution was not an attempt to enforce legislation in any meaningful sense of

the term … Although one may be able to draw an indirect link between any resolution and some potential piece of legislation in that it calls attention to a public issue, that connection is far too attenuated to make the boycott resolution 'expressly prohibited' by the bylaw." [Doc. 28 at p. 33.] Plaintiffs "new" claim that the Resolution is an attempt to influence some potential legislation in Israel (proposed second amended complaint, ¶ 149) is not only a claim that could have been brought before, but is also "far too attenuated" per this Court's opinion.

### The Timing of the Motion Suggests Both Dilatory Tactics and Ulterior Motive

The timing of Plaintiffs' Motion for Leave is worth noting.  In their Motion, Plaintiffs claim that they did not have sufficient basis to bring these additional claims until they had reviewed Defendants' document production – which, again, they claim was untimely.   The facts, however, belie such a position.  Nearly two months ago, on September 12, 2017 during a meet-and-confer requested by the Plaintiffs in regards to a Motion to Amend their Complaint,[6] Plaintiffs advised the Defendants they were going to add two additional persons as Defendants, Jasbir Puar and J. Kehaulani Kauanui. Plaintiffs also at that time announced they were going to add three new claims: freezing of the membership rules; failure to elect "diverse" candidates; and attempt to enforce legislation.  At no time during that meeting did Plaintiffs indicate that they needed any additional information to enable them to add Ms. Puar and Ms. Kauanui (or anyone else) as parties, nor that they needed any information regarding any of their

---

[6] The Plaintiffs had once previously amended their Complaint.

new claims.  Moreover, as late as November 2, during a telephone call -- just a week

before they filed the instant Motion – counsel for Plaintiffs indicated again that Puar

and Kauanui would likely be the only ones added as defendants in their proposed

second amended complaint.

Notwithstanding their position on September 12, 2017, the reality is that

Plaintiffs have always known of all four of the proposed new Defendants, and of their

roles relative to the Resolution, for a much longer time.  For example, Ms. Kauanui was

identified in the initial Complaint filed over a year and a half ago.  Her role was

described in the Complaint thus:

> i.      J. Kehaulani Kauanui was a councilmember of the ASA at the time
> of the adoption of the Boycott Resolution and whole-hearted supporter of that
> resolution.  She is an advisory board member of the U.S. Campaign for the
> Academic and Cultural Boycott of Israel (USACBI), "a campaign focused on a
> boycott of Israeli academic and cultural institutions, responding to the call of
> Palestinian civil society to joy the Boycott, Divestment and Sanctions movement
> against Israel." (http://www usacbi.org.) She has been quoted as stating that the
> decision by the American Anthropological Association to put an Israel boycott
> resolution to a full membership vote was "a huge win for keeping both Palestine
> and academic boycott on the table within the association." Alex Kane, The Year
> Ahead in Academic Boycotts of Israel, Mondoweiss (Jan. 6, 2015),
> http://mondoweiss.net/2015/01/academic-boycotts-israel/#sthash.1
> nnpNWkc.dpuf.

Complaint, ¶69 (April 2016).   Ms. Puar was also identified in Plaintiff's initial

disclosures, and was also the subject of one of the Plaintiff's request for documents,

served several months ago.   Mr. Salaita was similarly identified, and his role on the

National Council and his views discussed, also ¶69 of the original Complaint.

Regarding Mr. Stephens, not only was he referenced several times in the initial

Complaint, but the Plaintiffs also deposed him for 7 hours in August 2017. Their own statements, both in formal pleadings and in correspondence, belie Plaintiffs' current position - that they could not have brought the Motion for Leave sooner.

The timing of the Motion, however, does fit the distinct pattern in the Plaintiffs' filings. Throughout, they have sought to bolster a public relations campaign aimed at discouraging other individuals and organizations from considering such resolutions. The Plaintiffs may have "needed" more documents from discovery before making their move, but only to strengthen their efforts in stirring up public opinion and in harassing both Defendants and other academic organizations.

