```
 1                 UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3    SIMON BRONNER,                )
      Derivatively on behalf        )
 4    of Nominal Defendant The      )   Civil No. 16-00740
      American Studies              )
 5    Association, et al.,          )
                                    )
 6          Plaintiffs,             )   Washington, D.C.
                                    )
 7       v.                         )
                                    )   October 3, 2017
 8    LISA DUGGAN, et al.,          )
                                    )
 9          Defendants.             )
      _____  )
10
              TRANSCRIPT OF STATUS CONFERENCE
11         BEFORE THE HONORABLE RUDOLPH CONTRERAS
               UNITED STATES DISTRICT JUDGE
12
              APPEARANCES:
13
      For the Plaintiffs:      JENNIFER GROSS, ESQ
14                             The Louis D. Brandeis Center for
                                  Human Rights Under Law
15                             1717 Pennsylvania Ave., NW
                               Suite 1025
16                             Washington, D.C. 20006
                                -and-
17                             JEROME M. MARCUS, ESQ.
                               Marcus & Auerbach LLC
18                             1121 N. Bethlehem Pike
                               Suite 60-242
19                             Spring House, Pennsylvania  19477

20    For the Defendants:      JOHN J. HATHWAY, ESQ.
                               Whiteford, Taylor & Preston L.L.P
21                             1800 M Street, NW
                               Suite 450N
22                             Washington, D.C.  20036
                                -and-
23                             JEFFREY C. SEAMAN
                               Whiteford, Taylor & Preston, LLP
24                             7501 Wisconsin Avenue, NW
                               Suite 700W
25                             Bethesda, MD 20814
```

```
 1
 2    Court Reporter:     PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                          U.S. Courthouse, Room 4700A
 3                        333 Constitution Avenue, NW
                          Washington, DC 20001
 4                        (202) 354-3243

 5
      Proceedings reported by stenotype shorthand.
 6    Transcript produced by computer-aided transcription.

 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2

3

1 P R O C E E D I N G S
2 (2:05 p.m.)
3 THE DEPUTY CLERK: This is Civil Action 16-740, Simon
4 Bronner, et al. versus Lisa Duggan, et al.
5 Counsel, please step forward to the podium and state
6 your appearances for the record.
7 MR. MARCUS: Jerome Marcus for the plaintiff, and my
8 co-counsel, Jennifer Gross.
9 THE COURT: Good afternoon. A more reasonably sized
10 contingency this time.
11 MR. MARCUS: We listen, Your Honor.
12 MR. HATHWAY: Good afternoon, Your Honor. John
13 Hathway and Jeffrey Seaman.
14 MR. SEAMAN: Good afternoon, Judge.
15 THE COURT: Good afternoon.
16 All right. What is the problem?
17 MR. MARCUS: We are here, Your Honor, because we
18 would like to file a motion to compel and our understanding
19 is that we need to file a motion for leave to do so. That is
20 our reason for requesting this.
21 THE COURT: All right. Tell me about it. Maybe we
22 can avoid the motion.
23 MR. MARCUS: Your Honor, there's quite a series of
24 issues. I don't know if Your Honor wants us to march through
25 them or perhaps Your Honor would like to refer us to a

1       magistrate.
2               They relate, I think, in general, at the 30,000-foot
3       level, to a series of different problems.  One is just no
4       deadline seems to hold; none.  Deadlines for getting back to
5       us, deadlines for production.  That is issue number one.
6               Issue number two is there are series of responses
7       that are not either yes, no, we have it, we don't have it, we
8       object.  They're ambiguous.  We don't know what to make of
9       them.  We requested clarification and have not received it.
10              Then, there are certain other requests where there
11      are actually objections which the defendants have told us
12      they intend to stick to with respect to which we wish to
13      move.
14              Then, there are other things where they have just not
15      given us things but they haven't formally objected.  And we
16      want, for example, and we have asked for their form 990s, and
17      they have either produced or stated a willingness to produce
18      990s but only with revenues, everything else redacted.  This
19      is a case about how money was spent.  Expenses I think would
20      be relevant.  They won't let us see them.  There are a series
21      of issues like that.  I'm happy to get down into the weeds if
22      Your Honor wishes and go issue by issue.
23              THE COURT:  Let's do that.
24              MR. MARCUS:  Okay.
25              THE COURT:  And with respect to the financial

1  information, is the objection that the protective order isn't
2  in place yet or goes beyond --
3              MR. MARCUS: No, because we have told the
4  defendants with respect -- "no" is the answer to Your Honor's
5  question.
6              THE COURT: Okay.
7              MR. MARCUS: I can explain, if Your Honor wishes.
8              THE COURT: Let's go in order, then.
9              (The court reporter requested Mr. Marcus to speak
10 slower)
11             MR. MARCUS: There are two different sets of
12 requests: One is to individual defendants and one was to the
13 American Studies Association as a defendant. With respect to
14 the individual defendants, I'm going to start with the things
15 last on my list first because it just troubles me the most.
