## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIMON BRONNER, et al., | |
| Plaintiffs, | |
| and SIMON BRONNER, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT, THE AMERICAN STUDIES ASSOCIATION, | Case No: 1:16-cv-00740-RC |
| Derivative Plaintiff, | |
| v. | |
| LISA DUGGAN, et al., | |
| Defendants. | |

## DEFENDANTS' BRIEF REGARDING SUBJECT MATTER JURISDICTION

Defendants, The American Studies Association, Sunaina Maira, Neferti Tadiar, Chandan Reddy, Lisa Duggan and Curtis Marez,[1] by undersigned counsel, submit this brief on the question of this Court's subject matter jurisdiction, in accordance with this Court's Opinion and Order dated March 6, 2018.

## Introductory Statement

The Court has directed that the parties file briefs addressing whether this Court has subject matter jurisdiction to hear this case. The answer to the question is no, for two fundamental reasons. First, the Second Amended Complaint ("SAC") makes no

---

[1] Avery Gordon is listed as a Defendant in the Second Amended Complaint; Ms. Gordon, however, was voluntarily dismissed from the case by the Plaintiffs. Defendants accordingly assume that her inclusion in the amended pleading is simply an error.

claim for money damages suffered by the individual Plaintiffs.  Rather, the Plaintiffs improperly alleged that they are entitled to damages incurred by the Association. However, since any derivative claims have already been dismissed, no such damages are recoverable, and Plaintiffs have thus failed to allege *any* damages that they might be claiming.

Second, even if Plaintiffs had requested money damages for themselves, which they have not, there is no possibility of any amounts being in controversy as a matter of law because the individual Defendants are shielded from money damages pursuant to the D.C. Nonprofit Corporations Act, D.C. Code §§ 29-406-31(d) and 29-406.90.  The Plaintiffs were required to allege and demonstrate that any exceptions to the protections under the Act do not apply.  As this Court has pointed out, they have failed to do so in the SAC and thus should not now be heard to argue otherwise.

For these reasons, it is a legal certainty that the Plaintiffs' claims do not meet the jurisdictional threshold for diversity jurisdiction under 28 U.S.C. § 1332, and thus this Court lacks subject matter jurisdiction over the case.

## Background

This case was initially filed in April 2016, and contained derivative claims as well as claims of *ultra vires* actions.  The Defendants filed a Motion to Dismiss on several grounds, including lack of subject matter jurisdiction.  The Court ultimately ruled on the Motion and disposed of the derivative claims and the *ultra vires* claims, though it found at that early stage of litigation that the Plaintiffs' allegations appeared sufficient to overcome the "legal impossibility" test for recoverable damages. On May 31, 2017,

the Defendants filed a Motion for Judgment on the remaining waste claim brought against the individual Defendants.  That Motion is currently pending.  On November 9, 2017 the Plaintiffs filed a Motion for Leave to File a Second Amended Complaint, which the Defendants opposed.  By its Order of March 6, 2018, the Court granted the Motion for Leave but raised questions about its own jurisdiction and requested briefing on the same.  The Court also stayed the case pending its decision on whether it has subject matter jurisdiction.[2]

As argued below, the SAC is 82 pages long and contains 244 paragraphs, but despite that volume, it fails to claim any money damages on behalf of the individual Plaintiffs.  Rather, it is alleged that "Plaintiffs are entitled to recover damages from the individual Defendants that The American Studies Association incurred as a result of (the Defendants' actions)."  *See* SAC ¶¶ 194, 197, 207, 215, 244.  Moreover, the only claim for damages in the "Prayer For Relief" section at the end of the SAC requests that Plaintiffs be awarded:  "… 6) Actual damages on behalf of The American Studies Association from the individual Defendants…"

<u>Argument</u>

The Supreme Court articulated the standard for finding subject matter diversity jurisdiction in *St. Paul Mercury Indemnity Co. v. Red Cab.*, 303 U.S. 283, 288-89 (1938). The Supreme Court there explained that if a plaintiff's claim is made in good faith, the sum claimed by the plaintiff controls, and it must appear to a legal certainty that the claim is

---

[2]     Plaintiffs have nonetheless served and/or attempted to serve the newly-added Defendants with process.

really for less than the jurisdictional amount to justify dismissal. However, the Court also instructed that

> . . . if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to that amount, . . . the suit will be dismissed.

