**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON, <br><br> Plaintiffs, <br><br>v. <br><br> LISA DUGGAN, CURTIS MAREZ, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, and THE AMERICAN STUDIES ASSOCIATION, <br><br> Defendants. | Case No. 16-cv-00740-RC |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF ON THE
EFFECT OF D.C. CODE § 29-406.31(d) ON THE AMOUNT IN CONTROVERSY**

## <u>TABLE OF CONTENTS</u>

I. BACKGROUND ............................................................................................................ - 1 -

II. SECTION 29-406.31, AN AFFIRMATIVE DEFENSE THAT HAS NOT BEEN PLEAD
NOR PROVEN, CANNOT STRIP THIS COURT OF SUBJECT MATTER
JURISDICTION. ........................................................................................................ - 3 -

   A.   Exculpation Under § 29-406.31(d) Is an Affirmative Defense and Does Not Provide a
Basis for Dismissal ............................................................................................................. - 4 -

   B.   Defendants' Attempt to Shift the Burden of Pleading and Burden of Proof to Plaintiffs
Fails. ................................................................................................................................... - 6 -

   C.   Claims Against the Original Defendants Cannot Be Dismissed on the Basis of an
Affirmative Defense They Have Not Plead .................................................................... - 10 -

III. DEFENDANTS DID NOT AND CANNOT POSSIBLY SHOW THAT "THE FACTS
THAT GIVE RISE TO THE DEFENSE ARE CLEAR FROM THE FACE OF THE
COMPLAINT." ....................................................................................................... - 14 -

IV. NUMEROUS UNRESOLVED AND DISPUTED FACTUAL ISSUES PRECLUDE
DISMISSAL ON THE BASIS OF § 29-406.31(D). ............................................. - 16 -

   A.   Defendants Did Not and Cannot Show that Certain Defendants Are or Were Directors of
the ASA. ........................................................................................................................... - 17 -

      1.   According to the ASA's Own Documents, Most of the National Council, Including
Defendants Maira, Tadiar, Kauanui, Puar, and Salaita, Are Not and Were Not Directors of
the ASA. ........................................................................................................................... - 18 -

      2.   D.C. Code § 29-406.31(d) Clearly Does Not Exculpate Defendants Who Are Not and
Never Have Been Directors. ............................................................................................ - 21 -

      3.   Defendant Stephens Is Not Covered by § 29-406.31(d) ........................................ - 23 -

   B.   Defendants Did Not and Cannot Show that Certain Defendants Were Directors at the
Time of the Acts Underlying the Claims Alleged Against Them. ..................................... - 25 -

   C.   Defendants Did Not and Cannot Show that Defendants that Served as Both Officers and
Directors Are Exculpated by § 29-406.31(d). ................................................................ - 26 -

   D.   The Acts Alleged in the Complaint Were Not Made by Directors, "as Directors." .... - 27 -

   E.   The Complaint Alleges Intentional Infliction of Harm. ............................................. - 28 -

**V.DEFENDANTS' LAST MINUTE ATTEMPT TO INVOKE § 29-406.90 FAILS ON MULTIPLE GROUNDS.................................................................................................... - 29 -**

   A.   Defendants Cannot Rely on Insurance Coverage After They Explicitly Denied Having Any Insurance in Open Court, in Required Disclosures, and Throughout this Litigation... - 30 -

   B.   Defendants Fail to Produce Insurance Policies that Cover the Claims Here............... - 32 -

   C.   Defendants Failed to Plead § 29-406.90, an Affirmative Defense. ............................ - 33 -

   D.   Defendants Did Not and Cannot Show that § 29-406.90 Applies. ............................. - 34 -

**VI.DEFENDANTS'ARGUMENTS THAT THE COURT SHOULD DENY *JURISDICTION* BECAUSE (THEY WRONGLY ASSERT) THE CLAIMS WILL FAIL ON THE *MERITS* ARE INAPPOSITE AND INAPPROPRIATE. .................................. - 37 -**

Plaintiffs Simon Bronner, Michael Rockland, Michael L. Barton, and Charles D. Kupfer (collectively, "Plaintiffs"), hereby submit this response to the Supplemental Brief Regarding Subject Matter Jurisdiction (Dkt. 85, "Defendants' Brief"), submitted by certain defendants in this case:  Sunaina Maira, Neferti Tadiar, Chandan Reddy, Lisa Duggan, and Curtis Marez, and the American Studies Association ("ASA").[1]

## I.     **BACKGROUND**

This Court instructed the parties to submit briefing ("Supplemental Briefs") to discuss "the impact that D.C. Code § 29-406.31(d) may have on this Court's subject matter jurisdiction," specifically its impact on whether the claims in this case satisfy the $75,000 minimum required for diversity jurisdiction under 28 U.S.C. § 1332(a). (Opinion Granting Plaintiffs Motions' for Additional Time to Add Parties and Leave to File Second Amended Complaint ("Opinion"), Dkt. 80, at 18.)  Both parties submitted the Supplemental Briefs on April 5, 2018.

The brief Defendants submitted in response to this directive (hereinafter Defendants' Br.) barely addresses § 29-406.31(d).  (*See* Def. Supp. Br. at 12-15.)  Rather than provide any meaningful analysis of the actual question posed by the Court, Defendants' Brief (1) presents a

---

[1] There are currently ten defendants in this case – the six defendants listed above ("the Original Defendants") who were named in the First Amended Complaint ("FAC") and the four defendants added by the Second Amended Complaint ("SAC"):  John Stephens, Steven Salaita, Jasbir Puar, and J. Kehaulani Kauanui ("the New Defendants").  All of the New Defendants but Kauanui have been served, and extensive efforts have been taken to serve Defendant Kauanui.  No Notice of Appearance has been filed for any of the New Defendants, however, counsel for the Original Defendants informed Plaintiffs' counsel that they represent John Stephens in this action.

Avery Gordon is listed in the caption of the SAC although she was voluntarily dismissed from the case. This was not an "error," as Defendants claim.  (Def. Br. at n.1.)  Plaintiffs filed the SAC (as a proposed amended pleading) with the Motion for Leave *before* Ms. Gordon was voluntarily dismissed from the case.

- 1 -

new affirmative defense, and (2) finds *jurisdiction* lacking because the Court should dismiss the claims on the *merits*.

Rather than answering this Court's question about § 29-406.31(d), Defendants' Brief raises, for the very first time, arguments about D.C. Code § 29-406.90. In their submission, they claim § 29-406.90 exculpates from liability even those Defendants that are not directors. Because § 29-406.90 only applies where the non-profit entity maintains liability insurance, *Defendants also now claim for the first time that the ASA maintains insurance – in direct conflict with defense counsel's explicit denial that coverage existed – a denial made to the bench in open court and Defendants' Initial Disclosures*.

One independently dispositive reason why Defendants are wrong about § 29-406.90 is that it appears Defendants were telling the truth in these statements, as we show, *infra* at section V.B. Defendants' argument about subsection § 29-406.90 also fails for the entirely separate reason that willful and intentional acts are simply not covered by § 29-406.90. The operative complaint alleges numerous such willful and intentional acts, and those allegations are already well-supported by evidence Defendants have produced in discovery.

Defendants' Brief also includes extensive arguments on the *merits* of the claims set forth in the SAC – arguments that are entirely unrelated to § 29-406.31(d) and the valuation of the matter in controversy, and far outside the scope of argument that the Court ordered the Parties to brief. Indeed, this Court clearly stated in the Opinion that it would not rule on Defendants' Motion for Judgment on the Pleadings (which moves for dismissal of the waste claim brought in the FAC) until *after* it determined the effect of § 29-406.31(d) on the amount in controversy and thus its own jurisdiction. (Opinion at 5 n.1.) And, rejecting Defendants' arguments opposing the Motion for Leave that the amendment would be futile, the Court again clearly held that if

Defendants sought to raise the same arguments again, they should do so in a "motion to dismiss or for summary judgment." (Opinion at 13.)

Defendants ignored all of these instructions of the Court, and instead argued, at length, that the Court should simply dismiss the claims on the merits. To support their misplaced arguments, Defendants misstated the applicable standards, misrepresented relevant substantive case law, and made easily disproven false statements about the SAC. Plaintiffs identify and correct these misstatements below.

What Defendants did not do is show (or even try to show) that § 29-406.31(d) eliminates liability for monetary damages from all of the Individual Defendants in this case; much less that damages from the ASA and non-monetary damages from all defendants is insufficient to reach the 28 U.S.C. § 1332(a) requirement.

## II.     SECTION 29-406.31, AN AFFIRMATIVE DEFENSE THAT HAS NOT BEEN PLEAD NOR PROVEN, CANNOT STRIP THIS COURT OF SUBJECT MATTER JURISDICTION.

There is no question that § 29-406.31(d) provides an affirmative defense. As discussed below, dismissal on the basis of an affirmative defense – and particularly, dismissal of a lawsuit for lack of jurisdiction because of an affirmative defense – is almost never appropriate. Many jurisdictions explicitly refuse to even consider motions to dismiss based on exculpation provisions such as § 29-406.31(d) – that is the majority rule. Other courts refuse to consider any affirmative defenses for purposes of assessing the amount in controversy.

Like all affirmative defenses, it is Defendants' burden to *plead* § 29-406.31(d) as a defense, and Defendants' burden to *show* that the elements of the defense are established. Defendants have utterly failed to meet their burden. As shown below, the Original Defendants' failure to plead the affirmative defense forecloses dismissal of claims against them on the basis

of § 29-406.31(d).  However, even if Defendants had pled the affirmative defense that they claim exculpates every one of them, it is their burden to show that the defense is established on the face of the complaint, and that any potential argument in opposition is also foreclosed by the complaint.  Defendants cannot show that this standard is met with respect to ***any*** of the claims against ***any*** of the individual defendants, much less all.

