**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SIMON BRONNER, et al.,

      Plaintiffs,

v.                                                                    Case No: 1:16-cv-00740-RC

LISA DUGGAN, et al.,

      Defendants.

**MOTION TO DISMISS SECOND AMENDED COMPLAINT
BY DEFENDANTS THE AMERICAN STUDIES ASSOCIATION,
LISA DUGGAN, SUNAINA MAIRA, CURTIS MAREZ, NEFERTI TADIAR,
CHANDAN REDDY AND JOHN STEPHENS**

INTRODUCTION

The Second Amended Complaint ("SAC") should be dismissed for lack of subject matter jurisdiction. This Court previously dismissed all derivative claims in which Plaintiffs attempted to seek relief on behalf of the Association. Undeterred, the Plaintiffs attempt to repackage those claims. This effort should not be endorsed or accepted by the Court. Simply put, with one exception, all of the claims for damages within the SAC are derivative in nature.[1] With regard to any claims for individual damages or for declaratory or injunctive relief, to a legal certainty none meet this Court's subject matter threshold of $75,000. Accordingly, the SAC should be dismissed in its entirety.

---

[1] Count Eight regarding the Barton vote is the exception but as discussed herein does not alter the analysis.

Independent of the lack of subject matter jurisdiction, various individual counts are additionally subject to dismissal.  For example, the Plaintiffs have attempted to revive various *ultra vires* claims related to the Resolution—but the Court has already determined that the Resolution was not *ultra vires*, so it cannot be that other acts that led to or are related to the Resolution are *ultra vires*.  Nonetheless, even if those claims are analyzed separately from the Court's earlier ruling, they each fail as a matter of law.  Next, the claim for misrepresentation fails because the SAC fails to make any allegation whatsoever, nor could it, that any of the Plaintiffs relied on the alleged misrepresentations to change their vote.   Finally, the waste claims must be dismissed for reasons previously set forth in the Defendants' pending Motion to dismiss those claims. [2]

## A.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants have argued, in prior pleadings, that the Plaintiffs have failed to claim any individual damages from the adoption of the Resolution, and as such the Court lacks subject-matter jurisdiction.   In its Memorandum Opinion of July 6, 2018 (Document 94), the Court noted that

> It may be true as a matter of law that Plaintiffs' refashioned complaint cannot seek damages on behalf of the ASA, but that argument should be raised in a well-fashioned motion to dismiss or motion for summary judgment.   That is also true for Defendants' argument that D.C. Code § 29-403.04(c) bars Plaintiffs from collecting damages for their *ultra vires*

---

[2] The Co-Defendants have, in their separate Motions to Dismiss, made arguments in addition to those made here, and these Defendants adopt same by reference where applicable.

> claims.  … Once those arguments are ripe for consideration, the Court will again reexamine its subject matter jurisdiction.

Memorandum Opinion at 9-10, n.5.   Defendants respectfully submit this Memorandum as that "motion to dismiss," and assert, in this section, that the Court should dismiss the SAC for lack of subject matter jurisdiction.

1.   <u>Plaintiffs' Derivative Claims Have Already Been Dismissed</u>

In ruling on Defendants' Motion to Dismiss the SAC, the Court found that D.C. law precluded the filing of a civil derivative action unless the requisite demand had been delivered to the corporation and ninety days had since elapsed.  *See Document 28; Bronner v. Duggan*, 249 F.Supp.3d 27, 44 - 45 (D.D.C. 2017), *citing* D.C. Code § 29-411.03. As the Court noted, in this case the Plaintiffs delivered a formal demand letter only two days before filing suit, thereby failing to even approximate the ninety-day demand requirement.  Moreover, the Court found that Plaintiffs had not "shown that a majority of the 23-member National Council … as composed at the time of filing, even contributed to the actions at issue," and that Plaintiffs "have not shown anything more than 'mere allegations of improper motives' by citing to piecemeal statements of support by current councilmembers."  (*Id.* at 47).   Thus, the Court found that Plaintiffs failed to show that demand would have been futile.   All of Plaintiffs' derivative claims were thus dismissed pursuant to Fed. R. Civ. Proc. 23.1.

