**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON,<br><br>        Plaintiffs,<br><br>v.<br><br>LISA DUGGAN, CURTIS MAREZ, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, J. KEHAULANI KAUANUI, JASBIR PUAR, STEVEN SALAITA, JOHN STEPHENS, and THE AMERICAN STUDIES ASSOCIATION,<br><br>        Defendants. | Case No. 1:16-cv-00740-RC |

**DEFENDANT STEVEN SALAITA'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant Steven Salaita files this Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  As more fully set forth in the accompanying Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, which is incorporated herein by reference, the Second Amended Complaint should be dismissed in its entirety with prejudice.

Dated: August 27, 2018                     Respectfully submitted,

                                           /s/ Maria C. LaHood
                                           Maria C. LaHood (*pro hac vice*)
                                           Center for Constitutional Rights
                                           666 Broadway, 7th Floor
                                           New York, NY 10012
                                           Tel.: (212) 614-6430
                                           Fax: (212) 614-6422
                                           mlahood@ccrjustice.org

                                           /s/ Shayana Kadidal
                                           Shayana Kadidal (D.C. Bar No. 454248)
                                           Center for Constitutional Rights
                                           666 Broadway, 7th Floor
                                           New York, NY 10012
                                           Tel.: (212) 614-6438
                                           Fax: (212) 614-6422
                                           shanek@ccrjustice.org

                                           *Attorneys for Defendant Steven Salaita*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>LISA DUGGAN, CURTIS MAREZ, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, J. KEHAULANI KAUANUI, JASBIR PUAR, STEVEN SALAITA, JOHN STEPHENS, and THE AMERICAN STUDIES ASSOCIATION,<br><br>　　　　Defendants. | Case No. 1:16-cv-00740-RC |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT STEVEN SALAITA'S MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") against Dr. Steven Salaita fails in every respect. Plaintiffs fail to allege one single fact that would support personal jurisdiction over Dr. Salaita (save their false allegation that he resides in the District of Columbia), fail to allege facts sufficient to establish subject matter jurisdiction, and fail to allege any cognizable claim against him. In a case in which Plaintiffs attempt to cast support for human rights as conspiratorial in a desperate effort to suppress constitutionally protected expression, their "claims" against Dr. Salaita stand out as especially preposterous. Plaintiffs' specific allegations have nothing to do with Dr. Salaita, except to the extent they expose the reason he is being targeted here—his outspoken advocacy for the rights of Palestinians and the right to boycott Israel to enforce those rights. Plaintiffs' allegations against Dr. Salaita boil down to a claim that he was on the National Council of the American Studies Association ("ASA") when the ASA expended funds on legal fees to defend against this very lawsuit—a lawsuit brought to permanently enjoin the ASA from various actions, and inflict damages on several individuals. Plaintiffs' meritless, harassing lawsuit against Dr. Salaita should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

## STATEMENT OF FACTS

In 2013, the ASA adopted a Resolution regarding a boycott of Israeli academic institutions (the "Resolution"). *See, e.g.,* SAC, ECF No. 81, ¶¶ 3; 54. Defendant Dr. Steven Salaita's term on the ASA's National Council began July 1, 2015, SAC ¶ 26, long after the 2013 Resolution was adopted and the majority of the conduct complained of took place. *See, e.g.,* SAC ¶¶ 28-161. Dr. Salaita's term ended June 30, 2018. SAC ¶ 26.

Plaintiffs incorrectly allege (on "information and belief") that Dr. Salaita is a resident of the District of Columbia. SAC ¶ 26. Plaintiffs are aware, in fact, that Dr. Salaita resides in the

Commonwealth of Virginia. *See* Return of Serv./Aff. of Summons & Compl. Executed, ECF No. 84 (the process server's Aff. of Posting the Summons at Dr. Salaita's place of abode in Springfield, Va.).

