IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x
SIMON BRONNER, MICHAEL ROCKLAND,   CA No. 1:16-cv-00740-RC
CHARLES D. KUPFER and
MICHAEL L. BARTON,

                              Washington, D.C.
              Plaintiffs,   Wednesday, August 15, 2018
v.                          2:00 p.m.


LISA DUGGAN, CURTIS MAREZ,
NEFERTI TADIAR, SUNAINA MAIRA,
CHANDAN REDDY, J. KEHAULANI
KAUANUI, JASBIR PUAR, STEVEN
SALAITA, JOHN STEPHENS and THE
AMERICAN STUDIES ASSOCIATION,

              Defendants.
- - - - - - - - - - - - - - - - x

---

**TRANSCRIPT OF STATUS CONFERENCE**
**HELD BEFORE THE HONORABLE RUDOLPH CONTRERAS**
**UNITED STATES DISTRICT JUDGE**

---

**APPEARANCES:**

For the Plaintiffs:    Jerome M. Marcus, Esq.
                        MARCUS & AUERBACH LLC
                        1121 N. Bethlehem Pike
                        Suite 60-242
                        Spring House, PA 19477
                        (215) 885-2250

                        Jennifer Gross, Esq.
                        LOUIS D. BRANDEIS CENTER
                        FOR HUMAN RIGHTS
                        1717 Pennsylvania Avenue, N.W.
                        Suite 1025
                        Washington, DC 20006
                        (917) 721-6561

For the Defendants:    Jeffrey C. Seaman, Esq.
                        Thomas C. Mugavero, Esq.
                        WHITEFORD, TAYLOR & PRESTON, LLP
                        7501 Wisconsin Avenue, NW
                        Suite 700W
                        Bethesda, MD 20814
                        (301) 804-3610

**APPEARANCES:**

For the Defendants:     Mark A. Kleiman, Esq.
                                  LAW OFFICES OF MARK ALLEN KLEIMAN
                                  2907 Stanford Avenue
                                  Venice, CA 90292
                                  (310) 306-8094

                                  Maria C. LaHood, Esq.
                                  CENTER FOR CONSTITUTIONAL RIGHTS
                                  666 Broadway
                                  7th Floor
                                  New York, NY 10012
                                  (212) 614-6430

Court Reporter:        Timothy R. Miller, RPR, CRR, NJ-CCR
                                  Official Court Reporter
                                  U.S. Courthouse, Room 6722
                                  333 Constitution Avenue, NW
                                  Washington, DC 20001
                                  (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1              **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  Civil Action 16-740, Simon

3      Bronner, et al., v. Lisa Duggan, et al.

4              Will counsel please approach the podium and

5      identify yourselves for the record.

6              MR. MARCUS:  Jerome Marcus for the plaintiff and

7      my colleague Jennie Gross is with me.

8              THE COURT:  Good afternoon.

9              MR. SEAMAN:  Jeff Seaman, Your Honor, for

10     Defendant ASA, Tadiar, Maira, Reddy, John Stephens -- and I

11     think I've got everybody here -- and Curtis Marez.  Also

12     with me today is Tom Mugavero.

13             MR. MUGAVERO:  Good afternoon, Your Honor.

14             THE COURT:  Good afternoon.

15             MR. KLEIMAN:  Good afternoon, Your Honor.  Mark

16     Kleiman appearing for the Defendants Kehaulani Kauanui and

17     Jasbir Puar.

18             THE COURT:  Welcome to the party.

19             MR. KLEIMAN:  Thank you, Your Honor.

20             MS. LAHOOD:  Good afternoon, Your Honor.  Maria

21     LaHood with the Center for Constitutional Rights

22     representing Defendant Steven Salaita.  Thank you.

23             THE COURT:  Welcome aboard.

24             All right.  What are the discovery disputes about?

25             MR. MARCUS:  Should I approach the podium?

```
 1              THE COURT:  Sure.
 2              MR. MARCUS:  Your Honor, we are back in discovery
 3      after the Court dissolved the stay and we've sent the
 4      defendants a letter which identifies a series of issues.
 5      With respect to the existing defendants, the issues that I'm
 6      about to discuss are live.  With respect to the new
 7      defendants, the only issue is that their initial disclosures
 8      were due, I think, on the 16th of July and we don't have
 9      them.  So I don't know how Your Honor wants me to proceed.
10      I can march down the other issues with respect to the other
11      defendants, if Your Honor wishes.
12              THE COURT:  Let's do the initial disclosures first
13      since that sounds easier.
14              MR. MARCUS:  Okay.  All right.  Well, our position
15      is very simple.  They're due.
16              THE COURT:  Okay.
17              MR. MARCUS:  There's no stay.
18              THE COURT:  Let's hear from the new --
19              MR. MARCUS:  August 7th, Your Honor.  I beg Your
20      Honor's pardon.
21              THE COURT:  Okay.  When do you intend to produce
22      those things?
23              MR. KLEIMAN:  Thank you, Your Honor.
24              It's my client's position that there should be a
25      stay on discovery as to the new defendants, including the
```

1    initial disclosures.  Let me briefly explain why.  If the

2    Court wants to entertain argument on it, we can, or we could

3    brief it.

4            Under what we believe are the proper standards, if

5    we have a -- this is a quote from a couple of Southern

6    District of New York cases -- a not unfounded basis for

7    believing and arguing that there are dispositive motions to

8    dismiss that can be brought, where the discovery really

9    ought to be balanced -- and you -- the Court should be

10   comparing the burden on the individual defendants with what

11   the plaintiffs are going to get.  I just want to make a

12   couple of quick points about this.

13           The first is, we do have a basis for what we think

14   is an argument that our defendants really enjoy immunity

15   from suit in this case, and that is the Volunteer Protection

16   Act.  It's a federal statute.  It's separate from the

17   volunteer protection provisions in the D.C. Corporations

18   Code.  There are two things that are unique about it.  The

19   most important one is that unlike the D.C. Code, the federal

20   Volunteer Protection Act immunizes from liability anybody

21   whose acts are -- who acts as a volunteer whose acts are

22   harmful to third parties.  In other words, not to the

23   organization itself.  Given the way this case has been set

24   up, until now -- and, yes, I am new to the party -- it

25   appears as though the VPA immunity would apply because the

1       plaintiffs would have to be able to demonstrate based on

2       their pleadings that these latter-named defendants had

3       actually intended to cause harm not to the ASA; not to the

4       organization, but to these individual defendants.  That's

5       the way the VPA is set up and there's case law interpreting

6       it that way.

7               The reason that becomes important for us is that

8       it's a strictly very narrow legal question.  It's not as

9       though there is going to be discovery that the plaintiffs

10      could propound, nor have they alleged anything suggesting

11      any animus or intent to harm the individual plaintiffs in

12      this action.  It's a narrow issue.  It's one we think this

13      Court can decide straight up or down in the law.  And as to

14      Dr. Kauanui and Dr. Puar and, I think, some of the other

15      later-named defendants as well, it would dispose of their

16      participation in the case completely.  So we -- our position

17      is that we think there should be a stay on Rule 26 and

18      discovery obligations until we get this resolved.  As Your

19      Honor knows from the order the Court signed just very

20      recently, motions to dismiss are going to be filed.  We've

21      got a briefing schedule agreed upon.  So it's not as though

22      this is going to be dragged on indeterminately.

23              Thank you.

24              THE COURT:  Okay.  Thank you.

25              MS. LAHOOD:  Thank you, Your Honor.

```
 1            I would just add in addition to the grounds for

 2    dismissal stated and to subject matter jurisdiction grounds,

 3    Dr. Salaita also has a personal jurisdiction defense and I

 4    don't want to do anything to waive that, including possibly

 5    making initial disclosures or producing discovery.  Just to

 6    clarify, we did ask plaintiffs to stipulate to extend the

 7    time for initial disclosures until after the motion to

 8    dismiss is decided and they all -- they also haven't made

 9    initial disclosures to the new defendants.

10            THE COURT:  Okay.

11            MS. LAHOOD:  Thank you.

12            MR. MARCUS:  Just with respect to the last point,

13    Your Honor, nobody is -- we don't have an obligation to make

14    initial disclosures and -- been requested.

15            I find it a little odd that a month-and-a-half

16    after this stay was dissolved -- defendants were served in

17    February -- there's no motion for a stay.  If I wanted a

18    stay, I would come to a court and ask for one.  I would file

19    a paper.  That's the way that's done.  And to simply refuse

20    to produce the discovery and then, when they're called on

21    the carpet, to say, Oh, well, I really think there ought to

22    be a stay and, maybe, someday, I'll file a motion asking for

23    one, it seems to me, is totally inappropriate.  This Court

24    has had four facial attacks on the complaint.  Four.  Three

25    of them have been rejected; one is still under
```

1    consideration.  At this point, it seems to me really beyond

2    the pale that the defendants say, Oh, well, maybe, the whole

3    case really is going to go away and, therefore, I have no

4    obligation to produce discovery.

5              So our position is the Court, I think, has heard

6    everything that needs to be heard.  I would suggest,

7    although the federal statute has not been invoked, the first

8    requirement is that the defendant has the burden of

9    demonstrating that they were acting within the scope of

10   their responsibilities.  I don't see how anybody could read

11   our complaint without it being clear that we alleged that

12   they were not acting within the scope of their

13   responsibilities.  That's our allegation; that they were

14   breaching their obligations to the organization.  The new

15   defendants have been added at a time when their conduct

16   involves simply putting their hands into the cookie jar and

17   taking cookies out to do what they want.  They're taking

18   money out of the endowment to spend on their pet projects at

19   the expense of the organization.  There's no more simple

20   violation of a breach than that.  If the defendants want to

21   brief it, that's fine, but the idea at this point

22   two-and-a-half years after this case started that we're

23   still talking about facial attacks on the complaint that

24   would justify stopping the train, I think, is just silly.

25              THE COURT:  All right.

```
 1                   MS. GROSS:  If I may -- Jerome, may I?

 2                   MR. MARCUS:  Please.

 3                   THE COURT:  When is the motion to dismiss due?

 4                   MS. GROSS:  I believe that's the 27th of this

 5      month.

 6                   MR. SEAMAN:  That's correct.  August 27th.

 7                   MS. GROSS:  If I may just briefly add a point --

 8      and I did brief this in the last set of briefs -- what

 9      they're talking about with respect to the federal statute is

10      an affirmative defense, and I have two points about that.

11      The first is, the law is incredibly clear in this Circuit

12      and we briefed it in detail that you have to plead the

13      affirmative defense in the answer, and then discovery having

14      to do with the factual issues underlying the affirmative

15      defense must go on before the Court can make a decision, you

16      know, at the motion-to-dismiss phase.  And I've cited

17      numerous cases having, you know -- that are quite clear

18      about this point that whether it's a state statute for

19      exculpation of either a Director or of a volunteer -- and it

20      is no different with respect to a federal statute -- if you

21      want exculpation, you plead it.  You give the other side the

22      opportunity to do discovery on the factual issues underlying

23      that affirmative defense and then both sides brief it to the

24      Court and the Court makes a decision based on that

25      information.
```

1          THE COURT:  Okay.  So simultaneous to your motion

2     to dismiss, file a motion to stay and, to the extent that

3     you're asking as you did here today that it -- I not -- no

4     discovery, including initial disclosures, be accomplished

5     until I rule on the motion to dismiss, you're going to have

6     to make some sort of showing of a burden on the individual

7     defendants and then I'll decide that before I decide the

8     motion to dismiss.

9          All right.  Let's hear the other discovery issues

10    with respect to the prior defendants.

11          MS. GROSS:  Okay.  So you know, just so that

12    there's -- everything is clear here, all the issues that I'm

13    about to discuss have to do with discovery that was served

14    on the defendants before the second amended complaint.  None

15    of this involves the new defendants who are represented here

16    by the new counsel today.

17          The first issue is that we had served a second set

18    of requests for production on Defendant ASA only.  It was a

19    short set of requests.  All of those issue -- all of the

20    requests clearly derived from the original complaint -- the

21    first amended complaint and that set of requests was served

22    in February.  The stay began before the 30 days were up --

23    about 9 days before the 30 days were up.  Adding those 9

24    days to when the stay ended, that material would have been

25    due in July, and I think the exact date is July 16th.  In

 1    this letter that lists a number of discovery disputes, this
 2    is the first one.  We received nothing.  And when I say
 3    nothing, I mean no response document; clearly no discovery
 4    documents; no objection; no -- and we didn't even hear then
 5    or until just the past day or so -- couple of days this
 6    argument that that discovery should be stayed.  There should
 7    be no discovery.  It's clear that this discovery is related
 8    to the ongoing issues from the first amended complaint that
 9    are not different and not minimized in the second amended
10    complaint.  There's no -- that first amended complaint has
11    survived not just one but numerous attacks and there's no
12    basis for a stay of discovery on issues related to the first
13    amended complaint.  So that's -- the first issue is the
14    discovery served in February on only Defendant ASA, not the
15    other individual defendants, that has just not been
16    received; not responded to; not even an argument to us that,
17    I think a stay is appropriate, until just the past few days;
18    just lack of acknowledgement that it happened.
19          The second issue is slightly complicated, not
20    very.  You may recall that last October, we were here and
21    defendants' counsel explained to the Court and to us for the
22    first time that they had used search terms to identify a set
23    of documents that, then, they put through the TAR process.
24    And Your Honor asked us at the time, did we know about the
25    search terms?  We had -- we did not.  You had ordered them

1    to produce those search terms to us and to talk with us

2    about it.  A few days later, I received those search terms.

