**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIMON BRONNER, MICHAEL ROCKLAND, CHARLES D. KUPFER, and MICHAEL L. BARTON, <br><br>       Plaintiffs, <br><br> v. <br><br> LISA DUGGAN, CURTIS MAREZ, NEFERTI TADIAR, SUNAINA MAIRA, CHANDAN REDDY, J. KEHAULANI KAUANUI, JASBIR PUAR, STEVEN SALAITA, JOHN STEPHENS, and THE AMERICAN STUDIES ASSOCIATION, <br><br>       Defendants. | Case No. 1:16-cv-00740-RC |

**DEFENDANT STEVEN SALAITA'S REPLY**
**IN SUPPORT OF HIS MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## INTRODUCTION

In an attempt to overcome the dearth of allegations against Dr. Salaita in their Second Amended Complaint (SAC), Plaintiffs attempt to tarnish him with accusations outside of the four corners of the complaint, while not addressing Dr. Salaita's legal arguments that their case against him must be dismissed.  Unable to explain why they sued Dr. Salaita, especially when they did not sue dozens of other National Council members who were also serving when the Bylaws were amended and funds were allegedly withdrawn, Plaintiffs are reduced to arguing that they could amend their Second Amended Complaint to allege that Dr. Salaita conspired with other Defendants by advocating for a Resolution before he ever joined the National Council. Plaintiffs have unabashedly come full circle to their original allegation against Dr. Salaita before he was ever a Defendant—that he is "a vociferous advocate of a boycott of Israel." Pls.' Am. Compl., June 23, 2016, ECF No. 19, at ¶ 74.ii.  Advocacy for peaceful political boycotts, however, is protected by the First Amendment.  Suing Dr. Salaita for that advocacy before he owed any duty to anyone would not merely be an incidental infringement on his constitutional rights, but a direct and targeted attack.

## ARGUMENT

This Court lacks personal jurisdiction over Dr. Salaita, and subject matter jurisdiction over Plaintiffs' claims.  Plaintiffs' SAC against Dr. Salaita should be dismissed with prejudice for failing to state a claim upon which relief can be granted, as amendment would be futile.

## I.   PLAINTIFFS DO NOT REBUT DR. SALAITA'S ARGUMENT THAT THEY HAVE FAILED TO ESTABLISH PERSONAL JURISDICTION.

Plaintiffs do not and cannot point to any allegation in their SAC that Dr. Salaita had any contact with the District of Columbia, nor do they even attempt to address Dr. Salaita's legal arguments that the Court does not have personal jurisdiction over him.  Plaintiffs acknowledge

that they were wrong about Dr. Salaita residing in D.C., but claim offense that Dr. Salaita stated that they "are aware" that he lives in Virginia, interpreting that as an accusation "that the SAC intentionally misstated" his residence as D.C. "in order to ascertain jurisdiction." Pls.' Opp'n to Mots. to Dismiss the SAC Filed by Defs. Kauanui, Puar, and Salaita ("Pls.' Opp'n"), ECF No. 113, at 8. Plaintiffs protest too much, as Dr. Salaita made no such accusation. Mem. of Law in Supp. of Def. Steven Salaita's Mot. to Dismiss Pls.' SAC, ECF No. 108, at 4.

To defend their false allegation, Plaintiffs rely on internet posts stating that Dr. Salaita was moving to "the D.C. area" to support their allegation that he lived in D.C. Pls.' Opp'n at 9. Plaintiffs are presumably well aware that "the D.C. area" does not mean "in D.C." In fact, "the D.C. area" commonly means *outside* the District of Columbia. Otherwise one would simply say "D.C.," not "the D.C. area."

