# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SIMON BRONNER, *et al.*, | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-0740 (RC) |
| v. | : | Re Document Nos.: | 35, 40, 106, 107, 108, 109, 110, 111 |
| LISA DUGGAN, *et al.*, | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING DEFENDANTS' MOTIONS TO STAY

## I. INTRODUCTION

This diversity action concerns a controversial topic in American academia: The movement to boycott Israeli academic institutions. Plaintiffs are current and former members of the American Studies Association ("ASA"), a nonprofit, charitable corporation dedicated to promoting the study of American culture. They have sued ASA and several of its current and former leaders,[1] alleging that Defendants coopted an apolitical educational organization and, against its members' wishes, turned that organization into a mouthpiece of the Israel boycott movement. More specifically, Plaintiffs contend that Defendants acted unlawfully in securing the membership vote authorizing ASA to endorse the boycott, and that Defendants unlawfully expended ASA funds supporting the boycott. They seek damages, declaratory relief, and injunctive relief, some of that relief on behalf of ASA itself.

---

[1] The Individual Defendants are Lisa Duggan, Curtis Marez, Avery Gordon, Neferti Tadiar, Sunaina Maira, Chandan Reddy, Jasbir Puar, J. Kehaulani Kauanui, Steven Salaita, and John Stephens.

Currently before the Court are Defendants' motions to dismiss the action, along with other miscellaneous motions. Having reviewed the briefing, the Court concludes that Plaintiffs may have meritorious claims arising from their individual injuries as ASA members. However, the Court also concludes that Plaintiffs cannot seek relief for ASA's injuries, because ASA is not a plaintiff and Plaintiffs do not and cannot assert derivative claims on its behalf. Without that relief, Plaintiffs cannot meet the amount-in-controversy necessary to pursue their action in federal court. Accordingly, and for the reasons stated below, the Court will grant Defendants' motion to dismiss without prejudice.

## II. BACKGROUND[2]

### A. ASA

ASA is a nonprofit organization in service of "the promotion of the study of American culture through the encouragement of research, teaching, publication, the strengthening of relations among persons and institutions in this country and abroad devoted to such studies, and the broadening of knowledge among the general public about American culture in all its diversity and complexity." *See* ASA Const. & Bylaws, Art. I § 2, ECF No. 21-3. ASA's founding documents provide that it was "organized exclusively for education and academic purposes." Pls.' Sec. Am. Compl. ("SAC") ¶ 30, ECF No. 81. Its Statement of Election further states that "[n]o substantial part of [its] activities . . . shall be the carrying on of propaganda, or otherwise attempting, to influence legislation . . . ." ASA Statement of Election ¶ 3(4), ECF No. 21-5. Its priorities and general direction are dictated by its "National Council"; essentially its board of

---

[2] Three prior Memorandum Opinions in this action contain additional details regarding ASA, the resolution at issue, and this case's procedural history. *See Bronner v. Duggan ("Bronner III")*, 317 F. Supp. 3d 284 (D.D.C. 2018); *Bronner v. Duggan ("Bronner II")*, 324 F.R.D. 285 (D.D.C. 2018); *Bronner v. Duggan ("Bronner I")*, 249 F. Supp. 3d 27 (D.D.C. 2017).

directors. Officially, the National Council is charged with "conduct[ing] the business, set[ting] fiscal policy, and oversee[ing] the general interests of the [ASA]." ASA Const. & Bylaws, Art. V § 2.

ASA was incorporated in the District of Columbia as a private, nonprofit corporation governed by District of Columbia law. SAC ¶ 17. Moreover, the Internal Revenue Service has designated ASA as a tax-exempt, charitable organization under the Internal Revenue Code, 26 U.S.C. § 501(c)(3). *Id*. Because ASA is exempt from taxation under § 501(c)(3), it is considered to be a "charitable corporation" under the District of Columbia statutory framework governing nonprofit corporations. D.C. Code § 29-401.02(3), (4).