In reality, the Motion seems to be an effort to "ratchet up" the pressure on third parties who might consider a boycott against Israeli academic institutions. It is not coincidence that the Plaintiffs waited two years after the Resolution was passed and then filed this case at the time another larger association was considering a similar resolution. That Association was the American Anthropology Association.[7]   Shortly after filing the action in April 2016, a press release was issued, setting forth the allegations of the lawsuit and denouncing the ASA (see http://brandeiscenter.com/ lawsuit-asas-boycott-israel-violates-law-professors-sue-american-studies-association ). After the Court issued its ruling on the Defendants' Motion to Dismiss [Doc. 27] (March 31, 2017), Plaintiffs' counsel issued another press release, trumpeting the Court's

---

[7] Plaintiffs' proposed Amended Complaint acknowledges that the American Anthropology Association's attempt to pass a Resolution failed.  Proposed second amended complaint, ¶ 81.

decision as a victory for Plaintiffs, in which Plaintiffs' counsel Kenneth Marcus was

quoted thus:

> Today's victory is much bigger than merely the ASA . . . When the MLA
> [Modern Language Association] attempted a boycott vote, this case was cited, by
> those on both sides of the issue, as one of the reasons the resolution was
> defeated.  Academic activists are beginning to think twice before adopting anti-
> Semitic and unlawful policies that undermine the pillars of higher education.

*See* **Exhibit 1**; *see also* http://brandeiscenter.com/initial-victory-for-plaintiffs-in-path-

breaking-lawsuit-against-asa-for-its-boycott-israel/ .    As the Court is aware, these

events were followed by harassment of and threats of harm to the Defendants.

The Plaintiffs have perpetuated this pattern with their most recent filing.  On

Thursday, November 9, at 2:42 a.m., the Plaintiffs filed the instant Motion to Amend the

Complaint.  Later that very same day, Plaintiffs' counsel issued a "press release"

regarding the *proposed* second amended complaint, which recited verbatim several emails

produced by Defendants in this case. Again not coincidentally, the press release

immediately preceded the annual meeting of another academic association that was

considering an academic boycott of Israel, this time the Middle East Studies'

Association's (MESA)  whose national conference was scheduled to take place between

November 18 and 21 (see **Exhibits 2A – 2C,** excerpt from the MESA national conference

program). In other words, this forum is being used as a platform from which Plaintiffs

and their supporters can mine for data with which to harass anyone whose views differ

from the Plaintiffs' and their supporters.

Within a day of the Plaintiffs' "press release," the Defendants did begin to receive electronic hate mail, which specifically referenced the press release.[8]  This is particularly troubling in light of the concerns long expressed by Defendants, of which the Court is well aware, and which were addressed in the Protective Order, the purpose of which was to protect the parties from "harassment, threats or harm, if publicly disclosed."   Plaintiffs will undoubtedly assert that they neither condone nor support such harassment, but the fact remains that they have long been aware that Defendants have been subjected to such threats, and Plaintiffs' press release was instrumental in inciting and fostering further harassment.

## The Proposed Amendment Would Unduly Prejudice the Defendants

The Motion for Leave should also be denied because granting it would greatly expand the preparation and expenses necessary for Defendants to litigate the new claims. *See Lover, supra*.  The expanded scope and prejudice is apparent on several fronts.

 First, the mere length and breath of the allegations would double the already 105 paragraph/31 page existing Complaint.  The proposed Complaint is 82 pages in length with 244 separate paragraphs.  Defendants have already been put to great (and unnecessary) expense in responding to the two *prior* Complaints and 252 requests for production.  With nine lawyers at their disposal, it has become apparent that the Plaintiffs will take whatever steps they can to drive up the costs of the Defendants.

---

[8] Defendants can provide this under seal should the Court so require.

Second, as even a cursory read of the proposed Complaint makes clear, the new Complaint is a thinly veiled attack on another organization which is not even a party to this case – the U.S. Campaign for Academic and Cultural Boycott of Israel ("USACBI"). The Plaintiffs have (improperly) now alleged that ASA simply adopted the USACBI platform and Plaintiffs seek to litigate against these Defendants grievances Plaintiffs have against USACBI.  USACBI is referred to 217 times in the proposed second amended complaint.

That Plaintiffs' grievances lie with others is evident throughout the proposed second amended complaint. By way of a few examples only:

- Plaintiffs spend several paragraphs discussing a gentleman by the name of Omar Barghouti, a nonparty and a founder of the BDS movement, who calls for complete "right of return" to Israel, rejects any two-state solution and calls for the end of the state of Israel as a Jewish state.  ¶¶ 38, 39, 40.

- Plaintiffs focus on USACBI's platform, which apparently states that a boycott should be continued until Israel complies with their demands.  ¶ 39.

- A nonparty, Mark Yudoh, is quoted from a newspaper article referencing a Defendant Plaintiffs seeks to add.  He accuses her of speaking of "Jews deliberately starving Palestinians, 'stunting' and 'maiming'" a population." ¶ 59.

- Indeed, the proposed Complaint sets forth USACBI's mission on specific terms.  *See* ¶ 36.