16 One of the individual defendants is Sunaina Maira. She was
17 probably one of the most active participants in the acts that
18 are at issue in this case. We have provided a time period
19 within which we believe material should be produced. All
20 defendants have produced material for a broader period than
21 Ms. Maira. Ms. Maira has produced responses for a period
22 totaling about three weeks, cabined very tightly around the
23 actual vote. We know that there are responsive materials
24 that we have not received from her because she was a party to
25 e-mails that were also received by other defendants, and we

1  have gotten them from them.  Obviously, we have no way of
2  knowing if we received a complete production; I'm sure we
3  have not.  There is no objection as to why her material is
4  not relevant outside that tiny little band.  If there were an
5  objection, (a) it would be untimely, and (b) it would be
6  frivolous.  Therefore, we want that stuff.
7       I don't know if Your Honor wants to go --
8       THE COURT:  I do want to go back and forth on each
9  issue.
10      MR. SEAMAN:  Your Honor, Jeff Seaman for the
11 defendants.
12      Regarding Ms. Maira's documents, what I have
13 explained to counsel -- not to Mr. Marcus directly but his
14 co-counsel, Ms. Gross -- is that we recognize that there are
15 additional documents.  When we originally produced documents,
16 we got the contents of folders that our clients had
17 maintained themselves regarding this issue.  We recognize the
18 objections that counsel made about the production, and what I
19 have explained to counsel is that we have gone back to
20 Ms. Maira and other of the defendants, individual defendants,
21 and collected a large volume of additional e-mails to try to
22 net -- we cast a pretty broad net.  Because of that, it is
23 taking us a while.  What we have done right now is we have
24 collected -- I don't have an exact number for Your
25 Honor -- it's in the tens of thousands of e-mails.  And what

1         we have been --
2                 THE COURT:  Tens of thousands just for Ms. Maira or
3         total?
4                 MR. SEAMAN:  That's right, Your Honor, just for
5         Ms. Maira.
6                 We have decided that because of the cost and time
7         that has been involved in reviewing these documents, in my
8         answer -- and my response to this, Your Honor, is going to
9         have to touch on something that is going to have to come up
10        later, and that is about the protective order and the nature
11        of the protective order.  Because of the nature of a lot of
12        these emails and our concerns about security and safety of
13        some of the people who are participants in the e-mail chains,
14        we have had to pay close attention to what is relevant.  That
15        process of review for privilege and for relevance review has
16        required us to initiate technology-assisted review.  So we're
17        in that process right now.  So as I explained to counsel, we
18        think we would be able to have that production of Ms. Maira's
19        e-mails, the remaining portion of it, by October 16th, using
20        that process.
21                THE COURT:  Which is two weeks from today?
22                MR. SEAMAN:  Yes, Your Honor.  I believe it is two
23        weeks from yesterday.
24                THE COURT:  From yesterday, you're correct.
25                All right.  And October 16th is not soon enough for

1    you?

2           MR. MARCUS:  Well, I confess -- I'm troubled by a

3    couple of things, if I may.  One is there's some details with

4    respect to which I would be grateful if Your Honor would hear

5    Ms. Gross.  Before we get to those, number one, we told them

6    I thought the protective order issues were irrelevant.  I

7    thought the protective order issues were irrelevant because

8    we told the defendants that we will keep things "attorneys'

9    eyes only" until the protective order issue is resolved.  So

10   as far as I am concerned, there should be no basis for

11   withholding things or behaving differently.

12          (The court reporter requested Mr. Marcus to speak

13   slower)

14          MR. MARCUS:  There should be no basis for withholding

15   things or making a different kind of relevance assessment

16   because Your Honor is ultimately going to decide the

17   protective order issue.  It will be what it will be.  We will

18   all be governed by it.  That's that.  That's thing number

19   one.

20          Thing number two, this red herring of harassment and

21   safety is something that we have repeatedly asked for

22   evidence about.  The defendants have spoken about this.  We

23   issued a formal request about it.  We have asked about it on

24   the phone.  We have never, ever received a single so much as

25   a Post-It note evidencing --

1      THE COURT: That was covered in the protective order
2 papers.
3      MR. MARCUS: That's the protective order issue.
4      The last thing which troubles me -- and then I would
5 be grateful if the Court would hear from Ms. Gross, as
6 well -- is counsel just mentioned technology-assisted review,
7 by which I assume he means using search terms and having
8 electronic searches. And that's jolly except that we never
9 heard about it before.
10     The right way to do that is to prepare a list of
11 search terms and discuss them with co-counsel, and that has
12 not happened here. It comes back to the first thing that I
13 said, Your Honor, which is we are just on an endless hunt.
14 This never ends. So now they'll give us a list of search
15 terms, which they should have done at least when they started
16 producing in their own minds the list of search terms. They
17 have never raised the issue before. Now we'll have to
18 discuss it, etc., etc., etc.
19     Your Honor will recall, I know, that when Your Honor
20 set the schedule the last time, I said this is a schedule we
21 can live with if we get timely responses. This is the kind
22 of conduct which just never seems to end.