*See also Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) (same).    While *Red Cab* concerned a case removed to federal court, the Court noted that where a case is originally instituted in federal court, the "plaintiff chooses his forum … [and] his good faith in choosing the federal forum is open to challenge …" 303 U.S. at 289 – 90.

The Plaintiffs here bear the burden of establishing the amount in controversy. *Khadr v. United States,* 529 F.3d 1115 (D.C. Cir. 2008)*; Rosenboro*, 994 F.2d at 17. Where a defendant has challenged a plaintiff's allegations concerning the jurisdictional amount – even an allegation that is sufficient from a pleading standpoint —"a factual issue emerges and the burden of establishing jurisdictional amount is thrust upon the claimant." *Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir. 1973); *see also Watkins v. Pepco Energy*, 2005 U.S. Dist. Lexis 16930, *6 (D.D.C. 2005) (dismissing for lack of jurisdiction).

Although the court reviews the complaint liberally when considering a challenge to subject matter jurisdiction, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions."  *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  The court may consider materials outside the complaint to determine its jurisdiction without the motion being converted into one for summary

4

judgment. *Settles v. U.S. Parole Comm'n*, 429 F. 3d 1098, 1107 (D.C. Cir. 2005); *Al-Owhali v. Ashcroft*, 279 F. Supp. 13, 21 (D.D.C. 2003).   *See also Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp.3d 1, 11 (D.D.C. 2014) ("A court may consider materials outside the pleadings to determine its jurisdiction. . . .  Under such circumstances, consideration of documents outside the pleadings does not convert the motion to dismiss into one for summary judgment.") (internal citations omitted)).

While all of the factual allegations contained in the complaint are assumed to be true, "mere conclusory allegations of jurisdiction" and "bald assertions of jurisdictional facts" are insufficient.   *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 617 (4th Cir. 2004) *rev'd on other grounds*, 546 U.S. 81 (2005).  Because federal courts are courts of limited jurisdiction and are empowered to act only in those instances authorized by Congress, there is a presumption against the existence of federal jurisdiction.   *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 336 (1895); *Roche, supra* 373 F.3d at 617.  Thus, in determining the existence of subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. §1322, the statute is to be strictly construed and all doubts are to be resolved against federal jurisdiction.  *See Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).

For multiple reasons, explained more fully below, it is a legal certainty that the Plaintiffs cannot meet the jurisdictional threshold required by 28 U.S.C. §1332.  The matter should accordingly be dismissed.

**A.      Plaintiffs Are Claiming Only Those Damages Allegedly Incurred by the Association, Which Are Not Available In This Case**

In general, the court looks to the damages claimed at the commencement of the case in determining jurisdiction.   *Red Cab, supra* 303 U.S. at 289 – 90.   However, as the Supreme Court has noted, "[t]he state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction … Thus, when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."   *Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 473, 127 S. Ct. 1397, 1409 (2007); *see also Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 18 (D.C. Cir. 2015).   One must, therefore, look to the Second Amended Complaint to determine whether there is jurisdiction.

Plaintiffs' SAC does not state a claim that rises to the $ 75,000 jurisdictional threshold for federal subject-matter jurisdiction.   While long on allegations as to how the Defendants allegedly hijacked the ASA nominating process, thereby "limiting nominations to individuals affiliated with USACBI" (SAC at 3, ¶ 5; *see also*, *e.g.*, at 16 ¶ 45), there is no allegation of any damages suffered by an individual Plaintiff.   They allege that the *Association* has lost "its good reputation and the good will that it had earned over more than six decades" (*id.* at 5, ¶ 9).   They also allege that, in order to build up support for the Resolution Boycott, Defendants:

--     "sought to bring Palestinian advocates from the Middle East – and to cover their expenses from the American Studies Association till" (*id.* at 31-32, ¶ 92);

6

-- "planned to pay for related expenses [for a "Rapid Response Team"], including the costs of public relations professionals, out of American Studies Association funds." (*id.* at 44, ¶ 122);

-- "commit(ed) a substantial part of the organization's efforts to influencing U.S. legislation" (*id.* at 55, ¶ 153);

As a result, the Association has allegedly lost revenue, incurred expenses and legal fees, (*see id.*, at 61-68). Certainly, Defendants deny these allegations; they are simply not accurate.[3] Interestingly, however, Plaintiffs admit that, despite over a year of discovery, they still have no evidence to determine whether funds were withdrawn from the ASA trust fund "specifically to cover expenses related to the Resolution."   *See* SAC ¶ 188.

By contrast, there are no allegations as to damages suffered by the Plaintiffs themselves.   Although the Plaintiffs allege that dues in general have increased – at most by $155/year – they do not allege that their own dues have increased, nor how much more they individually might have had to pay in dues (*id.* at 65-66, ¶ 185).[4] But even if they had experienced some increase in the dues they had to pay, their individual dues increases would have to amount to $75,000 per Plaintiff in order to meet the threshold. *Nat'l Consumers League v. Flowers Bakeries, LLC,* 36 F. Supp. 3d 26 (D.D.C. 2014) (citing *Snyder v. Harris,* 394 U.S. 332, 335, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969) for the

---

[3]     The Declaration of John Stephens, submitted with the original Motion to Dismiss, in which he explains that no ASA funds were used to support the Resolution, remains unrebutted.

[4]     Plaintiffs Bronner and Rockland are "honorary lifetime members" (SAC, ¶¶ 14, 15) and therefore presumably do not pay yearly dues.  Plaintiff Kupfer allowed his membership in ASA to lapse after 2014, so he does not pay any dues, either (*Id.*, ¶ 17).  Dues have not been claimed in Plaintiffs' initial disclosures.

longstanding principle that multiple defendants may not aggregate their claims to achieve the jurisdictional monetary threshold).   Such an increase is, as a legal certainty, not possible.

The Second Amended Complaint does allege that Mr. Bronner was "unceremoniously kicked out of the National Council meeting" (*id.* at 39, ¶ 109), and that Mr. Barton was not allowed to vote on the Resolution (*id.* at 46-7, ¶ 126).  They also allege – quoting from D.C. case law – that they "were affected by the alleged failure to follow the dictates of the constitution and the by-laws" (*id.* at 57, ¶ 161, 59, ¶ 167), and that they have suffered "significant economic and reputational damages" (*id.* at 73, ¶ 206; at 75 ¶ 214; 77-78 at ¶ 224).   It is established, however, that the party seeking federal jurisdiction must allege facts in support of such jurisdiction; conclusory statements alone do not establish the amount in controversy. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1044-45 (3rd Cir. 1993) ("person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation"); *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 763-64 (E.D. Mich.1990) (*cited in McGhee v. Citimortgage, Inc.*, 834 F. Supp.2d 708 (E.D. Mich. 2011)).

There are no facts set forth anywhere in the Second Amended Complaint that would assign a monetary value, either to Mr. Bronner's removal from the meeting or to Mr. Barton's inability to vote.   Nor, for that matter have Plaintiffs sought reputational damages in the *ad damnum* clause, nor were any such damages claimed in their disclosures.  With regard to dues, even if one were to assume that each of the Plaintiffs saw his dues increase by the maximum amount, their damages would amount to $155

8

per Plaintiff (the increase went into effect in 2017); as noted above, these cannot be aggregated.

Thus, even under the most generous reading of the scant factual allegations in the SAC, Plaintiffs have failed to allege *any* fact that would suggest damages in excess of $ 75,000.