A.      <u>Exculpation Under § 29-406.31(d) Is an Affirmative Defense and Does Not Provide a Basis for Dismissal.</u>

Provisions that exculpate directors from liability, including § 29-406.31(d), are clearly affirmative defenses and are routinely treated as such.  *Arrowsmith v. Mallory (In re Health Diagnostic Lab., Inc.)*, Nos. 15-32919, 16-03271, 2017 Bankr. LEXIS 2230, at *69-70 (Bankr. E.D. Va. Aug. 9, 2017) (Court "need not assess the merits of these arguments in the context of the Motions to Dismiss, as exculpation under Va. Code Ann. § 13.1-692.1(B) is an affirmative defense"); *Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 561 (D. Del. 2008) ("Delaware state courts characterize a § 102(b)(7) charter provision as in the nature of an affirmative defense");  *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693, 752 (Del. Ch. 2005) ("An exculpation provision such as that authorized by § 102(b)(7) is in the nature of an affirmative defense"); *O'Toole v. McTaggart* (*In re Trinsum Grp., Inc.*), 466 B.R. 596, 620 (Bankr. S.D.N.Y. 2012) ("exculpation . . . is an affirmative defense, and the director seeking application of the section has the burden to establish entitlement to its protection").

Affirmative defenses are very rarely, if ever, appropriate bases for dismissal: ***only where every fact required to establish every element of the affirmative defense – including the absence of any applicable exception – is established "with certitude" by the complaint itself*** or other allowable sources can a claim be dismissed on the basis of an affirmative defense.

*Notinger v. Costa* (*In re Robotic Vision Sys.*), 2007 BNH 31, 374 B.R. 36, 44-45. "Dismissing a case under Rule 12(b)(6) on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Id.*, *citing Nisselson v. Lernout,* 469 F.3d 143, 150 (1st Cir. 2006), *cert. denied,* 127 S. Ct. 2131, 167 L. Ed. 2d 863 (2007), and rejecting affirmative defense; *Davis v. District of Columbia*, 949 F. Supp. 2d 1, 9 (D.D.C. 2013) ("That is an affirmative defense on which the District bears the burden of proof, *see Segar* [*v. Smith*, 738 F.2d [1249, 1298 (D.C. Cir. 1984)], and therefore inappropriate on a motion to dismiss unless "the facts that give rise to the defense are clear from the face of the complaint. *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578, 332 U.S. App. D.C. 182 (D.C. Cir. 1998)";

It is impossible to establish that level of certitude where the defense rests on a factual issue, as § 29-406.31(d) clearly does (and particularly as applied here). *See Billups v. Lab. Corp. of Am.*, 233 F. Supp. 3d 20, 23 (D.D.C. 2017) ("[Defendant] invokes the statute of limitations as an affirmative defense. . . . '[T]he court should be cautious in granting a motion to dismiss on such grounds,' however, 'because statute of limitations defenses often are based on contested facts.' *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014). '[D]ismissal is appropriate only if the complaint on its face is conclusively time-barred.' *Id.*").

For exactly this reason, ***courts generally refuse to even entertain dismissal on the basis of exculpation provisions***. *See In re Health Diagnostic Lab.*, 2017 Bankr. LEXIS 2230 at *69-70 ("[Defendants] argue that the Breach of Fiduciary Duties Counts should be dismissed because they are entitled to exculpation under Va. Code Ann. § 13.1-692.1(B). The Court need not assess the merits of these arguments in the context of the Motions to Dismiss, as exculpation under Va.

Code Ann. § 13.1-692.1(B) as an affirmative defense. *See In re LandAmerica Fin. Group, Inc.*, 470 B.R. at 785."); *Wolford*, 554 F. Supp. 2d at 561 ("Because a section 102(b)(7) provision is in the nature of an affirmative defense and following the statement of the Third Circuit that such defenses will generally not form the basis of a Rule 12(b)(6) dismissal, defendants' motion to dismiss the duty of care claims is denied"); *In re Tower Air, Inc.*, 416 F.3d 229, 238, 242 (3d Cir. 2005) ("the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)"); *In re The Brown Schools*, 368 B.R. 394, 401 (Bankr. D. Del. 2007) (denying motion to dismiss because the "exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at this stage," *citing Tower Air*, 416 F.3d at 238, 242); *see also In re TASER Int'l Shareholder Derivative Litig.*, 2006 U.S. Dist. LEXIS 11554, 2006 WL 687033, at *19 (D. Ariz. Mar. 17, 2006) (same); *Fleet Nat. Bank v. Boyle*, 2005 U.S. Dist. LEXIS 44036, 2005 WL 2455673, at *15 (E.D. Pa. Sept. 12, 2005) (rejecting exculpation provision as basis for dismissal, because "affirmative defenses generally will not form the basis for dismissal").

      **B.**    <u>**Defendants' Attempt to Shift the Burden of Pleading and Burden of Proof to Plaintiffs Fails.**</u>

This Court asked the parties to brief one, specific issue: whether D.C. Code § 29-406.31(d) precludes liability for monetary damages against the Individual Defendants, and, if so, whether the amount in controversy requirement is met. Yet very little of Defendants' Brief actually addresses § 29-406.31(d). The few paragraphs that do address § 29-406.31(d) begin with spurious assertions of a "presumption of non-liability" that the "Court has noted," under the heading, "Plaintiffs Have Not Alleged Facts or Shown Proof that Would Enable Them to

Overcome the Statutory Presumption of Non-Liability of the Individual Defendants for Money Damages." (Def. Br. at 12.)

The entire premise of Defendants' argument is quite simply wrong. ***D.C. Code § 29-406.31(d) provides an affirmative defense that Defendants must plead and prove, not a "statutory presumption of non-liability" that Plaintiffs must explicitly rebut and disprove in the complaint.*** *See Caribbean Broad. Sys. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998) ("To be sure, CBS had no obligation to make specific allegations relevant to personal jurisdiction in its complaint because lack of personal jurisdiction is an affirmative defense and so must be raised by the defendant"); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9 (D.D.C. 2016) ("Failure to exhaust administrative remedies is an affirmative defense. . . . Defendants can meet their burden of pleading and proving a failure to exhaust at the motion-to-dismiss stage by using the pleadings and undisputed documents in the record"); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"); *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 254 (D.D.C. 2015) ("because the Court cannot determine such matters conclusively from the face of the complaint, the motion to dismiss all claims as untimely must be denied").

The remainder of Defendants' (very brief) argument addressing § 29-406.31(d) revolves around Plaintiffs' so-called failure to overcome this imaginary pleading hurdle. Yet Defendants do not provide a single citation to support the assertion that § 29-406.31(d) is a presumption that must be rebutted – or even acknowledged – in the Plaintiffs' complaint.[2]   There is no shortage

---

[2] The one case they cite, *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1268 (D.D.C. 1993) is entirely inapposite. *Washington Bancorporation* precedes the adoption of § 29-406.31(d) – so it certainly

of cases that apply exculpation provisions such as § 29-406.31(d), however, ***Defendants' Brief does not cite a single case involving § 29-406.31 or the exculpation statute of any other jurisdiction*. Nor does Defendants' Brief even mention the term "affirmative defense" – not one, single time.**

In the unique procedural context of these supplemental briefs, the respective burdens of the pleading and of proof are not purely academic – they matter. Defendants can only begin to argue that the court lacks jurisdiction if they can show, with certainty, that § 29-406.31(d) exculpates *each* Individual Defendant from liability for monetary damages for *every* claim against him or her. This is an extremely high burden that Defendants simply cannot meet, so instead they mislead the Court on the law, and argue that Plaintiffs must not only plead around their affirmative defense, but even prove that the affirmative defense does not apply, or the case should be dismissed, wholly misrepresenting the law governing affirmative defenses at the pleading stage. Contrary to all precedent, Defendants' Brief argues:

> Plaintiffs were required to allege and demonstrate that any exceptions to the protections under the Act [§ 29-406.31(d)] do not apply. As this Court has pointed out, they have failed to do so in the SAC and thus should not now be heard to argue otherwise.

(Def. Br. at 2.) ***This is a bold misstatement of both the law and the Court's holding. Plaintiffs are clearly not required to plead exceptions to § 29-406.31(d)***, and this Court never held that

---

does not hold that the statute, which did not exist at the time, "codifies a presumption of non-liability of directors of a non-profit corporation" as Defendants claim. (Defendants' Brief at 12.) *Washington Bancorporation* only recognizes the business judgment rule, which is irrelevant here, because "the business judgment rule will not apply where there is a breach of the duty of loyalty." *Armenian Assembly of Am., Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 39 (D.D.C. 2010), citing *Willens v. 2720 Wis. Ave. Co-Op. Ass'n, Inc.*, 844 A.2d 1126, 1137 (D.C. 2004) and *Behradrezaee v. Dashtara*, 910 A.2d 349, 361 (D.C. 2006). Finally, nothing in *Washington Bancorporation* holds that Plaintiffs are required to plead that a defense does not apply.

Plaintiffs failed to do so.[3]  *De Csepel*, 714 F.3d at 607-08 ("although it is certainly true that plaintiffs must plead the elements of their claims with specificity, they are 'not required to negate an affirmative defense in [their] complaint,'" quoting *Flying Food Group, Inc. v. NLRB*, 471 F.3d 178, 183 (D.C. Cir. 2006)); *Davis v. Indiana State Police*, 541 F.3d 760, 763-64 (7th Cir. 2008) ("Complaints need not anticipate, and attempt to plead around, potential affirmative defenses," and holding this principle is not altered by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 90 n.7 (D.D.C. 1998) ("The burden of proving an affirmative defense rests with the party asserting it. . . . Accordingly, plaintiffs had no obligation to make any factual allegations regarding the involvement or noninvolvement of realty in this action in their complaint, and the silence of their complaint as to such involvement does not affect the viability of their claims in any way," internal quotation marks omitted).