The SAC does not repair the fatal deficiencies enumerated in the Court's prior opinion -- nor could it.   Although the pleading does allege that there was a concerted effort to pack the 2013 Board with USACBI supporters, and that "starting in 2012 and

continuing for four consecutive years, every candidate … selected to run for American Studies Association President was a USACBI Endorser …" (SAC at ¶ 53), there is absolutely no allegation anywhere in the 85-page document as to the character, or viewpoints, of the members of the National Council in 2016 when the lawsuit was commenced.   There is no allegation that, after 2013, the Nominating Committee took any action to continue offering USACBI supporters for election to the National Council. While there is an implication that, in 2016, the President was a USACBI supporter, that is only one member of a 23-person board.    The SAC lacks any factual allegation to suggest that, in 2016, a demand for litigation on the National Council would have been futile.   Because Plaintiffs failed to provide the requisite demand on the Association before filing the lawsuit, they have failed to revive their derivative claims, and the same should remain dismissed under Fed. R. Civ. P 23.1.

2.    <u>Plaintiffs Have Not Alleged Any Individual Damages</u>

The only damages Plaintiffs seek are those incurred by the Association (as would be appropriate in a derivative claim). This is fatal from a jurisdictional perspective.

Paragraphs 172 – 191 of the SAC detail the financial injury allegedly caused by adoption of the Resolution.   These include:

--    A decrease in contributions to the Association (¶ 174);

--    Use of contributions for legal costs and "other support for the Resolution" (¶ 175);

--    A decrease in membership fees collected (¶ 177);

-- Use of Association funds for retention of a media strategist and Public Relations consultant (¶ 182);

-- "Substantial legal costs defending the Resolution" (¶¶ 183, 185);

-- A substantial increase in the levels of membership fees (¶ 185); and

-- Withdrawals from the Trust Fund to pay for some of these exceptional expenses (¶ 191)

In their nine Counts, therefore, Plaintiffs claim the following:

-- **Count One:** "damages … that the American Studies Association incurred as a result of this breach of fiduciary duty." (¶ 194);

-- **Count Two:** "damages … that the American Studies Association incurred as a result of these breach [*sic*] of fiduciary duties." (¶ 197);

-- **Count Three:** "the award of injunctive relief and damages … incurred by the American Studies Association …" for the *ultra vires* act of failing "to nominate Officers and National Council Reflecting Diversity of Membership" (¶ 207);

-- **Count Four**: Declaratory and injunctive relief and "damages … incurred by the American Studies Association" for the *ultra vires* act of freezing the membership rolls (¶ 215);

-- **Count Five:** Declaratory and Injunctive Relief and "damages … incurred by the American Studies Association" for the *ultra vires* act of attempting to influence legislation (¶ 225);

-- **Count Six**: Damages as set forth in Count Two, along with declaratory relief, for employing a voting process contrary to the Bylaws (¶ 230);

-- **Count Seven**: Damages as set forth in Count One, along with declaratory and injunctive relief for failing to meet the requirements of a quorum in voting on the Resolution (¶ 235);

-- **Count Eight:** Unstated damages incurred by Plaintiff Barton for exclusion from the vote on the Resolution (¶ 240);

-- **Count Nine:** "[D]amages … on behalf of the American Studies Association" for corporate waste (¶ 244).

Only Count Eight even hints at any damage allegedly suffered by one of the individual Plaintiffs – and that is by Dr. Barton alone.   For each of the remaining Counts, the only damages sought were allegedly incurred by the Association, *not* by the individual Plaintiffs.   Plaintiffs claim that ASA has lost "its good reputation and the good will that it had earned over more than six decades" (¶ 9), but there is no factual allegation that any of the individual Plaintiffs have suffered any loss of reputation within the academic community.   There is no allegation that Plaintiffs individually have lost any teaching positions, have been forced to withdraw from speaking engagements, or have had submissions for publication denied, because of the Resolution.   There is no allegation as to the effect on the class size for any course taught by the Plaintiffs, or whether their rankings as professors within their respective institutions have diminished.   Finally, while Plaintiffs do allege that dues in general have increased – at

most by \$155/year – they do not allege that their own dues have increased, nor how much more they individually might have had to pay in dues (*id.* at 65-66, ¶ 185).

Plaintiffs have the obligation to set forth sufficient facts to support any finding that subject matter jurisdiction exists, and that their damages exceed \$ 75,000. *Khadr v. United States*, 381 529 F.3d 1112 (2008) (affirming dismissal on motion for failure to establish subject matter jurisdiction); *Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir. 1973); *see also Watkins v. Pepco Energy*, 2005 U.S. Dist. Lexis 16930, *6 (D.D.C. 2005) (dismissing for lack of jurisdiction). But the only damages for which Plaintiffs have asserted any factual basis are for damages allegedly suffered by the Association. In this regard, the SAC is jurisdictionally deficient and for this additional reason must be dismissed.