The only allegation Plaintiffs make that Dr. Salaita had any responsibility for the events they complain of is in the section of the SAC identifying the parties, alleging that Dr. Salaita "was a member of the National Council" when the ASA's bylaws "were changed to allow large withdrawals" from the ASA's Trust and Development Fund, and "when large withdrawals were taken to cover expenses related to the Boycott Resolution." SAC ¶ 26.   Plaintiffs do not, however, allege that Dr. Salaita had any personal involvement in amending the bylaws or withdrawing funds to pay Resolution-related expenses, or otherwise "misusing" ASA assets.   Of the dozens of National Council members who served from 2015-2018 (as Dr. Salaita did), or from 2014-2017, 2016-2019 or 2017-2020, and who therefore, according to Plaintiffs' allegations, could bear the same responsibility as Dr. Salaita, Plaintiffs chose to sue only one in their lawsuit—Dr. Salaita. SAC ¶¶ 18-27; *see also* Const. & Bylaws of the Am. Studies Ass'n ("ASA Const. & Bylaws"), Bylaws, Art. V § 1, Defs.' Mot. to Dismiss Renewed, Ex. 1, ECF No. 21-3; *see also Bronner v. Duggan*, 249 F. Supp. 3d 27, 33 (D.D.C. 2017) (Mem. Op., Mar. 31, 2017, ECF No. 28) (in which this Court, in this case, considered the ASA Constitution and Bylaws in deciding a prior Motion to Dismiss because they were specifically referenced in Plaintiffs' Complaint).

Dr. Salaita is only mentioned in two other paragraphs in the SAC, both regarding events that occurred before he was a member of the National Council.   One paragraph contains an excerpt of an op-ed Dr. Salaita wrote regarding USACBI (the United States Campaign for the Academic and Cultural Boycott of Israel) that was published March 1, 2014, prior to his tenure

on the National Council, with a corresponding footnote containing extraneous information about Dr. Salaita's termination by the University of Illinois due to his tweets regarding Israel and Palestine (*see* SAC ¶ 46; SAC n. 4), tweets that a federal court found "implicate every 'central concern' of the First Amendment." *Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1083 (N.D. Ill. 2015).  The other paragraph mentioning Dr. Salaita states that he was on email communications with some of the defendants (and Bill Mullen, who Plaintiffs incorrectly describe as a defendant) when he was part of the USACBI Organizing Collective, also prior to his tenure on the ASA National Council. SAC ¶ 99.  Dr. Salaita is not mentioned by name in any other allegation in the 244-paragraph SAC.

In fact, Plaintiffs removed an allegation about Dr. Salaita that appeared in their prior Amended Complaint, likely because it belied the real reason they named him as a defendant—his advocacy around boycotting Israel: "Steven Salaita is a vociferous advocate of a boycott of Israel, and a member of the organizing collective of USACBI. He has among other writings, penned an article on how to boycott Israel in academia. Steven Salaita, *How to Practice BDS in Academe,* The Electronic Intifada (May 27, 2014), https://electronicintifada.net/blogs/steven-salaita/how-practice-bds-academe." Pls.' Am. Compl., Jun. 23, 2016, ECF No. 19, at ¶ 74.ii.

Notably, in Plaintiffs' Initial Disclosures, which were made between their Amended Complaint and their SAC, they did not even name Dr. Salaita as someone who may have discoverable information relevant to disputed facts alleged in their complaint.  Pls.' Initial Disclosures Pursuant to Fed. R. Civ. P. 26, Defs.' Mem. in Opp'n to Pls.' Mot. for Extension of Time to Add Parties, Ex. B, executed May 5, 2017, and filed Nov. 16, 2017, ECF No. 58-2. Plaintiffs have simply failed to allege that Dr. Salaita was personally involved in any of the conduct of which they complain, and for good reason—he was not.

**ARGUMENT**

## I.   PLAINTIFFS' CLAIMS AGAINST DR. SALAITA SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Plaintiffs bear the burden of establishing personal jurisdiction over Dr. Salaita. *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 269 (D.C. 2001). "In order to meet [their] burden, plaintiff[s] must allege specific facts on which personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 89 (D.D.C. 2008).  Plaintiffs do not allege one single fact to establish personal jurisdiction over Dr. Salaita, leaving aside their false allegation that he resides in the District of Columbia; Dr. Salaita lives in Virginia, as Plaintiffs are aware, given that they served him at his home there. *See* Return of Serv./Aff. of Summons & Compl. Executed, ECF No. 84; *see also,* Va. Code § 8.01-296 (2018).