3    I looked at them and I was okay with them which I told the

4    other side.  Months later when we were in a dispute over the

5    use of the TAR -- because, as Your Honor had also ordered,

6    they were supposed to work with us and explain to us what

7    they were doing in the TAR process, but they never did -- we

8    were working with our consultants who said to me, you know,

9    Jennie, get this report.  This will help me understand what

10   they did.  I asked for the report.  It turns out the report

11   includes the search terms that they used.  And the search

12   terms that they used to identify the documents that were

13   even going to start the process were far more restrictive

14   than the ones that they told us that they were going to use

15   and that we had agreed to, including that the wild cards

16   were eliminated such that "harass" which, under the terms

17   that I had agreed to, would include "harass, harassed,

18   harassment," now only included "harass".  Aside from the

19   elimination of the wild cards which is a very big deal -- if

20   you have done much electronic searching, I'm sure you

21   understand -- other terms were just eliminated or string --

22   put in string searches that restricted the volume of

23   documents that they'd pull up.

24          So when I saw this list, I said to opposing

25   counsel, you know, Wait a minute.  Is this list of search

1    terms that I'm seeing numbers and reports for in this report

2    that we asked you for?  These aren't the search terms that

3    you used to collect the documents.  And it took weeks of my

4    bugging them until they would give me an answer and,

5    finally, the answer was, Yes.  We've restricted the search

6    terms more so that it would be, you know, more precise; more

7    accurate.  Your Honor had ordered them to show us the search

8    terms.  We did agree to the first set of search terms they

9    gave us -- I gave them no argument about it -- and they used

10    a different set.

11            In my conversations with opposing counsel, it's

12    been explained to me that it's approximately 8,000 documents

13    that they think would have been encapsulated by the set of

14    search terms that we thought they were using but were not

15    encapsulated by the set of search terms that they did use.

16    In conversations prior to the stay, counsel informed me that

17    they were just going to produce them, and so we had not yet

18    moved to compel them which I would have done in January, but

19    I thought that they were coming.  That's another issue on

20    this list of six issues.  I've still not heard from the

21    other side that they are going to produce them or that they

22    have a change of opinion and that they're not going to

23    produce them.  My only understanding is that they apparently

24    think that this should be covered by the same stay that they

25    think that the previous set should have been covered by.

 1    Okay?

 2              THE COURT:  Okay.

 3              MS. GROSS:  Do you want for them to respond and

 4    then I'll come back?

 5              THE COURT:  Yeah, let's get them to respond to

 6    those first couple of issues.

 7              MS. GROSS:  Sure.

 8              MR. SEAMAN:  Thank you, Your Honor.  I'll address

 9    them in serial.

10              The first issue has to do with the second request

11    for production of documents.  The documents they've

12    requested are a list of all members of the association at

13    various points in time and how they voted; what their

14    addresses are; what theirs names are; and how they voted on

15    the resolution.  That is not information that we possess.

16    That -- it's true.  We have not had a conversation with the

17    other side about this, and the reason we haven't had a

18    conversation with the other side about this is, as

19    everybody's already said, the position of these defendants

20    as well as the new defendants is that discovery should be

21    stayed in this case.  And I'll -- I'm happy to address that,

22    if the Court wants to hear that.  I would like to address

23    that now, because I think it's, sort of -- from the

24    30,000-foot view, that is probably the -- from our

25    perspective, the primary issue and if that -- or I can

1    address the nitty-gritty on each of the individual issues,

2    but from the 30,000-foot view, we feel very strongly about

3    the likelihood -- well, I'll put it a different way -- about

4    our arguments for dismissal of this entire case.  Some of

5    those arguments have already been addressed in memoranda

6    before the Court in the most recent round of memoranda, and

7    we intend -- it's no secret in this room -- we intend to

8    include that same argument in another motion to dismiss that

9    we're going to file by August 27th.

10           Our view on discovery altogether, Your Honor, is

11   that if it's going to take a month or two or three to

12   resolve this issue about whether this case should even be

13   before this Court -- and that is one of the principal

14   arguments in our motion to dismiss -- it will be, and

15   there's no -- nobody's going to be surprised by that -- is

16   whether this Court even has subject matter jurisdiction.  To

17   date, we have produced over 100,000 images to the

18   plaintiffs.  It is true, as Ms. Gross pointed out, we did

19   have a conversation shortly before the Court issued the stay

20   order about resolving this issue that had to do with the

21   production that we made in the fall of 2017 and there were

22   problems.  And we -- after talking with Ms. Gross and Mr.

23   Marcus about it, we recognized them.  We proposed a

24   resolution where we were going to review what we've been

25   calling the delta, the difference between what would have

1   been produced by the original terms that we used to gather

2   documents and the ones that we actually used in the TAR

3   process.  And I'm happy to address that in detail, if the

4   Court wants, but right now, I'd like to talk about the

5   motion to dismiss.  It is true that we addressed that --

6            THE COURT:  What -- the basis of your motion to

7   dismiss is the federal statute that they indicated that they

8   were going to assert in theirs?

9            MR. SEAMAN:  No, Your Honor.  No.

10           THE COURT:  What is it?

11           MR. SEAMAN:  Well, there were several.  One is --

12   the primary -- a primary one is that the Court doesn't have

13   subject matter jurisdiction.  There is a -- this is the

14   second amended complaint that doesn't allege $75,000 of

15   damage to the individual plaintiffs.  And in our view,

16   that's what has to happen, and that hasn't happened.  That's

17   a nutshell version of the argument.

18           THE COURT:  Didn't I address that in my first

19   opinion?

20           MR. SEAMAN:  I don't think so, Your Honor.  The

21   first motion to dismiss was oriented towards the ASA.  The

22   motions to dismiss for lack of subject matter jurisdiction

23   had to do with the ASA as the, quote-unquote, victim of the

24   alleged acts of the defense.  At that point, the Court had

25   not determined that this was not properly a derivative

1    action.  So we did not address the absence of allegations of

2    $75,000 worth of damage to each individual plaintiff which

3    now has to be the case.  That has been challenged.  We

4    brought it up on our last round of memoranda; that the

5    plaintiffs didn't respond to it, and we intend to do it

6    again, but it is different.  It's a different argument from

7    the one that was made prior and, in our view, the outcome

8    should be different, of course.

9            THE COURT:  And I -- okay.  I understand it's a

10   different argument.  Couldn't it have been raised before?

11           MR. SEAMAN:  It possibly could have been raised

12   before, Your Honor.  I don't think that's a -- it could have

13   been.  Subject matter jurisdiction is always an issue for

14   the Court.

15           MR. MUGAVERO:  May I step in briefly, Your Honor?

16           THE COURT:  Yeah.

17           MR. MUGAVERO:  I believe the answer to Your

18   Honor's question is, it was raised in this last round of

19   motions.  The Court, in a footnote, noted that while it had

20   been raised, it needed, I believe the phrase was, a

21   well-fashioned motion to dismiss in order to be ripe.  We

22   can't promise that the motion to dismiss will be

23   well-fashioned, but it will, in fact, be a motion to

24   dismiss.

25           THE COURT:  Okay.

1          MR. MUGAVERO:  Thank you.  Excuse me.

2          MS. GROSS:  May I briefly, Your Honor?

3          THE COURT:  No, I'm not going to stay discovery

4    until I get a motion for -- to stay and, in the meantime,

5    we're going to resolve these discovery disputes and move

6    forward with the discovery.

7          MR. MUGAVERO:  Quick question, Your Honor.

8          THE COURT:  Yeah.

9          MR. MUGAVERO:  May we be given leave to file that

10   motion to stay with our motion to dismiss?

11         THE COURT:  Yeah.

12         MR. MUGAVERO:  Thank you, Your Honor.

13         THE COURT:  You can file it sooner if you'd like

14   as well, but --

15         MR. MUGAVERO:  Fair enough.

16         THE COURT:  -- in the meantime, we're going to

17   move forward.

18         So let's address the two discovery issues that

19   have been teed up.

20         MR. SEAMAN:  Okay.  Your Honor, the -- with regard

21   to the set of documents that we were talking about before,

22   the several thousand documents --

23         THE COURT:  Well, let's -- the first one was the

24   issue about the February discovery on ASA which they say

25   there has not even been a response yet.

1        MR. SEAMAN:  That's right, Your Honor.  We have --

2    we -- those are not documents we possess, but I have

3    contacted Johns Hopkins University Press which handles that

4    realm of information.  And I've contacted them.  I have a

5    schedule to talk to them next week about it, the Editor of

6    the journal.

7        THE COURT:  So when do you expect to provide a

8    response to that --

9        MR. SEAMAN:  I could provide that in -- I don't

10   know what the Editor's going to tell me.  So I don't know if

11   it's even available.  So I can't answer the question.  I

12   could get responses within three weeks, but I don't know if

13   I can have documents.  I can't tell the Court that I can

14   have documents within three weeks.  I can have responses.

15       THE COURT:  All right.  Get those responses to

16   them within three weeks.

17       MR. SEAMAN:  On the next issue, Your Honor, the

18   documents that were the subject of the dispute over TAR back

19   in November, we will -- part of the arrangement was -- or

20   the agreement, we offered to -- the plaintiffs' main issue

21   was -- and they may address this, but I'm going to

22   summarize -- they didn't like TAR.  They had a lot of

23   problems with TAR and how the process worked.  So after some

24   time recognizing that, we decided we were going to put eyes

25   on this bundle of documents that was the difference between

1    the original search terms and this -- and -- the October

2    search terms and the search terms that we --

3              THE COURT:  Is her recounting of the chronology

4    correct that you guys originally told them that you used

5    certain search terms and that turned out to be erroneous?

6              MR. SEAMAN:  The terms that we gave them were the

7    terms we used to collect documents; then we -- then

8    during -- it's correct that during the TAR process, we used

9    a narrower version of search terms.  And our view is, that's

10   no different from putting eyes on the -- it's another method

11   of culling documents which is what we were doing.

12             THE COURT:  I -- you're not going to convince me

13   of that.  It's different.

14             All right.  So where are we with the delta between

15   the one set of search terms and the other set of search

16   terms?

17             MR. SEAMAN:  Your Honor, we need to arrange a team

18   of temporary attorneys to review those documents.  The last

19   round where we had -- I think we had about 15,000 documents

20   --

21             THE COURT:  How many documents?  You said, 15,000?

22             MR. SEAMAN:  Well, there -- what -- the globe of

23   what we'd have to review for this, I think it's as -- it's a

24   little larger than what Ms. Gross said.  I think it's closer

25   to 10,000.

1           MR. MARCUS:  Ten thousand pages or 10,000

2     documents?

3           MR. SEAMAN:  Documents.

4           MR. MARCUS:  That's a few boxes.

5           THE COURT:  All right.  How long do you think it

6     will take to go through those?

7           MR. SEAMAN:  Well, to arrange the team and get it

8     reviewed, probably about the same time.  Three weeks.

9           THE COURT:  All right.  Go ahead and do that.

10          All right.  What is the third issue?

11          MS. GROSS:  Yes, Your Honor.

12          So the third issue has to do with the privilege

13    log.  And so we received a privilege log covering everything

14    that had been produced in February and there were 413

15    entries on that privilege log.  When I reviewed the

16    privilege log, I saw that 181 of them included at least one

17    if not a number of people who clearly would destroy any

18    privilege between a, you know -- having to do with a

19    communication between an attorney and a client.  This was

20    just apparent from, you know, the headers of the emails.

21    Aside from that, 188 appeared not to include an attorney at

22    all.  Now, there's some overlap.  So it's not 181 plus 188.

23    There are some that neither included an attorney, and also,

24    included a number of people who would have destroyed

25    privilege.

1          So I -- there are 91 remaining entries, entries

2     that weren't apparently, you know -- wasn't obvious from the

3     face of the privilege report not actually privileged, but we

4     couldn't tell in many of those cases who was the attorney

5     and who was the client.  We just didn't know for sure that

6     there wasn't someone there defeating privilege.  I sent a

7     letter to opposing counsel, including, attached to that

8     letter, a list.  These are all of the ones -- these are the

9     Bates numbers for all of those documents that you've claimed

10    to be privileged that seem clear to us to include at least

11    one person who destroys privilege; Exhibit-B, here's a list

12    of all of those that don't seem to have any attorney on them

13    at all; C, here are all of those that have both of those

14    problems; and then I said, With respect to the rest, we

15    would like an amended log that specifies to us, you know,

16    what are the relationships here such that you claim that

17    there's an attorney-client privilege involving a

18    communication in this document.  No response to that letter.