Having made no allegation in the SAC that supports personal jurisdiction, Plaintiffs instead include in their brief a host of supposedly-quoted accusations against Dr. Salaita that they do not attribute to any source. Pls.' Opp'n at 11. Most of these uncited quotes come from this Court's Opinion on the Motion to Dismiss the First Amended Complaint, which did not even name Dr. Salaita as a Defendant. *See Bronner v. Duggan,* 249 F. Supp. 3d 27, 40 (D.D.C. 2017). Only one of those quoted allegations is actually made against Dr. Salaita in the SAC—that he was an officer of the ASA (albeit not when the Resolution was passed). To support their accusation in their brief (not in their SAC) that Dr. Salaita "led the effort" to adopt the Resolution "with the intent to alter the nature and purpose of the ASA," Pls.' Opp'n at 11 (again, quoting but not citing this Court's prior Opinion), Plaintiffs rely on an allegation regarding an opinion piece by Dr. Salaita that stated that "he worked with USACBI for around five years— closely during the process to pass" the ASA Resolution. SAC, ECF No. 81, at ¶ 46. That

statement hardly amounts to an allegation that Dr. Salaita "led" the Resolution effort "with the intent to alter the nature and purpose of the ASA"—these "facts" are simply not alleged in Plaintiffs' SAC.

Plaintiffs use another uncited quote from this Court's Opinion to assert that Dr. Salaita "voluntarily participated in the 2013 annual meeting in the District of Columbia." Pls.' Opp'n at 11. But Plaintiffs make no such allegation in their SAC. Even worse, Plaintiffs state, again without any citation (much less to the SAC), that Dr. Salaita "spoke" at a discussion of the Resolution at the meeting and is "reported" to have said "'there is no other side'" Pls.' Opp'n at 11. Not only is this supposed (and immaterial) quote not alleged in the SAC, Plaintiffs cite no source for it inside or outside of the record. Regardless, Dr. Salaita was not a member of the National Council in 2013, and is not alleged to have engaged in any conduct in the District, much less a wrongful act that is the basis of Plaintiffs' claims against him.

Plaintiffs do not rebut Dr. Salaita's legal arguments that they have failed to establish personal jurisdiction over him, but rely entirely on this Court's prior decision in which Dr. Salaita was not yet a Defendant, ignoring that personal jurisdiction is, in fact, personal. Pls.' Opp'n at 10-12. This Court found that each of the *original* Defendants "allegedly took part in the purportedly injurious activities of the ASA in the District of Columbia." *Bronner,* 249 F. Supp. 3d at 40. Plaintiffs do not make that allegation against Dr. Salaita, nor could they. Since Plaintiffs have not and cannot allege Dr. Salaita engaged in any injurious activities in D.C., this Court lacks personal jurisdiction over him.

## II.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

### A)  No Claim Has Been Stated, Nor Can One Be Stated, Against Dr. Salaita.

The sum total of Plaintiffs' conclusory argument that they stated a claim against Dr. Salaita is the following:

> As for Defendant Salaita, he was serving on the National Council at the most critical time, for purposes of the ASA's financial health. The SAC alleges clear liability against him under Counts 1 and 2 for the period of time he was on the National Council. He is also liable for his participation in all of acts [sic] underlying Counts 3-9. Only Counts 1 and 2 require a fiduciary relationship.

Pls.' Opp'n at 18.

Counts 6, 7, and 8 were not even brought against Dr. Salaita, but only against the ASA. SAC ¶¶ 226-240.  All of the alleged conduct underlying Counts 3, 4, and 5 (*ultra vires* claims) occurred before Dr. Salaita became a member of the ASA National Council in July 2015, so they must be dismissed for failing to state a claim against him. SAC ¶¶ 198-225.  Moreover, the D.C. Code does not permit members to bring direct (as opposed to derivative) *ultra vires* claims against individual directors. D.C. Code § 29-403.04(b).  Plaintiffs cite no authority to the contrary, and even seem to acknowledge that is the case. Pls.' Opp'n to Defs.' and ASA Mot. to Dismiss ("Pls.' ASA Opp'n"), ECF No. 114, at 13, citing D.C. Code § 29-403.04(b)(1).  Finally, Plaintiffs have not and could not bring an *ultra vires* claim for amendment of the Bylaws or for expenditure of funds, for as they acknowledge, the "only issue is whether Plaintiffs have identified a bylaw that was violated by Defendants." Pls.' ASA Opp'n at 24.  Plaintiffs have not done so, as explained *infra*. *See* Salaita's Mem. of Law, ECF No. 108, at 9-10 (citing Const. & Bylaws of the Am. Studies Ass'n, Bylaws, Art. XIII § 1).