### B. ASA's Boycott Resolution

Plaintiffs contend that beginning in 2012, the Individual Defendants launched a scheme to co-opt ASA's National Council and key ASA committees, with the purpose of causing ASA to officially endorse a boycott of Israeli academic institutions (the "Resolution"). *See* SAC ¶¶ 45, 47–77. First, the Individual Defendants allegedly caused only boycott supporters to be nominated for National Council elections—without disclosing their boycott support to ASA's general membership—to "pack" the National Council. *See id*. ¶¶ 53–54. Next, having secured the necessary decision-making power, the Individual Defendants made the Resolution's passage a priority for 2013. *See id*. ¶¶ 87–89. In furtherance of that goal, the Individual Defendants allegedly expended ASA resources and manpower promoting the boycott to ASA's general membership. *See id*. ¶¶ 82–101. According to Plaintiffs, the Individual Defendants also suppressed dissenting opinions and information unfavorable to the boycott, preventing such materials from being widely distributed to the membership. *See id*. ¶¶ 105–116. Then, around the time that ASA announced that a membership vote would be held on the Resolution, the

Individual Defendants allegedly froze ASA's membership rolls to prevent individuals adverse to the Resolution from paying their dues and voting against it. *See id*. ¶¶ 123–26. Finally, ASA allegedly conducted the Resolution vote in a manner violating ASA's bylaws and District of Columbia law. *See id*. ¶¶ 138–41. The Resolution passed. *Id*. ¶ 139.

Plaintiffs contend that once the Resolution passed, the Individual Defendants improperly diverted ASA's resources to defending and promoting it. For instance, they claim that the Individual Defendants "invade[d]" ASA's Trust and Development fund to pay for Resolution-related insurance, public relations and legal fees. *See id*. ¶¶ 162–171, 182–91. They also claim that ASA's revenues from donations and membership dues dropped precipitously after the Resolution, because the Resolution offended current and potential contributors and members. *See id*. ¶¶ 172–81. And they claim that to offset Resolution-related expenses, ASA raised membership dues from, at most, $120 to $275. *See id*. ¶ 185.

Plaintiffs assert several common law claims arising from the Individual Defendants' alleged scheme.[3] They claim that the Individual Defendants breached their fiduciary duties to ASA and its membership by (1) misrepresenting their intentions to the membership and failing to disclose the Resolution's costs; and (2) misappropriating ASA resources and manipulating ASA's voting processes for their own interests, at ASA's expense. *Id*. ¶¶ 192–97. They claim that Defendants acted *ultra vires* and breached their contract with ASA's members by (1) failing to nominate diverse candidates for National Council elections; (2) freezing ASA's membership rolls so that certain members, including Plaintiff Michael Barton, could not vote on the

---

[3] To the extent the Court considers the merits of these claims, it must apply District of Columbia law. *See A.I. Trade Fin. Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) ("A federal court sitting in diversity must apply state law to the substantive issues before it." (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938))).

4

Resolution; (3) improperly conducting and certifying the Resolution vote; and (4) devoting a "substantial part" of ASA's activities to attempting to influence United States and Israeli legislation, all in violation of ASA's bylaws, ASA's constitution, and potentially District of Columbia law. *Id*. ¶¶ 198–240. Finally, they claim that Defendants engaged in corporate waste by devoting ASA resources to supporting the Resolution. *Id*. ¶¶ 241–44. Plaintiffs seek damages, declaratory relief, and injunctive relief. *Id*. at 82.

### C. Relevant Procedural History

Plaintiffs filed suit in April 2016, *see* Compl., ECF No. 1, and amended their complaint for the first time in June 2016, *see* First Am. Compl. ("FAC"), ECF No. 19. That complaint asserted both direct claims based on Plaintiffs' individual injuries and derivative claims on behalf of ASA. *See generally id*. It also asserted—as does Plaintiffs' Second Amended Complaint—that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). FAC ¶ 9; SAC ¶ 11.

Shortly after Plaintiffs amended their complaint, Defendants first moved to dismiss the action.[4] They argued in part that (1) the Court lacked subject matter jurisdiction because Plaintiffs failed to satisfy the $75,000 amount-in-controversy required to maintain a diversity suit under 28 U.S.C. § 1332(a); and (2) Plaintiffs failed to meet the statutory requirements for bringing a derivative action. *See Bronner I*, 249 F. Supp. 3d at 36. Reviewing the complaint for the first time, the Court concluded that it was not legally impossible for Plaintiffs to receive a judgment of at least $75,000, and thus that the amount-in-controversy requirement was satisfied.