In their attempt to in essence litigate a claim against USACBI, Plaintiffs continually reference statements made by USACBI or persons associated with it but now fail to set forth the language of the ASA Resolution itself [9] – the heart of the case. *See* proposed second amended complaint, ¶¶ 78 – 101; 117 – 122. This is a telling omission; the ASA's Resolution is specifically different from USACBI's Platform and those pronouncements of others set forth in the proposed complaint, and Plaintiffs know that.

On that point, the proposed Complaint shows what Plaintiffs' real motivation is in this lawsuit:  to challenge and threaten anyone or any organization who disagrees with Plaintiffs' position on the Israeli/Palestinian conflict.  Plaintiffs previously attempted to hide this motivation in their prior Complaints: the Resolution "was an overtly political act that was spearheaded by the individual defendants. *The larger political issues however highly charged, are not germane to the resolution of this lawsuit.*" Complaint and Amended Complaint, ¶ 2 (emphasis added).  The new proposal drops that pretext, and seeks to make the larger political issues the focus.

A trial court may deny a motion to amend the complaint if the amendment would result in undue prejudice to the opposing party.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Lover*, 248 F.R.D. at 324. The appellate courts have recognized that undue prejudice to a defendant may arise if an amendment would delay litigation or "expand[ ] the allegations beyond the scope of the initial complaint."  *Lover*, 248 F.R.D. at 322 (quoting *Paris v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999).   Prejudice has been found

---

[9] The prior Complaints did reference the ASA Resolution language.

likely where the expanded scope of the proposed amendment would require additional discovery. *Id.* The Court is well aware of the breadth of documents and information that the Plaintiffs have pursued against Defendants, including their demands for documents concerning the Defendants' affiliations with other organizations that promote academic boycotts. Defendants have produced nearly 17,000 documents over several months, most of which has consisted of email from and to the individual Defendants. There is little doubt that the Plaintiffs would, if permitted to amend the Complaint as proposed, seek the same broad categories of documents in the possession of Ms. Puar, Ms. Kauanui and Mr. Salaita, as well as any and all communication between any of the Defendants and these three individuals. As for the latter category of documents, all of this material could have been identified and reviewed previously, during the months of review of the Defendants' documents. If the proposed second amended complaint is permitted, Defendants' documents – particularly their email – will have to be reviewed again for such communication and other documents. The fact that the Plaintiffs took such pains to specifically identify Ms. Puar, Ms. Kauanui and Mr. Salaita in the original Complaint begs the question – why were they not added originally? One thing is clear, though - their absence in the original or the Amended Complaint was not because the Plaintiffs did not know of their identities or their roles relative to the Resolution. *See Societe Liz, S.A. v. Charles of the Ritz*, 118 F.R.D. 2 (D.C. Cir. 1987) (denying leave to amend, where court concluded that plaintiff had knowledge of the occurrences giving rise to the proposed amendments well before the motion, as well as knowledge of the proposed new defendants).

The Plaintiffs' prior Complaints make it clear that they had knowledge of these "new" parties, and their roles relative to the ASA's Resolution, at the time the original Complaint was filed.  The Plaintiffs are plainly aware of their need to explain the delay in proposing yet additional amendments and the addition of new parties – but their explanations do not indicate any more substantial basis for such claims than existed in April 2016. The true reason for these late additions is clear – it is an effort to ratchet up the pressure on the ASA and any other entity considering a similar resolution.

The prejudice caused by the additional discovery that will be necessitated by the addition of defendants and the undue delay in bringing these claims merits denial of the Motion.

## Conclusion

The Plaintiffs' proposed second amended complaint is a continuation of their public relations campaign through litigation, whose focus is not truly the well-being of the ASA, but punishment of persons and entities who dare take contrary positions regarding boycotts of Israeli academic institions. Moreover, the central focus of the proposed new complaint is a series of derivative claims, which the Court has already disallowed.  And however the Plaintiffs attempt to dress up their latest effort to lengthen and broaden this litigation, permitting the proposed amendment would add claims against parties about whom and about whose roles they have long known, to the distinct prejudice of the Defendants.  For these reasons, the Motion should be denied.

Respectfully submitted,


/s/_____
John J. Hathway, Esq. #412664
Thomas Mugavero, Esq. #431512
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036-5405
(202) 659-6800
jhathway@wtplaw.com
tmugavero@wtplaw.com
Attorneys for Defendants


Jeff C. Seaman, Esq. #466509
Whiteford, Taylor & Preston L.L.P.
7501 Wisconsin Avenue
Suite 700W
Bethesda, MD 20816
(301) 804-3610
jseaman@wtplaw.com