23     THE COURT: I hear you. My overall observation is
24 that the plaintiffs' side is driven in part by ideology;
25 defense counsel, from my observation, is an insurance defense

1   firm, and they are driven in part by costs.  The civil rules
2   tell me that we have to have proportionality.  So
3   October 16th sounds reasonable to me, but I do want to talk
4   about the search terms.
5           MR. SEAMAN:  Yes, Your Honor.
6           Does the Court want to know what search terms --
7           THE COURT:  No, no.
8           Have you developed search terms?  Have you done
9   searches?  Have you talked to the other side about those at
10  all?
11          MR. SEAMAN:  We have not.  Well, we have developed
12  search terms.  They're quite broad, which is one of the
13  problems.  I want to go back to earlier in the history of the
14  case.  It appears that there was not really a true -- there
15  wasn't a request for search terms, there wasn't a discussion
16  about search terms.  There were requests for documents.  We
17  have developed search terms that are quite broad.  I can
18  share them with the other side.  I'm happy to do that.  I'm
19  sure they will be satisfied.  They're very broad.
20          I would like to address Mr. Marcus' concern about
21  relevance review.  As Your Honor noted, proportionality is
22  now irrelevant.  It's always been.  But the new rules have
23  made it more prominent, and recognizing that we are using
24  technology-assisted review, it is a slightly different
25  process than I think what Mr. Marcus is referring to.  The

1  technology-assisted review that I'm referring to
2  is artificial intelligence.  We review a certain volume of
3  documents.  We feed it to the tool, to this tool.  It then
4  recognizes over the course of the tens of thousands of
5  documents, using that data set that we have given it in the
6  form of several thousands of documents, what is responsive.
7  That is what I'm referring to.  I'm not referring to search
8  terms when I'm talking about technology-assisted review.
9  That is the process we're referring to right now.  And using
10  that process, we can have those documents to the other side
11  by the 16th.
12       I don't know if that addresses everything the Court
13  wanted to hear about.
14       THE COURT:  I think it does for now.
15       I do want you to share the search terms with the
16  other side because better to get those fights over with
17  sooner rather than later.
18       MR. SEAMAN:  Very well.
19       THE COURT:  All right.  Go ahead.
20       MS. GROSS:  If I may briefly speak on that, Your
21  Honor may recall that we had asked numerous times for counsel
22  to meet with us over a discovery plan.  We could not get
23  them.  I have two months' worth of e-mails.  That is part of
24  the discovery plan.  It is also something that I would have
25  liked to have discussed with them with respect to an ESI

1 stipulation.  I could not get them to the table on that,
2 either.  By the time I finally served those discovery
3 requests, I did so without the benefit of what the rules
4 actually expect.  I would have liked to have talked about
5 search terms, but they never gave me the opportunity to do
6 that, and eventually I was running out of time with respect
7 to discovery.
8 　　　　　With respect to Ms. Maira -- and I understand all of
9 the points that have been made here -- but I just want to
10 clarify that she is probably the most important defendant.
11 And while I understand the balance and proportionality and so
12 forth, I don't think that it is necessarily a coincidence
13 that the defendant whose documents we need the most is
14 somehow the only one that we were not given a real production
15 for.  88 documents we received covering a 10-day span.  For
16 the other defendants, we received, for some, over a thousand,
17 into the thousands.  We received the time frame over a period
18 of years.  And at the time when we did not receive a full
19 production for Ms. Maira, I understood -- and we had a
20 conversation, counsel and I, at a deposition, about the fact
21 that this production was not complete and was it going to be
22 complete by the August 31st deadline -- I understood that
23 they have the documents in house, not that since they have
24 gone back and had to ask for more.  I think that there is a
25 reason why there is a delay in getting these documents, and

1       that is my real concern.

2               THE COURT:  Okay.  So produce her documents based on

3       what you have done already by October 16th, and then within

4       the next two weeks, I want both sides to sit down and discuss

5       the search terms as well as the artificial intelligence tools

6       that are being used.

7               Are they being used for all the defendants or just

8       for this individual?

9               MR. SEAMAN:  Your Honor, they're currently being used

10      just for this individual.  However, I anticipate that there

11      will be some additional for Mr. Marez.  We are going to do

12      the same thing with the additional volume we have collected

13      for Mr. Marez, but we can only do one at a time.

14              THE COURT:  All right.  Discuss it in the context of

15      both defendants or any defendants that this is being used

16      for.  I have never actually seen defense counsel use this

17      type of tool.  I have always seen plaintiffs in much larger

18      cases uses this type of tool, where the document volume is

19      much greater.  But the two sides should talk about that.

20      Everything else in this case has resulted in a fight, so I

21      assume that that will result in a fight, as well, and I will

22      decide it when it comes down the pike.

23              All right.  What's the next issue?

24              MR. MARCUS:  I think perhaps the next issue we should

25      address is the 990s.  Our claim relates to how money was