Further, and notwithstanding any unsupported allegation by the Plaintiffs as to the extent of their injuries, the fact remains that subject matter jurisdiction cannot exist where there is a "legal certainty that the claim is really for less than the jurisdictional amount."  *See, eg., Trazell v. Wilmers*, 975 F. Supp. 2d 133, 150-51 (D.D.C. 2013) (dismissing case for lack of subject matter jurisdiction where D.C. law limited damages plaintiff could recover under consumer protection statute);  *Ham v. TJX Companies, Inc.*, 2018 WL 1143156 (D.D.C. 2018) (case dismissed for lack of jurisdiction where, although plaintiff claimed $500,000 in emotional damages in the complaint, she subsequently conceded that she could not prove damages greater than $5,000); *Baker v. Equity Residential Management*, 996 F. Supp. 2d 1 (D. Mass. 2014) (in class claim against landlord for breach of Massachusetts tenants' rights laws, court calculated total damages available to class members, determined that it could not amount to the threshold under state law, and concluded that defendant, who had sought to remove, had not "demonstrated a reasonable probability" that the amount in controversy was reached);  *see also State Farm Mut. Auto. Ins. Co. v. Powell*, 87 F.3d 93 (3rd Cir. 1996) (discovery that one of three insurance policies was not in effect at the time of the pertinent accident was not a "subsequent event," and thus could be considered in

determining whether subject matter jurisdiction existed); *FLF Inc. v. World Publications*, 999 F. Supp. 640 (D. Md. 1998) (cause of action for indemnity, which was necessary to meet jurisdictional threshold, not available under Maryland law and given the facts alleged).

In its March 31, 2017 Memorandum Opinion, the Court held that: (1) the Resolution Boycott did not constitute an *ultra vires* act; and (2) Plaintiffs could not state any derivative cause of action, because they had failed to comply with D.C. Code § 29-411.03.  As a matter of law, therefore, any damages that were not incurred by the individual Plaintiffs themselves were dismissed.  Too, while the Court did not dismiss Count Three (Waste), it did limit Plaintiffs' recovery to their individual claims.   That ruling remains the law of the case.  Where a determination of the amount in controversy is "entirely predicated on the Court's consideration of an issue that is barred by issue preclusion, the asserted basis for jurisdiction fails."   *Cuneo Law Group, P.C. v. Joseph*, 920 F.Supp.2d 145, 150 (D.D.C. 2013) (*citing Carlisle v. Matson Lumber Co.*, 186 Fed. Appx. 219, 227 (3d Cir.2006)); *see also Huber v. Taylor*, 519 F.Supp.2d 542 (W.D. Pa. 2007) (decision limiting plaintiffs' remedy to disgorgement of attorneys' fees was law of the case, and as such, plaintiffs could not reach the jurisdictional threshold).

Thus, any damages allegedly suffered by the Association, as opposed to the individual Plaintiffs, cannot be considered in attempting to reach the jurisdictional threshold because, as a legal certainty, Plaintiffs cannot recover such damages. As it happens, the only damages actually alleged and claimed in the Second Amended Complaint are derivative in nature – Plaintiffs seek those damages incurred "by the

American Studies Association."   Specifically, in Counts One, Two and Nine of the SAC, Plaintiffs claim "damages … that the American Studies Association incurred as a result of . . ." the alleged tortious activity.   In Counts Three, Four, Five, Six and Seven, Plaintiffs claim both "damages . . . incurred by the American Studies Association" and declaratory or injunctive relief.   Count Eight does not seek specific damages.   At no point in the SAC do the Plaintiffs make any claim for their individual damages.

It should also be noted that, under Rule 26(a)(1), Plaintiffs were required to disclose "a computation of each category of damages claimed …"   Their Initial Disclosures, filed in 2017, only listed damages for "loss of revenue by ASA" and "ASA funds expended," the evidence for which Plaintiffs claimed lay "exclusively in the hands of Defendants."   At no point since that date have they supplemented or amended these Initial Disclosures, despite their previous representations that such supplementation would be forthcoming.   By their own admissions, they are not seeking individual damages.