"[A]s long as a plaintiff's potential 'rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint,' dismissal at the Rule 12(b)(6) stage is improper.'" *De Csepel*, 714 F.3d at 607-08, quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007); *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d at 254 (same, quoting *de Csepel*).  The SAC clearly does not foreclose Plaintiffs' argument that any of the exceptions apply, including the exception for "intentional infliction of harm."  Indeed, the SAC alleges scienter sufficient to show intentional infliction of harm (*see* section IV.E., *infra*), although Plaintiffs "had no obligation to make any factual allegations" addressing or disputing the exceptions to § 29-406.31(d) in the complaint.  *Paley v. Estate of Ogus*, 20 F. Supp. 2d at 90 n.7.

---

[3] Defendants' Brief does not include a citation to any such holding.

### C.   Claims Against the Original Defendants Cannot Be Dismissed on the Basis of an Affirmative Defense They Have Not Plead.

Regardless of Defendants' failure – or refusal – to correctly ascribe the parties' respective burdens, the law in this circuit is perfectly clear: failure to plead an affirmative defense is fatal to the defense.  Yet two years into the case – even after the Court's Opinion and the Supplemental Briefs – none of the defendants have pled § 29-406.31 or any other exculpation provision.  Not even after the Court raised, *sua sponte*, the question of whether § 29-406.31(d) might affect the amount in controversy did Defendants seek to amend their answer under Rule 15 to add this affirmative defense, and they still have not.[4]

The Original Defendants filed the Answer to the FAC over a year ago (Dkt. 30, filed Apr. 4, 2017).  The Answer did not assert an affirmative defense based on any subsection of § 29-406.31 or any similar affirmative defense.  Defendants later filed an Amended Answer (Dkt. 33, filed Apr. 28, 2017).  The Amended Answer also did not assert an affirmative defense based on any subsection of § 29-406.3 or any similar affirmative defense.

Under the Federal Rules, a defendant "must affirmatively state any avoidance or affirmative defense" in its answer.  Fed. R. Civ. Proc. 8(b).  "A party's failure to plead an affirmative defense . . . generally 'results in the waiver of that defense and its *exclusion from the case.*" *Dole v. Williams Enterprises, Inc.*, 876 F.2d 186, 189 (D.C. Cir. 1989), emphasis in original, quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278 (1990); *Harris v. United States Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) (same, quoting *Dole*); *Walker v. England*, 590 F. Supp. 2d 113, 135 (D.D.C. 2008) ("the D.C. Circuit has held that '[a] party's failure to plead an

---

[4] Although the Court raised, *sua sponte*, the question of whether § 29-406.31(d) exculpates all monetary damages, the Court did not plead affirmative defenses on behalf of all of the individual defendants.

affirmative defense . . . generally 'results in the waiver of that defense and its exclusion from the case,'" quoting *Harris*).

There is no escape from the mandate of Rule 8(c) and no room for a post-pleading awakening to undo the waiver. "On its face and on its logic, Rule 8(c) requires that a party actually plead its affirmative defenses," either in the original answer or an amended answer filed pursuant to the standard set forth in Rule 15(a). *Harris*, 126 F.3d at 345. "In order to preserve the notice purpose of Rule 8(c) and the discretionary structure of Rule 15(a), *we hold that Rule 8(c) means what it says: a party must first raise its affirmative defenses in a responsive pleading* before it can raise them in a dispositive motion." *Harris*, 126 F.3d at 345, emphasis added. The Court of Appeals explained the reasoning underlying its holding in *Harris*:

> A party must make strategic decisions about how to proceed, and can plot its course adequately only if it can anticipate which issues will dispose of the case. Failure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms. The structure of the Federal Rules therefore demands notice pleading of affirmative defenses as a crucial element of its overall conception of the progress of a lawsuit. . . .
>
> We recognize that, rather than requiring amendment under Rule 15(a), some circuits permit parties to raise affirmative defenses for the first time in dispositive motions where no prejudice is shown. [Citations.] This approach subtly alters the structure dictated by Rules 8(c) and 15(a) in two ways. First, it apparently relieves the moving party of the need to request amendment, and the District Court of the need to state and explain its grant of leave to amend, so long as the opposing party does not show prejudice. This change allows parties to omit affirmative defenses in pleadings strategically, in violation of the notice purpose. It will often prove difficult for a party to support a claim of prejudice in circumstances involving only inconvenience or surprise. . . .
>
> Second, automatically permitting late raising of affirmative defenses where no prejudice has occurred reduces the multifarious reasons for denying leave to amend envisioned by the Court in *Foman* to the single, non-exhaustive factor of prejudice. . . . Strategic or merely lazy circumventions of a legal process grounded in a sound policy have the effect of eroding the regularized, rational character of litigation to the detriment of practitioners and clients alike.

> . . . The procedural requirement that the District Court await a request
> for leave to amend, and grant or deny leave based on the circumstances
> of the case, is not empty formalism but the logical consequence of a
> system of rules that strives to achieve fairness without rigidity. On its
> face and on its logic, Rule 8(c) requires that a party actually plead its
> affirmative defenses, not that it plead them only in those cases where
> failure to plead would result in prejudice to the opposing party.

*Harris*, 126 F.3d 342-45.  *See also Gilbert v. Napolitano*, F.3d 258, 260-61 (2012) (quoting

*Harris*, and holding that "Thus, [Defendant] forfeited the exhaustion defense, and the district

court 'should not . . . have considered it'"); *Walker v. England*, 590 F. Supp. 2d 113, 135

(D.D.C. 2008) ("the D.C. Circuit has held in no uncertain terms that "Rule 8(c) means what it

says: a party must first raise its affirmative defenses in a responsive pleading before it can raise

them in a dispositive motion,'" quoting *Harris*).

    Of particular relevance to this case, the *Harris* court based its holding in part on the

ability of the other side to address through discovery the factual issues underlying an affirmative

defense:

> The pleading requirement of Rule 8(c) gives the opposing party notice
> of the [affirmative defense] and permits the party to develop in
> discovery and to argue before the District Court various responses to
> the affirmative defense. . . .
>
> When an opposing party does receive notice of a previously unpled
> defense when a dispositive motion is filed, it lacks the advance notice
> required by Rule 8(c) that would have enabled it to develop factual and
> legal defenses fully.  Although an opposing party may introduce
> affidavits in response to a motion for summary judgment, [this] will not
> always suffice to provide adequate evidence for the defenses proposed.
> Frequently, mounting a proper defense will necessitate further
> discovery, which may not be possible in the time allotted to respond to
> the motion.

*Harris*, 126 F.3d at 345.  *See also Evans v. Atwood*, 177 F.R.D. 1, 9 (D.D.C. 1997) ("plaintiffs

seek to prevent learning of those defenses without an adequate opportunity to have discovery

concerning them. . . . the Court of Appeals [in *Harris*] provides plaintiffs with the protection they

seek. . . .   Accordingly, the defendants will not be able to rely on any affirmative defense which

they did not assert in their answer"); *Rhodes v. United States*, 967 F. Supp. 2d 246, 251 n.3

(D.D.C. 2013) ("plaintiff convincingly argued that her approach in discovery would have

differed had she known of the defendant's intention to prove contributory negligence — which,

in this jurisdiction, operates as a complete bar to recovery — and with discovery closed at the

time that the defendant finally raised it, the plaintiff had lost that opportunity").

  In this case, the applicability of the affirmative defense depends on facts uniquely in the

possession of defendants.  Only through discovery can plaintiffs uncover, *e.g.*, whether an

Individual Defendant acted under the authority of a director or any of the other elements of § 29-

406.31(d), and only with information learned through discovery can Plaintiffs show "intentional

infliction of harm."  But Plaintiffs had no notice that Defendants would assert § 29-406.31(d)

while preparing discovery requests for the Original Defendants, as Defendants did not once raise

§ 29-406.31(d), or any basis for exculpation of any of the Individual Defendants, until they filed

their Opposition to the SAC, which included just a single sentence mentioning the provision.[5]

Thus, Plaintiffs did not seek discovery regarding the elements and exceptions of § 29-406.31(d)

from the Original Defendants, and due to the current stay, no discovery has been sought from the

New Defendants.[6]

---

[5] Even if Defendants could assert an affirmative defense in a dispositive motion – although it is clearly not allowed in this circuit – they did not do so.  Defendants filed a Motion to Dismiss the Original Complaint (Dkt. 13), a Motion to Dismiss the FAC (July 7, 2016, Dkt. 21), and a Motion for Judgment on the Pleadings (Dkt. 35).  None of these mentioned exculpation of directors or volunteers, nor did any other filing or correspondence.

[6] Moreover, Defendants are withholding thousands of discoverable documents from Plaintiffs. Some of these documents are the subject of a discovery disputes currently before the Court. Other documents Defendants agreed to produce months ago, but delayed following through on that promise.  Further discovery disputes remain unresolved but have not yet been raised to the Court.  Discovery is now stayed pending resolution of the § 29-406.31(d) issue.