   3.   All of the Claims for Damages but One in the Second Amended
        <u>Complaint Are Derivative in Nature</u>

A derivative action, by definition, seeks redress for a wrong to the corporation primarily, and to the shareholder (or, here, the member) only secondarily.  *See* 12B Fletcher Cyc. Corp. ¶ 5908.  Traditionally, the courts have used three tests to determine whether an action is derivative: the "direct harm" test, the "special injury" approach, and the "duty owed" approach.  *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 870 (Tenn. 2016).  Whichever test is employed, ""[t]he pertinent inquiry is whether the thrust of the plaintiff's action is to vindicate his personal rights as an individual and not as a stockholder on behalf of the corporation" *Albany–Plattsburgh United Corp. v. Bell*, 307 A.D.2d 416, 419, 763 N.Y.S.2d 119 (3d Dept.2003) (internal quotations omitted)); *cf Jackson v. George*, 146 A.3d 405, 415 (D.C. 2016) ("In a derivative action, the shareholder

seeks to assert, on behalf of the corporation, a claim belonging not to him but to the corporation.") (*quoting Flocco v. State Farm Mut. Auto Ins. Co.*, 750 A.2d 147, 151 (D.C. 2000)).  Thus, in *Keller*, *supra*, the claim that one member of a close corporation breached his fiduciary duty through mismanagement and self-dealing was derivative in nature and had to be asserted on behalf of the corporation itself.   *See also Wallace v. Perret*, 28 Misc.3d 1023, 903 N.Y.S.2d 888 (2010) (limited partner's claim for breach of fiduciary duty and conversion was derivative); *Gaff v. FDIC*, 814 F.2d 311 (6th Cir. 1987) (Shareholder did not have standing to bring suit under federal banking law when only damage alleged was diminution in value of corporate shares); *Adjusters, Inc. v. Computer Sciences Corp.*, 818 F. Supp. 120 (E.D. Pa. 1993) (corporate president's claim that he had to fund the company with his own funds, thereby risking imposition of a tax lien and loss of home and car were derivative of the primary injuries suffered by the corporation); *Altrust Financial Svces, Inc. v. Adams*, 76 So.2d 228 (Ala. 2011) (claims for damages for diminution in the value of stock were derivative); *Fisher v. Big Squeeze (N.Y.), Inc.*, 349 F.Supp.2d 483 (E.D.N.Y. 2004) (claim by minority shareholder of loss of value of fractional interest was derivative, even though plaintiff alleged he was the only shareholder affected).

Furthermore, any claim for corporate waste is derivative in nature.  *See Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir., 1984) ("Claims of corporate mismanagement must be brought on a derivative basis because no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders."); *Burman v. Phoenix Worldwide Industries, Inc.*, 384 F.Supp.2d 316, 338 (D.D.C. 2005) (claim for breach of

fiduciary duty arising out of failure to secure revenue was dismissed as stating only a derivative claim).

Every Count but one of the SAC – every cause of action, every theory of recovery – seeks damages incurred by the Association, and not by the Plaintiffs individually. The only exception is Count Eight, in which Dr. Barton claims he was denied the right to vote on the Resolution; there is, however, no allegation as to what that vote might have been worth, nor how Dr. Barton might have been injured by the denial.   Every allegation of financial loss relates solely to the Association.    There is no allegation that any one of the Plaintiffs lost any money whatsoever because of the Resolution.   There is no allegation that Plaintiffs suffered any harm unique to themselves, as opposed to all other members of the Association.   Nor, for that matter, is there any allegation that the Defendants breached a duty owed to the individual Plaintiffs specifically, as opposed to those duties owed to the membership at large. The Plaintiffs' claims for damages based on contractual and fiduciary breaches of duty – with the exception of Professor Barton's personal claim - are fatally defective in this regard.  *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984) (no personal cause of action against director absent violation of a duty to the complaining shareholder independent of the fiduciary duties owed that party along with all other shareholders, and unless the alleged conduct causes an injury to the shareholders distinct from any injury to the corporation itself).

By any of the tests enunciated by the courts, the SAC asserts derivative claims, which this Court has already ruled should be dismissed for failure to deliver the requisite demand on the Association.