To exercise personal jurisdiction, the Court must "determine whether jurisdiction over a party is proper under the applicable local long-arm statute and whether it accords with the demands of due process." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  Given that Plaintiffs allege no contact that Dr. Salaita has had with the District, they can neither establish general jurisdiction (requiring continuous and systematic contacts), nor can they establish specific jurisdiction, which requires that a "controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation omitted).

To establish specific jurisdiction, there must be "'some act by which the defendant purposefully avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" to ensure that jurisdiction is not based solely on random, fortuitous, or attenuated contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  In relevant part, the District of Columbia's long-arm statute permits personal jurisdiction over a non-resident defendant "as to a claim for relief arising from the person's…transacting any business in the District of Columbia" or "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423 (a)(1); (a)(3) (2018).  Jurisdiction is only proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum." *Burger King*, 471 U.S. at 475 (emphasis in original).  Plaintiffs have failed to make one single factual allegation that Dr. Salaita had any contact with the forum, much less a substantial connection.  Plaintiffs have not alleged that Dr. Salaita was personally involved in any decision to amend the bylaws or withdraw Trust Funds.

Dr. Salaita's former role as an ASA National Council member, on its own, is simply insufficient to establish this Court's jurisdiction over him.  "Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 163 (D.C. 2000).  "Just because Defendants were employed by, or were members of the board of directors of, a company which does business in the District, is not by itself sufficient to establish minimum contacts." *NAWA USA, Inc. v. Bottler*, 533 F. Supp. 2d 52, 57 (D.D.C. 2008).  Even though plaintiff NAWA USA, Inc.'s principal place of business was in the District of Columbia and it alleged that its former directors misappropriated its funds (and that the directors had assumed their responsibilities at a board meeting in the District of Columbia), the court found it lacked personal jurisdiction because Plaintiff had failed to allege "specific facts demonstrating that each Defendant had a 'substantial connection' with the District of Columbia." *Id.  See also Quinto v.*

*Legal Times of Wash., Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981) (finding no personal jurisdiction over corporate officers and part-owners of a parent company of a District of Columbia corporation because while they "may have conducted substantial business in the District of Columbia, their activities were conducted on behalf of the corporation"). Plaintiffs have not alleged one single action by Dr. Salaita through which he has purposefully availed himself of the privilege of conducting activities in the District of Columbia. *See Burger King Corp.*, 471 U.S. at 475.

Unlike this Court's prior finding of personal jurisdiction over individual defendants in this case who "allegedly took part in the purportedly injurious activities of the ASA in the District of Columbia," *Bronner,* 249 F. Supp. 3d at 40, Dr. Salaita is not alleged to have engaged in any conduct in the District, much less a wrongful act that is the basis of Plaintiffs' claims against him. He was not a National Council member (nor did he have any other position charging him with "leading the ASA") in 2013 when the annual ASA meeting was held in the District of Columbia. *Id.*

The cases relied on by this Court in its prior opinion, *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723 (D.C. 2011) and *Family Fed'n for World Peace & Unification Int'l v. Hyun Jin Moon*, 129 A.3d 234 (D.C. 2015), are not to the contrary. In *Daley*, plaintiffs alleged that the defendant members of the Directorate had engaged in managerial wrongdoing at a week-long meeting in the District of Columbia at which all of the named defendants "voluntarily participated" in the meetings "or the actions relating thereto." 26 A.3d at 728. In contrast, Dr. Salaita is not alleged to have engaged in any conduct whatsoever in the District of Columbia.

In *Family Fed'n*, plaintiffs alleged that the five defendant directors took over UCI, a D.C. non-membership nonprofit established for the benefit of Reverend Moon's Unification Church.