19    I sent that letter in February; no response in any way,

20    shape or form, not even to say, I got your letter.  It's

21    going to take a while.  So I raised it again in the same

22    July 11th letter.

23          Thank you, Your Honor.

24          THE COURT:  All right.

25          MR. SEAMAN:  Your Honor, I was going to say, it

1   would be helpful to have a specific identification of those

2   documents.  What Ms. Gross says is she sent me that.  If I

3   have that, I'll look at it.  I don't recall that.

4           THE COURT:  You don't recall the July --

5           MR. SEAMAN:  I don't.

6           THE COURT:  -- 11th letter?

7           MR. SEAMAN:  I do recall --

8           MS. GROSS:  We're happy to give it to you --

9           MR. SEAMAN:  -- the July letter.

10          MS. GROSS:  -- now again.

11          MR. SEAMAN:  I do.

12          MR. MARCUS:  We'll give it to you right now.

13          MS. GROSS:  We're happy to give you --

14          MR. SEAMAN:  I do have the July letter.

15          Our view is that in the -- the privilege log

16   complies with Rule 26(d).  We've provided the --

17          MR. MARCUS:  Here you go, again.  (Indicating.)

18          MR. SEAMAN:  The privilege log has, on the far

19   right-hand corner, an explanation of the reason for the

20   claim; that either it's got "attorney" in the string; it's

21   discussion of attorney-client material; or it's work

22   product; or it is anticipation of litigation.  It's

23   discussions about advice of counsel in each one of those.

24   We think we've complied with Rule 26(d).

25          THE COURT:  All right.  All right.  What I'd

1     like to --

2               MR. SEAMAN:  It provides the sufficient

3     information to enable them to evaluate whether or not

4     there's a privilege.

5               THE COURT:  Okay.

6               MR. SEAMAN:  I --

7               THE COURT:  What I'd like you to do is submit to

8     the Court a sampling of what you think are the 30 worst

9     examples and why you think they don't comply.

10              And then you can respond to that.

11              And then I'll look at those 30 in camera under

12    seal.

13              MS. GROSS:  Okay.  So as we pick out the 30, we

14    can only do it based on, you know, the people that are on

15    it.  We don't have any more information about it --

16              THE COURT:  No, but pick -- obviously, pick ones

17    that don't appear to have an attorney involved and -- or

18    have a -- the third party that you think vitiates the

19    confidentiality --

20              MS. GROSS:  Yes.

21              THE COURT:  -- and then they can respond to why

22    they think it -- that's not a problem and -- for these

23    documents and then I'll take a look at the documents.

24              MS. GROSS:  Okay.  So we're going through the list

25    quickly --

1          THE COURT:  Okay.

2          MS. GROSS:  -- which is good.

3          So when we received the major production from

4    defendants in October, you know, we understood that a

5    certain amount of documents were withheld because they were

6    privileged and what we didn't know was that 6,000 documents

7    were withheld as potentially privileged.  Those 6,000

8    documents didn't end up on the privilege list.  I figured

9    out that there were 6,000 missing documents because my

10   consultant was bringing in those reports and, you know, I

11   used to be a policy analyst.  So I did a little math and I

12   realized that there's stuff missing.  And after numerous,

13   numerous requests of opposing counsel asking, Why do I feel

14   that there is a 6,000-document discrepancy?  I finally

15   received an answer -- I believe it was in January -- saying,

16   Well, you know, there are a number of documents that we

17   think could be privileged, but we haven't figured out if

18   they're privileged yet or not.

19         Now, to be fair, after ongoing discussion about

20   this, I did receive a set of documents that, you know, are

21   purportedly those documents, and all we are asking for is to

22   be clear that we have now received -- except for those

23   documents that are on the privilege log, we have now

24   received every document that was ever withheld for being

25   potentially privileged or for any other reason.  And in

1   other words, we're looking for some sort of certification

2   because there have been so many issues here where, you know,

3   there were documents withheld that we didn't know about and

4   then we found out numbers didn't match and then we get an

5   answer later.  And I would say part of what I'm saying here

6   is, I don't know what I don't know.  After four or five

7   times finding out that, Hey, there's a discrepancy between

8   what I asked for and what I got and the numbers don't match,

9   you know, I don't know what I didn't find, and I would like

10  -- we would like some sort of certification that, with

11  respect to the documents that came up in the search, they've

12  all been produced except for those that fall into this

13  category of privileged or this category of whatever so that

14  we know what we're talking about.  So I've asked -- I asked

15  defendants for that in this letter, as well.

16          THE COURT:  Okay.

17          MS. GROSS:  And I can give you the last issue, if

18  you like --

19          THE COURT:  No, let's --

20          MS. GROSS:  -- or we can do these one at a time.

21          THE COURT:  Let's hear that one.

22          MR. SEAMAN:  Judge, the answer is yes, except for

23  those documents which we haven't reviewed yet.  The ones

24  that we just talked about earlier.

25          THE COURT:  Okay.

1      MR. SEAMAN:  So the answer's yes.

2      THE COURT:  So absent the 10,000 or so that you're

3   going to produce in three weeks, everything that you have

4   deemed responsive has been produced except for those that

5   are documented in the privilege log?

6      MR. SEAMAN:  I -- well, I think the question was

7   whether they -- what they're looking for is some sort of

8   certification that we've produced everything other than what

9   was privileged; that in other words, we're not holding back

10   stuff that isn't -- that we're claiming is privileged.  And

11   the answer is with all -- with the exception of those that

12   we're going to review in what we've been calling the delta,

13   yes.  Among those documents, we still need to review to see

14   whether those are privileged.

15      THE COURT:  Oh, I understand.  But other than

16   those 10,000 or so that you were referring to as the delta,

17   there's not a group of documents that you're still

18   considering whether you're going to assert privilege over or

19   any other category that hasn't been -- that's responsive but

20   hasn't been produced?

21      MR. SEAMAN:  That's right, Your Honor.  That's

22   right.

23      THE COURT:  All right.

24      MS. GROSS:  So I appreciate hearing that, and I'm

25   glad that it's on the record.

1           I just want to add that there is a set of about

2    1,000 documents that, even with the numbers that counsel has

3    given me for the subsets of documents that were potentially

4    privileged and so on and so forth, still, the numbers don't

5    match.  I've asked him about it numerous times.  The emails

6    that I have received about it is, I'm asking my consultants

7    to try to figure out what it is.  So I don't know if there's

8    anything more aside from that set of 1,000 or so documents,

9    but at least that set does exist and we'd like to know why

10   we don't have those or why those numbers don't match.

11           THE COURT:  Okay.

12           MS. GROSS:  The --

13           THE COURT:  Let me hear from him on that -- on the

14   mystery of the 1,000 documents.

15           MR. SEAMAN:  Frankly, Your Honor, I don't know the

16   answer.  I don't know about 1,000 documents that are not --

17   I wouldn't -- from our end, what I can do is look at

18   documents and decide, as a lawyer, whether they're

19   privileged or not, and that's what I can do.  I'm not sure

20   how to identify the 1,000 documents.  Perhaps there's a

21   reference in the letter that counsel's talking about about

22   some that were not produced originally because one of the

23   search terms was misspelled.  I think we remedied that

24   situation and I've got -- counsel's probably going to

25   address that next.  Perhaps that's an explanation, but I

1    don't know what the explanation is.  I can say to the Court,

2    what we've done is reviewed documents; held that which we

3    believed to be privileged for whatever reason; identified

4    the privilege to the plaintiff.  That's my answer, Your

5    Honor.

6            THE COURT:  All right.

7            MS. GROSS:  This would be an email from myself to

8    Mr. Seaman; Mr. Mugavero; Mr. Marcus was also on the email

9    as well as Mr. Hathway.

10           This report states that 18,090 documents were

11   identified by the model as high responsiveness.  We

12   understand that the model identified 17,060 documents as

13   responsive from our previous communications, and also, the

14   search term report run on the set of documents marked

15   responsive that you provided in December.

16           THE COURT:  Slow down so the reporter can get it

17   all.

18           MS. GROSS:  Sorry.

19           Please explain the difference of 1,030

20   documents -- underlined -- between the number of documents

21   the TAR process identified as high responsiveness and the

22   number of documents identified for production, and please

23   let us know whether the production of documents that went

24   through TAR will total 17,060 minus privileged documents or

25   18,090 minus privileged documented, and it goes on.

 1              MR. MARCUS:  What's the date of that email?

 2              MS. GROSS:  February 13th, 2018.

 3              MR. SEAMAN:  Your Honor, may I?

 4              THE COURT:  You may.

 5              MR. SEAMAN:  This is -- this kind of discussion is

 6    why we agreed at great cost to the association to put the

 7    TAR process aside in the next step.  We're going to put

 8    human beings on reviewing documents.  I suspect the answer

 9    will -- we may not be able to answer that particular

10    question.  We're not using TAR anymore.  We're going to put

11    people on reviewing the documents that have not already been

12    produced and reviewed already.  We're going to review those

13    and produce that which is responsive and not privileged.  I

14    think that should take care of it.

15              MR. MARCUS:  Your Honor, I have to confess, I'm

16    mystified as to why we had to be convened in the federal

17    court in order to get answers to these questions.  I just

18    don't understand it.  My colleague sends inquiry after

19    inquiry.  She stood up here and discussed five issues and

20    the end of every issue is, I sent a letter and I never got

21    an answer.  And, as I think I suggested to Your Honor

22    before, we're taking the time of an Article III judge and

23    all of his staff just to get somebody to answer an email and

24    I don't understand it.  I've never seen anything like this

25    before.

 1                THE COURT:  All right.

 2                MR. SEAMAN:  May I, Your Honor?

 3                THE COURT:  You may.

 4                MR. SEAMAN:  The answer to that question, Your

 5       Honor, is, as I said earlier, we believe this case shouldn't

 6       even be before the Court.  The plaintiffs --

 7                THE COURT:  But it is.

 8                MR. SEAMAN:  -- have cost a great deal --

 9                THE COURT:  It is, and you have to talk to each

10       other.

11                MS. GROSS:  So we're left with just one last

12       issue, but just for purposes of making sure that there's

13       clarity with respect to the issue that was just raised, I'd

14       like to add a point.

15                This is the first that we've heard that defendants

16       are not going to use TAR in the next set.  And, yes, I think

17       that my counsel would agree that we think that that's good

18       news, but, you know, as Your Honor knows, we've briefed the

19       TAR issue and it's in front of the Court and, in the

20       meantime, that was no explanation for sets of documents that

21       never went into the TAR program.  So for example, those

22       documents that did not have the new set of search terms in

23       them but would have been hit by the old set of search terms

24       never went into TAR.  And so it's not just a question of,

25       Well, we use TAR because it's a better method of identifying

1     what we think is responsive, because TAR didn't even begin

2     to narrow the set of documents until after it was narrowed

3     by the search terms.  So it's a very big deal that the set

4     of documents that went into the TAR process were defined by

5     this set of search terms that we never agreed to as opposed

6     to the ones that we did.  It's not this process or that

7     process.  It's this process doesn't start until this process

8     is done.  They needed to consult with us on both.  They

9     consulted with us on neither.

10          Okay.  With -- the last issue has to do with the

11    timing or the time frame of documents that were searched

12    with respect to Defendant Marez.  And my understanding is --

13    and I believe that opposing counsel has acknowledged this,

14    but it's certainly clear from looking at the universe of

15    documents that the searches of his documents were limited to

16    -- let's see if I can find the exact date.

17          (Brief pause.)

18          Yeah.  Documents up to and ending in the calendar

19    year of 2015.  So they did not search for; thus, did not put

20    through TAR; thus, never produced any documents from

21    Defendant Marez with the date of January 1st, 2016, or later

22    which is of particular concern now that we understand that

23    250 million -- excuse me, 250,000, a quarter of a million,

24    has been taken out of the trust fund in just the past two

25    years; right?  So none of those documents would have

1    appeared in Mr. Marez's discovery, and he was on the

2    financial committee in that period of time.

3            So I have really two issues with respect to this.

4    My first is, there's no explanation for why they chose that

5    date to end the time frame of documents that they would

6    produce; it's not clear to me if they have placed any other

7    time frame restrictions on any other defendant's

8    productions; and we want those documents.  They are

9    relevant, and they don't get to decide without talking to us

10   or without objecting and bringing it to you that what

11   they're going to produce ends in 2015.  That was the last

12   issue that was in the letter and, again, no response.

13           THE COURT:  Okay.

14           MR. SEAMAN:  Judge, our -- with regard to

15   Professor Marez, he was no longer the President after 2015.

16   Our understanding was that he was a defendant in his

17   capacity as a member of the national council.  That is the

18   nature of the claims in this case.  The claims and defenses

19   in this case are what guide in discovery, what's relevant to

20   those claims and defenses.  Professor Marez was -- stopped

21   being plaintiff -- or rather, President in 2015.  We -- what

22   I informed Ms. Gross was that that's the reason why we

23   decided to stop or cut off the -- or the production at

24   December 31st, 2015.

25           THE COURT:  Okay.  With respect to any other of

1    the individual defendants, was there a similar cutoff used?