As Plaintiffs recognize, Counts 1 and 2 require a fiduciary relationship that Dr. Salaita did not have before he was on the National Council.  Pls.' Opp'n at 18 ("[d]efects in the

complaint with respect to when Defendant Salaita (or Defendants Kauanui and Puar) were sworn into office are easily resolve [sic] by a new amended complaint").  Plaintiffs' only allegations against Dr. Salaita are that the Bylaws were amended (Count 1) and funds were withdrawn (Count 2) to defend against litigation while he was on the National Council.  SAC ¶ 26. Plaintiffs do not dispute that membership approval was not required to amend the Bylaws (pursuant to Art. XIII § 1 of the Bylaws), as opposed to amendment of the ASA Constitution, which did require membership approval (pursuant to Art. VIII § 4 of the Constitution). *See* Salaita's Mem. of Law, ECF No. 108, at 10.  In fact, Plaintiffs concede that until March 2016, the Bylaws were separate from the ASA Constitution. Pls.' ASA Opp'n at 20.  Alleging that notification to the membership prior to its vote on amendment of the Bylaws was inadequate therefore fails to state a claim that the Bylaws were violated, or for breach of fiduciary duty.

Count 2, and Count 9 for Waste, are for expenditures incurred by the ASA, which during Dr. Salaita's term on the National Council were only alleged to have been for the ASA's legal fees. *See* Salaita's Mem. of Law, ECF No. 108, at 10-12; SAC ¶¶ 182-183, 185, 187-190. Plaintiffs feebly attempt to argue otherwise by stating that the SAC alleges not just legal costs, "but other types of costs," but does not identify what those costs are or cite to the SAC, and does not explain how any other costs might relate to anything Dr. Salaita is alleged to have done. Pls.' Opp'n at 13.  For example, any insurance purchase was approved by the Executive Committee, which Dr. Salaita was not on. SAC ¶ 185.  Even if a waste claim can be brought directly instead of derivatively on behalf of the corporation, it cannot be sustained if "any reasonable person would find that the corporation's decision made sense." *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 730 (D.C. 2011).  A reasonable person could certainly find that a board member's decision to defend an organization against litigation makes sense.

To their credit, Plaintiffs do not make a legal argument that they can bring a case against Dr. Salaita for allegedly defending the ASA against a case that they themselves brought.  They do, however, claim that Dr. Salaita should be held responsible for defending the ASA against other unspecified lawsuits. Pls.' Opp'n at 13-14.   But the only relevant allegation states that "Defendants charged legal fees related to 'numerous lawsuits' on an American Express card, and carried the balance on the card, potentially for years, until they began withdrawing from the Trust Fund in fiscal year 2015." SAC ¶ 170.  Dr. Salaita's National Council term began in July 2015, so he can hardly be responsible for any legal fees that were allegedly incurred and charged on a credit card "potentially [] years" prior to his tenure. Even if there were other legal costs incurred, board members cannot be held liable for defending potentially baseless suits, and in fact have a duty to defend their organization. *See* Salaita's Mem. of Law, ECF No. 108, at 11. Moreover, Plaintiffs have not alleged that Dr. Salaita was personally involved in any decision to withdraw funds.  Plaintiffs' SAC should be dismissed against Dr. Salaita for failing to state a claim against him.

**B)  Dr. Salaita is Immunized from Liability for Plaintiffs' Claims.**

The Volunteer Protection Act (VPA) immunizes Dr. Salaita for any alleged acts or omissions taken on behalf of the ASA while he was a volunteer member of the National Council from July 2015-June 2018, and that were within the scope of his responsibilities.  Plaintiffs cite no allegation in the SAC that Dr. Salaita engaged in the kind of misconduct that would exempt him from the VPA's immunity.  Instead, they cite this Court's Opinion that details numerous SAC allegations, only one of which could possibly apply to Dr. Salaita—that Defendants allegedly misappropriated ASA funds to hire attorneys and retain a "rapid response" media team to defend against a backlash that they knew would come. Pls.' Opp'n at 2-3, citing *Bronner v.*

*Duggan*, 317 F. Supp. 3d 284, 293-94 (D.D.C. 2018), citing SAC ¶¶ 170-1, 185-9.  The "rapid response" media team, however, was retained prior to July 2015 when Dr. Salaita joined the National Council. SAC ¶ 182.  The hiring of attorneys to defend the ASA, already addressed *supra* at 5-6*,* hardly constitutes an allegation of "willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer." 42 U.S.C. § 14503(a).  Dr. Salaita is immune under the VPA.