---

[4] At this stage of the litigation, Defendants were ASA, Curtis Marez, Avery Gordon, Neferti Tadiar, Sunaina Maira, Lisa Duggan, and Chandan Reddy (the "Original Defendants"). FAC ¶¶ 15–21. Defendants J. Kehaulani Kauanui, Jasbir Puar, Steven Salaita, and John Stephens were added in Plaintiffs' Second Amended Complaint. SAC ¶¶ 24–26.

*Id*. at 38. The Court also concluded, however, that Plaintiffs failed to satisfy the District of Columbia's procedural requirements for bringing a derivative action on ASA's behalf. *Id*. at 43 (citing D.C. Code § 29-411.03(2)). The Court thus dismissed Plaintiffs' derivative claims. *Id*. at 47.

In November 2017, Plaintiffs moved for leave to amend their complaint for a second time. *See generally* Pls.' Mot. Leave File Sec. Am. Compl., ECF No. 59. The Court granted this motion but sought supplemental briefing from the parties regarding whether the District of Columbia Nonprofit Corporations Act immunized the Individual Defendants from money damages. *Bronner II*, 324 F.R.D. at 294–95. The Court recognized that Plaintiffs' inability to collect money damages from the Individual Defendants would raise serious doubts regarding the Court's jurisdiction under 28 U.S.C. § 1332(a). *Id*. at 294.

The Court considered the parties' supplemental briefing and held that it could not conclude, at the pleadings stage, that District of Columbia law immunized the Individual Defendants from money damages. *Bronner III*, 317 F. Supp. 3d at 293–94. The Court declined, however, to address whether Plaintiffs' Second Amended Complaint otherwise satisfied 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. *See id*. at 289 n.2, 290 n.5. Instead, it encouraged Defendants to submit a "well-fashioned motion to dismiss" raising that question. *Id*. at 290 n.5.

That motion to dismiss has now been submitted. *See* Original Defs.' Mot. to Dismiss, ECF No. 106; Def. Steven Salaita's Mot. to Dismiss, ECF No. 108; Defs. J. Kehaulani Kauanui's & Jasbir Puar's Mot. to Dismiss, ECF No. 109. Defendants argue that Plaintiffs' action should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, *see* Original Defs.' Mot. at 1, and in the alternative that certain of Plaintiffs'

claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6), *see id*. at 14, 21–22.

Defendants have also asked the Court to stay discovery pending its consideration of their motions to dismiss. *See* Original Defs.' Mot. to Stay, ECF No. 107; Def. Steven Salaita's Mot. to Stay, ECF No. 110; Defs. J. Kehaulani Kauanui's & Jasbir Puar's Mot. to Stay, ECF No. 111.[5] Briefing on these motions has concluded, and they are ripe for the Court's consideration.

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "presents a threshold challenge to the Court's jurisdiction . . . ." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (quoting *Agrocomplect, AD v. Republic of Iraq*, 524 F. Supp. 2d 16, 21 (D.D.C. 2007)). In evaluating this challenge, a court must "presume[] that a cause lies outside [the federal courts'] limited jurisdiction" and place "the burden of establishing the contrary . . . upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936); *Turner v. Bank of N.A.*, 4 U.S. 8, 11 (1799)). The court must also accept "the allegations of the complaint as true," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), and "construe the complaint 'liberally,' granting the plaintiff 'the benefit of all inferences that can be derived from the facts alleged,'" *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir.1994)). However, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge*

---

[5] Also pending are Defendants' previously-filed Motion for Partial Judgment on the Pleadings, ECF No. 35, and Plaintiffs' motion for leave to file a sur-reply to that motion, ECF No. 40.

7

*of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (alterations in original) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1987)).

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties].'" *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133–34 (D.D.C. 2013) (alteration in original) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)).

### IV. ANALYSIS

As noted, Plaintiffs contend that this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). SAC ¶ 11. That statute provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between," among others, "citizens of different states." 28 U.S.C. § 1332(a). Defendants argue that the Court's previous holdings have made it legally impossible for Plaintiffs' claims to exceed the $75,000 amount-in-controversy required to

maintain this action under § 1332(a).[6] More specifically, Defendants argue that Plaintiffs cannot seek remedies arising from injuries to ASA, and that in the absence of those remedies the damages, declaratory relief, and injunctive relief that Plaintiffs seek cannot be valued at greater than $75,000. *See* Original Defs.' Mot. at 1. Defendants thus move to dismiss the action in its entirety for lack of jurisdiction. *See id*.