Finally, in their Prayer for Relief, Plaintiffs seek declaratory relief, injunctive relief, and "actual damages on behalf of the American Studies Association," as well as costs and attorneys' fees (*id.* at 82).   All of these monetary claims are derivative in nature: they explicitly inure to the benefit of the American Studies Association, not to the individual Plaintiffs.   Moreover, claims for declaratory and injunctive relief do not independently convey jurisdiction in the federal courts; rather, they are alternative remedies for which a pecuniary interest over $75,000 must be demonstrated.   *See, e.g.*, *Animal Legal Defense Fund v. Hormel Food Corp.*, 249 F. Supp.3d 53 (D.D.C. 2017).   Finally,

attorneys' fees are not counted towards the amount in controversy unless provided by contract or statute.   *Goldman v. Fiat Chrysler Automobiles US, LLC*, 211 F. Supp. 3d 322, 325 (D.D.C. 2016) (*citing Griffin v. Coastal Int'l Sec., Inc.*, No. 06–2246, 2007 WL 1601717, at *3 (D.D.C. June 4, 2007)).   As such, none of the claims for relief enunciated by the Plaintiffs represent recoverable monetary damages anywhere near the $ 75,000 jurisdictional threshold.

**B.   Plaintiffs Have Not Alleged Facts or Shown Proof that Would Enable Them to Overcome the Statutory Presumption of Non-Liability of the Individual Defendants for Money Damages**

Notwithstanding the absence of factual allegations as to the Plaintiffs' individual damages, subject matter jurisdiction in this Court must fail for a second reason: monetary damages are not available against the Defendants for their acts as directors and volunteers.

As the Court has noted, the Non-profit Corporations Act of the District of Columbia codifies a presumption of non-liability of directors of a non-profit corporation like the American Studies Association. *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1268 (D.D.C. 1993). D.C. Code § 29-406.31(a) outlines the protections against liability for directors of not-for-profit corporations generally.   Although none of the allegations in the SAC satisfy the limited exceptions in § 29-406.31(a), it is unnecessary to discuss these, for subsection (d) governs exceptions for directors of charitable corporations such as ASA.   That subsection states:

   . . .   (d)  Notwithstanding any other provision of this section, a director of a charitable corporation shall not be liable to the corporation or its members for money damages for any action taken, or any failure to take any action, as a director, except liability for:

(1)  The amount of a financial benefit received by the director to which the director is not entitled;

(2)  An intentional infliction of harm;

(3)  A violation of §  29-406.33; or

(4)  An intentional violation of criminal law.

In addition, the Act includes a broad provision concerning the non-liability of volunteers of a non-profit. D.C. Code § 29-406.90 provides, in pertinent part, as follows:

**(a)** For the purposes of this section, the term "volunteer" means an officer, director, trustee, or other person who performs services for the corporation and who does not receive compensation other than reimbursement of expenses for those services.

**(b)** Any person who serves as a volunteer of the corporation shall be immune from civil liability except if the injury or damage was a result of:

**(1)** The willful misconduct of the volunteer;

**(2)** A crime, unless the volunteer had reasonable cause to believe that the act was lawful;

**(3)** A transaction that resulted in an improper personal benefit of money, property, or service to the volunteer; or

**(4)** An act or omission that is not in good faith and is beyond the scope of authority of the corporation pursuant to this chapter or the corporate charter.[5]

*See also* 42 U.S.C. § 14503(a) (no volunteer shall be liable for harm caused if the volunteer was acting within the scope of his/her responsibilities, and the harm was not caused by willful, reckless or criminal misconduct, gross negligence, or conscious, flagrant indifference).   Because §29-406.90 provides an exception only for "willful

---

[5]      Subsection (c) of the statute indicates that the section applies only if the non-profit corporation maintains liability insurance with a limit of coverage of not less than $200,000 per individual claim and $500,000 per total claims that arise from the same occurrence.  In that regard, see attached **Exhibits A, B** and **C**, certificates showing that the ASA maintained liability insurance above the minimum requirements.

misconduct," it provides greater protection than the federal statute, and is not preempted. *See, e.g., Waschle v. Winter Sports, Inc.*, 127 F.Supp.3d 1090, 1093-4 (D. Mo. 2015).