III.  **DEFENDANTS DID NOT AND CANNOT POSSIBLY SHOW THAT "THE FACTS THAT GIVE RISE TO THE DEFENSE ARE CLEAR FROM THE FACE OF THE COMPLAINT."**

The standard for dismissal here – for lack of a sufficient amount in controversy, and solely on the basis of an affirmative defense – is extremely high, and clearly not met here.[7] "Defendants, seeking dismissal of diversity actions for lack of a sufficient amount in controversy, must therefore shoulder a heavy burden. They must show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010), quoting *Wiggins v. N. Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981); *see also See McDonald v. Patton*, 240 F.2d 424, 425 (4th Cir. 1957) (plaintiffs may secure federal jurisdiction even if "it is apparent" that the claim to the requisite amount is subject to a "valid defense").

Dismissal on the basis of an affirmative defense is only appropriate where the "facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *De Csepel v. Republic of Hung*ary, 714 F.3d 591, 608 (2013) (quoting *Smith-Haynie*).  The complaint need not dispute or even address the elements of an affirmative defense to survive dismissal. *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 90 n.7 (D.D.C. 1998) ("plaintiffs had no obligation to make any factual allegations regarding the [affirmative defense] in their complaint, and the silence of their complaint as to such involvement does not affect the viability of their claims in any way").  "'The burden of proving an affirmative defense rests with the party asserting it.' *Green v. District of Columbia Dep't of*

---

[7] The New Defendants have not yet filed their answers to the SAC, or even motions to dismiss.  Thus, at this stage of the case against, the New Defendants may not be barred from seeking dismissal on the basis of an affirmative defense that they have not yet plead (as the Original Defendants clearly are).  *See Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998).

*Employment Servs.*, 499 A.2d 870, 877 n.7 (D.C. 1985)." *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 90 n.7 (D.D.C. 1998).

Defendants do not even attempt to argue that the facts that give rise to § 29-406.31(d) "are clear from the face of the complaint." *Smith-Haynie*, 155 F.3d at 578; *De Csepel*, 714 F.3d at 608 (2013). Nor could they. The SAC does not establish that every one of the Individual Defendants was a director; moreover, the SAC does not establish that any of the claims arise from acts that a taken "as a director" – quite the contrary. These are two threshold elements of § 29-406.31(d).

Instead, Defendants' Brief simply assumes that § 29-406.31(d) applies to all claims against all Individual Defendants: "Plaintiffs have alleged in the SAC that all Individual Defendants were members of the National Council [and] Plaintiffs are thus bound by their allegations. The decision concerning whether the Individual Defendants could be liable to Plaintiffs is therefore governed by § 29-406.31(d)." (Def. Br. at 15.) This is the entirety of Defendants' effort to establish the facts that give rise to § 29-406.31(d).[8] Such "'meager, conclusory allegations . . . are plainly insufficient'" as a basis for dismissal. *Fennell v. AARP*, 770 F. Supp. 2d 118, 126 (D.D.C. 2011) ("the exhaustion of administrative remedies is not a pleading requirement but an affirmative defense. [Citation.] In recognition of this allocation of the burden of proof, '[m]eager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies . . . are plainly insufficient.' *Drewrey v. Clinton*, [763 F. Supp. 2d 54, 61 (D.D.C. 2011).] Therefore, dismissal cannot rest on this basis.").

---

[8] As discussed below, the claim that the SAC alleges that all Individual Defendants were members of the National Council is a false and an indefensible misrepresentation, but even if assumed to be true, it does not establish that all of the Individual Defendants were directors, much less that they were acting as directors with respect to each of the claims.

Defendants clearly have not shown that all of the elements of § 29-406.31(d) are satisfied, on the face of the complaint or otherwise.  Nor have Defendants shown that the SAC forecloses all potential arguments disputing the applicability of § 29-406.31(d).  As shown in section IV, below, it is impossible for Defendants to do so.

IV.     **NUMEROUS UNRESOLVED AND DISPUTED FACTUAL ISSUES PRECLUDE DISMISSAL ON THE BASIS OF § 29-406.31(d).**

The Court asked the parties a specific question: whether D.C. Code § 29-406.31(d) precludes liability for monetary damages against the Individual Defendants, and, if so, whether the amount in controversy in this case satisfies the $75,000 minimum required for diversity jurisdiction under 28 U.S.C. § 1332(a).

The application of § 29-406.31(d) in this case is extremely fact-intensive, involving the acts of multiple defendants over a six-year period (including the invasion of the ASA Trust Fund in 2016 and 2017).  The requisite analysis requires an answer to each of the following questions, and with respect to each defendant and each claim.  We discuss each of these elements in detail below:

- *First, which of the Individual Defendants does § 29-406.31(d) apply to, and for what period of time?* By its terms, § 29-406.31(d) only applies to an Individual Defendant who was a director of the ASA.  This means someone with the voting powers of a director ("Director"), and only during the period of time that the Defendant in fact had such voting powers, for it was only during that time period that such a person was a Director – not before or after.

- *Second, with respect to those persons who held positions as both officers and directors, did they act in the capacity of officer, or of director?*  At least two of the Individual Defendants, Defendants Duggan and Marez, served the ASA in more than one capacity:  as officers

- 16 -

(specifically, as President-Elect and then as President) and as directors.   Section 29-406.31(d) only applies to acts taken in the capacity of director.  It cannot possibly exculpate a person for his or acts as an officer (or in any other capacity).

- *__Third, were the acts taken "as a director"?__* § 29-406.31(d) only applies to acts taken "as a director."  As discussed below, acts taken "as a director" are acts that exercise the powers reserved for directors.  Defendants must show that each of the acts at issue were taken "as a director" for § 29-406.31(d) to apply.

- *__Fourth, were the acts intentional?__* § 29-406.31(d) explicitly excludes "intentional infliction of harm" – acts taken with the knowledge that they will likely inflict harm on the non-profit, regardless of the reason for the act.  The exception applies where the defendant acts with the knowledge that his or her actions are likely to cause harm to the non-profit; the actor need not act for the specific purpose of inflicting harm on the non-profit.

In lieu of a substantive analysis of § 29-406.31(d), Defendants' Supplemental Brief simply declares that the subsection applies to every one of the Individual Defendants, and thus each and every act alleged in the SAC, regardless of timing, context, and intent.  Defendants' discussion of this question constitutes all of five (5) paragraphs – including quotation of the statute.  This overwhelmingly superficial interpretation of § 29-406.31(d) is clearly wrong.  It also relies on misstatements of law and fact that are corrected below.

 A. <u>Defendants Did Not and Cannot Show that Certain Defendants Are or Were Directors of the ASA.</u>

Certain Individual Defendants clearly were never directors of the ASA.  Ignoring the allegations and evidence on this issue, Defendants argue that every one of the defendants is a director.  But this sweeping and entirely unsupported assertion is clearly wrong.

1.      **According to the ASA's Own Documents, Most of the National
Council, Including Defendants Maira, Tadiar, Kauanui, Puar, and
Salaita, Are Not and Were Not Directors of the ASA.**

The ASA's IRS filings, made on Form 990, explicitly deny what Defendants told this

Court about who is and was a director.  Under applicable law, the ASA is required by the IRS to

identify its directors on the Form 990 each year.  The ASA's last seven Form 990s, attached

hereto as Exhibits 1 though 7, show that the following Individual Defendants were not directors

of the ASA at any time in the period since July 1, 2008: Sunaina Maira, Neferti Tadiar, J.

Kehaulani Kauanui, Jasbir Puar, Steven Salaita, and John Stephens.

*This is true regardless of the fact that Defendants Maira, Kauanui, and Salaita served*

*on the National Council* – because the ASA's 990 show that the National Council is not a board

of directors.

The application of § 29-406.31(d) applies only to actual directors of non-profit

corporations.  The D.C. Code carefully defines the term "director" to mean those with the

authority "to act as a member of the board of directors, while the individual is holding that

position." § 29-401.02(9).  To have the authority to act as a member of the "board of directors" is

to be a member of the body "responsible for the management of the activities and affairs of the

nonprofit corporation, regardless of the name used to refer to the group." § 29-401.02(1).

According to the ASA's annual filings, that body has not been larger than a group of seven (7)

individuals at any time since July 1, 2010.  This is less than a third of the 22 members of the

National Council.

These admissions are available to us because every entity entitled to tax-exempt status is

required to answer specific questions regarding its governing body in Part VI of IRS Form 990,

the annual filing for non-profit entities.  The first line in Part VI, Section A, "Governing Body

and Management," requires the non-profit to "[e]nter the number of voting members of the governing body at the end of the tax year." For at least the past seven returns, which together cover the entire period from July 1, 2010 through June 30, 2017 – the ASA has reported that its governing body has either six (6) or seven (7) members. (*See* ASA Form 990 for fiscal years 2010 through 2016, attached hereto as Exhibits A through G.) At any given time over the same seven years, there were 22 voting members of the National Council. Thus, ***the 23-member National Council is not the "governing body" of the ASA, and at any given time, no more than a third of the members of National Council are directors of the ASA***, according to the ASA's own, required submissions to the IRS.

Regardless of how the term *directors* and the term *board of directors* are used in a non-profit corporation's charter, Part VI of IRS Form 990 requires each non-profit corporation to report the number of *actual* directors, as defined by their actual authority. The titles and descriptions set forth in a corporations' bylaws are not determinative; only those with the authority of the "Governing Body and Management" is determinative. The official IRS instructions could not be more clear – Part VI, Section A, Line 1a seeks the number of directors:

> Section A. Governing Body and Management
>
> Line 1a. The governing body is the group of one or more persons authorized under state law to make governance decisions on behalf of the organization and its shareholders or members, if applicable. The governing body is, generally speaking, the board of directors (sometimes referred to as board of trustees) of a corporation or association, or the trustee or trustees of a trust (sometimes referred to as the board of trustees). Enter the number, as of the end of the organization's tax year, of members of the governing body of the organization with power to vote on all matters that come before the governing body (other than when a conflict of interest disqualifies the member from voting).