4.     To the Extent that Plaintiffs Are Asserting Individual Claims, They
       <u>Have Failed to Meet the Court's Jurisdictional Threshold</u>

Relying on *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723 (D.C. 2011),

Plaintiffs have argued that they can present legally cognizable and individual claims for

damages arising from breach of fiduciary duty and from suspension of membership.

Even assuming, *arguendo*, that Plaintiffs were in fact individually harmed (an

assumption not borne up by the SAC), Plaintiffs have failed to allege any basis to

assume that their individual damages meet the $75,000 threshold for diversity

jurisdiction in this Court.   In order to remain in this Court, Plaintiffs bear the burden of

establishing that the amount in controversy exceeds $ 75,000.   *Khadr v. United States,* 529

F.3d 1115 (D.C. Cir. 2008)*; Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993).

Moreover, while all of the factual allegations contained in the complaint are

assumed to be true, "mere conclusory allegations of jurisdiction" and "bald assertions

of jurisdictional facts" are insufficient.   *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 617 (4th

Cir. 2004) *rev'd on other grounds,* 546 U.S. 81 (2005).   Because federal courts are courts of

limited jurisdiction and are empowered to act only in those instances authorized by

Congress, there is a presumption against the existence of federal jurisdiction.   *Lehigh*

*Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 336 (1895); *Roche, supra* 373 F.3d at 617.   Thus, in

determining the existence of subject matter jurisdiction based upon diversity of

citizenship pursuant to 28 U.S.C. §1322, the statute is to be strictly construed and all

doubts are to be resolved against federal jurisdiction.   *See Thomson v. Gaskill*, 315 U.S.

442, 446 (1942).

Again, there are no allegations as to damages suffered by the Plaintiffs themselves. Although the Plaintiffs allege that dues in general have increased – at most by $155/year – they do not allege that their own dues have increased, nor how much more they individually might have had to pay in dues (*id.* at 65-66, ¶ 185).[3] But even if they had experienced some increase in the dues they had to pay, their individual dues increases would have to amount to $75,000 per Plaintiff in order to meet the threshold, because it is well-established that parties may not aggregate their damages to meet the jurisdictional threshold; each individual plaintiff must establish that they are individually entitled to damages in the amount of at least $75,000. *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26 (D.D.C. 2014) (citing *Snyder v. Harris*, 394 U.S. 332, 335, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969) for the longstanding principle that multiple plaintiffs may not aggregate their claims to achieve the jurisdictional monetary threshold). Given that the dues for any ASA member have not increased more than $155 per year, and only in the last one or two years, an increase of more than $ 75,000 for any of the Plaintiffs is not possible as a legal certainty.

The SAC does allege that Dr. Bronner was "unceremoniously kicked out of the National Council meeting" (*id.* at 39, ¶ 109), and that Dr. Barton was not allowed to vote on the Resolution (*id.* at 46-7, ¶ 126). They also allege – quoting from D.C. case law – that they "were affected by the alleged failure to follow the dictates of the constitution

---

[3]   Plaintiffs Bronner and Rockland are "honorary lifetime members" (SAC, ¶¶ 14, 15) and therefore presumably do not pay yearly dues. Plaintiff Kupfer allowed his membership in ASA to lapse after 2014, so he does not pay any dues, either (*Id.*, ¶ 17). An increase in dues paid has also not been claimed in Plaintiffs' initial disclosures.

and the by-laws" (*id.* at 57, ¶ 161, 59, ¶ 167), and that they have suffered "significant economic and reputational damages" (*id.* at 73, ¶ 206; at 75 ¶ 214; 77-78 at ¶ 224).   It is established, however, that the party seeking federal jurisdiction must allege facts in support of such jurisdiction; conclusory statements alone do not establish the amount in controversy. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1044-45 (3rd Cir. 1993) ("person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation"); *Garza v. Bettcher Indus., Inc.*, 752 F. Supp. 753, 763-64 (E.D. Mich.1990) (*cited in McGhee v. Citimortgage, Inc.*, 834 F. Supp.2d 708 (E.D. Mich. 2011)).

There are no facts set forth anywhere in the SAC that would assign a monetary value either to Dr. Bronner's removal from the meeting or to Dr. Barton's inability to vote.   Nor, for that matter have Plaintiffs sought reputational damages in the *ad damnum* clause; as Defendants have previously noted, even the Plaintiffs' Initial Disclosure failed to claim any individual damages.   With regard to dues, even if one were to assume that each of the Plaintiffs saw his dues increase by the maximum amount, their damages would amount to $155 per Plaintiff (the increase went into effect in 2017); as noted above, these cannot be aggregated.