129 A.3d at 241.  The takeover was led by Rev. Moon's son Preston Moon, who arranged for the resignation and removal of the other four directors and hand-picked their replacements, including two of Preston Moon's brothers-in-law. *Id.*  Then the defendant directors amended UCI's articles of incorporation to fundamentally alter its purpose to no longer support the Unification Church, and defendant Preston Moon engaged in self-dealing to divert UCI's assets for his own interests. *Id.* at 241-42.  Significantly, the court found that "the allegedly wrongful amendment of the Articles of Incorporation, indubitably occurred within the District by filing here." *Id.* at 243.  In this case, however, Plaintiffs allege (albeit inadequately) wrongful amendment of the ASA's Bylaws, which, unlike amendment of Articles of Incorporation, do not require filing in the District of Columbia.  *Compare* D.C. Code § 29-408.06 (2018), *with* D.C. Code § 29-408.20 (2018).

The court in *Family Fed'n* also emphasized that while "the individual officers in *Daley* had been present in the District, the association itself consisted of a wide membership, unlike the structure of UCI." 129 A.3d at 243.  In *Family Fed'n*, however, "each defendant voluntarily undertook to serve as a director of a nonprofit District corporation without members or stockholders, and where the directors were self-perpetuating and in total control of the corporation, answerable only to themselves." *Id.*   That is not the case with the ASA, which is a membership non-profit, as in *Daley*, and which has a diffuse leadership structure, with National Council members elected by the membership.  *See* ASA Const. & Bylaws, Bylaws, Art. V § 1(c).

Moreover, unlike in *Family Fed'n*, in which all five directors were sued, Plaintiffs here did not sue all the ASA directors, but targeted Dr. Salaita, one of dozens of members who were on the National Council when he was.  There is only one possible reason Plaintiffs chose to sue Dr. Salaita, and that is to harass and punish him for his advocacy of Palestinian rights, and

specifically his constitutionally protected right to advocate for boycotts. *See, e.g., Koontz v. Watson*, 283 F. Supp. 3d 1007, 1022 (D. Kan. 2018) (boycott of Israel is protected by the First Amendment); *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 (1982).  Because Plaintiffs have alleged nothing to connect Dr. Salaita to the District of Columbia other than that he was on the National Council of a D.C. nonprofit corporation (and their demonstrably false allegation that he resides in D.C.), they have failed to meet their burden of establishing personal jurisdiction, and the case against him should be dismissed under Fed. R. Civ. P. 12(b)(2).

## II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

Where a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" dismissal is appropriate under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  Plaintiffs' have not come close to sufficiently alleging that Dr. Salaita has acted unlawfully.  Their SAC fails to state a claim for relief against Dr. Salaita and should therefore be dismissed under Fed. R. Civ. P. 12(b)(6).  By this motion, Dr. Salaita also joins in all motions to dismiss brought by his co-Defendants, including the Motion to Dismiss by Defendants ASA et al. and the Motion to Dismiss by Defendants Kauanui and Puar, and incorporates those arguments herein.

### A)  Counts Three Through Eight Irrefutably Do Not Apply to Dr. Salaita.

Several of Plaintiffs' claims indisputably cannot apply to Dr. Salaita, as the alleged conduct occurred prior to when his service on the National Council began in July 2015.  Count Three, Ultra Vires and Breach of Contract claims for "Failure to Nominate Officers and National Council Reflecting Diversity of Membership," alleges conduct prior to adoption of the 2013

8

Resolution. SAC p. 71.  Count Four, Ultra Vires and Breach of Contract claims for "Freezing Membership Rolls to Prohibit Voting" alleges conduct prior to the 2013 vote. SAC p. 74.  And Count Five, Ultra Vires and Breach of Contract claims for efforts to influence legislation constituting a "substantial part" of the ASA's activities, alleges conduct "at least with respect to" Fiscal Years 2012 and 2013, and "from approximately July 2013 until at least June of 2015". SAC ¶¶ 218-19.  All of the alleged conduct underlying Counts Three, Four, and Five occurred before Dr. Salaita became a member of the ASA National Council in July 2015, so they should be dismissed for failing to state a claim against him.  Moreover, Plaintiffs' allegations regarding the ASA's efforts to defend itself against legislation (SAC ¶¶ 153-161) also fail because § 501(c)(3) organizations are not "influencing legislation" when they oppose legislation that "might affect the existence of the organization, its powers and duties, tax-exempt status, or the deduction of contributions to the organization."  26 U.S.C. § 4911(d)(2)(c) (2018).  Count Six for Breach of Contract for the Voting Process, Count Seven for breach of the D.C. Nonprofit Corporation Act, and Count Eight for Breach of Contract for the Denial of Right to Vote, are brought against Defendant ASA only, not against Dr. Salaita.  *See* SAC pp. 78-80.