2          MR. SEAMAN:  We've actually produced documents

3    into 2017 for Mr. Stephens, Duggan and Reddy and that was

4    actually, sort of, by happenstance, but with regard to

5    Curtis Marez whose -- we produced a great volume of

6    documents from Curtis Marez, and so we were attentive to,

7    you know, date parameters for that.  That's why we stopped

8    at 12/31/15, Your Honor.

9          THE COURT:  Okay.  Now, with --

10          MS. GROSS:  May I respond?

11          THE COURT:  Hold on.

12          With respect to those three other defendants,

13    Stephens, Duggan and Reddy, were any cutoff -- end-date

14    cutoffs used?

15          MR. SEAMAN:  No specific date cutoffs, Your Honor,

16    no.

17          THE COURT:  Okay.  All right.

18          MS. GROSS:  There are a number of defendants in

19    this case who were never President of the ASA.  They were

20    involved in the activities that are alleged in the complaint

21    and, thus, we think that there are solid claims against them

22    and we asked for discovery relating to those claims.

23          First of all, one point that opposing counsel did

24    not make is that it is, I would say, routine or a pattern of

25    the ASA that after you are President, you are, then, on the

1  financial committee for a certain number of years.  Mr.

2  Marez was one of those people.  He was on the financial

3  committee.  He was involved or should have been involved --

4  because his committee certainly was involved -- in the

5  decision to change the bylaws such that money could be taken

6  out of the trust fund, first; and, second, all issues having

7  to do with spending would have gone through the financial

8  committee.  And so, you know, the argument suddenly that you

9  have to be a President of the ASA at a particular time in

10  order to have to turn over discovery materials just makes no

11  sense.  Our claims are what our claims are and to the extent

12  that they involve a period of time after somebody is the

13  President, then you turn over those documents.  But the

14  larger question is, why do defendants get to make this

15  decision and not tell anybody?

16          THE COURT:  No, I agree with that point.  I'm

17  at -- somewhat at a disadvantage on this because the two of

18  you are far more versed in the facts than I.  So what I'd

19  like you to do on that specific issue is file a very short

20  motion to compel that shows what claims you think the

21  documents would be responsive to and why he not longer -- no

22  longer being President doesn't matter, and then they can

23  respond in due course.

24          MS. GROSS:  Yes, Your Honor.  Thank you.

25          THE COURT:  Do you have any other issues for

1    today?

2             MS. GROSS:  Not from that letter.  The only other

3    issue is just -- excuse me, Your Honor.  We had raised with

4    the other side whether they would be willing to do a joint

5    motion for a new scheduling order.  I made it clear that I

6    didn't necessarily expect that we would agree on what the

7    scheduling order would say, but that at the current time,

8    the scheduling order's dates have all long since passed and

9    it would be nice to have a scheduling order that's current.

10            THE COURT:  All right.  I, you know -- there comes

11   a point in some cases where I abandon having people meet and

12   confer and I think we've gotten to this point.  So just file

13   whatever you think is the appropriate scheduling order and

14   they can respond.

15            MS. GROSS:  Yes, Your Honor.  Thank you.

16            THE COURT:  All right.

17            All right.  Anything from the other side that we

18   need to resolve today?

19            MR. KLEIMAN:  No, Your Honor.

20            MR. SEAMAN:  No, Your Honor.

21            MR. MUGAVERO:  No, Your Honor.

22            THE COURT:  All right.  I, you know -- I'm sorry

23   that I have to abandon any notion that the two of you

24   will -- can meet and confer in good faith, you know?  You --

25   I hope you do better going forward.  I'm not optimistic of

1      that, but, you know, one of the quirks about this District

2      is that there is far more District Court judges than there

3      are magistrate judges.  So I will personally get involved in

4      all of it because it will take longer if I refer it to a

5      magistrate judge and I will keep the case moving.

6                MS. GROSS:  Thank you, Your Honor.

7                MR. SEAMAN:  Thank you, Your Honor.

8                MR. MARCUS:  Thank you, Your Honor.

9                THE COURT:  Thank you.  You're excused.

10               THE DEPUTY CLERK:  All rise.  This Honorable Court

11     stands adjourned.

12               (Proceedings concluded at 2:49 p.m.)

13                     * * * * * * * * * * * *

14               **CERTIFICATE OF OFFICIAL COURT REPORTER**

15     **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify**

16     **that the above and foregoing constitutes a true and accurate**

17     **transcript of my stenographic notes and is a full, true and**

18     **complete transcript of the proceedings to the best of my**

19     **ability, dated this 17th day of August 2018.**

20                              **/s/Timothy R. Miller, RPR, CRR, NJ-CCR**
                               **Official Court Reporter**
21                             **United States Courthouse**
                               **Room 6722**
22                             **333 Constitution Avenue, NW**
                               **Washington, DC 20001**
23

24

25

**$**

**$75,000** [2] - 16:14, 17:2

**/**

**/s/Timothy** [1] - 37:20

**1**

**1,000** [5] - 28:2, 28:8, 28:14, 28:16, 28:16
**1,030** [1] - 29:19
**10,000** [4] - 20:25, 21:1, 27:2, 27:16
**100,000** [1] - 15:17
**10012** [1] - 2:7
**1025** [1] - 1:20
**1121** [1] - 1:15
**11th** [2] - 22:22, 23:6
**12/31/15** [1] - 34:8
**13th** [1] - 30:2
**15** [1] - 1:4
**15,000** [2] - 20:19, 20:21
**16-740** [1] - 3:2
**16th** [2] - 4:8, 10:25
**17,060** [2] - 29:12, 29:24
**1717** [1] - 1:19
**17th** [1] - 37:19
**18,090** [2] - 29:10, 29:25
**181** [2] - 21:16, 21:22
**188** [2] - 21:21, 21:22
**19477** [1] - 1:16
**1:16-cv-00740-RC** [1] - 1:2
**1st** [1] - 32:21

**2**

**20001** [2] - 2:10, 37:22
**20006** [1] - 1:20
**2015** [5] - 32:19, 33:11, 33:15, 33:21, 33:24
**2016** [1] - 32:21
**2017** [2] - 15:21, 34:3
**2018** [3] - 1:4, 30:2, 37:19
**202** [1] - 2:11
**20814** [1] - 1:24
**212** [1] - 2:7
**215** [1] - 1:17
**250** [1] - 32:23
**250,000** [1] - 32:23
**26** [1] - 6:17
**26(d)** [2] - 23:16,

23:24
**27th** [3] - 9:4, 9:6, 15:9
**2907** [1] - 2:3
**2:00** [1] - 1:5
**2:49** [1] - 37:12

**3**

**30** [5] - 10:22, 10:23, 24:8, 24:11, 24:13
**30,000-foot** [1] - 14:24, 15:2
**301** [1] - 1:25
**306-8094** [1] - 2:4
**310** [1] - 2:4
**31st** [1] - 33:24
**333** [2] - 2:10, 37:22
**354-3111** [1] - 2:11

**4**

**413** [1] - 21:14

**6**

**6,000** [3] - 25:6, 25:7, 25:9
**6,000-document** [1] - 25:14
**60-242** [1] - 1:16
**614-6430** [1] - 2:7
**666** [1] - 2:6
**6722** [2] - 2:9, 37:21

**7**

**700W** [1] - 1:24
**721-6561** [1] - 1:21
**7501** [1] - 1:23
**7th** [2] - 2:6, 4:19

**8**

**8,000** [1] - 13:12
**804-3610** [1] - 1:25
**885-2250** [1] - 1:17

**9**

**9** [2] - 10:23
**90292** [1] - 2:3
**91** [1] - 22:1
**917** [1] - 1:21

**A**

**abandon** [2] - 36:11, 36:23
**ability** [1] - 37:19
**able** [2] - 6:1, 30:9

**aboard** [1] - 3:23
**absence** [1] - 17:1
**absent** [1] - 27:2
**accomplished** [1] - 10:4
**accurate** [2] - 13:7, 37:16
**acknowledged** [1] - 32:13
**acknowledgement** [1] - 11:18
**Act** [2] - 5:16, 5:20
**acting** [2] - 8:9, 8:12
**Action** [1] - 3:2
**action** [2] - 6:12, 17:1
**activities** [1] - 34:20
**acts** [4] - 5:21, 16:24
**add** [4] - 7:1, 9:7, 28:1, 31:14
**added** [1] - 8:15
**adding** [1] - 10:23
**addition** [1] - 7:1
**address** [10] - 14:8, 14:21, 14:22, 15:1, 16:3, 16:18, 17:1, 18:18, 19:21, 28:25
**addressed** [2] - 15:5, 16:5
**addresses** [1] - 14:14
**adjourned** [1] - 37:11
**advice** [1] - 23:23
**afternoon** [5] - 3:8, 3:13, 3:14, 3:15, 3:20
**agree** [4] - 13:8, 31:17, 35:16, 36:6
**agreed** [6] - 6:21, 12:15, 12:17, 30:6, 32:5
**agreement** [1] - 19:20
**ahead** [1] - 21:9
**aided** [1] - 2:12
**al** [1] - 3:3
**allegation** [1] - 8:13
**allegations** [1] - 17:1
**allege** [1] - 16:14
**alleged** [4] - 6:10, 8:11, 16:24, 34:20
**ALLEN** [1] - 2:2
**altogether** [1] - 15:10
**amended** [8] - 10:14, 10:21, 11:8, 11:9, 11:10, 11:13, 16:14, 22:15
**AMERICAN** [1] - 1:9
**amount** [1] - 25:5
**analyst** [1] - 25:11
**animus** [1] - 6:11
**answer** [16] - 9:13,

13:4, 13:5, 17:17, 19:11, 25:15, 26:5, 26:22, 27:11, 28:16, 29:4, 30:8, 30:9, 30:21, 30:23, 31:4
**answer's** [1] - 27:1
**answers** [1] - 30:17
**anticipation** [1] - 23:22
**apparent** [1] - 21:20
**appear** [1] - 24:17
**APPEARANCES** [2] - 1:13, 2:1
**appeared** [2] - 21:21, 33:1
**appearing** [1] - 3:16
**apply** [1] - 5:25
**appreciate** [1] - 27:24
**approach** [2] - 3:4, 3:25
**appropriate** [2] - 11:17, 36:13
**arguing** [1] - 5:7
**argument** [10] - 5:2, 5:14, 11:6, 11:16, 13:9, 15:8, 16:17, 17:6, 17:10, 35:8
**arguments** [2] - 15:4, 15:5, 15:14
**arrange** [2] - 20:17, 21:7
**arrangement** [1] - 19:19
**Article** [1] - 30:22
**ASA** [10] - 3:10, 6:3, 10:18, 11:14, 16:21, 16:23, 18:24, 34:19, 34:25, 35:9
**aside** [4] - 12:18, 21:21, 28:8, 30:7
**assert** [2] - 16:8, 27:18
**ASSOCIATION** [1] - 1:9
**association** [2] - 14:12, 30:6
**attached** [1] - 22:7
**attacks** [3] - 7:24, 8:23, 11:11
**attentive** [1] - 34:6
**attorney** [9] - 21:19, 21:21, 21:23, 22:4, 22:12, 22:17, 23:20, 23:21, 24:17
**attorney-client** [2] - 22:17, 23:21
**attorneys** [1] - 20:18
**AUERBACH** [1] - 1:15
**August** [5] - 1:4, 4:19, 9:6, 15:9, 37:19
**available** [1] - 19:11

**Avenue** [5] - 1:19, 1:23, 2:3, 2:10, 37:22

**B**

**balanced** [1] - 5:9
**BARTON** [1] - 1:3
**based** [3] - 6:1, 9:24, 24:14
**basis** [5] - 5:6, 5:13, 11:12, 16:6
**Bates** [1] - 22:9
**becomes** [1] - 6:7
**BEFORE** [1] - 1:12
**beg** [1] - 4:19
**began** [1] - 10:22
**begin** [1] - 32:1
**beings** [1] - 30:8
**best** [1] - 37:18
**Bethesda** [1] - 1:24
**Bethlehem** [1] - 1:15
**better** [2] - 31:25, 36:25
**between** [7] - 15:25, 19:25, 20:14, 21:18, 21:19, 26:7, 29:20
**beyond** [1] - 8:1
**big** [2] - 12:19, 32:3
**boxes** [1] - 21:4
**BRANDEIS** [1] - 1:15
**breach** [1] - 8:20
**breaching** [1] - 8:14
**Brief** [1] - 32:17
**brief** [4] - 5:3, 8:21, 9:8, 9:23
**briefed** [2] - 9:12, 31:18
**briefing** [1] - 6:21
**briefly** [4] - 5:1, 9:7, 17:15, 18:2
**briefs** [1] - 9:8
**bringing** [2] - 25:10, 33:10
**Broadway** [1] - 2:6
**Bronner** [1] - 3:3
**BRONNER** [1] - 1:2
**brought** [2] - 5:8, 17:4
**bugging** [1] - 13:4
**bundle** [1] - 19:25
**burden** [3] - 5:10, 8:8, 10:6
**bylaws** [1] - 35:5