Dr. Salaita is also immunized from liability for Plaintiffs' claims under the D.C. Code, pursuant to which nonprofit directors shall not be liable for "damages for any action taken, or any failure to take any action" except for, in relevant part, an "intentional infliction of harm." D.C. Code § 29-406.31(d).[1]  Plaintiffs did not and cannot in good faith allege that Dr. Salaita intentionally inflicted harm on the ASA or its members by being a volunteer National Council member when the Bylaws were amended and funds were withdrawn to defend the ASA from legal attack, acts that would have been taken in his capacity as a National Council member.

This Court's finding that Plaintiffs had plausibly alleged that the "Individual Defendants acted with an intent to harm the ASA" in its decision confirming subject matter jurisdiction is not to the contrary. *Bronner*, 317 F. Supp. 3d at 293.  As argued above, the SAC does not allege that

---

[1] This Court "has a continuing duty to examine its jurisdiction," and must consider arguments implicating the Court's subject matter jurisdiction. *See Bronner*, 317 F. Supp. at 288-90 (noting that a finding that Plaintiffs cannot collect damages from Individual Defendants if they are exempt from liability under D.C. Code § 29-406.3 "would necessarily mean that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332"); 16AA CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. JURIS. § 3974.3 (4th ed. 2008) ("an argument going to the court's subject-matter jurisdiction must be considered no matter when it is raised"); *Elmore v. Wash. Metro. Area Transit Auth.*, No. 14-cv-00915 (APM), 2016 WL 10789354 (D.D.C. July 29, 2016), at *2 (considering, despite being raised for the first time in a reply brief, defendant's argument that the district court lacked subject matter jurisdiction because "a challenge to the court's subject matter jurisdiction cannot be waived.") (citing *Gardner v. United States*, 211 F.3d 1305, 1310 (D.C. Cir. 2000)).

Dr. Salaita, who was not a party to the subject matter jurisdiction briefing, acted with any intent to harm, and certainly does not make any specific factual allegations that would support such a conclusory allegation.  Dr. Salaita is not even alleged to have been personally involved in amending the Bylaws or withdrawing funds, much less doing so with an intent to harm the ASA.

This Court's prior findings should not bind Dr. Salaita, as he was not a party to this case when briefing was ordered, and he was served while there was a stay in place, just a few days before Defendants' brief was due.[2] *See, e.g., Hoffman v. District of Columbia*, 730 F. Supp. 2d 109, 116 (D.D.C. 2010) (citing *Taylor v. Sturgell*, 553 U.S. 880 (2008)) ("neither claim preclusion nor issue preclusion may be used against a party that was not a party to the prior proceeding or in privity with a party to the prior proceeding").  Under the VPA and D.C. Code § 29-406.31, Dr. Salaita cannot be liable for damages.

### C) Plaintiffs' Fiduciary Duty and Waste Claims Should Be Dismissed under the Business Judgment Rule.

Because Plaintiffs fail to point to any allegation in the SAC that rebuts the presumption that Defendant Salaita acted in good faith, rationally, and in the best interests of the ASA in defending it from litigation, their claims against him should be dismissed pursuant to the Business Judgment Rule, under which corporate directors' decisions will otherwise be respected. *See* Salaita's Mem. of Law, ECF No. 108, at 14.  Plaintiffs first assert that they "do allege that the ASA spent and [sic] exorbitant amount of money because on account [sic] of the

---

[2] When this Court granted Plaintiffs leave to file their SAC and add Defendants, it simultaneously stayed proceedings pending the Court's consideration of its subject matter jurisdiction.  Mem. Op., Mar. 6, 2018, ECF No. 80.  Dr. Salaita was served while the proceedings were stayed, just a few days before Defendants' subject matter jurisdiction brief was filed.  Return of Serv./Aff. of Summons & Compl. Executed, ECF No. 84; Defs.' Br. Regarding Subject Matter Jurisdiction, ECF 85.  This Court lifted the stay the same day it found it had subject matter jurisdiction "for now," Mem. Op., July 5, 2018, ECF No. 94, at 7.  Order, July 5, 2018, ECF No. 92.