Federal courts are courts of limited jurisdiction. "They possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377. Therefore, Congress has the "prerogative to restrict the subject-matter jurisdiction of federal district courts" based on the types of claims brought by particular plaintiffs. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 n.11 (2006). Under this prerogative, Congress authorized federal district courts to hear cases meeting the amount-in-controversy and diversity requirements established by 28 U.S.C. § 1332(a).

In determining whether an action meets § 1332(a)'s jurisdictional requirements, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (citations omitted). Thus, for the Court to dismiss Plaintiffs' action for failure to satisfy § 1332(a)'s requirements, "[i]t must appear to a legal certainty that [Plaintiffs'] claim[s] [are] really for less than the jurisdictional amount." *Id.* at 289. This means that the Court should find jurisdiction at this motion-to-dismiss stage even if it has serious doubts as to the bases for establishing the amount-in-controversy. *See Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 14–15 (D.D.C. 2014) (concluding that it was not a "legal certainty" that the plaintiffs could not collect more than $75,000, though their "allegations [left] much to be desired"), *aff'd*, 639 F. App'x 3 (D.C. Cir. 2016). That said "[w]hile the 'legal certainty' test is an exacting one, the burden of establishing the amount in

---

[6] Defendants do not contest diversity of citizenship.

controversy . . . rests squarely with the litigant asserting jurisdiction." *Martin v. Gibson*, 723 F.2d 989, 991 (D.C. Cir. 1983) (quoting *King v. Morton*, 520 F.2d 1140, 1145 (D.C. Cir. 1975)).

Plaintiffs seek three categories of relief. First, Plaintiffs continue to seek damages on behalf of ASA. SAC at 82. Second, without explicitly stating so, Plaintiffs appear to seek damages arising from their own injuries. *Id.* ¶ 206. Third, Plaintiffs seek declaratory and injunctive relief. *Id.* at 82.

Plaintiffs assert that these requests for relief "clearly satisf[y] the $75,000 requirement." Pls.' Opp'n to Original Defs.' Mot. ("Pls.' Opp'n") at 37, ECF No. 114. They also protest that this Court has already thrice concluded that it has subject matter jurisdiction over this action. *Id.* at 1–2. That second point is, however, of little significance because the Court has an "ongoing obligation to ensure that 'it is acting within the scope of its jurisdictional authority.'" *Hardy v. N. Leasing Sys., Inc.*, 953 F. Supp. 2d 150, 155 (D.D.C. 2013) (quoting *Ha v. U.S. Dep't of Educ.*, 680 F. Supp. 2d 45, 46 (D.D.C. 2010)); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). The Court shall thus revisit its subject matter jurisdiction yet again.

As Plaintiffs note, the parties and the Court have danced around the key issue—Plaintiffs' ability to satisfy the amount-in-controversy required by § 1332(a)—for multiple rounds of briefing and opinions. *See Bronner III*, 317 F. Supp. 3d at 289; *Bronner I*, 249 F. Supp. 3d at 37–38. The waltz has now reached its crescendo, and Plaintiffs have been found wanting. As explained below, having evaluated the parties' arguments, the Court concludes that Plaintiffs lack standing to seek damages arising from ASA's alleged injuries. Although Plaintiffs may

10

seek damages arising from injuries they suffered directly, those damages do not approach $75,000. And Plaintiffs have failed to demonstrate that the value of the injunctive and declaratory relief they seek, combined with those damages, exceeds $75,000. Thus, because it appears to a legal certainty that Plaintiffs cannot meet 28 U.S.C. § 1332(a)'s requirements if they prevail, the Court must dismiss this action without prejudice for lack of subject matter jurisdiction.

### A. Plaintiffs May Not Seek Damages for ASA's Injuries

The parties' briefing raises a simple but crucial question: May Plaintiffs collect damages for ASA's injuries without bringing a derivative action? Basic constitutional, prudential, and state law concerns dictate that the answer is no.