In this regard, Plaintiffs have alleged that all Defendants were members of the National Council (SAC ¶196). With regard to Executive Director John Stephens, the ASA Bylaws clearly state that he is a member of the National Council; under the Act, therefore, he was a "director" (*see* §29-401.02 (9)): "director" is defined as "an individual designated, elected, or appointed, by that or any other name or title, to act as a member of the board of directors, while the individual is holding that position").

These statutes create presumptions which, based on the allegations in the SAC, the Plaintiffs simply cannot overcome.[6] First and foremost, the Plaintiffs have alleged none of the exceptions to the statutory presumptions of non-liability contained within §29-406.31(d). There are no allegations within the SAC of (1) any financial benefit received by any director; (2) an intentional infliction of harm; (3) any violation of §29-406.33 (unlawful distributions); or (4) of an intentional violation of criminal law.

Moreover, regarding the "intentional infliction of harm" exception, although the Plaintiffs continue their effort to make what amount to derivative claims, they are barred from doing so for the reasons articulated by the Court in its Memorandum

---

[6]     When considering the basis for diversity jurisdiction, "the federal courts must defer to state law, or in this case the law of the District of Columbia, in order to determine the nature and extent of the right plaintiff is seeking to enforce." *Fletcher v. Friendship Arms*, 2016 U.S. Dist. LEXIS 152617, *3 quoting *Fed. Fire Prot. Corp. v. J.A. Jones/Tompkins Builders, Inc.*, 267 F. Supp. 2d 87, 90 (D.D.C. 2003).

Opinion of March 31, 2017 (Document 28).  Thus, no matter what harm Plaintiffs might think they have alleged has been brought upon ASA, such could not provide a basis for diversity jurisdiction in this case, in which the only Plaintiffs, and the only parties whose damages are to be considered, are four individual members of the ASA.  As discussed above, the Plaintiffs have not alleged that the Defendants acted with the intent to harm the Plaintiffs individually.  And again, even if they had made such allegations, they have not provided any indication of what monetary damage, if any, they have suffered.

Put simply, even after production of nearly 26,000 documents and a corporate deposition of the ASA, the Plaintiffs cannot allege that the Defendants acted with the intent to harm the ASA, let alone themselves individually.  Accordingly, it is a legal certainty that the Plaintiffs cannot establish liability of the director Defendants.

Plaintiffs have alleged in the SAC that all Individual Defendants were members of the National Council (see, e.g., SAC ¶¶196, 201), and Plaintiffs are thus bound by their allegations. *See Henthorn v. Dept. of Navy*, 29 F. 3d 682, 688 (D.C. Cir. 1994) (plaintiffs may not contradict in memoranda the allegations made in the complaint). The decision concerning whether the Individual Defendants could be liable to Plaintiffs is therefore governed by §29-406.31.

In the "Parties" section of the SAC, the Plaintiffs did not specifically identify Drs. Tadiar and Puar as members of the National Council, and although Plaintiffs are bound by their claim that all Individual Defendants are members of the National Council (and therefore "directors"), even if Plaintiffs had not identified Drs. Tadiar and Puar as

directors, the Plaintiffs would nonetheless be unable to establish their liability under the "volunteer statute."

Arguing in the alternative – that Defendants Tadiar and Puar do not fall within §29-406.31 as directors – in that case, Plaintiffs do not offer any explanation as to how Drs. Tadiar and Puar would have had the authority to take the allegedly improper official acts – such as "invading the trust fund" or preventing Plaintiff Barton from voting, etc. – that gave rise to this lawsuit.   Their involvement in the Resolution, therefore, would seem to be tangential at best.   Moreover, even if they had not been alleged to be directors, they could still only be held liable under specific and unusual circumstances defined in § 29-406.90 or 42 U.S.C. § 14503 ("the volunteer statutes") -- which circumstances are not alleged in the Second Amended Complaint.