(IRS Instructions:  Form 990 (2016) at 18.)  Thus, because for all relevant periods, the ASA
reported seven or fewer directors on Line 1A, membership on the 22-member National Council
is not clearly not determinative of whether or not a person is or was a director of the ASA.

IRS Form 990 also requires each non-profit corporation to "[l]ist all of the organization's
current officers, directors, trustees (whether individuals or organizations) regardless of amount of
compensation."  (*See* Exhibits A through G, Part VII, § A, at p. 7.)  We reviewed § A for every
Form 990 filed by the ASA since July 1, 2010.  None of the above-listed Individual Defendants –
Sunaina Maira, Neferti Tadiar, J. Kehaulani Kauanui, Jasbir Puar, or Steven Salaita – was ever
listed on Part VII, § A.  None are or were "directors" of the ASA.

There is an apparent discrepancy between the ASA's *current* Constitution and Bylaws
and its annual filings, because the *current* Constitution and Bylaws states, "The Council shall
serve as the Board of Directors of the Association."  (Current ASA Const., Art. V, § 2, attached
hereto as Exhibit H.)  But this statement is a new addition to the ASA's Constitution and Bylaws,
made well after the terms of nearly all if not all of the Individual Defendants on the National
Council.  ***The version of the ASA Constitution and Bylaws in effect in 2012-2015 does not state
that the "Council shall serve as the Board of Directors***[.]"  (Former ASA Const., Art. V, § 2,
attached hereto as Exhibit I.)  Moreover, it is not the designation of the title of "director" that is
determinative, but the actual authority to act with the full authority of a member of the governing
body.

As discussed above, it is Defendants' burden to show that § 29-406.31(d) applies.  That
includes showing that the Individual Defendants are directors of the ASA.  Yet the ASA has
made no attempt to satisfy this element of § 29-406.31(d); meanwhile, the ASA's own

documents clearly show that the governing body is much smaller than the National Council.[9]
Where there are unresolved questions of fact regarding whether the Individual Defendants are or
ever were "directors" of the ASA (and particularly where the ASA's own documents show that
many were not), the claims cannot be dismissed pursuant to § 29-406.31(d).

2.      **D.C. Code § 29-406.31(d) Clearly Does Not Exculpate Defendants
        Who Are Not and Never Have Been Directors.**

Apparently aware that there is no realistic argument that either Defendant Puar or
Defendant Tadiar has ever been a director of the ASA, Defendants turned to a cheap
workaround.  In an obvious misrepresentation of the pleadings, Defendants' Brief claims that
Plaintiffs have alleged that every Defendant was on the National Council, and that the Court
must therefore also find that the two defendants were on the National Council, even though it is
well-known to both sides that neither was ever on the National Council, and even though this is
publicly available information easily presented to the Court.  Distancing even further from
reason and logic, Defendants further argue that the Court must find that § 29-406.31(d), a statute
that explicitly applies only to directors, exculpates Defendants Puar and Tadiar from liability for
monetary damages, although everyone knows that neither ever sat on the ASA National Council.
(Def. Sup. Br. at 14, 15.)

Before turning to the fallacies in their logic – and there are many – it is simply untrue that
Plaintiffs alleged that either Defendant Puar or Defendant Tadiar was ever a member of the
National Council.  The SAC specifically identifies every defendant who served on the National
Council, the Executive Committee, or as an officer.  These allegations are presented in a well-
organized fashion in the "Parties" section of the SAC.  (SAC ¶¶ 13-27.)

---

[9] It may be that the Executive Committee is the governing body.  *See* ASA Const., Article VI, § 3.

The "Parties" section of the SAC is detailed and accurate, including the dates of each of the respective defendants' terms on the National Council, the Executive Committee, and/or as an officer of the ASA. There is no allegation that either Defendant Puar or Defendant Tadiar ever served in any of those roles. Instead, the "Parties" section of the SAC describes the positions that these defendants did hold, including, *inter alia*, Puar's position on the Nominating Committee and Tadiar's position on the Program Committee for the 2013 Annual Meeting.

There is not a single sentence in the SAC that alleges that either Puar or Tadiar ever served on the National Council, whatsoever.[10] That said – even if the SAC did allege that Defendants Puar or Tadiar had served on the National Council (and it certainly does not) – ***it simply would not matter for purposes of § 29-406.31(d)***.

However, even if Plaintiffs alleged that Puar and Tadiar had been on the National Council, and even if the Court accepted that fact as true, § 29-406.31(d) would not and could not exculpate either for liability arising from any act taken "as a director," because neither ever acted "as a director."

The D.C. Code, § 29-401.02 provides the definition of "director":

---

[10] Defendants claim that the following statement in the SAC "alleges" that every Defendant is a member of the National Council: "196. As members of the National Council of the American Studies Association, the Individual Defendants owe the American Studies Association and all of its members the highest duties of care, loyalty, good faith, and candor." (Def. Br. at 14.) Even if this one sentence is read to allege "that all Defendants were members of the National Council, contradicting the body of the complaint, Defendants' loosely-framed argument that the Court must therefore hold that all Defendants are members of the National Council is contrary to law. *Panarello v. Zinke*, 254 F. Supp. 3d 85, 97 (D.D.C. 2017) ("as the D.C. Circuit has cautioned, treating a dispositive fact as conceded is not usually the 'preferred first step,'" quoting *Grimes v. District of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015). "That admonition is well taken . . . First, it appears that the defendant simply made a mistake[.] Second, the relevant assertion of "fact"— that Panarella failed to exhaust administrative remedies with respect to the command positions— arguably embeds an issue of law, which the Court is not permitted to take as conceded. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016).

> (9) "Director" means an individual designated, elected, or appointed, by that or any other name or title, **to act as a member of the board of directors, while the individual is holding that position**. The term "director" shall not include a member of a designated body, as such.

§ 29-401.02(9).  Neither Puar nor Tadiar could ever satisfy this definition of "director" for any period of time, because neither has ever "has act[ed] as a member of the board of director, while . . . holding that position."  Obviously, neither Defendant Puar nor Tadiar's acts were taken "as a director," because neither was ever a director and thus could not act in that capacity.  Thus § 29-406.31(d) clearly cannot exculpate either from monetary liability for any of the acts alleged in the SAC.[11]

### 3.     Defendant Stephens Is Not Covered by § 29-406.31(d).

In the Court's Opinion granting the Motion for Leave to File the SAC, and asking for the Supplemental Briefs, the Court queried whether Defendant Stephens, Executive Director of the ASA, might be exculpated pursuant to § 29-406.31(d) – a multi-faceted question involving not only whether Stephens is a director (he is not), but also whether his actions were taken "as a director" (they could not be).

As explained in detail in Plaintiffs' Brief, ***Defendant Stephens is not a director and cannot and did not act as a director.***  (Plaintiffs' Br. at 15-18.)  Defendant Stephens has *never* acted as a director of the ASA, because he has never had the authority to do so.

Defendants do not bother to address whether Stephens can or does act as a director.  The one sentence below is the *entirety* of Defendants' argument with respect to whether § 29-406.31(d) exculpates Defendant Stephens:

---

[11] Defendants' citation to *Henthorn v. Dep. of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) is inapposite. *Henthorn* clearly does not require that this Court hold that Defendants who were never members of the National Council were in fact members of the National Council.

> With regard to Executive Director John Stephens, the ASA Bylaws clearly state that he is a member of the National Council; under the Act, therefore, he was a "director" (*see* §29-401.02 (9)): "director" is defined as "an individual designated, elected, or appointed, by that or any other name or title, **to act as a member of the board of directors**, while the individual is holding that position").

(Def. Br. at 14.)

A person who is nominally on the National Council, as a non-voting member, is not a director. As the very provision quoted by Defendants above shows, the D.C. Code does not deem every person "on" the National Council to be a director of the ASA. Only a person who is "designated, elected, or appointed, . . . **to act** as a member of the board of directors" is a director. §29-401.02 (9). "To act as a member of the board of directors" is to act with authority afforded to members of the board of directors. A board of directors acts as a unit, and each member's authority is exercised through his or her vote. ***A person unable to vote is clearly unable to "act as a member of the board of directors."*** John Stephens does not have and never has had the authority to vote on matters reserved for directors.

Indeed, one of the matters under the authority of the directors is to oversee the Executive Director. Defendant Stephens obviously lacks the authority to oversee himself. And, as discussed in Plaintiffs' Supplemental Brief ("Plaintiffs' Brief"), Defendant Stephens' tasks are those of an officer, not a director; and he is paid for full-time employment, unlike the voting members of the National Council.

Finally, are two points not raised in Plaintiffs' Brief: First, the ASA's Constitution identifies the Executive Director as responsible for the financial affairs of the ASA – tasks that the D.C. Code very explicitly requires every non-profit to assign to an *officer*. D.C. Code § 29-406.40.

Second, every year, the ASA is required to file with IRS the Form 990, Return of Organization Exempt from Income Tax, and, as discussed in section IV.A.1., *supra*, the IRS Form 990 requires each non-profit to list the directors and officers each year. There is not a single 990 of the ASA, as far back as the filing for the year beginning July 1, 2008 (the first year that the Form 990s required nonprofits to specifically distinguish officers and directors by name) in which John Stephens is identified as a director. (*See* Exhibits A through G, each at Part VII, Section A, at p. 7.) (And, although the form allows a non-profit corporation to list a person as both an officer and a director, the ASA has never reported John Stephens as both, as it sometimes does for the President and Past-President of the ASA.)