Finally – and as the Court noted in its July 6 Memorandum Opinion (Document 94) -- claims for declaratory and injunctive relief do not independently convey jurisdiction in the federal courts; rather, they are alternative remedies for which a pecuniary interest over $75,000 must be demonstrated.   *See, e.g., Animal Legal Defense*

*Fund v. Hormel Food Corp.*, 249 F. Supp.3d 53 (D.D.C. 2017). [4]   The non-monetary relief requested is a declaration invalidating and vacating the Resolution and enjoining various activities by the Defendant. SAC, *ad damnum* clause.   If the Court ordered such relief, it would cost nothing.   This case is unlike, for example, one in which a declaration and injunction ordering a dilapidated building to be brought up to code, which work would have a cost associated with it.   Finally, attorneys' fees are not counted towards the amount in controversy unless provided by contract or statute.   *Goldman v. Fiat Chrysler Automobiles US, LLC*, 211 F. Supp. 3d 322, 325 (D.D.C. 2016) (*citing Griffin v. Coastal Int'l Sec., Inc.*, No. 06–2246, 2007 WL 1601717, at *3 (D.D.C. June 4, 2007)).   Just as Plaintiffs have failed to allege any fact that would suggest that their individual claims for damages exceed $75,000, so too have they failed to demonstrate that any of the equitable relief requested might have any value approximating $75,000.

Thus, even under the most generous reading of the scant factual allegations in the SAC, Plaintiffs have failed to allege *any* fact that would suggest damages in excess of $ 75,000.

Except for Count Eight (Barton's individual claim), all of the claims in the SAC are derivative in nature.   In every other Count, Plaintiffs seek to recover those damages "incurred by" or "on behalf of" the American Studies Association," and seek equitable relief for the irreparable harm done to the Association.   Plaintiffs have failed to allege

---

[4] In *Hormel Food,* the Court remanded the case for, in part, the defendant's failure to establish that the value of the damages met the jurisdictional threshold.  The plaintiff had requested declaratory relief in that case. The Court noted that the test for determining the amount in controversy when declaratory relief is requested is "the pecuniary result to either party which the judgment would directly produce."  The Court remanded because the defendant failed to meet its burden of establishing that value.

that they suffered direct harm, that they suffered some injury that was not shared by the other members of the Association, or that the Defendants owed any special duty to Plaintiffs.   Under any of the established tests enumerated by the courts, the SAC presents derivative actions which have already been dismissed.

Finally – and to the extent that any of the allegations in the SAC might be liberally construed to imply individual harm to the Plaintiffs – there is absolutely no basis upon which to conclude that such harm rises to the level required for diversity jurisdiction in this Court.   There is no value placed on the denial of Dr. Barton's vote; there is no allegation that the increase in membership fees for each of the Plaintiffs approximates $75,000; there is no allegation that any of the Plaintiffs have incurred any expense because of the Resolution. Because the burden rests on the Plaintiff to demonstrate jurisdiction, and because Plaintiffs have completely failed to meet this burden, the Court should dismiss the SAC for lack of subject matter jurisdiction.


### B.   The Claims of *Ultra Vires* Action Must Be Dismissed

This Court previously ruled that the Resolution was not *ultra vires.*  Apparently not deterred by that ruling, Plaintiffs have alleged various acts *ultra vires* which led to the Resolution or are related to it.  Plaintiffs still fail in the SAC to set forth an actionable *ultra vires* claim.  Indeed, in the SAC's prayer for relief, Plaintiffs fundamentally seek "a Declaration that a vote of the American Studies Association membership with respect to the Israel boycott was *ultra vires,* in breach of Defendants' contractual obligations or of the D.C. Nonprofit Corporation Act, and Waste."  SAC page 82.  The Court has already

ruled that the Resolution was not *ultra vires* and Plaintiffs should not be allowed to retest that ruling.

Nonetheless, even if each new *ultra vires* claim was analyzed on its own, they still would fail. In its Order on Defendants' prior Motion to Dismiss (Document 28), the Court found that nothing in ASA's "organic documents" prohibited adoption of the Resolution (*Bronner v. Duggan*, 249 F.Supp.3d 27, 48 - 49 (D.D.C. 2017)), and that the Resolution did not seek directly to influence legislation (*id.* at 49: "Plaintiffs have not pointed to any existing, proposed or pending legislation that ASA may have been targeting with the resolution."). Finally, although Plaintiffs alleged that the Resolution violated "longstanding practice," they did not point to any express statutory or by-law prohibition. *Id.* Accordingly, Plaintiffs' claim that the Resolution was *ultra vires* was dismissed.