**B)  Counts One, Two, and Nine Do Not State a Claim against Dr. Salaita.**

Notwithstanding the absence of specific allegations against Dr. Salaita, the only claims that could even possibly be construed to be asserted against him on the basis of his July 2015-June 2018 tenure on the National Council are the aspects of Counts One, Two and Nine that relate to amending the bylaws and purportedly misusing ASA assets.  The only aspect of Count One for breach of fiduciary duties that arguably applies due to Dr. Salaita's tenure relates to Amendment of the Bylaws (which is only mentioned in the subheading, not in the body of the count), since any representations made in conjunction with elections to office and seeking

member approval of the Resolution occurred prior to Dr. Salaita's National Council term. SAC ¶ 194.  Plaintiffs point to amendments to the Bylaws that removed the word "small" to describe grants that could be made from the Trust and Development Fund, and that permitted some expenditure of Trust Fund assets. SAC ¶¶ 163-164.  Plaintiffs further allege, "On information and belief, Defendants never informed the full membership that the amendments to the bylaws that they voted on would be utilized to pay legal bills arising from the Boycott Resolution" (SAC ¶ 171).

The ASA's Bylaws, however, do not require amendments to be approved by the membership, but rather authorize amendments to the Bylaws to be adopted by the National Council. *See* ASA Const. & Bylaws, Bylaws, Art. XIII § 1.  Only amendments to the ASA Constitution required ratification by the ASA membership. *See* ASA Const. & Bylaws, Const. Art. VIII § 4.  Plaintiffs allege that changes to the Bylaws, not the Constitution, permitted withdrawals of large amounts from the Trust Fund. SAC ¶ 164.  So even assuming Plaintiffs are correct that the full membership was not informed of the bylaw changes prior to voting on them, it is immaterial, as membership approval was not required to amend the Bylaws.  Regardless, Plaintiffs do not allege Dr. Salaita personally participated in any way regarding informing the membership about the amendments, or in any National Council vote to amend the bylaws.

Of the allegations in Count Two for breach of fiduciary duties related to Misappropriation and Misuse of Assets of ASA (SAC ¶¶ 195-197), and similarly, for Count Nine, Corporate Waste in using resources to support the Resolution (SAC ¶¶ 241-244), the only expenditures alleged to have been incurred during Dr. Salaita's term on the National Council that are even arguably related to the Resolution are the ASA's legal fees.  Plaintiffs allege the ASA incurred Resolution-related expenses to retain a media strategist and Public Relations consultant

and "arguably" for payments around the 2014 ASA meeting, but these expenditures were made prior to July 2015 when Dr. Salaita joined the National Council. SAC ¶ 182.

Plaintiffs allege, without irony, that the ASA has incurred "substantial legal costs defending the Resolution." SAC ¶ 183.  The absurdity and gall of trying to state a claim for the ASA's expenditure of legal fees to defend against Plaintiffs' own lawsuit would be laughable, if only it were not so damaging to Defendants and to the constitutionally protected right to boycott. Plaintiffs' attempt to bootstrap an injury of their own making must be rejected. Derivative claims are consistently "foreclosed when they merely allege damages based on the potential costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct." *In re Cray Inc. Derivative Litig.,* 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) (citing cases in finding that derivative claim for costs of litigation are insufficient to state a claim for relief).  For example, in *In re Symbol Techs. Sec. Litig.,* 762 F. Supp. 510 (E.D.N.Y. 1991), a derivative action for breach of fiduciary duty and waste seeking to recover "expenses incurred by the Corporation in defending" litigation, *id.* at 513, the court found "defendants cannot be held liable for the costs of defending a potentially baseless suit." *Id.* at 516.  "[D]amages must be shown to flow directly from the wrongful acts of defendants, and not to the mere commencement of legal proceedings against the Corporation." *Id.* at 517.