**C**

**CA** [2] - 1:2, 2:3
**calendar** [1] - 32:18
**camera** [1] - 24:11
**capacity** [1] - 33:17

**cards** [2] - 12:15, 12:19
**care** [1] - 30:14
**carpet** [1] - 7:21
**case** [15] - 5:15, 5:23, 6:5, 6:16, 8:3, 8:22, 14:21, 15:4, 15:12, 17:3, 31:5, 33:18, 33:19, 34:19, 37:5
**cases** [4] - 5:6, 9:17, 22:4, 36:11
**category** [3] - 26:13, 27:19
**CCR** [3] - 2:8, 37:15, 37:20
**CENTER** [2] - 1:18, 2:5
**Center** [1] - 3:21
**certain** [3] - 20:5, 25:5, 35:1
**certainly** [2] - 32:14, 35:4
**CERTIFICATE** [1] - 37:14
**certification** [3] - 26:1, 26:10, 27:8
**certify** [1] - 37:15
**challenged** [1] - 17:3
**CHANDAN** [1] - 1:7
**change** [2] - 13:22, 35:5
**CHARLES** [1] - 1:3
**chose** [1] - 33:4
**chronology** [1] - 20:3
**Circuit** [1] - 9:11
**cited** [1] - 9:16
**civil** [1] - 3:2
**claim** [2] - 22:16, 23:20
**claimed** [1] - 22:9
**claiming** [1] - 27:10
**claims** [8] - 33:18, 33:20, 34:21, 34:22, 35:11, 35:20
**clarify** [1] - 7:6
**clarity** [1] - 31:13
**clear** [10] - 8:11, 9:11, 9:17, 10:12, 11:7, 22:10, 25:22, 32:14, 33:6, 36:5
**clearly** [3] - 10:20, 11:3, 21:17
**CLERK** [2] - 3:2, 37:10
**client** [4] - 21:19, 22:5, 22:17, 23:21
**client's** [1] - 4:24
**closer** [1] - 20:24
**Code** [2] - 5:18, 5:19
**colleague** [2] - 3:7, 30:18

**collect** [2] - 13:3, 20:7
**COLUMBIA** [1] - 1:1
**coming** [1] - 13:19
**committee** [5] - 33:2, 35:1, 35:3, 35:4, 35:8
**communication** [2] - 21:19, 22:18
**communications** [1] - 29:13
**comparing** [1] - 5:10
**compel** [2] - 13:18, 35:20
**complaint** [12] - 7:24, 8:11, 8:23, 10:14, 10:20, 10:21, 11:8, 11:10, 11:13, 16:14, 34:20
**complete** [1] - 37:18
**completely** [1] - 6:16
**complicated** [1] - 11:19
**complied** [1] - 23:24
**complies** [1] - 23:16
**comply** [1] - 24:9
**computer** [1] - 2:12
**computer-aided** [1] - 2:12
**concern** [1] - 32:22
**concluded** [1] - 37:12
**conduct** [1] - 8:15
**confer** [2] - 36:12, 36:24
**CONFERENCE** [1] - 1:11
**confess** [1] - 30:15
**confidentiality** [1] - 24:19
**consideration** [1] - 8:1
**considering** [1] - 27:18
**constitutes** [1] - 37:16
**Constitution** [2] - 2:10, 37:22
**Constitutional** [1] - 3:21
**CONSTITUTIONAL** [1] - 2:5
**consult** [1] - 32:8
**consultant** [1] - 25:10
**consultants** [2] - 12:8, 28:6
**consulted** [1] - 32:9
**contacted** [2] - 19:3, 19:4
**CONTRERAS** [1] - 1:12
**convened** [1] - 30:16
**conversation** [3] -

14:16, 14:18, 15:19
**conversations** [2] - 13:11, 13:16
**convince** [1] - 20:12
**cookie** [1] - 8:16
**cookies** [1] - 8:17
**corner** [1] - 23:19
**Corporations** [1] - 5:17
**correct** [3] - 9:6, 20:4, 20:8
**cost** [2] - 30:6, 31:8
**council** [1] - 33:17
**counsel** [13] - 3:4, 10:16, 11:21, 12:25, 13:11, 13:16, 22:7, 23:23, 25:13, 28:2, 31:17, 32:13, 34:23
**counsel's** [2] - 28:21, 28:24
**couple** [4] - 5:5, 5:12, 11:5, 14:6
**course** [2] - 17:8, 35:23
**COURT** [73] - 1:1, 3:8, 3:14, 3:18, 3:23, 4:1, 4:12, 4:16, 4:18, 4:21, 6:24, 7:10, 8:25, 9:3, 10:1, 14:2, 14:5, 16:6, 16:10, 16:18, 17:9, 17:16, 17:25, 18:3, 18:8, 18:11, 18:13, 18:16, 18:23, 19:7, 19:15, 20:3, 20:12, 20:21, 21:5, 21:9, 22:24, 23:4, 23:6, 23:25, 24:5, 24:7, 24:16, 24:21, 25:1, 26:16, 26:19, 26:21, 26:25, 27:2, 27:15, 27:23, 28:11, 28:13, 29:6, 29:16, 30:4, 31:1, 31:3, 31:7, 31:9, 33:13, 33:25, 34:9, 34:11, 34:17, 35:16, 35:25, 36:10, 36:16, 36:22, 37:9, 37:14
**court** [18] - 4:3, 5:2, 5:9, 6:13, 6:19, 7:18, 8:5, 9:15, 9:24, 14:22, 15:19, 16:12, 17:14, 19:13, 24:8, 30:17, 31:6, 31:19
**Court** [15] - 2:8, 2:9, 7:23, 9:24, 11:21, 15:6, 15:13, 15:16, 16:4, 16:24, 17:19, 29:1, 37:2, 37:10, 37:20

**Courthouse** [2] - 2:9, 37:21
**covered** [2] - 13:24, 13:25
**covering** [1] - 21:13
**CRR** [3] - 2:8, 37:15, 37:20
**culling** [1] - 20:11
**current** [2] - 36:7, 36:9
**CURTIS** [1] - 1:6
**Curtis** [3] - 3:11, 34:5, 34:6
**cut** [1] - 33:23
**cutoff** [2] - 34:1, 34:13
**cutoffs** [2] - 34:14, 34:15

## D

**D.C** [3] - 1:4, 5:17, 5:19
**damage** [2] - 16:15, 17:2
**date** [9] - 10:25, 15:17, 30:1, 32:16, 32:21, 33:5, 34:7, 34:13, 34:15
**dated** [1] - 37:19
**dates** [1] - 36:8
**days** [7] - 10:22, 10:23, 10:24, 11:5, 11:17, 12:2
**DC** [3] - 1:20, 2:10, 37:22
**deal** [3] - 12:19, 31:8, 32:3
**December** [2] - 29:15, 33:24
**decide** [5] - 6:13, 10:7, 28:18, 33:9
**decided** [3] - 7:8, 19:24, 33:23
**decision** [4] - 9:15, 9:24, 35:5, 35:15
**deemed** [1] - 27:4
**defeating** [1] - 22:6
**defendant** [2] - 8:8, 33:16
**Defendant** [6] - 3:10, 3:22, 10:18, 11:14, 32:12, 32:21
**defendant's** [1] - 33:7
**Defendants** [4] - 1:10, 1:22, 2:2, 3:16
**defendants** [29] - 4:4, 4:5, 4:7, 4:11, 4:25, 5:10, 5:14, 6:2, 6:4, 6:15, 7:9, 7:16, 8:2, 8:15, 8:20, 10:7, 10:10, 10:14, 10:15,

11:15, 14:19, 14:20, 25:4, 26:15, 31:15, 34:1, 34:12, 34:18, 35:14
**defendants'** [1] - 11:21
**defense** [6] - 7:3, 9:10, 9:13, 9:15, 9:23, 16:24
**defenses** [2] - 33:18, 33:20
**defined** [1] - 32:4
**delta** [4] - 15:25, 20:14, 27:12, 27:16
**demonstrate** [1] - 6:1
**demonstrating** [1] - 8:9
**DEPUTY** [2] - 3:2, 37:10
**derivative** [1] - 16:25
**derived** [1] - 10:20
**destroy** [1] - 21:17
**destroyed** [1] - 21:24
**destroys** [1] - 22:11
**detail** [2] - 9:12, 16:3
**determined** [1] - 16:25
**difference** [3] - 15:25, 19:25, 29:19
**different** [10] - 9:20, 11:9, 13:10, 15:3, 17:6, 17:8, 17:10, 20:10, 20:13
**Director** [1] - 9:19
**disadvantage** [1] - 35:17
**disclosures** [8] - 4:7, 4:12, 5:1, 7:5, 7:7, 7:9, 7:14, 10:4
**discovery** [32] - 3:24, 4:2, 4:25, 5:8, 6:9, 6:18, 7:5, 7:20, 8:4, 9:13, 9:22, 10:4, 10:9, 10:13, 11:1, 11:3, 11:6, 11:7, 11:12, 11:14, 14:20, 15:10, 18:3, 18:5, 18:6, 18:18, 18:24, 33:1, 33:19, 34:22, 35:10
**discrepancy** [2] - 25:14, 26:7
**discuss** [2] - 4:6, 10:13
**discussed** [1] - 30:19
**discussion** [3] - 23:21, 25:19, 30:5
**discussions** [1] - 23:23
**dismiss** [18] - 5:8, 6:20, 7:8, 9:3, 9:16,

10:2, 10:5, 10:8, 15:8, 15:14, 16:5, 16:7, 16:21, 16:22, 17:21, 17:22, 17:24, 18:10
**dismissal** [2] - 7:2, 15:4
**dispose** [1] - 6:15
**dispositive** [1] - 5:7
**dispute** [2] - 12:4, 19:18
**disputes** [3] - 3:24, 11:1, 18:5
**dissolved** [2] - 4:3, 7:16
**District** [3] - 5:6, 37:1, 37:2
**DISTRICT** [3] - 1:1, 1:1, 1:12
**document** [3] - 11:3, 22:18, 25:24
**documented** [2] - 27:5, 29:25
**documents** [74] - 11:4, 11:23, 12:12, 12:23, 13:3, 13:12, 14:11, 16:2, 18:21, 18:22, 19:2, 19:13, 19:14, 19:18, 19:25, 20:7, 20:11, 20:18, 20:19, 20:21, 21:2, 21:3, 22:9, 23:2, 24:23, 25:5, 25:6, 25:8, 25:9, 25:16, 25:20, 25:21, 25:23, 26:3, 26:11, 26:23, 27:13, 27:17, 28:2, 28:3, 28:8, 28:14, 28:16, 28:18, 28:20, 29:2, 29:10, 29:12, 29:14, 29:20, 29:22, 29:23, 29:24, 30:8, 30:11, 31:20, 31:22, 32:2, 32:4, 32:11, 32:15, 32:18, 32:20, 32:25, 33:5, 33:8, 34:2, 34:6, 35:13, 35:21
**done** [5] - 7:19, 12:20, 13:18, 29:2, 32:8
**down** [3] - 4:10, 6:13, 29:16
**Dr** [3] - 6:14, 7:3
**dragged** [1] - 6:22
**due** [5] - 4:8, 4:15, 9:3, 10:25, 35:23
**Duggan** [3] - 3:3, 34:3, 34:13
**DUGGAN** [1] - 1:6
**during** [2] - 20:8

## E

**easier** [1] - 4:13
**Editor** [1] - 19:5
**Editor's** [1] - 19:10
**either** [2] - 9:19, 23:20
**electronic** [1] - 12:20
**eliminated** [2] - 12:16, 12:21
**elimination** [1] - 12:19
**email** [2] - 29:7, 29:8, 30:1, 30:23
**emails** [2] - 21:20, 28:5
**enable** [1] - 24:3
**encapsulated** [2] - 13:13, 13:15
**end** [5] - 25:8, 28:17, 30:20, 33:5, 34:13
**end-date** [1] - 34:13
**ended** [1] - 10:24
**ending** [1] - 32:18
**endowment** [1] - 8:18
**ends** [1] - 33:11
**enjoy** [1] - 5:14
**entertain** [1] - 5:2
**entire** [1] - 15:4
**entries** [3] - 21:15, 22:1
**erroneous** [1] - 20:5
**Esq** [6] - 1:14, 1:18, 1:22, 1:22, 2:2, 2:5
**et** [2] - 3:3
**evaluate** [1] - 24:3
**exact** [2] - 10:25, 32:16
**example** [1] - 31:21
**examples** [1] - 24:9
**except** [4] - 25:22, 26:12, 26:22, 27:4
**exception** [1] - 27:11
**exculpation** [2] - 9:19, 9:21
**excuse** [3] - 18:1, 32:23, 36:3
**excused** [1] - 37:9
**Exhibit** [1] - 22:11
**Exhibit-B** [1] - 22:11
**exist** [1] - 28:9
**existing** [1] - 4:5
**expect** [2] - 19:7, 36:6
**expense** [1] - 8:19
**explain** [3] - 5:1, 12:6, 29:19
**explained** [2] - 11:21, 13:12
**explanation** [5] - 23:19, 28:25, 29:1, 31:20, 33:4