Resolution." Pls.' Opp'n at 13. What the ASA spent is irrelevant to whether Plaintiffs alleged Dr. Salaita acted in bad faith. Plaintiffs further assert that they allege costs other than legal costs, which is likewise irrelevant, but regardless, they do not specify what those costs might be, or cite the SAC. The only allegation that Plaintiffs point to is SAC ¶ 170, alleging legal costs from cases other than this one, but again, that allegation relates to costs incurred prior to Dr. Salaita serving on the National Council.

Although Plaintiffs argue that "the SAC clearly alleges bad faith," Pls.' Opp'n at 15, they fail to cite any specific supporting allegations in the SAC for that proposition. Plaintiffs do not and cannot plausibly allege that Dr. Salaita acted in bad faith. Plaintiffs again rely on this Court's prior opinion, Pls.' Opp'n at 15, citing *Bronner*, 317 F. Supp. 3d at 293-94, to support its bad faith assertion, but as argued *supra*, Dr. Salaita was not a party to that briefing, and the SAC simply does not allege Dr. Salaita acted in bad faith. Plaintiffs' fiduciary duty and waste claims should be dismissed under the Business Judgment Rule.

### III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO ESTABLISH SUBJECT MATTER JURISDICTION.

Plaintiffs acknowledge that they are not bringing derivative claims on behalf of the ASA (Pls.' Opp'n at 12), but seem to argue that they can individually bring direct claims for injury to the ASA, bypassing all requirements for derivative lawsuits, without citing any authority for that proposition. Although the state court cases cited by Plaintiffs, *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723 (D.C. 2011) and *Jackson v. George,* 146 A.3d 405 (D.C. 2016) (Pls.' ASA Opp'n at 4), both permitted direct claims against a nonprofit corporation and others, neither case supports Plaintiffs' contention that those direct claims could be made for damages to the nonprofit corporation itself.

Plaintiffs argue that "[i]t cannot be that the court has no jurisdiction over such claims if the plaintiffs seek injunctive relief only." Pls' ASA Opp'n at 34.  But in order for this federal Court to exercise subject matter jurisdiction in a diversity case, the matter in controversy must exceed $75,000 per Plaintiff. 28 U.S.C. § 1332(a); *see also, Snyder v. Harris*, 394 U.S. 332, 335 (1969).  Plaintiffs have failed to allege specific injury to themselves individually (other than Count Eight, for denying the right to vote to Plaintiff Barton in 2013, prior to Dr. Salaita's time on the National Council, and against Defendant ASA only), much less damages exceeding $75,000 per Plaintiff.  Plaintiffs have not met their burden of establishing the amount in controversy, and this Court therefore lacks diversity subject matter jurisdiction.

## IV.     PLAINTIFFS' SECOND AMENDED COMPLAINT AGAINST DR. SALAITA SHOULD BE DISMISSED ON THE MERITS WITH PREJUDICE.

Because Plaintiffs have failed to allege any facts that could plausibly state a claim against Dr. Salaita and amending the SAC would be futile, this Court should dismiss the case with prejudice. *See Davis v. Dist. of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming dismissal of complaint with prejudice *sua sponte* where plaintiff could not state a claim for relief even if permitted to add proposed facts); *see also Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (dismissal with prejudice appropriate where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.") (internal quotation marks omitted).  Plaintiffs assert, again without citation, that Dr. Salaita "has acknowledged being a leader in the effort to pass the Resolution at the ASA." Pls.' Opp'n at 16. Plaintiffs refer elsewhere to the allegation regarding Dr. Salaita's op-ed, which stated that "he worked with USACBI for around five years—closely during the process to pass" the ASA Resolution. SAC ¶ 46.  That is not exactly acknowledgement of being a leader, but regardless, the ASA Resolution was passed long before Dr. Salaita became a National Council member.

Leave to file a third amended complaint should not be granted here given the futility of amendment, as well as Plaintiffs' bad faith. Out of dozens of similarly-situated National Council members, Plaintiffs targeted only Dr. Salaita to be a Defendant because of his advocacy for Palestinian rights. This harassing lawsuit must not be allowed to continue. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is warranted in circumstances such as "undue delay, bad faith . . . [or] futility of amendment"); *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam) (denying leave to amend complaint where complaint could not survive a motion to dismiss).