The Constitution empowers the federal judiciary to adjudicate only cases or controversies. U.S. Const. art. III, § 2, cl. 1. The doctrine of Article III standing, which requires a plaintiff to allege that the defendant injured the plaintiff in a judicially redressable manner, enforces this limitation. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). To have Article III standing, the plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Arising from this basic principle is the well-established rule that "plaintiffs must demonstrate Article III standing by asserting their 'own legal rights and interests' rather than resting 'claim[s] to relief on the legal rights or interests of third parties.'" *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*, 784 F.3d 804, 814 (D.C. Cir. 2015) (quoting

*Warth v. Seldin,* 422 U.S. 490, 499 (1975)), *vacated and remanded on other grounds*, 137 S. Ct. 1312 (2017); *see also Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). This principle—labeled "third-party standing"—helps ensure that plaintiffs have "the appropriate incentive" to litigate, and that they assert their claims "with the necessary zeal and appropriate presentation." *Id*. at 129.[7] It may be relaxed only where "the party asserting the right has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id*. at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). This principle governs cases brought under District of Columbia and federal law alike. *See Riverside Hosp. v. D.C. Dep't of Health*, 944 A.2d 1098, 1104–06 (D.C. 2008) (stating that District of Columbia courts "adhere to the case and controversy requirement of Article III as well as

---

[7] Courts have in the past referred to this principle as a species of "prudential standing." *See, e.g.*, *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990); *Williams v. Lew*, 819 F.3d 466, 475 (D.C. Cir. 2016); *Hand v. Perez*, No. 14-0880, 2015 WL 3534162, at *5–6 (D.D.C. June 5, 2015). "Unlike Article III standing, the prudential standing doctrine involves 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Heyer v. Schwartz & Assocs. PLLC*, 319 F. Supp. 3d 299, 304 (D.D.C. 2018) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). The Supreme Court recently cast doubt on prudential standing, stating that a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates." *Lexmark*, 572 U.S. at 128. That said, the Court in *Lexmark* expressly reserved the question of whether third-party standing is a form of prudential standing or is bound up in Article III standing. *Id*. at 127 n.3. And although the D.C. Circuit has traditionally characterized third-party standing as "prudential," it has also indicated that third-party standing may be an Article III, rather than prudential, issue. *See United States v. TDC Mgmt. Corp.*, 827 F.3d 1127, 1133 (D.C. Cir. 2016) (declining to decide whether, after *Lexmark*, the limitations on third-party standing are prudential); *Helmerich*, 784 F.3d at 814; *Schum v. FCC*, 617 Fed. App'x 5, 6 (D.C. Cir. 2015) (per curiam). Fortunately, for purposes of this action, the Court need not enter the thicket of prudential versus Article III standing. In the absence of additional guidance from the Supreme Court, this Court will adhere to the simple principle that a plaintiff may not assert a third-party's rights outside of the narrow exceptions discussed *infra*. *See Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013) (noting that prudential standing is a threshold, jurisdictional issue that may warrant an action's dismissal regardless of Article III standing).

prudential principles of standing," and applying the third-party standing doctrine to dismiss certain claims).

The prohibition on seeking relief for a third-party has long limited the ability of shareholders in a corporation to vindicate the corporation's rights, except in specific circumstances. This variation of the third-party standing rule "generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). The D.C. Circuit delineated this rule in *Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984), a case cited heavily by the parties. In that case the Circuit held, applying Delaware law, that common law damages claims brought against corporate directors for mismanaging the corporation and its funds must be "pursued, if at all, on a derivative basis." *Id*. at 414. The Circuit's conclusion was dictated by "case law and sound policy," because in such circumstances "no shareholder suffers a harm independent of that visited upon the corporation and the other shareholders," and requiring a derivative action "prevents an individual shareholder from incurring a benefit at the expense of other shareholders similarly situated." *Id*; *see also Burman v. Phoenix Worldwide Indus., Inc.*, 384 F. Supp. 2d 316, 338 (D.D.C. 2005) (holding that "allegations of failure to secure revenue represent injury to the corporation as a whole, as opposed to an individual shareholder," and therefore "they are clearly claims that must be alleged in a shareholder derivative suit."). Again, District of Columbia law recognizes this rule. *See Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 163–64 (D.D.C. 2017); *Jackson v. George*, 146 A.3d 405, 415 n.6 (D.C. 2016) (discussing an "exception to the requirement that suits alleging wrongs against a corporation be brought derivatively"); *Estate of Raleigh v.*

*Mitchell*, 947 A.2d 464, 470 (D.C. 2008) ("Since the [plaintiff] estate had no legal interest in the real property belonging to the corporation, it could not sue individually to redress any alleged wrongs against the corporation's property interests.").