Thus, and assuming *arguendo* that Tadiar's and Puar's positions did not bring them within the director's statute, their positions as volunteers within ASA demand similar presumptions of non-liability with similarly narrow exceptions. In order to establish liability of these two Defendants, the Plaintiffs must prove one of the exceptions in one of the volunteer statutes.   The allegations against Defendants Tadiar and Puar fail to meet any of the exceptions.

First, there is no allegation that either Defendant committed any criminal acts, and thus the Plaintiffs cannot establish liability under § 29-406.90(b)(2).   Nor is there any allegation of an improper personal benefit of money, property or service to Dr. Tadiar or Dr. Puar; accordingly, Plaintiffs cannot establish the exception of (b)(3).

Regarding subsection § 29-406.90(b)(4), although the Plaintiffs suggest bad faith by all Defendants, none of the alleged acts by Dr. Tadiar or Dr. Puar exceed the scope of the charter of the American Studies Association.  With regard to Dr. Tadiar, the SAC's allegations are vague and uniquely lacking in substance.  The most specific allegation against Dr. Tadiar is that, using her roles on the programming committee and the activism and community caucus, she "was a leader of the movement . . . to adopt the USACBI Platform . . . ."  SAC, ¶20.  As the Court has previously noted, the manifestation of that alleged adoption of the "USACBI Platform" – the Resolution – was not an *ultra vires* act.  Memorandum Opinion (Document 28), pp. 29 – 35.  Dr. Tadiar's involvement in the "movement" to adopt the platform thus did not exceed the scope of the ASA's charter any more than did the Resolution itself. Plaintiffs' claims against Dr. Tadiar necessarily fail under subsection (b)(4).

Nor can Plaintiffs demonstrate liability of Jasbir Puar in light of subsection (b)(4). The allegations against Dr. Puar are that, as a member of the nominating committee, she acted to "stack" the National Council with people whose viewpoints were pro-boycott. Plaintiffs hang their collective hat in this regard on ASA bylaws provision (formerly a provision of the ASA constitution) that "[n]ominees shall be representative of the diversity of the association's membership." *See* SAC, Count Three.   What Plaintiffs ignore, however, is that the term "diversity" is fully defined at Article V, Section 2:

> . . . The chair(s) when preparing recommendations for Committee members shall choose the best qualified members consistent with reasonable representation of the major fields of American Studies scholarship and the diversity of the association's membership **in order to maintain a balance of age, racial, ethnic, regional, and gender participation**.  (Emphasis added)

Like any other contract provision, Section 2 is interpreted according to its plain language. *Daley v. Alpha Kappa Alpha*, 26 A.3d 723, 731 (2011) (bylaws are a contract between organization and its members); *Clark v. Mutual Reserve Fund Life Assoc.*, 14 App. D.C. 154 (1899) (corporate constitution and bylaws are part of the contract between the corporation and its members); *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013) (interpretation of contract is a question of law; granting motion to dismiss on basis of contract interpretation). *BSA 77 P St. LLC v. Hawkins,* 983 A.2d 988, 993 (D.C. 2009) (interpretation must follow what a "reasonable person in the position of the parties would have thought the disputed language meant").  To claim that maintaining "diversity" on the National Council required nominating candidates with different viewpoints on the Israel/Palestine conflict is not only unreasonable but absurd.

Plaintiffs' claims against Jasbir Puar rest upon the conclusion that the "diversity of the association's membership" encompasses issues as granular as members' opinions on the issue of a boycott against Israeli academic institutions.  Taken to its logical conclusion, Plaintiffs' interpretation of "diversity" would require that there be differences of opinion on the Council *about virtually any and every subject or issue that might possibly arise.*[7]

---

[7]   Plaintiffs note, SAC at ¶52 that, before June 2012, no members of USACBI leadership had served on the National Council or Executive Committee, nor had any ever been nominated for President.  Using Plaintiff's strained interpretation of "diversity," then, ASA leadership had not previously been sufficiently "diverse," because it did not include members who agreed with the USACBI on the issue of a resolution.