Finally, Defendants' argument that Defendant Stephens is a director simply because "the ASA Bylaws clearly state that he is a member of the National Council; under the Act, therefore, he was a "director," is clearly wrong. Not only because a non-voting member of the board of directors is not a director, but also because the National Council is not the equivalent of a "board of directors" for this purpose – only about one-third of the National Council members are directors.

**B.**   **Defendants Did Not and Cannot Show that Certain Defendants Were Directors at the Time of the Acts Underlying the Claims Alleged Against Them.**

Those Individual Defendants that potentially served as directors did so for only two or three years. The ASA's Form 990s for the past seven years list the following Individual Defendants:

- Lisa Duggan, two years, 7/1/12 – 6/30/14

- Curtis Marez, three years, 7/1/11 – 6/30/14

- Chandan Reddy, two years, 7/1/12 – 6/30/14

- John Stephens, all seven years (identified as officer, not director).

(*See* Exhibits A through G, each at p. 7.) Terms on the National Council are for three years; none of the Individual Defendants served more than three years on the National Council.[12]

The SAC alleges claims arising from acts over the period beginning in late 2012 and continuing through the present, including, as just one example, invasion of the ASA's Trust Fund of $294,000 in 2016 and 2017.  The ASA's Form 990 do not report any of the Individual Defendants to be "directors" in 2016 or 2017.  However, Defendants Duggan and Marez were both serving on the ASA's Finance Committee and as Trustees for the ASA Trust Fund during the invasion of the trust fund, and were long involved in the diversion of ASA funds to support the resolution.

Again, it is Defendants' burden to show that the elements of § 29-406.31(d) are met. That requires that they allege and show that the Individual Defendants were directors at the time of the acts alleged.  They have not done so, and they cannot do so without explicitly contradicting their IRS filings for the last seven years.

C.     **Defendants Did Not and Cannot Show that Defendants that Served as Both Officers and Directors Are Exculpated by § 29-406.31(d).**

The two former Presidents of the ASA, Defendants Duggan and Marez, appear to have served both as officers (President and President-Elect) and as directors of the ASA.  As explained in detail in Plaintiffs' Brief, where a person serves in more than one capacity, § 29-406.31(d) applies only to "actions or failures to take action in his or her capacity as a director and not in any other capacity, such as officer[.]"  Model Nonprofit Corp. Act, cmt. § 2.02, at 2-

---

[12] Although Plaintiffs argue that membership on the National Council is not determinative of whether of not a person is a director, even if it were, none of the Individual Defendants would be deemed directors for longer than 3 years.

10; *see* Plaintiffs' Brief at 18-20.  Plaintiffs' Brief describes allegations against Defendants

Duggan and Marez that arise from acts taken in the capacity of officer, not director.  Defendants'

Brief does not even address the issue.

Defendants Duggan and Marez are only exculpated under § 29-406.31(d) if the all of the

claims against them arise from acts taken in the capacity of director, and not in the capacity of

President or President-Elect.  Documents so far produced in this case show the opposite is true,

and this question of fact precludes dismissal.

> **D.**     **The Acts Alleged in the Complaint Were Not Made by Directors, "as Directors."**

§ 29-406.31(d) is explicitly limited to actions taken "as a director."  D.C. Code § 29-

406.31(d) ("director of a charitable corporation shall not be liable  . . . for any action taken, or

any failure to take action, ***as a director***," emphasis added).

This requirement is discussed in detail in Plaintiffs' Brief (Pl. Br. at 20-23) and

authorities cited therein, including, *inter alia*, *Simmons v Miller*, 261 Va. 561 (Va. 2001); *Baptist*

*Physicians Lexington, Inc. v. New Lexington Clinic*, 436 S.W.3d 189, 192-93, 196-98 (Ky.

2013). Defendants did not acknowledge this requirement at all.

The D.C. Code carefully defines the term "director" to mean those with the authority "to

act as a member of the board of directors, while the individual is holding that position." § 29-

401.02(9).  To have the authority to act as a member of the "board of directors" is to be a

member of the body "responsible for the management of the activities and affairs of the

nonprofit corporation, regardless of the name used to refer to the group."  § 29-401.02(1).

As explained in Plaintiffs Brief, the SAC brings detailed allegations and specific claims

arising from intentional acts that were not taken "as a director."  Acts taken as a director are

those that exercise the authority of a member of the governing body to vote on those decisions made by the governing body.

Unless the claims alleged arise from acts taken by a director, "as a director," § 29-406.31(d) does not allow for dismissal.  Defendants have not and cannot show that the acts alleged in the SAC were taken by "a director . . . as a director," and did not even attempt to do so.  Thus, the claims cannot be dismissed on the basis of § 29-406.31(d).

### E.     The Complaint Alleges Intentional Infliction of Harm.

Defendants did not and cannot show that the exceptions explicit in § 29-406.31(d) are foreclosed by the allegations in the complaint or by any other documents that the Court may consider.  Regardless, Defendants ask the Court to dismiss the case because "Plaintiffs have alleged none of the exceptions to the statutory presumptions of non-liability contained within § 29-406.31(d)."  (Defendants' Brief at 14.)  As discussed in section II.B., *supra*, there is no such "statutory presumption," and Plaintiffs need not allege exceptions to Defendants' affirmative defenses.  *De Csepel*, 714 F.3d at 607-08 (plaintiffs are "not required to negate an affirmative defense in [their] complaint," internal quotes omitted); *Paley*, 20 F. Supp. 2d at 90 n.7 ("plaintiffs had no obligation to make any factual allegations regarding the [affirmative defense] in their complaint, and the silence of their complaint as to such involvement does not affect the viability of their claims in any way").

Defendants do not just misstate the burden, however.  Defendants' repeated claim that "[t]here are no allegations within the SAC of . . . an intentional infliction of harm" (Defendants Br. at 14) is factually incorrect.  The SAC alleges, *inter alia*, breach of the duty of the fiduciary duty of loyalty, which is by definition, an intentional breach of duty.  *See* Plaintiffs' Br. at 26.  The SAC also includes extensive allegations to support the claim of intent.  *Id*.  Among those are

allegations that Defendants knew that their acts would result in damage to the ASA and its members, including reputational damage and financial injury, and that Defendants simply did not care.  *See, e.g.*, Plaintiffs' Br. at 6-7, quoting emails produced by Defendant Maira that state, "I don't care if it 'splits' the organization" and, from Nikhil Singh, member of the ASA executive committee explaining his reasons for resigning from USACBI – including conflict of interest – "I think there will be fallout and months, perhaps years of recrimination within the ASA," just two of numerous emails reflecting Defendants' understanding and lack of concern of the effect of their actions on the ASA.

The exception for "intentional infliction of harm" applies where the actor acts "with actual knowledge that the director's action, or failure to act, will cause harm," Official Comment to § 202 at 2-11 to 2-13.  The exception applies where the director knows or believes that the act will cause harm, regardless of whether infliction of harm is the purpose of the act.  The SAC clearly alleges "intentional infliction of harm," although Plaintiffs faced no burden to plead that the exception applies, and Plaintiffs can easily show that Defendants were in fact consciously, subjectively, reckless about the harm their actions caused to the ASA.

## V.    **DEFENDANTS' LAST MINUTE ATTEMPT TO INVOKE § 29-406.90 FAILS ON MULTIPLE GROUNDS.**

Clearly aware that there are multiple defendants who are not exculpated by § 29-406.31(d), Defendants' Brief argues, for the very first time, that D.C. Code § 29-406.90 immunizes those defendants from liability, although they did not raise, or even mention, § 29-406.90 at any other point in this litigation.  It is a desperate Hail Mary pass, and there is no receiver in the end zone.

For myriad reasons, not a single claim against a single defendant is subject to dismissal pursuant to § 29-406.90.  These reasons include Defendants' failure to plead this affirmative defense and Defendants' inability to show that the "facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie*, 155 F.3d at 578.

However, before the Court even considers those issues, it should flatly reject Defendants' attempt to rely on § 29-406.90, because § 29-406.90 only applies to injury caused by a volunteer if the entity is insured for the damage, and as the ASA has consistently claimed from the beginning of this lawsuit, it is not so insured.

**A.      Defendants Cannot Rely on Insurance Coverage After They Explicitly Denied Having Any Insurance in Open Court, in Required Disclosures, and Throughout this Litigation.**

Contradicting explicit representations they made in open court, their Rule 26(a) disclosures, and their litigation position throughout this lawsuit, Defendants have suddenly reversed their prior position that "there is no insurance coverage for this claim" and that the ASA must "foot the bill for defense of this lawsuit." (Transcript of Oct. 3, 2017 at 16:23 – 17:4, attached hereto as Exhibit J.)

Defendants previously argued that the Court should consider the ASA's lack of insurance when ruling on discovery disputes, as the knowledge of ASA's lack of insurance "makes the cost and the burden and the expense and the proportionality perhaps even a little more focused[.]"  *Id.*  At that time, Defendants apparently deemed it beneficial to deny that it was insured.

But now that Defendants seek to invoke § 29-406.90 – and for the first time, over two years into this lawsuit – Defendants suddenly claim that the ASA is, in fact, insured for these purposes.  They do so because § 29-406.90 only applies to relieve volunteers of liability when

Case 1:16-cv-00740-RC   Document 90   Filed 05/04/18   Page 34 of 44

the non-profit is insured.  § 29-406.90(c).  Although Defendants banish it to a footnote,

subsection (c) is determinative:  § 29-406.90 only applies where there is insurance coverage.