Plaintiffs have revisited their claims of *ultra vires* activity in Counts Three, Four and Five of the SAC. Specifically, Plaintiffs claim that Defendants acted unlawfully by: (1) failing to adequately provide for diversity in the National Council (Count Three); (2) freezing the membership rolls before the vote on the Resolution (Count Four); and (3) engaging in activity designed to "influence legislation" (Count Five). Each of these counts, however, betray a fundamental misunderstanding of how the law of *ultra vires* is actually applied.

As the Court has already noted, ultra vires actions are those "'expressly prohibited by statute or by-law' or outside the powers conferred upon it by its articles of incorporation." *Bronner, supra* 249 F.Supp.3d at 47; *see also Welsh v. McNeil*, 162 A.3d

135, 150 n. 43 (D.C. 2017) ("in its true sense the phrase *ultra vires* describes action which is beyond the purpose or power of the corporation."). Thus, while the phrase is often confused with "acts within the power of the corporation but exercised without complying with required procedure" (*Welsh*, *id.*), the concept is separate from a mere misuse of corporate power. In order for the act to be *ultra vires*, **it must be expressly prohibited by statute or by-law**. None of the acts alleged in Counts Three through Five are so prohibited.

Count Three claims that "Defendants were in violation of the American Studies Association Constitution, because the candidates for American Studies Association President, the Executive Committee, and the National Council were not 'representative of the diversity of the association's membership.'" (SAC, ¶ 201; *see also* ¶¶ 48, 65). What Plaintiffs ignore, however, is the definition of "diversity," contained within the very bylaw upon which they rely, and which entirely undercuts their complaints:

> . . . The chair(s) when preparing recommendations for Committee members shall choose the best qualified members consistent with reasonable representation of the major fields of American Studies scholarship and the diversity of the association's membership **in order to maintain a balance of age, racial, ethnic, regional, and gender participation**. (Emphasis added)

Like any other contract provision, Section 2 is interpreted according to its plain language. *Daley v. Alpha Kappa Alpha*, 26 A.3d 723, 731 (2011) (bylaws are a contract between organization and its members); *Clark v. Mutual Reserve Fund Life Assoc.*, 14 App. D.C. 154 (1899) (corporate constitution and bylaws are part of the contract between the corporation and its members); *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013)

(interpretation of contract is a question of law; granting motion to dismiss on basis of contract interpretation). *BSA 77 P St. LLC v. Hawkins*, 983 A.2d 988, 993 (D.C. 2009) (interpretation must follow what a "reasonable person in the position of the parties would have thought the disputed language meant").   To claim that maintaining "diversity" on the National Council required nominating candidates with different viewpoints on the Israel/Palestine conflict is not only unreasonable but absurd.

The lack of "diversity" that Plaintiffs allege has nothing to do with the race, creed, color, national origin, geographical allegiance, or even gender or sexual preference of any of the candidates for, or elected officials on, the National Council or Executive Committee.   It has no connection to the "major fields of American Studies scholarship;" it has no relation to the academic philosophies of any of the Council members.    On the contrary: Plaintiffs are upset because each of the candidates for President of the Council was a "vocal and active member of the boycott movement" (*Id.*, ¶ 53) and by 2013, "six of the ten continuing voting members of the National Council were USACBI Endorsers."   (*Id.* ¶ 62).   Of the nearly infinite ways in which human beings could differ from one another, Plaintiffs have seized upon this single picayune question and elevated it to a position of institutional importance.

Certainly, there is nothing in the D.C. Non-Profit Corporation Act or in the Bylaws which requires that members of the National Council hold differing viewpoints of global politics in a Board of Directors.   Agreement or not on a question of Israeli-Palestinian relations thus does not affect the "diversity" of the National Council, particularly as that term is defined in the Bylaws.   Thus nothing in the SAC suggests

that the election of candidates for the National Council violated an express provision of the Bylaws.   The Defendants' alleged actions at Count Three, therefore, cannot be *ultra vires*.