Moreover, Plaintiffs fail to allege that the ASA "will not derive a legitimate value from defending its own actions, which heretofore have not been proven to violate the law." *Garcia v. Carrión*, No. 09-1507 (JAG), 2010 WL 3662593 (D.P.R. Aug. 11, 2010) at *9.  Finally, "[d]irectors and officers usually have a duty to engage lawyers to defend the corporation even if they individually have failed to perform in some way that caused the litigation." *Kaplan v. First Hartford Corp*., 484 F. Supp. 2d 131, 144 (D. Me. 2007).

Lastly, Plaintiffs allege the ASA has incurred insurance costs "arising from the Resolution." SAC ¶ 185.   Plaintiffs fail to specify precisely how insurance costs might have arisen from the Resolution—unless they mean to suggest that the ASA decided to purchase Directors and Officers Liability coverage insurance in response to the lawsuit that Plaintiffs themselves brought against the ASA and multiple other Defendants for actions they took as volunteer directors and officers of the ASA.   Plaintiffs' claim that insurance is a Resolution-related expense fails for the same bootstrapping reason as the legal expenses.   Moreover, Plaintiffs' SAC states that the insurance purchase was approved by the Executive Committee, of which Dr. Salaita was not a member, not the National Council on which Dr. Salaita served. SAC ¶ 185.

Significantly, Plaintiffs do not even allege that Resolution-related expenses came out of the Trust Fund, alleging instead that "[a]t this time, we have insufficient documents to determine whether funds were withdrawn from the American Studies Association Trust Fund specifically to cover expenses related to the Resolution." SAC ¶ 188.   But the Bylaws Amendments of which Plaintiffs complain relate only to the Trust Fund. SAC ¶¶ 163-164.   To the extent Plaintiffs' SAC does detail expenditures from the Fund, it excerpts an email from the ASA President stating that the expenses covered by grants from the Fund in FY 2016 and FY 2017 were for "legal fees and the new website." SAC ¶ 171.   The new website was clearly not a Resolution-related expense, and is not alleged to be.   Even if Plaintiffs could allege Dr. Salaita had any personal involvement in the decision-making around amendment of the bylaws or withdrawals of funds, they do not allege the Fund withdrawals were related to the Resolution, and they cannot bootstrap any legal fees spent on defending the ASA from their own lawsuit.

**C)  Plaintiffs' Derivative Claims Should Be Dismissed as a Matter of Law.**

Plaintiffs' claims against Dr. Salaita are all brought derivatively on behalf of the ASA, for damages incurred by the ASA.  *See, e.g.*, SAC ¶¶ 194, 197, 244.  Plaintiffs failed to demand a remedy from the ASA National Council ninety days before filing suit, and didn't adequately plead futility, so their derivative claims fail. D.C. Code § 29–411.03(2) (2018).  Plaintiffs' claims against Dr. Salaita should therefore be dismissed for failure to state a claim against him.  By this motion, Dr. Salaita also joins in all motions to dismiss brought by his co-Defendants, including the Motion to Dismiss by Defendants ASA et al., and incorporates those arguments herein.

**D)  The Volunteer Protection Act Immunizes Dr. Salaita from Liability for Plaintiffs' Claims.**

Under the federal Volunteer Protection Act, 42 U.S.C. §§ 14501 et seq. (2018), in relevant part, "no volunteer of a nonprofit organization…shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization" if they were "acting within the scope of the volunteer's responsibilities" and "the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer." 42 U.S.C. § 14503(a).  Dr. Salaita was a volunteer member of the ASA's National Council from July 2015-June 2018, and although Plaintiffs do not allege Dr. Salaita engaged in any particular acts as a National Council member, any acts or omissions alleged by Plaintiffs would have been taken on behalf of the ASA and within the scope of his responsibilities. SAC ¶ 26.  Again, the expenditure of legal fees to defend the ASA cannot be considered harm, but even if it were, it "was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed." 42 U.S.C. § 14503(a).  Accordingly, Dr. Salaita cannot be liable for Plaintiffs' claims against him in light of the Volunteer Protection Act.