**extend** [1] - 7:6
**extent** [2] - 10:2, 35:11
**eyes** [2] - 19:24, 20:10

## F

**face** - 22:3
**facial** [2] - 7:24, 8:23
**fact** [1] - 17:23
**facts** [1] - 35:18
**factual** [2] - 9:14, 9:22
**fair** [2] - 18:15, 25:19
**faith** [1] - 36:24
**fall** [2] - 15:21, 26:12
**far** [4] - 12:13, 23:18, 35:18, 37:2
**fashioned** [2] - 17:21, 17:23
**February** [7] - 7:17, 10:22, 11:14, 18:24, 21:14, 22:19, 30:2
**federal** [7] - 5:16, 5:19, 8:7, 9:9, 9:20, 16:7, 30:16
**few** [3] - 11:17, 12:2, 21:4
**figure** [1] - 28:7
**figured** [2] - 25:8, 25:17
**file** [7] - 7:18, 7:22, 10:2, 15:9, 18:9, 18:13, 35:19, 36:12
**filed** [1] - 6:20
**finally** [2] - 13:5, 25:14
**financial** [4] - 33:2, 35:1, 35:2, 35:7
**fine** [1] - 8:21
**first** [22] - 4:12, 5:13, 8:7, 9:11, 10:17, 10:21, 11:2, 11:8, 11:10, 11:12, 11:13, 11:22, 13:8, 14:6, 14:10, 16:18, 16:21, 18:23, 31:15, 33:4, 34:23, 35:6
**five** [2] - 26:6, 30:19
**Floor** [1] - 2:6
**footnote** [1] - 17:19
**FOR** [3] - 1:1, 1:19, 2:5
**foregoing** [1] - 37:16
**form** [1] - 22:20
**forth** [1] - 28:4
**forward** [3] - 18:6, 18:17, 36:25
**four** [3] - 7:24, 26:6
**frame** [3] - 32:11, 33:5, 33:7
**frankly** [1] - 28:15

**front** [1] - 31:19
**full** [1] - 37:17
**fund** [2] - 32:24, 35:6

## G

**gather** [1] - 16:1
**given** [3] - 5:23, 18:9, 28:3
**glad** [1] - 27:25
**globe** [1] - 20:22
**great** [3] - 30:6, 31:8, 34:5
**gritty** [1] - 15:1
**GROSS** [29] - 9:1, 9:4, 9:7, 10:11, 14:3, 14:7, 18:2, 21:11, 23:8, 23:10, 23:13, 24:13, 24:20, 24:24, 25:2, 26:17, 26:20, 27:24, 28:12, 29:7, 29:18, 30:2, 31:11, 34:10, 34:18, 35:24, 36:2, 36:15, 37:6
**Gross** [2] - 1:18, 3:7
**gross** [5] - 15:18, 15:22, 20:24, 23:2, 33:22
**grounds** [2] - 7:1, 7:2
**group** [1] - 27:17
**guide** [1] - 33:19
**guys** [1] - 20:4

## H

**half** [2] - 7:15, 8:22
**hand** [1] - 23:19
**handles** [1] - 19:3
**hands** [1] - 8:16
**happenstance** [1] - 34:4
**happy** [4] - 14:21, 16:3, 23:8, 23:13
**harass** [2] - 12:16, 12:17
**harass"** [1] - 12:18
**harassed** [1] - 12:17
**harassment** [1] - 12:18
**harm** [2] - 6:3, 6:11
**harmful** [1] - 5:22
**Hathway** [1] - 29:9
**headers** [1] - 21:20
**hear** [6] - 4:18, 10:9, 11:4, 14:22, 26:21, 28:13
**heard** [4] - 8:5, 8:6, 13:20, 31:15
**hearing** [1] - 27:24
**HELD** [1] - 1:12

**held** [1] - 29:2
**help** [1] - 12:9
**helpful** [1] - 23:1
**hereby** [1] - 37:15
**high** [2] - 29:11, 29:21
**hit** [1] - 31:23
**hold** [1] - 34:11
**holding** [1] - 27:9
**Honor** [52] - 3:9, 3:13, 3:15, 3:19, 3:20, 4:2, 4:9, 4:11, 4:19, 4:23, 6:19, 6:25, 7:13, 11:24, 12:5, 13:7, 14:8, 15:10, 16:9, 16:20, 17:12, 17:15, 18:2, 18:7, 18:12, 18:20, 19:1, 19:17, 20:17, 21:11, 22:23, 22:25, 27:21, 28:15, 29:5, 30:3, 30:15, 30:21, 31:2, 31:5, 31:18, 34:8, 34:15, 35:24, 36:3, 36:15, 36:19, 36:20, 36:21, 37:6, 37:7, 37:8
**Honor's** [2] - 4:20, 17:18
**HONORABLE** [1] - 1:12
**Honorable** [1] - 37:10
**hope** [1] - 36:25
**Hopkins** [1] - 19:3
**House** [1] - 1:16
**human** [1] - 30:8
**HUMAN** [1] - 1:19

## I

**idea** [1] - 8:21
**identification** [1] - 23:1
**identified** [5] - 29:3, 29:11, 29:12, 29:21, 29:22
**identifies** [1] - 4:4
**identify** [4] - 3:5, 11:22, 12:12, 28:20
**identifying** [1] - 31:25
**Ill** [1] - 30:22
**images** [1] - 15:17
**immunity** [2] - 5:14, 5:25
**immunizes** [1] - 5:20
**important** [2] - 5:19, 6:7
**IN** [1] - 1:1
**inappropriate** [1] - 7:23
**include** [4] - 12:17, 15:8, 21:21, 22:10

**included** [4] - 12:18, 21:16, 21:23, 21:24
**includes** [1] - 12:11
**including** [5] - 4:25, 7:4, 10:4, 12:15, 22:7
**incredibly** [1] - 9:11
**indeterminately** [1] - 6:22
**indicated** [1] - 16:7
**indicating** [1] - 23:17
**individual** [9] - 5:10, 6:4, 6:11, 10:6, 11:15, 15:1, 16:15, 17:2, 34:1
**information** [5] - 9:25, 14:15, 19:4, 24:3, 24:15
**informed** [2] - 13:16, 33:22
**initial** [8] - 4:7, 4:12, 5:1, 7:5, 7:7, 7:9, 7:14, 10:4
**inquiry** [2] - 30:18, 30:19
**intend** [4] - 4:21, 15:7, 17:5
**intended** [1] - 6:3
**intent** [1] - 6:11
**interpreting** [1] - 6:5
**invoked** [1] - 8:7
**involve** [1] - 35:12
**involved** [6] - 24:17, 34:20, 35:3, 35:4, 37:3
**involves** [2] - 8:16, 10:15
**involving** [1] - 22:17
**issue** [26] - 4:7, 6:12, 10:17, 10:19, 11:13, 11:19, 13:19, 14:10, 14:25, 15:12, 15:20, 17:13, 18:24, 19:17, 19:20, 21:10, 21:12, 26:17, 30:20, 31:12, 31:13, 31:19, 32:10, 33:12, 35:19, 36:3
**issued** [1] - 15:19
**issues** [18] - 4:4, 4:5, 4:10, 9:14, 9:22, 10:9, 10:12, 11:8, 11:12, 13:20, 14:6, 15:1, 18:18, 26:2, 30:19, 33:3, 35:6, 35:25
**itself** [1] - 5:23

## J

**January** [3] - 13:18,

25:15, 32:21
**jar** [1] - 8:16
**Jasbir** [1] - 3:17
**JASBIR** [1] - 1:8
**Jeff** [1] - 3:9
**Jeffrey** [1] - 1:22
**Jennie** [2] - 3:7, 12:9
**Jennifer** [1] - 1:18
**Jerome** [3] - 1:14, 3:6, 9:1
**John** [1] - 3:10
**JOHN** [1] - 1:8
**Johns** [1] - 19:3
**joint** [1] - 36:4
**journal** [1] - 19:6
**JUDGE** [1] - 1:12
**judge** [4] - 26:22, 30:22, 33:14, 37:5
**judges** [2] - 37:2, 37:3
**July** [7] - 4:8, 10:25, 22:22, 23:4, 23:9, 23:14
**jurisdiction** [6] - 7:2, 7:3, 15:16, 16:13, 16:22, 17:13
**justify** [1] - 8:24

## K

**Kauanui** [2] - 3:16, 6:14
**KAUANUI** [1] - 1:8
**keep** [1] - 37:5
**Kehaulani** [1] - 3:16
**KEHAULANI** [1] - 1:7
**kind** [1] - 30:5
**Kleiman** [2] - 2:2, 3:16
**KLEIMAN** [5] - 2:2, 3:15, 3:19, 4:23, 36:19
**knows** [2] - 6:19, 31:18
**KUPFER** [1] - 1:3

## L

**lack** [2] - 11:18, 16:22
**LaHood** [2] - 2:5, 3:21
**LAHOOD** [3] - 3:20, 6:25, 7:11
**larger** [2] - 20:24, 35:14
**last** [10] - 7:12, 9:8, 11:20, 17:4, 17:18, 20:18, 26:17, 31:11, 32:10, 33:11
**later-named** [1] - 6:15
**latter** [1] - 6:2
**latter-named** [1] - 6:2
**LAW** [1] - 2:2

**law** [3] - 6:5, 6:13, 9:11
**lawyer** [1] - 28:18
**least** [4] - 21:16, 22:10, 28:9
**leave** [1] - 18:9
**left** [1] - 31:11
**legal** [1] - 6:8
**letter** [16] - 4:4, 11:1, 22:7, 22:8, 22:18, 22:19, 22:20, 22:22, 23:6, 23:9, 23:14, 26:15, 28:21, 30:20, 33:12, 36:2
**liability** [1] - 5:20
**likelihood** [1] - 15:3
**limited** [1] - 32:15
**Lisa** [1] - 3:3
**LISA** [1] - 1:6
**list** [8] - 12:24, 12:25, 13:20, 14:12, 22:8, 22:11, 24:24, 25:8
**lists** [1] - 11:1
**litigation** [1] - 23:22
**live** [1] - 4:6
**LLC** [1] - 1:15
**LLP** [1] - 1:23
**log** [9] - 21:13, 21:15, 21:16, 22:15, 23:15, 23:18, 25:23, 27:5
**look** [4] - 23:3, 24:11, 24:23, 28:17
**looked** [1] - 12:3
**looking** [3] - 26:1, 27:7, 32:14
**LOUIS** [1] - 1:18

## M

**machine** [1] - 2:12
**magistrate** [2] - 37:3, 37:5
**main** [1] - 19:20
**MAIRA** [1] - 1:7
**Maira** [1] - 3:10
**major** [1] - 25:3
**march** [1] - 4:10
**Marcus** [4] - 1:14, 3:6, 15:23, 29:8
**MARCUS** [16] - 1:15, 3:6, 3:25, 4:2, 4:14, 4:17, 4:19, 7:12, 9:2, 21:1, 21:4, 23:12, 23:17, 30:1, 30:15, 37:8
**Marez** [8] - 3:11, 32:12, 32:21, 33:15, 33:20, 34:5, 34:6, 35:2
**MAREZ** [1] - 1:6

**Marez's** [1] - 33:1
**Maria** [2] - 2:5, 3:20
**mark** [1] - 3:15
**Mark** [1] - 2:2
**MARK** [1] - 2:2
**marked** [1] - 29:14
**match** [4] - 26:4, 26:8, 28:5, 28:10
**material** [2] - 10:24, 23:21
**materials** [1] - 35:10
**math** [1] - 25:11
**matter** [6] - 7:2, 15:16, 16:13, 16:22, 17:13, 35:22
**MD** [1] - 1:24
**mean** [1] - 11:3
**meantime** [3] - 18:4, 18:16, 31:20
**meet** [2] - 36:11, 36:24
**member** [1] - 33:17
**members** [1] - 14:12
**memoranda** [3] - 15:5, 15:6, 17:4
**method** [2] - 20:10, 31:25
**MICHAEL** [2] - 1:2, 1:3
**Miller** [2] - 2:8, 37:20
**MILLER** [1] - 37:15
**million** [1] - 32:23
**minimized** [1] - 11:9
**minus** [1] - 29:24, 29:25
**minute** [1] - 12:25
**missing** [2] - 25:9, 25:12
**misspelled** [1] - 28:23
**model** [2] - 29:11, 29:12
**money** [2] - 8:18, 35:5
**month** [3] - 7:15, 9:5, 15:11
**month-and-a-half** [1] - 7:15
**months** [1] - 12:4
**most** [2] - 5:19, 15:6
**motion** [22] - 7:7, 7:17, 7:22, 9:3, 9:16, 10:1, 10:2, 10:5, 10:8, 15:8, 15:14, 16:5, 16:6, 16:21, 17:21, 17:22, 17:23, 18:4, 18:10, 35:20, 36:5
**motion-to-dismiss** [1] - 9:16
**motions** [4] - 5:7, 6:20, 16:22, 17:19
**move** [2] - 18:5, 18:17
**moved** [1] - 13:18