Plaintiffs assert that they could try to cure the defects in their SAC by adding claims for civil conspiracy and aiding and abetting, but such claims would be futile, in bad faith, and frivolous. Civil conspiracy, which is not an independent cause of action under D.C. law, *Wiggins v. Hitchens*, 853 F. Supp. 505, 513 (D.D.C. 1994), requires much more than conclusory allegations of a purported "conspiracy" between Dr. Salaita and other Defendants. *See, e.g., Bush v. Butler*, 521 F. Supp. 2d 63, 68-9 (D.D.C. 2007) (dismissing claim for civil conspiracy in part because plaintiff "merely concludes that there was an agreement among the defendants" without alleging facts regarding the persons involved, the nature of the agreement, the acts taken to form the conspiracy, or the overt acts taken in furtherance of the conspiracy).

Aiding and abetting has likewise not been recognized as an independent cause of action in the District of Columbia. *Lannan Found. v. Gingold*, 300 F. Supp. 3d 1, 29-30 (D.D.C. 2017). Even if it were, Plaintiffs do not allege—nor could they plausibly allege—that Dr. Salaita was aware that the other Defendants' actions constituted a breach of fiduciary duty, and, moreover, liability cannot be premised on a failure to prevent others from breaching those duties. *See Ehlen v. Lewis*, 984 F. Supp. 5, 10 (D.D.C. 1997) (knowledge that others' acts constitute breach of

fiduciary duty required for aiding and abetting liability); *Overseas Private Inv. Corp. v. Industria de Pesca, N.A., Inc.*, 920 F. Supp. 207, 210 (D.D.C. 1996) (failure to prevent breach of fiduciary duty does not constitute substantial assistance necessary for aiding and abetting liability).

Most significantly, though, the First Amendment protects any peaceful advocacy Dr. Salaita conducted, certainly prior to when he was on the National Council and owed any duty. *See, e.g., Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (finding that the First Amendment bars liability for state torts, including "civil conspiracy based on those torts," for peaceful picketing on a matter of public concern). Peaceful political boycotts constitute "expression on public issues" and therefore "rest[] on the highest rung of the hierarchy of First Amendment values." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (quoting *Carey v. Brown*, 447 U.S. 455, 467 (1980)); *see also, Koontz v. Watson*, 283 F. Supp. 3d 1007, 1022 (D. Kan. 2018) (boycott of Israel is protected by the First Amendment); *Jordahl v. Brnovich*, No. CV-17-08263-PCT-DJH, 2018 WL 4732493 (D. Ariz. Sept. 27, 2018), *appeal filed*, No. 18-16896 (9th Cir. Oct. 3, 2018), at *13 (a "restriction of one's ability to participate in collective calls to oppose Israel unquestionably burdens the protected expression of [those] wishing to engage in such a boycott").

The targeting of Dr. Salaita as a Defendant is clear from the face of the Complaint, and is not helped by Plaintiffs' offer to add a claim based purely on any political advocacy for the Resolution Dr. Salaita might have done when he was merely an ASA member. Unlike in *Bronner*, this Court would not simply be enforcing "obligations explicitly assumed by the parties." 249 F. Supp. 3d at 41. Since Dr. Salaita was not a National Council member at the time, he would not have had any contractual or fiduciary duty. Holding Dr. Salaita liable for civil conspiracy or aiding and abetting for his advocacy would constitute a direct government

infringement of his First Amendment rights, not just have an "incidental" effect on expression. *See, e.g., Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991).  Since amendment would be futile, Plaintiffs' SAC against Dr. Salaita should be dismissed with prejudice.

## CONCLUSION

Dr. Salaita respectfully requests that this Court dismiss Plaintiffs' Second Amended Complaint against him in its entirety, with prejudice, and seeks costs, attorneys' fees and any other relief the Court deems appropriate.

Dated: November 7, 2018                     Respectfully Submitted,

/s/ Maria C. LaHood
Maria C. LaHood (*pro hac vice*)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel.: (212) 614-6430
Fax: (212) 614-6422
mlahood@ccrjustice.org

/s/ Shayana Kadidal
Shayana Kadidal (D.C. Bar No. 454248)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel.: (212) 614-6438
Fax: (212) 614-6422
shanek@ccrjustice.org

*Attorneys for Defendant Steven Salaita*