These principles limit the relief Plaintiffs may obtain because Plaintiffs' claims arise, in part, from ASA's injuries rather than their own. For instance, Plaintiffs assert that the Individual Defendants improperly "[i]nvaded the *ASA*'s Trust and Development Fund" in support of the Resolution, and have accrued additional Resolution-related expenses to the detriment of "*ASA's* financial health." Pls.' Opp'n at 30–31 (emphasis added); *see also* SAC ¶¶ 162-71, 185–86. They also claim that the Resolution negatively impacted ASA's revenues from charitable contributions and membership fees. Pls.' Opp'n at 31; *see also* SAC ¶¶ 172–81. And their complaint expressly seeks damages "*on behalf of the [ASA]* from the Individual Defendants, jointly and severally . . . representing the amounts of all money expended, and the value of all *[ASA] assets* appropriated" in support of the Resolution. SAC at 82 (emphasis added); *see also id*. ¶ 194 ("Plaintiffs are entitled to recover damages from the [i]ndividual Defendants *that the [ASA] incurred* as a result of this breach of fiduciary duty." (emphasis added)).

Plaintiffs cannot claim relief for ASA's injuries unless ASA is made a plaintiff through a derivative action, or unless another exception to the third-party or shareholder standing doctrines applies. Plaintiffs do not, and cannot, bring a derivative action on ASA's behalf under District of Columbia law. *See Bronner I*, 249 F. Supp. 3d at 47. They have failed to identify any other District of Columbia cause of action by which they can assert ASA's claims. And they have failed to otherwise demonstrate a "'hindrance' to [ASA's] ability to protect [its] own interests."

14

*Kowalski*, 543 U.S. at 130 (quoting *Powers*, 499 U.S. at 411). Accordingly, to the extent the Individual Defendants injured ASA, only ASA may seek damages for those injuries.[8]

Plaintiffs mount a clever attempt to avoid this straightforward conclusion, but they fail to show that the third-party standing rule should not apply here. Relying on two recent District of Columbia Court of Appeals cases, *Daley v. Alpha Kappa Alpha Sorority, Inc.* and *Jackson*, Plaintiffs contend that traditional analyses of for-profit shareholder standing should not apply to them as members of a non-profit corporation.[9] *See* Pls.' Opp'n at 4. Those cases suggest that dues-paying non-profit members have a broader suite of direct claims available to them under District of Columbia law than shareholders in a for-profit corporation. The *Daley* plaintiffs, dues-paying members of a sorority incorporated as a charitable corporation, sued the organization and certain members of its leadership directly, rather than on behalf of the organization, for breach of fiduciary duty, breach of contract, *ultra vires* actions, and waste. 26 A.3d 723, 726 (D.C. 2011). They claimed that the Individual defendants mismanaged the organization and improperly spent its resources compensating its president. *Id.* at 727. The

---

[8] This conclusion aligns with the policy considerations underlying the shareholder standing doctrine. Plaintiffs claim that—merely by their position as ASA members—they are entitled to collect hundreds of thousands of dollars allegedly misappropriated from ASA's trust fund. If the Court agreed, it would be opening the floodgates to duplicative litigation as other ASA members rushed to collect the same damages. *See Cowin*, 741 F.2d at 414 (recognizing a concern with "multitudinous litigation" in the doctrine's absence (quoting *Sutter v. Gen. Petroleum Corp.* 28 Cal. 2d 525, 530 (1946))).