Plaintiffs' tortured interpretation of the term "diversity" is unreasonable and inconsistent with the definition of the term elsewhere in the bylaws. Their contention that Defendant Puar, or any other member of ASA, was required to make sure that opponents of the Resolution were represented on the National Council is nonsensical. Put another way, the Plaintiffs have not alleged an act by Defendant Puar that exceeds the scope of the ASA's charter.

Regarding subsection (b)(1) of the statute – willful misconduct – the Plaintiffs' allegations do not indicate, and indeed, are inconsistent with the definition of "willful misconduct."[8] "Willful misconduct," in the District of Columbia, means wrongful conduct *intended to cause harm*. *Copeland v. Baltimore O.R. Co.*, 416 A.2d 1, 3-4 (D.C. 1980). The D.C. Circuit has explained the concept similarly:

> . . . besides showing that the defendant intends the act which ultimately causes the harm, a plaintiff must prove that the defendant was subjectively aware of the consequences of his act – not necessarily that it would cause the exact injury, but at least that it was certainly likely to cause an injury to plaintiff.

*Saba v. Compagnie Nationale*, 78 F.3d 664, 668 (D.C. Cir. 1996)

As previously discussed, however, Plaintiffs have no viable derivative claims, and thus they are not in a position to claim that Defendants Tadiar and/or Puar acted to intentionally injure the ASA. They certainly have not included any allegation in the SAC that Defendants Tadiar or Puar acted with the intention to injure Plaintiffs individually, or in a manner "certainly likely" to injure these Plaintiffs.

---

[8]     Again, since the DC statute provides greater protection than the federal law, it is not preempted, and its more limited exception applies here.

The harm of which Plaintiffs complain is neither to themselves nor to ASA – rather, but to the State of Israel.  *See* SAC, ¶ 1: Defendants seek "to delegitimize the State of Israel in the world community;" ¶ 6: the stated goal of USACBI is to reject "any two-state solution to the conflict, and demand the full 'right of return' …" of claimed Arab descendants, thereby bringing "the end of Israel as a Jewish state …;" ¶ 38: the founder of USACBI "believes that the end of the state of Israel as a Jewish state is the proper outcome."   Imagined or not, such fears cannot work to overcome the protections of § 29-460.90: there is still no allegation that any of the Defendants intended to harm intended either the individual Plaintiffs or ASA.

Nothing in the Second Amended Complaint, therefore,  alleges that any of the Defendants acted with the *intention of causing harm* to the Plaintiffs individually, much less the American Studies Association.   The Non Profit Corporations Act thus creates a barrier to the Plaintiffs' action against the individual Defendants, which, based upon the allegations of the SAC, it is clear Plaintiffs cannot overcome.  Simply put, Plaintiffs have no legally cognizable monetary claim against the Defendants here.

## CONCLUSION

As discussed more fully above, it is a legal certainty that the Plaintiffs cannot meet the jurisdictional threshold for subject matter diversity jurisdiction against the Defendants.   They have failed to allege any fact that would suggest a monetary amount of damages that they are claiming, much less that their claims exceed $ 75,000.   Further, as a matter of law they cannot claim any damages on behalf of the ASA, as all derivative actions have previously been dismissed.  Nothing in the Second Amended Complaint

suggests that any of the individual Plaintiffs have suffered any cognizable damages. Finally, Plaintiffs have not articulated any cognizable claim for damages against the individual Defendants, who enjoy protection from damages claims under the D.C. Code.

For these reasons, it is a legal certainty that the Plaintiffs cannot demonstrate any viable claim for damages in excess of $75,000.   Accordingly, this Court lacks subject matter jurisdiction over the matter, and this case must be dismissed.

Respectfully submitted,

/s/_____
John J. Hathway, Esq. #412664
Thomas Mugavero, Esq. #431512
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036-5405
(202) 659-6800
jhathway@wtplaw.com
tmugavero@wtplaw.com

/s/_____
Jeff C. Seaman, Esq. #466509
Whiteford, Taylor & Preston L.L.P.
7501 Wisconsin Avenue
Suite 700W
Bethesda, MD 20816
(301) 804-3610
jseaman@wtplaw.com