And so, Defendants now claim for the very first time that the ASA has insurance

coverage relevant to this case.[13]  And they further argue that Defendants Tadiar and Puar, who

have clearly never served as directors of the ASA – are excused from liability by D.C. Code §

29.406.90.  In pertinent part, that provision creates immunity for "volunteers" (*i.e.*, "an officer,

director, trustee, or other person who performs services for the corporation and who does not

receive compensation other than reimbursement of expenses for those services," but "only if the

corporation maintains liability insurance with a limit of coverage of not less than $200,000 per

individual claim and $500,000 per total claims that arise from the same occurrence."

Defendants' invocation of these provisions comes after Defendants have repeatedly and

explicitly *denied* that they have any insurance coverage in this case.

On October 3, 2017, at a status conference, defense counsel John Hathway made the

following statement:

> Your Honor, just for your information, which makes the cost and the
> burden and the expense and the proportionality perhaps even a little
> more focused, is that although our firm does insurance defense
> work, *there is no insurance coverage for this claim*. So this is a
> nonprofit organization, association that is having to foot the bill for
> defense of this lawsuit.

(Exhibit J at 16:23 – 17:4.)[14]

---

[13] With the brief that invoked the existence of these policies, Defendants did not attach the actual policies
that they now claim cover the claims at issue.  Instead, they attached three Certificates of Insurance that
were provided to hotels where the 2013, 2014, and 2015 annual meetings were held.

As discussed in further detail below, those certificates do not provide any basis for concluding that the
types of claims at issue here are covered by any of the Defendants' policies.

[14] Defense counsels' statement denying that the ASA was covered by insurance was a material
misstatement to the Court, if in fact the ASA is insured.  The statement was made during oral argument

Defendants made the same assertion in their initial disclosures.  Pursuant to Rule

26(a)(1), the initial disclosures must disclose:

> any insurance agreement under which an insurance business may be
> liable to satisfy all or part of a possible judgment in the action or to
> indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A)(iv).  Under the heading, "Disclosure of Applicable Insurance

Agreements Under Rule 26(a)(1)(A)(iv)," Defendants' initial disclosures state, "Not

applicable."  (Defendants' Initial Disclosures, attached hereto as Exh. L, at 5.)

Defendants' Initial Disclosures were served to Plaintiffs on May 15, 2017 – nearly a year

ago.  Pursuant to Rule 26(e)(1):

> [a] party who has made a disclosure under Rule 26(a) . . . must
> supplement or correct its disclosure or response (A) in a timely manner
> if the party learns that in some material respect the disclosure or
> response is incomplete or incorrect[.]

Fed. R. Civ. P. 26(e)(1).  Defendants never made a correction to their Initial Disclosures, never

corrected their statement denying insurance coverage to the Court, and never otherwise disclosed

that the ASA is – or even *may* be – insured for the claims at issue here.

### B.   Defendants Fail to Produce Insurance Policies that Cover the Claims Here.

Defendants' sudden claim to have insurance coverage for purposes of § 29-406.90 is not

just a reversal of all previous claims.  It also appears to be a false claim.

---

on discovery disputes in October – over five months after Plaintiffs served Requests for Production to
Defendants.  Defendants had produced only a small portion of the discoverable documents at that time
and were withholding well over ten thousand documents.  Defendants argued that they should not have to
produce those documents, because the burden of production on Defendants would be disproportionate to
the claims at issue – in part because the ASA was not insured.  If the Court did not require Defendants to
produce the withheld documents, there would have been no real production from Defendant Maira – a key
if not the most key defendant – who had only produced 88 documents before the October
hearing.  Thousands of other documents also would not have been produced.

Defendants had never produced any insurance policy in this litigation.  Finally, after

Plaintiffs' repeated demand, and two weeks after they filed the brief relying on these policies,

Defendants produced certain policy documents.  Plaintiffs sought the opinion of an attorney who

specializes in insurance to review the policies.  This attorney's review of the documents

produced by Defendants shows that (a) they are not complete policies, and (b) the policies

referenced in these documents do not cover any of the claims at issue in this case.  (*See* Letter

from Jay Levin, Esq., to Jerome Marcus, Esq., attached hereto as Exhibit K.)

If that is correct, then the policies are irrelevant and provide no immunity, and § 29.406-

90 does not apply.  If Defendants' argument is to be taken seriously, then these issues will have

to be explored and resolved by the Court.

### C.      Defendants Failed to Plead § 29-406.90, an Affirmative Defense.

D.C. Code § 29-406.90 provides an affirmative defense, and, as discussed in section

II.A., *supra*, the law in this circuit is very clear: claims cannot be dismissed on the basis of an

affirmative defense that defendants have not plead.

Volunteer statutes such as § 29.406-90 present affirmative defenses.  *See World Chess*

*Museum, Inc. v. World Chess Fed'n, Inc*., 2013 U.S. Dist. LEXIS 148162, at *7-9 (D. Nev. Oct.

15, 2013) ("The few courts to address the VPA's protections appear to treat it as an affirmative

defense akin to immunity"); *Neighborhood Assistance Corp. of Am. v. First One Lending Corp*.,

2012 U.S. Dist. LEXIS 67950, at *34-35 (C.D. Cal. May 15, 2012) ("As an affirmative defense,

the VPA does not entitle Defendants to dismissal under Rule 12(b)(6) unless that 'defense raises

no disputed issues of fact.' *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).)

Defendants have not pled § 29-406.90 as an affirmative defense in an answer.  In fact,

although this case has been pending for over two years, Defendants have not once mentioned §

- 33 -

29-406.90 until Defendants' Brief.  This includes Defendant Tadiar, who was named as a

Defendant in the original complaint and the FAC, and who Defendants suddenly insist is

immunized by § 29-406.90.   Thus, pursuant to *Harris v. United States Dep't of Veterans Affairs*,

126 F.3d 339, 343 (D.C. Cir. 1997), and for all of the reasons set forth in section II.C., *supra*, §

29-406.90 cannot serve as the basis for dismissal.

      **D.**      <u>**Defendants Did Not and Cannot Show that § 29-406.90 Applies.**</u>

      As discussed in sections II.B and III, it is Defendants burden to show that the "facts that

give rise to the defense are clear from the face of the complaint." *Smith-Haynie*, 155 F.3d at 578.

"[A]s long as a plaintiff's potential 'rejoinder to the affirmative defense [is not] foreclosed by the

allegations in the complaint,' dismissal at the Rule 12(b)(6) stage is improper.'" *De Csepel*, 714

F.3d at 607-08.

      Defendants do not even attempt to show that the elements of § 29-406.90 are satisfied.

Instead, they argue that Plaintiffs fail to allege or show that any of the exceptions to § 29-406.90

apply.  This attempt to shift the burden of pleading and proof misrepresents the law and is simply

wrong – as wrong here, with respect to § 29-406.90, as it is wrong with respect to § 29-

406.31(d). *See* section II.B., *supra*; *see also First One Lending Corp.*, 2012 U.S. Dist. LEXIS

67950 at *34-35 (denying motion to dismiss where there are factual disputes related to

application of the Volunteer Protection Act, and citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100

S. Ct. 1920, 64 L. Ed. 2d 572 (1980), for the proposition that immunity is an affirmative defense

and plaintiff has no "obligation to anticipate such a defense by stating in his complaint" any facts

to avoid the defense").

      Although Defendants specifically argue that Plaintiffs fail to plead or show "willful

misconduct," an explicit exception to § 29-406.90 – and again, Plaintiffs need not plead around §

- 34 -

Case 1:16-cv-00740-RC   Document 90   Filed 05/04/18   Page 38 of 44

29-406.90 or any other affirmative defense – Defendants either misunderstand or intentionally seek to misrepresent the law.  Defendants quote *Saba v. Compagnie Nationale*, 78 F.3d 664, 668 (D.C. Cir. 1996) for the definition of willful misconduct as follows:

> . . . besides showing that the defendant intends the act which ultimately causes the harm, a plaintiff must prove that the defendant was subjectively aware of the consequences of his act – not necessarily that it would cause the exact injury, but at least that it was certainly likely to cause an injury to plaintiff.

(Def. Br. at 19.)  As discussed *supra* at section IV.E., Plaintiffs do allege that Defendants were subjectively aware that their acts would cause harm to the ASA and its members, and neither § 29-406.90 nor *Saba* hold that the willful misconduct requires any more than that.  It certainly is not necessary that the purpose or reason for Defendants acts is to cause harm, as Defendants suggest.  *See* Def. Br. at 19 (Plaintiffs "certainly have not included any allegation in the SAC that Defendants Tadiar or Puar acted with the intention to injury Plaintiffs individually" and 20 ("Nothing in the [SAC] alleges that any of the Defendants acted with the *intention of causing harm* to the Plaintiffs individually").

The SAC also does not foreclose Plaintiffs' argument that any other exception to § 29-406.90 applies.  For example, § 29-406.90 provides an exception for an "act or omission that is not in good faith and is beyond the scope of authority of the corporation pursuant to this chapter or the corporate charter."  D.C. Code § 29-406.90(b)(4).  Indeed, the basis for this exception is alleged in the SAC, although Plaintiffs are not required to allege any exception.

The SAC explicitly alleges three *ultra vires* claims.  By definition, *ultra vires* acts are acts that are beyond the scope of authority of the corporation pursuant to . . . the corporate

charter."[15]  The SAC also clearly alleges that these acts are "not in good faith" – indeed,

Defendants concede this point: "the Plaintiffs suggest bad faith by all Defendants."  (Def. Br. at

17.)[16]  Defendants, however, still argue that the exception to § 29-406.90 does not apply.  They

base this argument on another misrepresentation of the Court's prior holdings in this case.