Count Four asserts that the Defendants acted *ultra vires* in freezing the voting rolls before the vote on the Resolution "such that members (including Plaintiff Barton) who paid their dues after November 25 were unable to vote on the Resolution …" (SAC, ¶ 210).   As Plaintiffs admit, however, the ASA Constitution states that where a member is six months in arrears, that member is dropped from the rolls, and "may be reinstated at any time" upon payment of a full year's dues (*Id.* ¶ 124).   "May" means that the lapsed members is eligible for reinstatement, not that such reinstatement is mandatory or that it must proceed within a specific time-frame.   There is nothing in the Constitution – nor do Plaintiffs cite to anything in the Bylaws – to suggest that a lapsed membership must be reinstated *immediately* upon payment, nor that all the prerequisites of membership must, automatically and unequivocally, be reinstated upon payment of dues.

Dr. Barton admits that he was more than six months in arrears on his dues payments – although he claims that he was simply "unclear on his membership status." (SAC, ¶ 127).   It boots nothing for Dr. Barton to allege that the "long-standing practice" of the Association was to allow lapsed members to vote immediately upon reinstatement; in order for an act to be *ultra vires*, it must violate an express provision of the governing documents.   Nothing suggests that either "freezing" the voting rolls or

failing to allow a lapsed member to vote immediately is expressly prohibited by the Bylaws.   The Defendants' actions, therefore, cannot be *ultra vires*.

Finally, Count Five alleges that the Resolution, as well as work to counter anti-boycott legislation in various state governments, constitutes an "effort[] to influence … legislation" in contravention of the Association's Statement of Election (SAC, ¶¶ 217, 218).   This Court has already rejected the first part of this assertion, by noting that the Resolution "was not an attempt to influence legislation in any meaningful sense of the term."   *Bronner*, *supra*, 249 F.Supp.3d at 49 (D.D.C. 2017).

The second part of the assertion also fails.   Plaintiffs specifically allege that the Association has been engaged in efforts "to block legislation directed at the association from multiple legislatures …" (SAC ¶ 156) and in "defense of the ASA" (¶ 157).   The only legislation that Defendants allegedly sought to influence – according to the SAC itself – was aimed directly at ASA and at its interests.

In fact, the same section of the Tax Code upon which the Plaintiffs base their allegations at Section II F of the SAC makes plain that a non-profit's action for or against proposed legislation in defense of that 501(c)(3) organization is not "influencing legislation" within the scope of the lobbying statutes, and thus is not unlawful.

Tax Code Section 501(h) (26 U.S.C. § 4911), contains the following exception to the prohibition against "influencing legislation:"

> (2)   **Exceptions**   For purposes of this section, the term "influencing legislation," with respect to an organization, does not include—

* * *

(C) appearances before, or communications to, any legislative body with respect to a possible decision of such body which might affect the existence of the organization, its powers and duties, tax-exempt status, or the deduction of contributions to the organization;

(D) communications between the organization and its bona fide members with respect to legislation or proposed legislation of direct interest to the organization and such members, other than communications described in paragraph (3)

There is nothing in the SAC– in all its hundreds of paragraphs – to suggest that the Defendants engaged in any activity before any legislature to address any proposed legislation other than "legislation directed at the association" (¶ 156).  The allegations of the SAC actually establish that the Defendants were acting to do precisely what §501(h) permits and protects. Plaintiffs assert that the Association has been engaged in efforts "to block legislation directed at the association from multiple legislatures …" (SAC ¶ 156) and in "defense of the ASA" (¶ 157).  The only legislation that Defendants allegedly sought to influence was thus aimed *directly at ASA*.[5]  The plain language of the SAC and the U.S. Tax Code establish that Count Five must, fail as a matter of law.

---

[5] Contrary to the suggestion of the Plaintiffs, under such circumstances it would likely have been a breach of fiduciary duty *not to take* some defensive action.

C.      **Count One / Material Misrepresentations Must Be Dismissed**

Count One, "Material Misrepresentations and Omissions in Connection With Elections to Office and Seeking Member Approval of Boycott Resolution and Amendment of the Bylaws," must be dismissed because the SAC fails to allege (nor could it) two crucial elements of a misrepresentation claim.

Count One claims breach of fiduciary duty by virtue of material misrepresentations and omissions by "the individual Defendants" "including misrepresentation and omission of material facts regarding (1) their personal political agenda and plan to suborn the Association to advance the purposes of the USACBI by causing the American Studies Association to adopt and implement the Boycott Resolution, and (2) the expected costs of the Boycott Resolution, including, *inter alia,* reputational and financial costs and the loss of good will."