**E)  Plaintiffs' Fiduciary Duty and Waste Claims Should Be**
**Dismissed under the Business Judgment Rule.**

The Business Judgment Rule is a ""presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Behradrezaee v. Dashtara*, 910 A.2d 349, 361 (D.C. 2006) (quoting *Willens v. 2720 Wis. Ave. Coop. Ass'n, Inc.*, 844 A.2d 1126, 1137 (D.C. 2004)). "Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption." *Id.* "In practical terms, the business judgment rule means that 'directors' decisions will be respected by courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available.'" *Willens*, 844 A.2d at 1137 (citing *Brehm v. Eisner*, 746 A.2d 244, 264 n. 66 (Del. 2000)).  Plaintiffs do not allege that Defendants had any financial interest at stake, or that defending the ASA against Plaintiffs' lawsuit was in bad faith, irrational, uninformed, or not in the best interests of the ASA.  Plaintiffs' claims should be dismissed under the Business Judgment Rule.

**III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO**
**ALLEGE FACTS SUFFICIENT TO ESTABLISH SUBJECT MATTER**
**JURISDICTION.**

In order for this Court to exercise subject matter jurisdiction over Plaintiffs' claims, the matter in controversy must exceed "$75,000, exclusive of interest and costs". 28 U.S.C. § 1332(a).  The "party asserting jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question".  *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993).  Plaintiffs' derivative claims fail as a matter of law, and they have failed to allege specific

injury to themselves individually (other than Count Eight, for denying the right to vote to Plaintiff Barton in 2013, prior to Dr. Salaita's time on the National Council, and against Defendant ASA only), much less damages exceeding $75,000 per Plaintiff.  *See Snyder v. Harris*, 394 U.S. 332, 335 (1969) ("separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement").  This Court therefore lacks diversity subject matter jurisdiction, and Plaintiffs' case should be dismissed under Fed. R. Civ. P. 12(b)(1).  By this motion, Dr. Salaita also joins in all motions to dismiss brought by his co-Defendants, including the Motion to Dismiss by Defendants ASA et al., and incorporates those arguments herein.

## IV.   PLAINTIFFS' CLAIMS AGAINST DR. SALAITA SHOULD BE DISMISSED ON THE MERITS, WITH PREJUDICE.

Although Plaintiffs' meritless case against Dr. Salaita could be dismissed on both personal and subject matter jurisdictional grounds, the Court could dismiss it on the merits, with prejudice, so Plaintiffs cannot take it to another court or jurisdiction to further harass him. Although courts "normally address subject-matter jurisdiction before turning to personal jurisdiction," *Capel v. Capel*, 272 F. Supp. 3d 33, 38 (D.D.C. 2017), and generally decide jurisdictional issues before deciding the merits of a case, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).  "[O]nce a court determines that jurisdiction is lacking, it can proceed no further," *Sinochem* at 434, "[b]ut where subject-matter or personal jurisdiction is difficult to determine," *id.* at 436, threshold questions "may be resolved before addressing jurisdiction." *Id.* at 431 (internal quotation marks omitted).  Here, the simple question of whether

15

Plaintiffs have failed to allege any facts that even state a claim against Dr. Salaita could easily be decided as a threshold matter.

## CONCLUSION

In light of the foregoing, Dr. Salaita respectfully requests that this Court dismiss Plaintiffs' Second Amended Complaint against him in its entirety, with prejudice, and seeks costs, attorneys' fees and any other relief the Court deems appropriate.

Dated: August 27, 2018                    Respectfully Submitted,

<div style="margin-left:40%">

/s/ Maria C. LaHood
Maria C. LaHood (*pro hac vice*)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel.: (212) 614-6430
Fax: (212) 614-6422
mlahood@ccrjustice.org

/s/ Shayana Kadidal
Shayana Kadidal (D.C. Bar No. 454248)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel.: (212) 614-6438
Fax: (212) 614-6422
shanek@ccrjustice.org

*Attorneys for Defendant Steven Salaita*

</div>