**moving** [1] - 37:5
**MR** [68] - 3:6, 3:9, 3:13, 3:15, 3:19, 3:25, 4:2, 4:14, 4:17, 4:19, 4:23, 7:12, 9:2, 9:6, 14:8, 16:9, 16:11, 16:20, 17:11, 17:15, 17:17, 18:1, 18:7, 18:9, 18:12, 18:15, 18:20, 19:1, 19:9, 19:17, 20:6, 20:17, 20:22, 21:1, 21:3, 21:4, 21:7, 22:25, 23:5, 23:7, 23:9, 23:11, 23:12, 23:14, 23:17, 23:18, 24:2, 24:6, 26:22, 27:1, 27:6, 27:21, 28:15, 30:1, 30:3, 30:5, 30:15, 31:2, 31:4, 31:8, 33:14, 34:2, 34:15, 36:19, 36:20, 36:21, 37:7, 37:8
**MS** [32] - 3:20, 6:25, 7:11, 9:1, 9:4, 9:7, 10:11, 14:3, 14:7, 18:2, 21:11, 23:8, 23:10, 23:13, 24:13, 24:20, 24:24, 25:2, 26:17, 26:20, 27:24, 28:12, 29:7, 29:18, 30:2, 31:11, 34:10, 34:18, 35:24, 36:2, 36:15, 37:6
**Mugavero** [3] - 1:22, 3:12, 29:8
**MUGAVERO** [9] - 3:13, 17:15, 17:17, 18:1, 18:7, 18:9, 18:12, 18:15, 36:21
**must** [1] - 9:15
**mystery** [1] - 28:14
**mystified** [1] - 30:16

## N

**N.W** [1] - 1:19
**named** [2] - 6:2, 6:15
**names** [1] - 14:14
**narrow** [3] - 6:8, 6:12, 32:2
**narrowed** [1] - 32:2
**narrower** [1] - 20:9
**national** [1] - 33:17
**nature** [1] - 33:18
**necessarily** [1] - 36:6
**need** [3] - 20:17, 27:13, 36:18
**needed** [2] - 17:20,

32:8
**needs** [1] - 8:6
**NEFERTI** [1] - 1:7
**never** [8] - 12:7, 30:20, 30:24, 31:21, 31:24, 32:5, 32:20, 34:19
**new** [11] - 4:6, 4:18, 4:25, 5:24, 7:9, 8:14, 10:15, 10:16, 14:20, 31:22, 36:5
**New** [2] - 2:7, 5:6
**news** [1] - 31:18
**next** [5] - 19:5, 19:17, 28:25, 30:7, 31:16
**nice** [1] - 36:9
**nitty** [1] - 15:1
**nitty-gritty** [1] - 15:1
**NJ** [3] - 2:8, 37:15, 37:20
**NJ-CCR** [3] - 2:8, 37:15, 37:20
**nobody** [1] - 7:13
**nobody's** [1] - 15:15
**none** [2] - 10:14, 32:25
**noted** [1] - 17:19
**notes** [1] - 37:17
**nothing** [2] - 11:2, 11:3
**notion** [1] - 36:23
**November** [1] - 19:19
**number** [8] - 11:1, 21:17, 21:24, 25:16, 29:20, 29:22, 34:18, 35:1
**numbers** [7] - 13:1, 22:9, 26:4, 26:8, 28:2, 28:4, 28:14
**numerous** [5] - 9:17, 11:11, 25:12, 25:13, 28:5
**nutshell** [1] - 16:17
**NW** [3] - 1:23, 2:10, 37:22
**NY** [1] - 2:7

## O

**objecting** [1] - 33:10
**objection** [1] - 11:4
**obligation** [2] - 7:13, 8:4
**obligations** [2] - 6:18, 8:14
**obvious** [1] - 22:2
**obviously** [1] - 24:16
**October** [3] - 11:20, 20:1, 25:4
**odd** [1] - 7:15
**OF** [4] - 1:1, 1:11, 2:2,
37:14
**offered** [1] - 19:20
**OFFICES** [1] - 2:2
**OFFICIAL** [1] - 37:14
**Official** [2] - 2:9, 37:20
**old** [1] - 31:23
**one** [23] - 5:19, 6:12, 7:18, 7:23, 7:25, 11:2, 11:11, 15:13, 16:11, 16:12, 17:7, 18:23, 20:15, 21:16, 22:11, 23:23, 26:20, 26:21, 28:22, 31:11, 34:23, 35:2, 37:1
**ones** [6] - 12:14, 16:2, 22:8, 24:16, 26:23, 32:6
**ongoing** [1] - 11:8, 25:19
**opinion** [2] - 13:22, 16:19
**opportunity** [1] - 9:22
**opposed** [1] - 32:5
**opposing** [6] - 12:24, 13:11, 22:7, 25:13, 32:13, 34:23
**optimistic** [1] - 36:25
**order** [6] - 6:19, 15:20, 17:21, 30:17, 35:10, 36:5, 36:7, 36:9, 36:13
**order's** [1] - 36:8
**ordered** [3] - 11:25, 12:5, 13:7
**organization** [4] - 5:23, 6:4, 8:14, 8:19
**oriented** [1] - 16:21
**original** [3] - 10:20, 16:1, 20:1
**originally** [2] - 20:4, 28:22
**ought** [2] - 5:9, 7:21
**outcome** [1] - 17:7
**overlap** [1] - 21:22

## P

**p.m** [2] - 1:5, 37:12
**PA** [1] - 1:16
**pages** [1] - 21:1
**pale** [1] - 8:2
**paper** [1] - 7:19
**parameters** [1] - 34:7
**pardon** [1] - 4:20
**part** [2] - 19:19, 26:5
**participation** [1] - 6:16
**particular** [1] - 30:9, 32:22, 35:9
**parties** [1] - 5:22
**party** [3] - 3:18, 5:24, 24:18
**passed** [1] - 36:8
**past** [3] - 11:5, 11:17, 32:24
**pattern** [1] - 34:24
**pause** [1] - 32:17
**Pennsylvania** [1] - 1:19
**people** [6] - 21:17, 21:24, 24:14, 30:11, 35:2, 36:11
**perhaps** [2] - 28:20, 28:25
**period** [2] - 33:2, 35:12
**person** [1] - 22:11
**personal** [1] - 7:3
**personally** [1] - 37:3
**perspective** [1] - 14:25
**pet** [1] - 8:18
**phase** [1] - 9:16
**phrase** [1] - 17:20
**pick** [3] - 24:13, 24:16
**Pike** [1] - 1:15
**placed** [1] - 33:6
**plaintiff** [4] - 3:6, 17:2, 29:4, 33:21
**plaintiffs** [9] - 5:11, 6:1, 6:9, 6:11, 7:6, 15:18, 16:15, 17:5, 31:6
**Plaintiffs** [2] - 1:4, 1:14
**plaintiffs'** [1] - 19:20
**plead** [2] - 9:12, 9:21
**pleadings** [1] - 6:2
**plus** [1] - 21:22
**podium** [2] - 3:4, 3:25
**point** [11] - 7:12, 8:1, 8:21, 9:7, 9:18, 16:24, 31:14, 34:23, 35:16, 36:11, 36:12
**pointed** [1] - 15:18
**points** [5] - 5:12, 9:10, 14:13
**policy** [1] - 25:11
**position** [5] - 4:14, 4:24, 6:16, 8:5, 14:19
**possess** [2] - 14:15, 19:2
**possibly** [2] - 7:4, 7:11
**potentially** [3] - 25:7, 25:25, 28:3
**precise** [1] - 13:6
**President** [7] - 33:15, 33:21, 34:19, 34:25,
35:9, 35:13, 35:22
**Press** [1] - 19:3
**PRESTON** [1] - 1:23
**previous** [3] - 13:25, 29:13
**primary** [3] - 14:25, 16:12
**principal** [1] - 15:13
**privilege** [18] - 21:12, 21:13, 21:15, 21:16, 21:18, 21:25, 22:3, 22:6, 22:11, 22:17, 23:15, 23:18, 24:4, 25:8, 25:23, 27:5, 27:18, 29:4
**privileged** [11] - 22:3, 22:10, 25:6, 25:7, 25:17, 25:18, 25:25, 26:13, 27:9, 27:10, 27:14, 28:4, 28:19, 29:3, 29:24, 29:25, 30:13
**problem** [1] - 24:22
**problems** [3] - 15:22, 19:23, 22:14
**proceed** [1] - 4:9
**Proceedings** [1] - 2:12
**proceedings** [2] - 37:12, 37:18
**process** [13] - 11:23, 12:7, 12:13, 16:3, 19:23, 20:8, 29:21, 30:7, 32:4, 32:6, 32:7
**produce** [11] - 4:21, 7:20, 8:4, 12:1, 13:17, 13:21, 13:23, 27:3, 30:13, 33:6, 33:11
**produced** [13] - 2:12, 15:17, 16:1, 21:14, 26:12, 27:4, 27:8, 27:20, 28:22, 30:12, 32:20, 34:2, 34:5
**producing** [1] - 7:5
**product** [1] - 23:22
**production** [7] - 10:18, 14:11, 15:21, 25:3, 29:22, 29:23, 33:23
**productions** [1] - 33:8
**Professor** [1] - 33:15
**professor** [1] - 33:20
**program** [1] - 31:21
**projects** [1] - 8:18
**promise** [1] - 17:22
**proper** [1] - 5:4
**properly** [1] - 16:25
**proposed** [1] - 15:23
**propound** [1] - 6:10
**Protection** [2] - 5:15, 5:20
**protection** [1] - 5:17
**provide** [2] - 19:7, 19:9
**provided** [2] - 23:16, 29:15
**provides** [1] - 24:2
**provisions** [1] - 5:17
**PUAR** [1] - 1:8
**Puar** [2] - 3:17, 6:14
**pull** [1] - 12:23
**purportedly** [1] - 25:21
**purposes** [1] - 31:12
**put** [8] - 11:23, 12:22, 15:3, 19:24, 30:6, 30:7, 30:10, 32:19
**putting** [2] - 8:16, 20:10

## Q

**quarter** [1] - 32:23
**questions** [1] - 30:17
**quick** [2] - 5:12, 18:7
**quickly** [1] - 24:25
**quirks** [1] - 37:1
**quite** [1] - 9:17
**quote** [2] - 5:5, 16:23
**quote-unquote** [1] - 16:23

## R

**raised** [7] - 17:10, 17:11, 17:18, 17:20, 22:21, 31:13, 36:3
**rather** [1] - 33:21
**read** [1] - 8:10
**realized** [1] - 25:12
**really** [6] - 5:8, 5:14, 7:21, 8:1, 8:3, 33:3
**realm** [1] - 19:4
**reason** [6] - 6:7, 14:17, 23:19, 25:25, 29:3, 33:22
**receive** [1] - 25:20
**received** [9] - 11:2, 11:16, 12:2, 21:13, 25:3, 25:15, 25:22, 25:24, 28:6
**recent** [1] - 15:6
**recently** [1] - 6:20
**recognized** [1] - 15:23
**recognizing** [1] - 19:24
**record** [2] - 3:5, 27:25
**recorded** [1] - 2:12

**recounting** [1] - 20:3
**Reddy** [3] - 3:10, 34:3, 34:13
**REDDY** [1] - 1:7
**refer** [1] - 37:4
**reference** [1] - 28:21
**referring** [1] - 27:16
**refuse** [1] - 7:19
**regard** [3] - 18:20, 33:14, 34:4
**rejected** [1] - 7:25
**related** [2] - 11:7, 11:12
**relating** [1] - 34:22
**relationships** [1] - 22:16
**relevant** [2] - 33:9, 33:19
**remaining** [1] - 22:1
**remedied** [1] - 28:23
**report** [7] - 12:9, 12:10, 13:1, 22:3, 29:10, 29:14
**reporter** [1] - 29:16
**Reporter** [3] - 2:8, 2:9, 37:20
**REPORTER** [1] - 37:14
**reports** [2] - 13:1, 25:10
**represented** [1] - 10:15
**representing** [1] - 3:22
**request** [1] - 14:10
**requested** [2] - 7:14, 14:12
**requests** [5] - 10:18, 10:19, 10:20, 10:21, 25:13
**requirement** [1] - 8:8
**resolution** [2] - 14:15, 15:24
**resolve** [3] - 15:12, 18:5, 36:18
**resolved** [1] - 6:18
**resolving** [1] - 15:20
**respect** [14] - 4:5, 4:6, 4:10, 7:12, 9:9, 9:20, 10:10, 22:14, 26:11, 31:13, 32:12, 33:3, 33:25, 34:12
**respond** [8] - 14:3, 14:5, 17:5, 24:10, 24:21, 34:10, 35:23, 36:14
**responded** [1] - 11:16
**response** [6] - 11:3, 18:25, 19:8, 22:18, 22:19, 33:12