[9] Plaintiffs also rely on *In re G-I Holdings*, in which the Third Circuit held that the plaintiff corporations could sue the defendant corporation directly for breach of contract, rather than derivatively through a non-profit organization to which the plaintiffs belonged, because the parties were "in contractual privity with one another but *not* with the [organization]." 755 F.3d 195, 208 (3d Cir. 2014). That case stands for the basic proposition that a party can sue to enforce its own contractual rights, regardless of any potential derivative action. It does not address the question raised here: Whether a party can sue to enforce a *third-party's* rights.

*Daley* trial court dismissed most of the plaintiffs for lack of standing, concluding that their claims could only be brought derivatively. *Id*. at 728–29.

In reversing this decision, the Court of Appeals held that

members of a nonprofit organization whose revenue depends in large part upon the regularly recurring annual payment of dues by its members have standing to complain when allegedly the organization and its management do not expend those funds in accordance with the requirements of the constitution and by-laws of that organization.

*Id*. at 729. Because the plaintiffs had a "direct, personal interest" in the action by virtue of their ongoing financial and emotional relationship with the organization, they had standing to bring their claims directly. *Id*. (quoting *Franchise Tax*, 493 U.S. at 336). The Court of Appeals issued a similar holding in *Jackson*, which involved a group of former church trustees who claimed that the defendants improperly ejected them from the church and mismanaged their tithes and offerings to the church. 146 A.3d at 415. The court held that the plaintiffs' "personal financial stake" in the action—their donations to the church—conferred standing to assert their claims directly rather than derivatively. *Id*.

*Daley* and *Jackson* indicate that non-profit members may directly suffer certain injuries from organizational mismanagement that for-profit shareholders do not. Those cases do not, however, speak to whether non-profit members may ultimately secure relief for the *organization*'s injuries rather than their own, without bringing derivative claims. In other words, *Daley* and *Jackson* concern a non-profit member's standing to seek relief based on the *member's* injuries, but not a non-profit member's standing to seek relief based on the *non-profit's* injuries. Nor did they need to grapple with the latter issue. District of Columbia courts are not bound by the amount-in-controversy requirement constraining federal courts, and there were no concerns in *Daley* or *Jackson* regarding whether the plaintiffs' direct claims met a jurisdictional threshold requirement. Thus, this Court does not read *Daley* and *Jackson* as narrowing the rule that a party

may not typically seek relief owed to a third-party.[10] *See Daley*, 26 A.3d at 729 ("Although not an Article III court, 'we nonetheless apply in every case the constitutional requirements of a case or controversy and the prudential prerequisites of standing.'" (quoting *Friends of Tilden Park, Inc. v. District of Columbia,* 806 A.2d 1201, 1206 (D.C. 2002))). It is therefore a legal certainty that Plaintiffs cannot collect the damages they claim ASA is owed. That conclusion, however, does not end the Court's jurisdictional analysis.

**B. Plaintiffs' Remaining Claims Fail to Meet the Amount-In-Controversy Requirement**

*Jackson* and *Daley* suggest that Plaintiffs may assert their claims directly and seek damages and injunctive relief for their individual injuries. The Court must determine, then, whether those direct claims meet 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. The answer, again, is no.

First, although Plaintiffs only explicitly seek damages "on behalf of the [ASA]," SAC at 82, they state that they individually have "suffered significant economic and reputational damage" because of "Defendants' abuses of power and disregard for [ASA's] foundational documents." *Id*. ¶ 206. However, nowhere in Plaintiffs' complaint or briefing do they explain what that damage is. Their complaint does indicate that ASA mismanaged their membership dues and increased those dues to cover Resolution-related expenses. *See id*. ¶ 185 (stating that ASA's Resolution-related expenses were covered by ASA's trust fund, and that ASA increased

---

[10] Those cases' ultimate dispositions support the Court's reading. On remand, the *Daley* trial court held that the plaintiffs were "not entitled to actual or punitive damages for any of their claims because they [did] not provide[] admissible evidence of any compensable injury to themselves," and they failed to comply with the procedural requirements to bring a derivative action on behalf of the organization. *See Daley v. Alpha Kappa Alpha Sorority, Inc.*, No. 2009 CA 04456 B, slip op. at 45–46, 58 (D.C. Super. Ct. May 14, 2013). Similarly, though the *Jackson* plaintiffs sought damages, the trial court allowed the case to proceed to trial only on the plaintiffs' claims for declaratory and injunctive relief. *See Jackson*, 146 A.3d at 411–12.