Defendants argue that § 29-406.90 does not apply because, "[a]s the Court has previously noted,

the manifestation of that alleged adoption of the "USACBI Platform" – the Resolution – was not

an *ultra vires* act."  (Def. Br. 17.)  However, when the Court granted leave to file the SAC, the it

clearly held that although it dismissed the *ultra vires* claim alleged in the FAC, it did not

foreclose other *ultra vires* claims, including those brought in the SAC.  Quite the opposite is true:

the Court actually held that "to the extent that Plaintiffs are asserting *ultra vires* claims, it is

apparent from the Complaint that Plaintiffs have made efforts to cure defects that the Court

identified in its prior opinion."  (Opinion Granting Leave to File SAC at 12 n.2.)

    In summary, Defendants fail to show that the elements of § 29-406.31(d) are met, or that

Plaintiffs are foreclosed from arguing that an exception applies.  *World Chess Museum*, 2013

U.S. Dist. LEXIS 148162, at *7-9 ("Vaughan has pointed to nothing in the Complaint that even

remotely discloses any of the elements of his VPA defense, and therefore, he has failed to

demonstrate that the elements of his defense are not subject to dispute").  Thus, even if

Defendants had plead § 29-406.31(d) – and they did not – dismissal of any claims, against any

Defendants, would not be appropriate.

---

[15] The SAC also alleges breach of the D.C. Nonprofit Corporations Act, which are clearly "beyond the scope of authority of the corporation pursuant to this chapter."  D.C. Code § 29-406.90(b)(4).

[16] This concession that the complaint alleges bad faith contradicts Defendants' argument that the SAC does not allege "intentional infliction of harm."

**VI.    DEFENDANTS' ARGUMENTS THAT THE COURT SHOULD DENY
*JURISDICTION* BECAUSE (THEY WRONGLY ASSERT) THE CLAIMS WILL
FAIL ON THE *MERITS* ARE INAPPOSITE AND INAPPROPRIATE.**

This Court instructed the parties to brief the following, specific question: whether D.C.

Code § 29-406.31(d) precludes liability for monetary damages against the Individual Defendants,

and, if so, whether the amount in controversy in this case satisfies the $75,000 minimum required

for diversity jurisdiction under 28 U.S.C. § 1332(a).  (Opinion at 14-18.)  The Court did ***not*** ask

the parties to once again brief Defendants' Motion for Judgment on the Pleadings, which argues

that Plaintiffs' claim for waste cannot be brought as a direct claim, or Defendants' Opposition to

the Motion for Leave to File the SAC, which argues that the amendment is futile because, again,

it brings direct claims.  And yet that is exactly what Defendants did.  Page after page, Defendants

argue that the Court should find that ***jurisdiction*** is lacking, because (they argue) the claims

should fail ***on the merits***, even though the Court explicitly refused to address Defendants'

arguments on the merits until after it resolved the question of jurisdiction.

> For example, with respect to the waste claim, the Court held:

>> Defendants have since moved for judgment on the pleadings with
>> respect to this claim, arguing that a claim for waste may only be
>> asserted by the ASA itself and cannot be asserted by Plaintiffs directly.
>> Because the Court has identified a potential impediment to subject
>> matter jurisdiction, ***the Court will not resolve the Defendants' motion
>> unless and until the Court can assure itself that it has subject matter
>> jurisdiction***.

(Opinion at 5 n.1.)

And, in rejecting Defendants' arguments on futility, which the Court explained to mean

that "the amended complaint could not withstand a motion to dismiss," the Court held that it

"***declines to assess and evaluate the legal issues*** implicated in Defendants' various arguments

***until the Court can adequately resolve the threshold jurisdictional issue***."  (Opinion at 12-13.)

Defendants appear to have taken a rather scattershot approach to arguing futility and have presented only bare-bones arguments with almost no legal authority for their various positions. Given the rather complex nature of this matter, the Court is not inclined to dismiss the proposed claims based purely on cursory arguments that lack clear rationale and legal authority. *See Fox v. District of Columbia*, 851 F. Supp. 2d 20, 39 (D.D.C. 2012) ("The Court declines to dismiss these [amended] counts prospectively on the basis of futility when it has not been presented with a clear legal basis for why they are futile."); *Doe v. Siddig*, 810 F. Supp. 2d 127, 137–38 (D.D.C. 2011) ("courts need not resolve arguments raised in a cursory manner and with only the most bare-bones arguments in support." (*citing Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997))). Consequently, the Court will not address the Defendants' futility arguments at this time; however, Defendants may re-raise these objections ***in a well-supported motion to dismiss or motion for summary judgment***.

(Opinion at 13.)

But Defendants did not listen. Instead, they argued in their Supplemental Brief that the Court lacks jurisdiction because "as a matter of law [Plaintiffs] cannot claim any damages on behalf of the ASA, as all derivative actions have previously been dismissed." (Def. Supp. Br. at 20.) Defendants have repeatedly made this assertion, refusing to recognize (much less address) precedent from the District of Columbia Court of Appeals that specifically holds otherwise. This time, however, they also ignore this Court's rejection of exactly that argument as raised in Defendants' Opposition to Motion for Leave to File the SAC. After rejecting Defendants' arguments that the SAC was presented in "bad faith," because (according to Defendants) it attempts to "repackage former derivative claims as direct claims," this Court held:

The Court dismissed the derivative claims because Plaintiffs had failed to make a demand on the National Council, not because the claims themselves, if ASA had asserted them on its own, lacked merit. The claims that Plaintiffs seek to assert sound in breaches of fiduciary duty, breaches of contract, and *ultra vires* action, ***which the D.C. Court of Appeals has suggested may be asserted directly by shareholders and members of non-profit organizations under certain circumstances***. *See Jackson v. George*, 146 A.3d 405, 415 (D.C. 2016); *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 729–30 (D.C. 2011). Moreover, to the extent that Plaintiffs are asserting *ultra vires* claims, it

- 38 -

> is apparent from the Complaint that Plaintiffs have made efforts to cure
> defects that the Court identified in its prior opinion. In short, while the
> Court takes no position on whether the claims would survive *a motion
> to dismiss*, the changes made to the Complaint are not so egregious and
> lacking as to suggest to the Court that Plaintiffs are acting in bad faith.

(Opinion at 12 n.2.)  The Court also, again, clarified that future attempts to challenge these

claims on the merits should be brought in a motion to dismiss (*id.*, "the Court takes no position

on whether the claims would survive *a motion to dismiss*.")

Moreover, aside from the fact that the Court explicitly stated that it would not address

these issues until after it resolved the question of jurisdiction, it would be fundamentally unfair

for the Court to dismiss this case on the basis of Defendants' argument on the merits, because

Plaintiffs have not had the opportunity to respond to "a well-supported motion to dismiss or

motion for summary judgment."  (Opinion at 13.)

Defendants' argument that there is no amount in controversy in these direct claims, which

are explicitly provided for by the D.C. Court of Appeals in *Jackson v. George* and *Daley v.

Alpha Kappa Alpha*, is no less cursory, no less bare-boned, and no more supported by legal

authority than where they argued that the claims cannot be brought directly at all.  And, although

the issue was briefed with respect to the waste claim, the new direct claims for breach of

fiduciary duty, *ultra vires*, and breach of contract have not been briefed on the merits.  Plaintiffs

ask to be afforded the opportunity to read and respond to "a well-supported motion to dismiss or

motion for summary judgment" before the Court considers dismissing these claims.

Under Defendants' upside-down and backwards approach to jurisdiction, the Court is

expected to determine the viability and value of every claim before asserting jurisdiction.  This is

incorrect procedurally, counter to the Court's clear instructions, and unfair to the Plaintiffs.

For all of these reasons, and all of the reasons set forth in Plaintiffs' Supplemental Brief, Defendants have failed to show that § 29-406.31(d) exculpates any, much less all, of the Defendants, and has no effect on this Court's jurisdiction.

Dated: May 4, 2018                              Signed:          /s/ *Jennifer Gross*
                                                                     Jennifer Gross


Jerome M. Marcus (admitted *pro hac vice*)      Jennifer Gross, DC Bar No. 1003811
Jonathan Auerbach (admitted *pro hac vice*)     Aviva Vogelstein, DC Bar No. 1024231
**MARCUS & AUERBACH LLC**                       **THE LOUIS D. BRANDEIS CENTER**
1121 N. Bethlehem Pike, Suite 60-242                **FOR HUMAN RIGHTS UNDER LAW**
Spring House, PA 19477                          1717 Pennsylvania Avenue NW, Suite 1025
(215) 885-2250                                  Washington, DC 20006-4623
jmarcus@marcusauerbach.com                      (202) 559-9296
auerbach@marcusauerbach.com                     jenniegross@brandeiscenter.com
                                                avogelst@brandeiscenter.com

*Lead Counsel for Plaintiffs*

L. Rachel Lerman (admitted *pro hac vice*)      Joel Friedlander (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**                      **FRIEDLANDER & GORRIS, P.A**.
2029 Century Park East, Suite 300               1201 N. Market Street, Suite 2200
Los Angeles, CA 90067-2904                      Wilmington, DE 19801
(310) 284-3871                                  (302) 573-3502
rlerman@btlaw.com                               jfriedlander@friedlandergorris.com


                                                Eric D. Roiter (admitted *pro hac vice*)
                                                Lecturer in Law
                                                **BOSTON UNIVERSITY SCHOOL OF LAW**
                                                765 Commonwealth Avenue
                                                Boston, MA  02215
                                                (617) 734-8266
                                                eroiter@bu.edu


                          *Counsel for Plaintiffs*