However, there is no allegation that any of the Plaintiffs relied on the alleged misrepresentations or that they changed their position on the Resolution vote.  In order to state a claim for fraud and misrepresentation in the District of Columbia, the Plaintiff must plead (1) a false representation or willfully omitted material fact; (2) knowledge of the misrepresentation or willful knowledge of the misrepresentation; (3) intended to induce Plaintiff to rely on the misrepresentation; (4) Plaintiff acted in reliance on the misrepresentation; and (5) Plaintiffs suffered damage as a result of the misrepresentation.  *See D.C. Jury Instruction 20.01; Shiff v. American Assn'n. of Retired Persons*, 697 A.2d 1193 (D.C. 1997).  Here there is no allegation, nor could there be, that any of the Plaintiffs relied upon any statements by the Defendants or that they changed

their position (voted in favor of the Resolution), nor that they suffered individual damages as a result.  Having failed to allege crucial elements of the claim, Count One must be dismissed.

### D.   The Waste Claims Should Be Dismissed

In addition to the reasons set forth above that the SAC must be dismissed in its entirety, the waste claims should be dismissed for additional reasons.  On November 21, 2017, Defendants filed a Motion for Partial Judgment on the Pleadings, and argued that because the Court had already dismissed all the derivative claims in the First Amended Complaint, the claim for waste should also be dismissed.  Specifically, except in those instances in which the defendants have violated "a duty … independent of the fiduciary duties owed … all other shareholders", a claim for corporate waste "must be brought on a derivative basis."  *Cowin v. Bresler*, 741 F.2d 410, 414 – 415 (D.C. Cir. 1984); *see also Burman v. Phoenix Worldwide Industries, Inc.*, 384 F.Supp.2d 316, 338 (D.D.C. 2005).

The Motion for Partial Judgment remains pending.   Defendants will not repeat those arguments here, but would note that nothing in the SAC suggests that any of the Defendants owed the Plaintiffs an independent duty, apart from the fiduciary duty owed to the Association as a whole, to preserve the Association's assets.  Count Nine, claiming corporate waste, remains a derivative action and, as argued more fully above, must be dismissed as a matter of law.  In addition, Count Two of the SAC is, despite its label ("misuse of assets"), a claim for waste and should be dismissed for the same

reasons (*see* ¶197 of the SAC: ". . . the Individual Defendants have breached their fiduciary duties and wasted Association assets . . ." allegedly entitling the Plaintiffs to "recover damages . . . that the American Studies Association incurred.").

CONCLUSION

The Second Amended Complaint must be dismissed in its entirety for lack of subject matter jurisdiction.  Although the Plaintiffs have again sought to revive damage claims on behalf of the ASA, their failure to make a demand on the Association at least ninety days before bringing suit destroys these claims.  Thus, only the individual claims should be considered by the Court; in that regard, there is only one claim for individual damages – that of Plaintiff Barton. Barton has not and cannot allege $75,000 damage resulting from the fact that he was not permitted to vote on the Resolution.  Nor do any of the requests for declaratory or injunctive relief – judicial invalidation of the Resolution – establish a jurisdictional threshold of $75,000 in value. Accordingly, this case must be dismissed in its entirety.

For separate and independent reasons, the claims for *ultra vires* actions (Counts Three, Four and Five ) must be dismissed because the alleged acts were not "expressly prohibited" by statute or the bylaws of the ASA, as is apparent from both the bylaws and the statute cited by Plaintiffs.

Plaintiffs' claims of misrepresentation (Count One) must be dismissed for basic failure to allege the elements of the *prima facie* claim.

Finally, the "waste claims" (Counts Two and Nine), should be dismissed for those reasons set forth in the Defendants pending Motion for Partial Judgment on the Pleadings (Document 35).

For the preceding reasons, the Second Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

*/s/ John J. Hathway*
John J. Hathway, Esq. #412664
Thomas Mugavero, Esq. #431512
Whiteford, Taylor & Preston L.L.P.
1800 M Street, N.W., Suite 450N
Washington, D.C. 20036-5405
(202) 659-6800
jhathway@wtplaw.com
tmugavero@wtplaw.com

*/s/ Jeffrey C. Seaman*
Jeff C. Seaman, Esq. #466509
Whiteford, Taylor & Preston L.L.P.
7501 Wisconsin Avenue
Suite 700W
Bethesda, MD 20816
(301) 804-3610
jseaman@wtplaw.com

2116617