**responses** [3] - 19:12, 19:14, 19:15
**responsibilities** [2] - 8:10, 8:13
**responsive** [7] - 27:4, 27:19, 29:13, 29:15, 30:13, 32:1, 35:21
**responsiveness** [2] - 29:11, 29:21
**rest** [1] - 22:14
**restricted** [2] - 12:22, 13:5
**restrictions** [1] - 33:7
**restrictive** [1] - 12:13
**review** [6] - 15:24, 20:18, 20:23, 27:12, 27:13, 30:12
**reviewed** [5] - 21:8, 21:15, 26:23, 29:2, 30:12
**reviewing** [2] - 30:8, 30:11
**right-hand** [1] - 23:19
**RIGHTS** [2] - 1:19, 2:5
**Rights** [1] - 3:21
**ripe** [1] - 17:21
**rise** [1] - 37:10
**ROCKLAND** [1] - 1:2
**room** [1] - 15:7
**Room** [2] - 2:9, 37:21
**round** [4] - 15:6, 17:4, 17:18, 20:19
**routine** [1] - 34:24
**RPR** [3] - 2:8, 37:15, 37:20
**RUDOLPH** [1] - 1:12
**Rule** [3] - 6:17, 23:16, 23:24
**rule** [1] - 10:5
**run** [1] - 29:14

## S

**SALAITA** [1] - 1:8
**Salaita** [2] - 3:22, 7:3
**sampling** [1] - 24:8
**saw** [2] - 12:24, 21:16
**schedule** [2] - 6:21, 19:5
**scheduling** [5] - 36:5, 36:7, 36:8, 36:9, 36:13
**scope** [2] - 8:9, 8:12
**seal** [1] - 24:12
**SEAMAN** [40] - 3:9, 9:6, 14:8, 16:9, 16:11, 16:20, 17:11, 18:20, 19:1, 19:9, 19:17, 20:6, 20:17, 20:22, 21:3, 21:7,

22:25, 23:5, 23:7, 23:9, 23:11, 23:14, 23:18, 24:2, 24:6, 26:22, 27:1, 27:6, 27:21, 28:15, 30:3, 30:5, 31:2, 31:4, 31:8, 33:14, 34:2, 34:15, 36:20, 37:7
**seaman** [1] - 29:8
**Seaman** [2] - 1:22, 3:9
**search** [28] - 11:22, 11:25, 12:1, 12:2, 12:11, 12:25, 13:2, 13:5, 13:7, 13:8, 13:14, 13:15, 20:1, 20:2, 20:5, 20:9, 20:15, 26:11, 28:23, 29:14, 31:22, 31:23, 32:3, 32:5, 32:19
**searched** [1] - 32:11
**searches** [2] - 12:22, 32:15
**searching** [1] - 12:20
**second** [7] - 10:14, 10:17, 11:9, 11:19, 14:10, 16:14, 35:6
**secret** [1] - 15:7
**see** [3] - 8:10, 27:13, 32:16
**seeing** [1] - 13:1
**seem** [2] - 22:10, 22:12
**sends** [1] - 30:18
**sense** [1] - 35:11
**sent** [5] - 4:3, 22:6, 22:19, 23:2, 30:20
**separate** [1] - 5:16
**serial** [1] - 14:9
**series** [1] - 4:4
**served** [5] - 7:16, 10:13, 10:17, 10:21, 11:14
**set** [26] - 5:23, 6:5, 9:8, 10:17, 10:19, 10:21, 11:22, 13:8, 13:10, 13:13, 13:15, 13:25, 18:21, 20:15, 25:20, 28:1, 28:8, 28:9, 29:14, 31:16, 31:22, 31:23, 32:2, 32:3, 32:5
**sets** [1] - 31:20
**several** [2] - 16:11, 18:22
**shape** [1] - 22:20
**short** [2] - 10:19, 35:19
**shorthand** [1] - 2:12
**shortly** [1] - 15:19
**show** [1] - 13:7

**showing** [1] - 10:6
**shows** [1] - 35:20
**side** [7] - 9:21, 12:4, 13:21, 14:17, 14:18, 36:4, 36:17
**sides** [1] - 9:23
**signed** [1] - 6:19
**silly** [1] - 8:24
**similar** [1] - 34:1
**Simon** [1] - 3:2
**SIMON** [1] - 1:2
**simple** [2] - 4:15, 8:19
**simply** [2] - 7:19, 8:16
**simultaneous** [1] - 10:1
**situation** [1] - 28:24
**six** [1] - 13:20
**slightly** [1] - 11:19
**slow** [1] - 29:16
**solid** [1] - 34:21
**someday** [1] - 7:22
**someone** [1] - 22:6
**somewhat** [1] - 35:17
**sooner** [1] - 18:13
**sorry** [2] - 29:18, 36:22
**sort** [6] - 10:6, 14:23, 26:1, 26:10, 27:7, 34:4
**sounds** [1] - 4:13
**Southern** [1] - 5:5
**specific** [3] - 23:1, 34:15, 35:19
**specifies** [1] - 22:15
**spend** [1] - 8:18
**spending** [1] - 35:7
**Spring** [1] - 1:16
**staff** [1] - 30:23
**standards** [1] - 5:4
**stands** [1] - 37:11
**Stanford** [1] - 2:3
**start** [2] - 12:13, 32:7
**started** [1] - 8:22
**state** [1] - 9:18
**states** [1] - 29:10
**STATES** [2] - 1:1, 1:12
**States** [1] - 37:21
**STATUS** [1] - 1:11
**statute** [6] - 5:16, 8:7, 9:9, 9:18, 9:20, 16:7
**stay** [19] - 4:3, 4:17, 4:25, 6:17, 7:16, 7:17, 7:18, 7:22, 10:2, 10:22, 10:24, 11:12, 11:17, 13:16, 13:24, 15:19, 18:3, 18:4, 18:10
**stayed** [2] - 11:6, 14:21

**stenographic** [1] - 37:17
**step** [2] - 17:15, 30:7
**STEPHENS** [1] - 1:8
**Stephens** [3] - 3:10, 34:3, 34:13
**STEVEN** [1] - 1:8
**Steven** [1] - 3:22
**still** [6] - 7:25, 8:23, 13:20, 27:13, 27:17, 28:4
**stipulate** [1] - 7:6
**stood** [1] - 30:19
**stop** [1] - 33:23
**stopped** [2] - 33:20, 34:7
**stopping** [1] - 8:24
**straight** [1] - 6:13
**strictly** [1] - 6:8
**string** [3] - 12:21, 12:22, 23:20
**strongly** [1] - 15:2
**STUDIES** [1] - 1:9
**stuff** [2] - 25:12, 27:10
**subject** [6] - 7:2, 15:16, 16:13, 16:22, 17:13, 19:18
**submit** [1] - 24:7
**subsets** [1] - 28:3
**suddenly** [1] - 35:8
**sufficient** [1] - 24:2
**suggest** [1] - 8:6
**suggested** [1] - 30:21
**suggesting** [1] - 6:10
**suit** [1] - 5:15
**Suite** [3] - 1:16, 1:20, 1:24
**summarize** [1] - 19:22
**SUNAINA** [1] - 1:7
**supposed** [1] - 12:6
**surprised** [1] - 15:15
**survived** [1] - 11:11
**suspect** [1] - 30:8

## T

**TADIAR** [1] - 1:7
**Tadiar** [1] - 3:10
**TAR** [20] - 11:23, 12:5, 12:7, 16:2, 19:18, 19:22, 19:23, 20:8, 29:21, 29:24, 30:7, 30:10, 31:16, 31:19, 31:21, 31:24, 31:25, 32:1, 32:4, 32:20
**TAYLOR** [1] - 1:23
**team** [2] - 20:17, 21:7
**teed** [1] - 18:19
**temporary** [1] - 20:18
**ten** [1] - 21:1

44

**term** [1] - 29:14
**terms** [30] - 11:22,
11:25, 12:1, 12:2,
12:11, 12:12, 12:16,
12:21, 13:1, 13:2,
13:6, 13:8, 13:14,
13:15, 16:1, 20:1,
20:2, 20:5, 20:6,
20:7, 20:9, 20:15,
20:16, 28:23, 31:22,
31:23, 32:3, 32:5
**THE** [77] - 1:1, 1:1,
1:8, 1:12, 3:2, 3:8,
3:14, 3:18, 3:23, 4:1,
4:12, 4:16, 4:18,
4:21, 6:24, 7:10,
8:25, 9:3, 10:1, 14:2,
14:5, 16:6, 16:10,
16:18, 17:9, 17:16,
17:25, 18:3, 18:8,
18:11, 18:13, 18:16,
18:23, 19:7, 19:15,
20:3, 20:12, 20:21,
21:5, 21:9, 22:24,
23:4, 23:6, 23:25,
24:5, 24:7, 24:16,
24:21, 25:1, 26:16,
26:19, 26:21, 26:25,
27:2, 27:15, 27:23,
28:11, 28:13, 29:6,
29:16, 30:4, 31:1,
31:3, 31:7, 31:9,
33:13, 33:25, 34:9,
34:11, 34:17, 35:16,
35:25, 36:10, 36:16,
36:22, 37:9, 37:10
**theirs** [2] - 14:14, 16:8
**therefore** [1] - 8:3
**they've** [2] - 14:11,
26:11
**third** [4] - 5:22, 21:10,
21:12, 24:18
**Thomas** [1] - 1:22
**thousand** [2] - 18:22,
21:1
**three** [8] - 7:24, 15:11,
19:12, 19:14, 19:16,
21:8, 27:3, 34:12
**timing** [1] - 32:11
**Timothy** [1] - 2:8
**TIMOTHY** [1] - 37:15
**today** [5] - 3:12, 10:3,
10:16, 36:1, 36:18
**Tom** [1] - 3:12
**took** [1] - 13:3
**total** [1] - 29:24
**totally** [1] - 7:23
**towards** [1] - 16:21
**train** [1] - 8:24
**TRANSCRIPT** [1] -

1:11
**transcript** [3] - 2:12,
37:17, 37:18
**transcription** [1] -
2:12
**true** [5] - 14:16, 15:18,
16:5, 37:16, 37:17
**trust** [2] - 32:24, 35:6
**try** [1] - 28:7
**turn** [2] - 35:10, 35:13
**turned** [1] - 20:5
**turns** [1] - 12:10
**two** [9] - 5:18, 8:22,
9:10, 15:11, 18:18,
32:24, 33:3, 35:17,
36:23
**two-and-a-half** [1] -
8:22

## U

**U.S** [1] - 2:9
**under** [4] - 5:4, 7:25,
12:16, 24:11
**underlined** [1] - 29:20
**underlying** [2] - 9:14,
9:22
**understood** [1] - 25:4
**unfounded** [1] - 5:6
**unique** [1] - 5:18
**United** [1] - 37:21
**UNITED** [2] - 1:1, 1:12
**universe** [1] - 32:14
**University** [1] - 19:3
**unlike** [1] - 5:19
**unquote** [1] - 16:23
**up** [12] - 5:24, 6:5,
6:13, 10:22, 10:23,
12:23, 17:4, 18:19,
25:8, 26:11, 30:19,
32:18

## V

**various** [1] - 14:13
**Venice** [1] - 2:3
**versed** [1] - 35:18
**version** [2] - 16:17,
20:9
**victim** [1] - 16:23
**view** [7] - 14:24, 15:2,
15:10, 16:15, 17:7,
20:9, 23:15
**violation** [1] - 8:20
**vitiates** [1] - 24:18
**volume** [2] - 12:22,
34:5
**Volunteer** [2] - 5:15,
5:20
**volunteer** [3] - 5:17,

5:21, 9:19
**voted** [2] - 14:13,
14:14
**VPA** [2] - 5:25, 6:5

## W

**Wait** [1] - 12:25
**waive** [1] - 7:4
**wants** [4] - 4:9, 5:2,
14:22, 16:4
**Washington** [4] - 1:4,
1:20, 2:10, 37:22
**Wednesday** [1] - 1:4
**week** [1] - 19:5
**weeks** [6] - 13:3,
19:12, 19:14, 19:16,
21:8, 27:3
**welcome** [2] - 3:18,
3:23
**well-fashioned** [2] -
17:21, 17:23
**WHITEFORD** [1] -
1:23
**whole** [1] - 8:2
**wild** [2] - 12:15, 12:19
**willing** [1] - 36:4
**Wisconsin** [1] - 1:23
**wishes** [1] - 4:11
**withheld** [4] - 25:5,
25:7, 25:24, 26:3
**words** [3] - 5:22, 26:1,
27:9
**worst** [1] - 24:8
**worth** [1] - 17:2

## Y

**year** [1] - 32:19
**years** [3] - 8:22, 32:25,
35:1
**York** [2] - 2:7, 5:6
**yourselves** [1] - 3:5