17

dues in response to those higher-than-expected expenses). However, at most, according to the complaint, Plaintiffs paid $120 per year until 2017, when their dues increased to $275. *Id.* If Defendants misappropriated every dollar that Plaintiffs contributed to ASA in annual dues, it would take each Plaintiff 625 years to reach $75,000 in damages.[11] Because Plaintiffs have otherwise provided no indication that they can prove $75,000 in damages, the Court concludes to a legal certainty that their damages claims do not meet the amount-in-controversy threshold. *See Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993) (Concluding to a legal certainty that the plaintiff's claim did not satisfy the amount-in-controversy requirement, because of a "total lack of medical findings" supporting her alleged injuries).

Second, Plaintiffs ask this Court to (1) enjoin ASA's leadership from acting contrary to ASA's constitution; (2) enjoin ASA's leadership from enforcing the Israel academic boycott; and (3) enjoin ASA's leadership from "making any payments or expenditures in violation of" ASA's constitution, "including in support of the Israel boycott." SAC at 82.[12] When injunctive relief is sought, the amount-in-controversy may be measured by (1) the value of the right that the plaintiffs seek to enforce; or (2) the cost to the defendants to remedy the alleged denial of that right. *See Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972); *Animal Legal Def. Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 59 (D.D.C. 2017). Neither measure satisfies the amount-in-controversy requirement here. Plaintiffs seek to require ASA to comply with its governing documents and halt improper payments; there is no indication that such relief would cost ASA any money to implement. And Plaintiffs have failed to explain how the right they seek to enforce—the right to be voluntary members of an apolitical,

---

[11] Plaintiffs may not aggregate their individual claims to satisfy the amount-in-controversy requirement. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969).

[12] As noted, Plaintiffs also seek declaratory relief. *Id.*

academic organization—is worth $75,000, nor is that right of the sort courts typically hold to be valuable.[13] *See, e.g.*, *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 142 (D.D.C. 2014) (holding that the value of enforcing a non-compete agreement against the plaintiff's former employee exceeded $75,000 because of the potential revenue the plaintiff would lose to the former employee in the agreement's absence).

## V. CONCLUSION

Plaintiffs lack standing to seek damages on behalf of ASA and it is clear, to a legal certainty, that their remaining claims do not raise an amount-in-controversy exceeding $75,000. Accordingly, the Court concludes that it lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).[14] *See St. Paul Mercury Indem. Co.*, 303 U.S. at 289. Plaintiffs have raised allegations and presented evidence indicating that they may have meritorious claims, but they must assert those claims before the proper tribunal.

It is hereby **ORDERED** that:

1. Defendants' Motions to Dismiss (ECF Nos. 106, 108, and 109) are **GRANTED**.

---

[13] Plaintiffs also seek the "costs and disbursements of this action, including attorneys' and experts' fees." SAC at 82. "Attorney fees are part of the amount in controversy if they are provided for by statute or contract." *Animal Legal Def. Fund*, 249 F. Supp. 3d at 62 (quoting *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013)). Plaintiffs, however, have not identified a statutory or contractual basis for attorneys' fees. Regardless, they have provided no evidence that attorneys' fees, if awarded, would equal more than $75,000 per plaintiff.

[14] Because the Court lacks subject matter jurisdiction, it declines to address the parties' arguments regarding the merits of Plaintiffs' *ultra vires*, fiduciary duty, and waste claims. *See In re Madison Guar. Sav. & Loan Ass'n*, 173 F.3d 866, 870 (D.C. Cir. 1999) ("[I]t is not proper for federal courts to proceed immediately to a merits question despite jurisdictional objections" (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). The Court also declines to address Defendants' motions to stay and motion for partial judgment on the pleadings, because its decision to dismiss the action moots those motions.

2. Defendants' Motions to Stay Discovery (ECF Nos. 107, 110, and 111) are **DENIED AS MOOT**.

3. Defendants' Motion for Judgment on the Pleadings (ECF No. 35) and Plaintiffs' Motion for Leave to File a Surreply to that motion (ECF No. 40) are **DENIED AS MOOT**.

It is **FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: February 4, 2019                                  RUDOLPH CONTRERAS
                                                         United States District Judge